# United States District Court
# Northern District of Illinois – CM/ECF LIVE, Ver 4.1.1 (Chicago)
# CIVIL DOCKET FOR CASE #: 1:10–cv–05135
# *Internal Use Only*

Ezell et al., v. City of Chicago
Assigned to: Honorable Virginia M. Kendall
 Case in other court:  10–03525
Cause: 42:1983 Civil Rights Act

Date Filed: 08/16/2010
Jury Demand: None
Nature of Suit: 950 Constitutional – State Statute
Jurisdiction: Federal Question

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/16/2010 | 1 | 2 | COMPLAINT filed by Illinois State Rifle Association, Rhonda Ezell, Action Target, Inc., William Hespen, Joseph I. Brown, Second Amendment Foundation, Inc.; Filing fee $ 350, receipt number 0752–5119115.(Sigale, David) (Entered: 08/16/2010) |
| 08/16/2010 | 2 | 14 | CIVIL Cover Sheet (Sigale, David) (Entered: 08/16/2010) |
| 08/16/2010 | 4 | 15 | MOTION by Plaintiffs Action Target, Inc., Joseph I. Brown, Rhonda Ezell, William Hespen, Illinois State Rifle Association, Second Amendment Foundation, Inc. for preliminary injunction, MOTION by Plaintiffs Action Target, Inc., Joseph I. Brown, Rhonda Ezell, William Hespen, Illinois State Rifle Association, Second Amendment Foundation, Inc. for permanent injunction (Sigale, David) (Entered: 08/16/2010) |
| 08/16/2010 | 5 | 17 | MEMORANDUM by Action Target, Inc., Joseph I. Brown, Rhonda Ezell, William Hespen, Illinois State Rifle Association, Second Amendment Foundation, Inc. in support of motion for preliminary injunction, motion for permanent injunction,, 4 (Attachments: # 1 Exhibit A – Trailer Rental Agreement, # 2 Exhibit B – Lease Agreement, # 3 Exhibit C – Declaration of Julianne Versnel, # 4 Exhibit D – Declaration of Richard Pearson, # 5 Exhibit E – Declaration of William Hespen, # 6 Exhibit F – Declaration of Joseph I. Brown, # 7 Exhibit G – Declaration of Rhonda Ezell, # 8 Exhibit H – Declaration of Chris Hart)(Sigale, David) (Entered: 08/16/2010) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, JOSEPH I. BROWN, | ) | Case No. |
| WILLIAM HESPEN, ACTION TARGET, INC., | ) | |
| SECOND AMENDMENT FOUNDATION, INC., | ) | **COMPLAINT** |
| and ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

<u>**COMPLAINT**</u>

**COME NOW** the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action

Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and

through undersigned counsel, and complain of the Defendant as follows:

<u>**THE PARTIES**</u>

1.     Plaintiff Rhonda Ezell is a natural person and a citizen of the United States

residing in Chicago, Illinois.

2.     Plaintiff Joseph I. Brown is a natural person and a citizen of the United States

residing in Chicago, Illinois.

3.     Plaintiff William Hespen is a natural person and a citizen of the United States

residing in Chicago, Illinois.

4.      Plaintiff Action Target, Inc., is a Delaware corporation having its primary place of business in Utah. Action Target is a leading designer and builder of gun ranges, and renowned manufacturer and seller of gun range equipment and supplies. Action Target is engaged in the gun range business throughout the United States, including in Chicago, where it recently constructed a gun range on the seventeenth floor of the Federal Reserve Bank of Chicago, located at 230 South LaSalle Street; a gun range for the United States Postal Inspectors at 743 South Canal Street; and a gun range for Brinks, located at 4420 S. Tripp Avenue. Action Target has bid on the retrofitting of two other gun ranges within Chicago currently being operated by the federal government.

5.      Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including many in Chicago. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control. SAF brings this action on behalf of itself and its members.

6.      Plaintiff Illinois State Rifle Association ("ISRA") is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 17,000 members and supporters in Illinois, including many in Chicago. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. ISRA brings this action on behalf of itself and its members.

7.     Defendant City of Chicago is a municipal entity organized under the Constitution and laws of the State of Illinois.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

9.     Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## STATEMENT OF FACTS

*Gun Ranges' Role in American Tradition and Chicago's Safety Policy*

10.     Familiarity with firearms, and proficiency in their use, promotes public safety. Gun owners trained in and familiar with the operation of their guns are less likely to be involved in accidental shootings, and more likely to successfully use their firearms in self-defense in case of need.

11.     Recreational shooting is a traditional lawful use of firearms in the United States.

12.     The promotion of civilian marksmanship has been a priority of the federal government throughout American history, beginning with the Second Militia Act of 1792 and continuing through today with the modern implementation of the Civilian Marksmanship Program through the federally-chartered Corporation for the Promotion of Rifle Practice and Firearms Safety, 36 U.S.C. §§ 40701, et seq.

13.     Defendant City of Chicago recognizes the value of firearms training and proficiency. The City mandates, as a condition of firearms ownership, that all individuals undergo at least one hour of firearms training on a gun range.

3

14.     Chicago residents wishing to lawfully possess firearms in the city must first obtain a Chicago Firearms Permit ("CFP"). Chi. Mun. Code § 8-20-110(a).

15.     An application for a CFP "shall include . . . (7) an affidavit signed by a firearm instructor certified by the State of Illinois to provide firearm training courses attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training . . ." Chi. Mun. Code § 8-20-120(a).

16.     Chicago firearm registrants whose registrations precede Chicago's adoption of the CFP requirement must obtain a CFP, and the requisite training, in order to renew their firearm registration. Chi. Mun. Code § 8-20-110(d). If a registration is not timely renewed, the subject firearm may become unregisterable to the current owner and must be disposed of. Chi. Mun. Code §§ 8-20-140(d), 8-20-170(c).

17.     Owing to, and as part of Chicago's recent changes to its firearms laws, the City of Chicago enacted a ninety day grandfathering period wherein it will allow the registration of firearms previously acquired, but not registered, by city residents. This period will expire on October 12, 2010. Any individual wishing to take advantage of this opportunity must, by October 12, 2010, obtain a CFP and thus, must undergo at least one hour of range time by that date.

18.     Gun ranges open to the public exist in virtually every major American city in a variety of architectural settings.

19.     Properly designed and operated, gun ranges are compatible with many typical commercial uses of property.

20.     At least eleven gun ranges currently operate within the City of Chicago. However, none are open to the public. Five ranges are operated by the Chicago Police Department. The

4

federal government maintains four gun ranges. And each of two private security companies

operate gun ranges for their own purposes.

21.     Historically, gun ranges open to the public have operated in Chicago.

*Chicago's Prohibition of Gun Ranges, Recreational Shooting,*
*and Firearms Training*

22.     Chicago Municipal Code § 8-20-280, "Prohibition on shooting galleries and target

ranges," provides: "Shooting galleries, firearm ranges, or any other place where firearms are

discharged are prohibited; provided that this provision shall not apply to any governmental

agency. The discharge of a firearm in an area where hunting is permitted shall not be a violation

of this section."

23.     A variety of Chicago ordinances, individually and as a whole, bar the temporary

lending and borrowing of firearms for purposes of training and shopping at a gun range. These

include: Chi. Mun. Code §§ 8-20-020 (barring possession of handguns outside the home), 8-20-

030 (barring possession of long guns outside one's home or fixed place of business), 8-20-080

(barring possession of ammunition without corresponding CFP and registration certificate), 8-20-

100(a) (providing that generally, "no firearm may be sold, acquired or otherwise transferred

within the city, except through inheritance of the firearm"), 8-20-100(d) (providing that "No

person may loan, borrow, give or rent to or from another person, any firearm or ammunition

except in accordance with this chapter"), 8-20-110(a) (mandating that each individual must have

a valid CFP to possess a firearm), 8-20-140(a) (mandating that no firearm may be possessed

without a registration certificate), and 8-24-010 (barring recreational shooting).

24.     Every day in which an individual operates a gun range in violation of Chi. Mun. Code § 8-20-280; or transfers, loans, borrow, gives or rents firearms or ammunition in violation of Chi. Mun. Code § 8-20-100; or possesses an unregistered firearm in violation of Chi. Mun. Code § 8-20-140, is considered a separate and distinct offense. The penalty for a first offense in violation of these provisions is a fine ranging from $1,000 to $5,000 and/or incarceration ranging from 20 to 90 days. A subsequent offense carries a fine ranging from $5,000 to $10,000 and/or incarceration ranging from thirty days to six months. Chi. Mun. Code § 8-20-300(b).

25.     Every day in which an individual possesses guns outside the home or fixed place of business in violation of Chi. Mun. Code §§ 8-20-020 or 8-20-030; possesses ammunition without a corresponding registration under Chi. Mun. Code § 8-20-080; or possesses a firearm without a CFP in violation of Chi. Mun. Code § 8-20-140, is considered a separate and distinct offense. The penalty for a first offense in violation of these provisions is a fine ranging from $1,000 to $5,000 and/or incarceration ranging from 20 to 90 days. Chi. Mun. Code § 8-20-300(a).

26.     Discharging a firearm other than in self-defense or defense of another person, in violation of Chi. Mun. Code § 8-24-010, carries a penalty ranging from $500 to $1000.

*The Impact of Chicago's Range Prohibition on Plaintiffs and the Public*

27.     Plaintiff Rhonda Ezell has been the victim of three attempted burglaries at her Chicago home. She has applied for a Chicago Firearms Permit so that she may register her handgun. However, to obtain the necessary training, Ezell traveled to a range in Dundee, Illinois, a significant distance from her home.

6

28.     Plaintiff Ezell suffers from interstitial lung disease, lupus, and end stage renal disease, for which she is currently awaiting a kidney transplant. Ezell would like to continue recreational shooting, but given her condition finds it difficult to travel outside the city for that purpose. Ezell would utilize a gun range inside the city of Chicago were one accessible to her.

29.     Plaintiff Joseph I. Brown is an honorably-discharged U.S. Army veteran. Plaintiff Brown served in the Pacific and European theaters during the Second World War, and was among the liberators of the infamous Dachau concentration camp. Brown is currently the Chairman of the Marksmanship Committee for the Department of Illinois, American Legion. He is also the Secretary and Treasurer of the Cook County Rifle League, and instructs a winter shooting league for junior shooters (boys and girls ages 12-20) that meets at the six-point indoor gun range located at the Morton Grove, Illinois American Legion Post 134.

30.     Plaintiff Brown would like to register one of his guns for possession inside his Chicago home, but cannot do so until he obtains his Chicago Firearms Permit. Notwithstanding his unusual expertise and high level of firearms proficiency, Brown must undergo one hour of formal range training to obtain the Chicago Firearms Permit and register his gun.

31.     Plaintiff Brown would also engage in recreational shooting within the City of Chicago, and promote and provide instruction in the shooting sports, and marksmanship, to his Chicago neighbors at a local range, if one were made available to him.

32.     Plaintiff William Hespen is a retired Chicago Police detective. Hespen is the registered owner of various firearms, twenty-four of which have registrations set to expire on October 8, 2010. Hespen must obtain training and apply for a CFP upon the expiration of his registration certificate in order to continue lawful possession of his firearms.

33.     Plaintiff Hespen would also engage in recreational shooting within the City of Chicago, and promote and provide instruction in the shooting sports, and marksmanship, to his Chicago neighbors at a local range, if one were made available to him.

34.     Various qualified customers of Plaintiff Action Target have expressed to Action Target their desire to retain the company to construct gun ranges within the city limits of Chicago. Action Target refrains from entering into these contracts, and from supplying range equipment and supplies in Chicago, owing to the ordinances complained of in this action. But for these prohibitions, Action Target would successfully market its services and products in Chicago to non-governmental entities.

35.     Plaintiff ISRA has long operated a gun range approximately sixty miles outside Chicago for the benefit of its members and the public at large. ISRA would operate a range within the City of Chicago, to further its chartered purposes of promoting the shooting sports, educating the public about firearms, training individuals to become better and safer shooters, enabling individuals to comply with training requirements such as that recently enacted by the City of Chicago, and generally serving its members.

36.     Plaintiffs SAF and ISRA have members and supporters within the City of Chicago who require range training in order to obtain CFPs and thus lawfully keep firearms. It is squarely within the educational and public service missions of SAF and ISRA to provide firearms training, especially to the extent such training is required as a condition of gun ownership.

37.     SAF and ISRA expend their resources advising and counseling current and prospective Chicago gun owners with respect to Chicago's gun laws, including the city's range training requirement.

38.     Every day, current firearms registrants, including the members and supporters of Plaintiffs SAF and ISRA, are forced to obtain CFPs to continue exercising their right to keep arms in the City of Chicago, as registration certificates issued under the previous Chicago firearms ordinance expire. It is urgent that such individuals immediately obtain the city-mandated training, lest their firearms become unregisterable and they become subject to criminal penalties.

39.     Numerous individuals within Chicago, including the members and supporters of Plaintiffs SAF and ISRA, urgently require the city-mandated training so that they may timely obtain CFPs and gun registrations prior to the expiration of the 90-day grandfathering window on October 12, 2010.

40.     To meet these urgent educational needs, SAF has contracted for the delivery of a modern mobile firearm training facility, ordinarily used by law enforcement personnel, to the City of Chicago. This mobile range facility, fully compliant with all federal environmental and safety standards, contains three positions within a forty-eight foot truck trailer. SAF has also secured a commercial space for the location of this range within Chicago, and plans to secure additional parking locations so that convenient range training may be provided to gun owners throughout the length and breadth of the City of Chicago. This range would be operated by SAF in conjunction with ISRA's state-registered firearms trainers.

41.     But for the criminal enactments challenged in this complaint, SAF and ISRA would begin educating individuals in the use of firearms, including by providing the training required by Defendant City of Chicago, utilizing the mobile range within the City of Chicago by the end of September, 2010, but refrain from doing so for fear of arrest, prosecution, fine and incarceration of their principals and employees.

42.     But for the criminal enactments challenged in this complaint, ISRA would seek to construct and operate gun ranges within the City of Chicago, but refrains from doing so for fear of arrest, prosecution, fine and incarceration of their principals and employees.

43.     But for the criminal enactments challenged in this complaint, Plaintiffs Brown and Hespen would obtain the mandated gun training in the City of Chicago utilizing Plaintiffs SAF and ISRA's mobile facility, and frequent a Chicago gun range for recreational shooting, and to maintain and improve their proficiency with firearms.

## COUNT I
## RIGHT TO KEEP AND BEAR ARMS
## U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983

44.     Paragraphs 1 through 43 are incorporated as though fully stated herein.

45.     The Second Amendment, which applies against defendant City of Chicago by operation of the Fourteenth Amendment, secures the right to operate firearms at a range, for purposes of learning about firearms, gaining proficiency with firearms, obtaining any training required as a condition of firearms ownership, recreation, and competition; and the right to own and operate a range for these purposes.

46.     Chicago's laws ban the operation of gun ranges, thereby prohibiting numerous traditional lawful uses of firearms. The range ban and associated laws also impede gun ownership itself by frustrating compliance with the city's firearm registration program and barring access to useful information and experience inherently necessary to the exercise of Second Amendment rights.

47.     By banning gun ranges open to the public, and by effectively banning the loan, rental, and borrowing of functional firearms at ranges open to the public, Defendant currently

under color of law deprives individuals, including the Plaintiffs, of their right to keep and bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional customs, policies, and practices.

## COUNT II
## FREE SPEECH
## U.S. CONST., AMENDS. I AND XIV, 42 U.S.C. § 1983

48.     Paragraphs 1 through 47 are incorporated as though fully stated herein.

49.     The First Amendment, which applies against defendant City of Chicago by operation of the Fourteenth Amendment, secures the right to provide and receive education and instruction in the use of firearms, including the right to provide and receive the training required by defendant as a prerequisite to owning firearms.

50.     By banning gun ranges open to the public, and by effectively banning the loan, rental, and borrowing of functional firearms at ranges open to the public, Defendant currently under color of law deprives individuals, including the Plaintiffs, of their right to free speech, in violation of the First and Fourteenth Amendments to the United States Constitution. Plaintiffs are thus damaged in violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional customs, policies, and practices.

**PRAYER FOR RELIEF**

Plaintiffs request judgment be entered in their favor and against Defendant as follows:

1.     An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Chicago Municipal Code § 8-20-280, barring operation of gun ranges open to the public;

2.     An order preliminarily and permanently enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Chicago Municipal Code §§ 8-20-020, 8-20-030, 8-20-080, 8-20-100, 8-20-110, 8-20-140, and 8-24-010, or any other law, as against the ordinary operation and use of gun ranges open to the public and the loan or rental of functional firearms within gun ranges open to the public;

3.     Attorney Fees and Costs pursuant to 42 U.S.C. § 1988;

4.     Declaratory relief consistent with the injunction;

5.     Costs of suit; and

6.     Any other further relief as the Court deems just and appropriate.

Dated: August 16, 2010                    Respectfully submitted,

Alan Gura                                 David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                    Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405         Corporate West I
Alexandria, VA 22314                      4300 Commerce Court, Suite 300-3
703.835.9085/Fax 703.997.7665            Lisle, IL 60532
*Pro Hac Vice* Application Pending        630.452.4547/Fax 630.596.4445

                                          By:    /s/David G. Sigale/
                                                 David G. Sigale

CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**(a) PLAINTIFFS**

RHONDA EZELL, JOSEPH I. BROWN, WILLIAM HESPEN, ACTION TARGET, INC., SECOND AMENDMENT FOUNDATION, INC. and ILLINOIS STATE RIFLE ASSOCIATION

**DEFENDANTS**

CITY OF CHICAGO

**(b)** County of Residence of First Listed Plaintiff   Cook
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Cook
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Law Firm of David G. Sigale, P.C.
Corporate West I / 4300 Commerce Court, Suite 300-3
Lisle, IL 60532   (630.452.4547)

Attorneys (If Known)

Mara S. Georges, Esq., Corporation Counsel of City of Chicago
30 North LaSalle Street, Suite 800
Chicago, IL 60602

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [■] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane  **PERSONAL INJURY** | [ ] 620 Other Food & Drug | | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product   [ ] 362 Personal Injury— | [ ] 625 Drug Related Seizure | [ ] 423 Withdrawal | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | Liability   Med. Malpractice | of Property 21 USC 881 | 28 USC 157 | [ ] 450 Commerce/ICC Rates/etc. |
| [ ] 150 Recovery of Overpayment | [ ] 320 Assault, Libel &  [ ] 365 Personal Injury— | [ ] 630 Liquor Laws | | [ ] 460 Deportation |
| & Enforcement of Judgment | Slander   Product Liability | [ ] 640 R.R. & Truck | **PROPERTY RIGHTS** | [ ] 470 Racketeer Influenced and |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'  [ ] 368 Asbestos Personal | [ ] 650 Airline Regs. | [ ] 820 Copyrights | Corrupt Organizations |
| [ ] 152 Recovery of Defaulted | Liability   Injury Product | [ ] 660 Occupational | [ ] 830 Patent | [ ] 480 Consumer Credit |
| Student Loans (excl. vet.) | [ ] 340 Marine   Liability | Safety/Health | [ ] 840 Trademark | [ ] 490 Cable/Satellite TV |
| [ ] 153 Recovery of Overpayment | [ ] 345 Marine Product  **PERSONAL PROPERTY** | [ ] 690 Other | | [ ] 810 Selective Service |
| of Veteran's Benefits | Liability   [ ] 370 Other Fraud | | | [ ] 850 Security/Commodity/Exch. |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle   [ ] 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | [ ] 875 Customer Challenge |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle   [ ] 380 Other Personal | [ ] 710 Fair Labor Standards | [ ] 861 HIA (1395ff) | 12 USC 3410 |
| [ ] 195 Contract Product Liability | Product Liability   Property Damage | Act | [ ] 862 Black Lung (923) | [ ] 891 Agricultural Acts |
| [ ] 196 Franchise | [ ] 360 Other Personal Inj.  [ ] 385 Property Damage | [ ] 720 Labor/Mgmt. Relations | [ ] 863 DIWC/DIWW (405(g)) | [ ] 892 Economic Stabilization Act |
| | Product Liability | | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 865 RSI (405(g)) | [ ] 894 Energy Allocation Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate | | [ ] 895 Freedom of Information Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | Sentence | **FEDERAL TAX SUITS** | [ ] 900 Appeal of Fee |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/   **Habeas Corpus:** | [ ] 730 Labor/Mgmt.Reporting | | Determination Under |
| [ ] 240 Torts to Land | Accommodations   [ ] 530 General | & Disclosure Act | [ ] 870 Taxes (U.S. Plaintiff | Equal Access to Justice |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare   [ ] 535 Death Penalty | [ ] 740 Railway Labor Act | or Defendant) | [■] 950 Constitutionality of |
| [ ] 290 All Other Real Property | [ ] 445 ADA—Employment  [ ] 540 Mandamus & Other | [ ] 790 Other Labor Litigation | [ ] 871 IRS—Third Party | State Statutes |
| | [ ] 446 ADA — Other   [ ] 550 Civil Rights | [ ] 791 Empl. Ret. Inc. | 26 USC 7609 | [ ] 890 Other Statutory Actions |
| | [ ] 440 Other Civil Rights  [ ] 555 Prison Condition | Security Act | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- [■] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Enter U.S. Civil Statute under which you are filing and write a brief statement of cause.)

42 U.S.C. § 1983: Chicago Mun. Code § 8-20-280 and other related ordinances violate the 2nd, 1st and 14th Amendments.

**VII. PREVIOUS BANKRUPTCY MATTERS** (For nature of suit 422 and 423, enter the case number and judge for any associated bankruptcy matter perviously adjudicated by a judge of this Court. Use a separate attachment if necessary)

**VIII. REQUESTED IN COMPLAINT:**
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [ ] No

**IX. This case**
- [■] is not a refiling of a previously dismissed action.
- [ ] is a refiling of case number _____ , previously dismissed by Judge _____

DATE   August 16, 2010

SIGNATURE OF ATTORNEY OF RECORD

/s/ David G. Sigale, Esq.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C- |
| | ) | |
| Plaintiffs, | ) | |
| | ) | MOTION FOR |
| v. | ) | PRELIMINARY INJUNCTION |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COME NOW the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and through undersigned counsel, and move for the entry of an order:

1.      Preliminarily enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Chicago Municipal Code § 8-20-280, barring operation of gun ranges open to the public;

2.      Preliminarily enjoining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Chicago Municipal Code §§ 8-20-020, 8-20-030, 8-20-080, 8-20-100, 8-20-110, 8-20-140, and 8-24-010, or any other law, as against the ordinary operation and use of gun ranges open to the public and the loan or rental of functional firearms within gun ranges open to the public.

Dated: August 16, 2010

Respectfully submitted,

Alan Gura (pro hac vice appl. pending)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445


By: /s/ Alan Gura/

    Alan Gura

By: /s/ David G. Sigale/

    David G. Sigale

    Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT OF |
| Plaintiffs, | ) | PLAINTIFFS' MOTION FOR |
| | ) | PRELIMINARY INJUNCTION |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

COME NOW the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action

Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and

through undersigned counsel, and submit their Memorandum of Points and Authorities in

Support of their Motion for Preliminary Injunction.

Dated: August 16, 2010                    Respectfully submitted,

Alan Gura (pro hac vice appl. pending)     David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                     Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405          4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                       Lisle, IL 60532
703.835.9085/Fax 703.997.7665             630.452.4547/Fax 630.596.4445


By: /s/ Alan Gura/                          By: /s/ David G. Sigale/


Alan Gura                                   David G. Sigale

                                            Attorneys for Plaintiffs

TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.     Chicago's Training Requirement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.     *Chicago's Ban on the Operation of Gun Ranges*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

C.     *The Range Ban's Impact on Plaintiffs and the General Public*. . . . . . . . . . . . . . . . . . . . 4

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE
     ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . 9

II.    TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO
     RELIEVE THE RANGE BAN'S HARM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.   PLAINTIFFS WILL PREVAIL ON THE MERITS, AS CHICAGO'S
     RANGE BAN VIOLATES THEIR SECOND AND
     FIRST AMENDMENT RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.     Using and Operating Gun Ranges Lie at the
              Core of the Second Amendment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        B.     The Use and Operation of Gun Ranges Constitutes Protected Speech. . . . . . . . . 13

              1.     *The First Amendment Guarantees A Right to Provide*
                    *and Receive Instruction in the Use of Firearms at a*
                    *Gun Range.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

IV.   THE BALANCE OF INTERESTS FAVOR IMMEDIATE
     INJUNCTIVE RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TABLE OF AUTHORITIES

Cases

*Christian Legal Soc'y* v. *Walker*,
   453 F.3d 853 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

*District of Columbia* v. *Heller*,
   128 S. Ct. 2783 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12

*Edwards* v. *City of Goldsboro*,
   178 F.3d 231 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Girl Scouts of Manitou Council, Inc.* v. *Girl Scouts of U.S., Inc.*,
   549 F.3d 1079 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Goulart* v. *Meadows*,
   345 F.3d 239 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Holder* v. *Humanitarian Law Project*,
   130 S. Ct. 2705 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kennedy* v. *Louisiana*,
   128 S. Ct. 2641 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Keyishian* v. *Board of Regents*,
   385 U.S. 589 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lawrence* v. *Texas*,
   539 U.S. 558 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McDonald* v. *City of Chicago*,
   130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 12, 13, 15

*National People's Action* v. *Wilmette*,
   914 F.2d 1008 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Parker* v. *District of Columbia*,
   478 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Richmond Newspapers* v. *Virginia*,
   448 U.S. 555 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Silveira* v. *Lockyer*,
   328 F.3d 567 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sweezy* v. *New Hampshire*,
   354 U.S. 234 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Emerson*,
   270 F.3d 203 (5th Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States* v. *O'Brien*,
   391 U.S. 367 (1968).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Universal City Studios* v. *Corley*,
   273 F.3d 429 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14


Constitutional Provisions

U.S. Const. amend. II.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


Statutes, Rules, and Ordinances

36 U.S.C. § 40701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Chi. Mun. Code § 8-20-020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-030. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-080. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-100(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-100(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-110(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

Chi. Mun. Code § 8-20-110(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-120(a).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-140(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-140(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-140(d)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-170(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-280. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Chi. Mun. Code § 8-20-300(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-300(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-24-010. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Other Authorities

Dahleen Glanton & Duaa Eldeib, "Chicago Gun Law
        May Not Be Bulletproof," *Chicago Tribune*,
        July 11, 2010, *available at* http://articles.
        chicagotribune.com/2010-07-11/news/ct-met-
        chicago-gun-law- 20100708_1_ reasonable-
        restriction-gun-ordinance (last visited August 11, 2010). . . . . . . . . . . . . . . . . . . . . . . . . 4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**PRELIMINARY STATEMENT**

Chicago's newly-enacted ban on the operation of gun ranges flatly violates the rights to

arms and speech, and poses an immediate threat to public safety. If not preliminarily enjoined,

the range ban will irreparably harm not only the public at large, but also Plaintiffs and numerous

others who must obtain range training within the next two months in order to keep firearms

consistent with city law. Defendant has no valid interest in completely banning the gun ranges it

concedes are necessary for public safety. Preliminary injunctive relief is warranted.

**STATEMENT OF FACTS**

**A.** ***Chicago's Training Requirement.***

Individuals exercising Second Amendment rights should know how to use their firearms

safely and effectively. With proper care, guns provide security against violence, peace of mind,

and recreational and social opportunities. But gun owners who are unfamiliar with or not

proficient in the use of their guns might pose a danger to themselves and others, and may be

unable to fully realize the defensive benefits of their guns in time of emergency.

Regardless of whether some level of training and proficiency among gun owners is

merely a good idea, or should or could be mandated as a condition of owning firearms, the fact is

that the City of Chicago demands at least one hour of range training as a condition for exercising

the right to keep and bear arms. Chicago residents wishing to lawfully possess firearms in the city

must first obtain a Chicago Firearms Permit ("CFP"). Chi. Mun. Code § 8-20-110(a). An

application for a CFP "shall include . . . (7) an affidavit signed by a firearm instructor certified by

1

the State of Illinois to provide firearm training courses attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training . . .." Chi. Mun. Code § 8-20-120(a).

The requirement is not exclusive to new gun owners. Chicago firearm registrants whose registrations predate the CFP requirement's adoption must obtain a CFP, and the requisite training, in order to renew their firearm registration. Chi. Mun. Code § 8-20-110(d). If a registration is not timely renewed, the subject firearm may become unregisterable to the current owner and must be disposed of. Chi. Mun. Code §§ 8-20-140(d), 8-20-170(c).

Owing to, and as part of Chicago's recent changes to its firearms laws, the city enacted a ninety day grandfathering period wherein it will allow the registration of firearms previously acquired, but not registered, by city residents. Chi. Mun. Code § 8-20-140(d)(2). This ninety-day period will expire on October 12, 2010. Any individual wishing to take advantage of this opportunity must, within the ninety-day period, obtain a CFP and thus, must undergo at least one hour of range time. Accordingly, however beneficial firearms training ordinarily might be, Chicago's training requirements, and the penalties for non-compliance, accelerate the urgency of the need for publicly-accessible gun ranges.

### B.     *Chicago's Ban on the Operation of Gun Ranges.*

Chicago Mun. Code § 8-20-280, "Prohibition on shooting galleries and target ranges," provides, "Shooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited; provided that this provision shall not apply to any governmental agency . . .."

Additionally, a variety of Chicago code provisions, individually and as a whole, operate to bar the temporary lending and borrowing of firearms for purposes of training and

familiarization at a gun range. These include: Chi. Mun. Code §§ 8-20-020 (barring possession of handguns outside the home), 8-20-030 (barring possession of long guns outside one's home or fixed place of business), 8-20-080 (barring possession of ammunition without corresponding CFP and registration certificate), 8-20-100(a) (providing that generally, "no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm"), 8-20-100(d) (providing that "No person may loan, borrow, give or rent to or from another person, any firearm or ammunition except in accordance with this chapter"), 8-20-110(a) (mandating that each individual must have a valid CFP to possess a firearm), 8-20-140(a) (firearms may be possessed only with a registration certificate), and 8-24-010 (barring recreational shooting).

Every day in which an individual operates a gun range in violation of Chi. Mun. Code § 8-20-280; or transfers, loans, borrow, gives or rents firearms or ammunition in violation of Chi. Mun. Code § 8-20-100; or possesses an unregistered firearm in violation of Chi. Mun. Code § 8-20-140, is considered a separate and distinct offense. The penalty for a first offense in violation of these provisions is a fine ranging from $1,000 to $5,000 and/or incarceration ranging from 20 to 90 days. A subsequent offense carries a fine ranging from $5,000 to $10,000 and/or incarceration ranging from thirty days to six months. Chi. Mun. Code § 8-20-300(b).

Every day in which an individual possesses guns outside the home or fixed place of business in violation of  Chi. Mun. Code §§ 8-20-020 or 8-20-030; possesses ammunition without a corresponding registration under Chi. Mun. Code § 8-20-080; or possesses a firearm without a CFP in violation of Chi. Mun. Code § 8-20-140, is considered a separate and distinct offense. The penalty for a first offense in violation of these provisions is a fine ranging from $1,000 to $5,000 and/or incarceration ranging from 20 to 90 days. Chi. Mun. Code § 8-20-

3

300(a). Discharging a firearm other than in self-defense or defense of another person, in violation of Chi. Mun. Code § 8-24-010, carries a penalty ranging from $500 to $1000.

Chicago's range ban, like much of Chicago's new firearms ordinance, was enacted out of hostility to the Second Amendment. Chicago's City Attorney explained the city-wide ban on gun stores was enacted, instead of mere zoning and other types of ordinary restrictions, because no Alderman wanted gun stores in his or her ward. Dahleen Glanton & Duaa Eldeib, "Chicago Gun Law May Not Be Bulletproof," *Chicago Tribune*, July 11, 2010, available at http://articles. chicagotribune.com/2010-07-11/news/ct-met-chicago-gun-law- 20100708_1_ reasonable-restriction-gun-ordinance (last visited August 11, 2010). The logic of banning all ranges, rather than regulating them as property uses, appears similar.

### C.     *The Range Ban's Impact on Plaintiffs and the General Public.*

Every day that passes, existing firearms registrations predating Chicago's new firearms ordinance expire. Any individual facing registration expiration must obtain the necessary range training to timely seek a CFP. The failure to do so can lead to a loss of Second Amendment rights as the registered guns become unregisterable. Members and supporters of Plaintiffs SAF and ISRA need immediate range training for this reason. Versnel Decl., ¶ 3; Pearson Decl., ¶ 3.

Plaintiff William Hespen, a retired Chicago Police detective, faces this risk. Hespen has various registered guns, 24 of which will see their registrations expire on October 8, 2010. Hespen Decl., ¶¶ 2, 3. If he does not obtain range training by then, he will lose the ability to lawfully possess these firearms. Within one calendar year, he will lose the ability to lawfully possess his remaining firearms. Chicago's range ban interferes with Hespen's ability to obtain the required training. Hespen Decl., ¶¶ 4, 5.

4

Every day that passes, Chicagoans wishing to take advantage of the ninety-day grandfathering provision who cannot obtain the necessary range training draw one day closer to losing their right to keep otherwise registerable firearms in their homes. In a few short weeks, on October 12, 2010, their ability to do so will expire if they do not obtain range training. Members and supporters of Plaintiffs SAF and ISRA need immediate range training for this reason. Versnel Decl., ¶ 3; Pearson Decl., ¶ 3. Plaintiff Joseph I. Brown falls into this category. Brown would like to register a gun he currently owns but keeps outside the city. Brown Decl., ¶ 6. Chicago's range ban frustrates Brown's ability to obtain the required training. Brown Decl., ¶ 4.

Every day that passes without relief from Chicago's range ban, Chicago gun owners, including the members and supporters of Plaintiffs SAF and ISRA, are frustrated in their ability to maintain and improve their firearms proficiency and engage in recreational shooting. Plaintiff Rhonda Ezell has applied for a Chicago Firearms Permit, but traveling far outside the city to do so was a hardship, considering her poor health. Ezell Decl., ¶¶ 2, 3. Ezell cannot travel such distances easily in order to engage in recreational shooting. Ezell Decl., ¶ 4. Ezell would like to continue recreational shooting, and believes she needs to keep practicing with her handgun in order to remain proficient in its use so that she may be better able to defend herself in the event of another burglary. Ezell would welcome opportunities to learn how to maintain and improve her marksmanship, and would definitely visit a Chicago range for these purposes. *Id.*

Plaintiff Brown has frequented ranges in Chicago when they were available. Brown Decl., ¶ 6. Brown regularly promotes the shooting sports and provides shooting instruction, and he would do so among his Chicago neighbors, but the lack of a local range impedes his ability to engage in this activity. Brown Decl., ¶¶ 2, 5. Plaintiff Action Target, Inc., has recently built gun

ranges for the Federal Reserve Bank, 230 S. LaSalle Street; Postal Inspectors, 743 S. Canal

Street; and Brinks, 4420 S. Tripp Avenue. It is bidding to retrofit Chicago gun ranges operated by

the Customs and Border Protection Service, and Federal Air Marshals, and would build ranges in

Chicago open to the public but for the challenged ordinances. Hart Decl., ¶¶ 4, 5.

Plaintiffs are greatly concerned that owing to the recent highly-publicized demise of

Chicago's handgun ban, many individuals seeking to become first-time gun owners might

purchase guns that are less-than-optimally suitable for their needs. It is quite obviously better for

potential gun owners, and in the interest of public safety, that prospective gun buyers experience

a variety of guns, or at least, those guns they are considering, *before* actually making their

purchases. And many people are introduced to shooting and gun ownership by visiting a range

prior to deciding to purchase a gun. Versnel Decl., ¶ 4; Pearson Decl.,¶ 4. Gun ranges

traditionally offer a variety of handguns for on-premises rental, and training classes usually

provide experience with a variety of firearms. Whatever the merit of Chicago's various

registration and possession requirements, their application within the context of gun ranges

impedes traditional gun range and training behavior.

Plaintiffs SAF and ISRA are in the business of promoting firearms education and

ownership, including by the securing of Second Amendment rights. Versnel Decl., ¶ 2; Pearson

Decl., ¶ 1. SAF and ISRA organized and were among the prevailing parties in *McDonald* v. *City*

*of Chicago*, 130 S. Ct. 3020 (2010). ISRA has long operated a gun range near Kankakee, Illinois,

for the benefit of its members, and to promote marksmanship and the shooting sports. Pearson

Decl., ¶ 5. Among ISRA's members and officers are various firearms trainers certified by the

State of Illinois who are qualified to provide the training mandated by the City of Chicago as a

prerequisite to obtaining a CFP. *Id.* The lack of gun ranges in Chicago is significantly impeding individuals' ability to maintain and obtain lawful gun ownership. Pearson Decl., ¶ 7.

To address the training crisis facing current and prospective Chicago gun owners, SAF and ISRA have contracted for the operation of a mobile range training facility in the city. SAF has placed a deposit guaranteeing the availability, for immediate delivery, of a mobile range facility, fully compliant with all federal environmental and safety standards, which contains three positions within a forty-eight foot truck trailer. Versnel Decl., ¶ 5; Exh. A. SAF has also secured a commercial space for the location of this range within Chicago, and plans to secure additional parking locations so that convenient range training may be provided to gun owners throughout the length and breadth of the City of Chicago. Versnel Decl., ¶ 5, Exh. B. This range would be operated by SAF in conjunction with ISRA's state-registered firearms trainers. Versnel Decl., ¶ 6; Pearson Decl., ¶ 8. Plaintiffs Brown and Hespen would receive their required training at this facility. Brown Decl., ¶ 4; Hespen Decl., ¶ 4.

But for the criminal enactments challenged in this complaint, SAF and ISRA would begin operating the mobile range within the City of Chicago by the end of September, 2010, but refrain from doing so for fear of arrest, prosecution, fine and incarceration of their principals and employees. Versnel Decl., ¶ 7, Pearson Decl., ¶ 9.  For the same reason, ISRA refrains from opening a more permanent range facility within the City of Chicago. Pearson Decl., ¶ 9, and Action Target is refraining from soliciting and conducting business in Chicago. Hart Decl., ¶ 5.

## SUMMARY OF ARGUMENT

Chicago's range ban unquestionably violates the constitutional guarantees of keeping arms and free speech, as do Chicago's other various ordinances that, regardless of their validity

as generally applied, undeniably frustrate constitutionally-secured activity in a gun range.

Considering the certainty of success on the merits, Plaintiffs are entitled to preliminary injunctive relief. Plaintiffs are suffering, and will continue to suffer, irreparable harm in the absence of injunctive relief, for which there is no adequate remedy at law. Granting Plaintiffs relief cannot injure defendant. And given the degree to which the range ban threatens public safety, the public interest – already favoring the exercise of fundamental rights – is clearly satisfied by immediately enjoining the city's unconstitutional practices.

## ARGUMENT

A plaintiff seeking a preliminary injunction must prove three threshold elements: "[f]irst, that absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims. Second, that traditional legal remedies would be inadequate. And third, that its claim has some likelihood of succeeding on the merits." *Girl Scouts of Manitou Council, Inc.* v. *Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citations omitted).

Upon satisfying these threshold requirements, the Court "must somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the 'public interest.'" *Id.* (citations omitted). In so doing, the court employs a sliding scale approach: "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Id.* (citations omitted).

Plaintiffs easily satisfy all three threshold requirements for obtaining preliminary injunctive relief, and the balance of interests weigh heavily in their favor.

8

I.      **PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF.**

Ezell, Brown, Hespen, and other members and supporters of SAF and ISRA, enjoy a fundamental right to keep and bear arms. *McDonald* v. *City of Chicago*, 130 S. Ct. 3020,  2010 U.S. Lexis 5523 at *64 (2010) (majority op.), at *113 (Thomas, J.). "[T]he inherent right of self-defense has been central to the Second Amendment right." *District of Columbia* v. *Heller*, 128 S. Ct. 2783, 2817 (2008).

However, if ranges are not immediately made available in Chicago, individuals including the plaintiffs will be frustrated in their ability to obtain the training required by the city to exercise Second Amendment rights. With expiration of the October 12 grandfathering period, many gun owners, including Plaintiff Brown, will be unable to register their guns. And every day, existing registrations are subject to expiration but for the obtaining of necessary range training and a CFP. Plaintiff Hespen faces the loss of twenty-four guns by October 8.

SAF and ISRA not only have members and supporters facing the imminent loss of Second Amendment rights for lack of access to ranges. Their organizational missions are themselves immediately jeopardized, as SAF and ISRA have organized an effort to bring a range to Chicago for training purposes that is stymied by the current range ban. Plaintiff Action Target, a range builder and supplier, suffers harm in being prevented from pursuing its business.

"Even a temporary deprivation of first amendment freedom of expression rights is generally sufficient to prove irreparable harm." *National People's Action* v. *Wilmette*, 914 F.2d 1008, 1013 (7th Cir. 1990) (citations omitted). Training people in the use of guns at a range, and receiving such training, are undeniably protected by the First Amendment's free speech

9

guarantee. And even the temporary deprivation of Second Amendment rights to train with firearm more obviously causes irreparable harm, be it the harm from lack of proficiency with firearms or, as in Chicago, the harm in the consequential legal disability on keeping arms at all.

Considering that the Second Amendment exists to secure the right of self-defense, the inability to access constitutionally-protected arms, or to maintain proficiency in the use of those arms, causes a profound loss of a sense of one's security – to say nothing of the irreparable harm resulting from a successful criminal attack, or tragic accident that could have been averted with access to a firearm and proficiency in its use. Indeed, sustaining the constitutionality of Chicago's training requirement would inevitably require the recognition of the value of training: "Reasonable firearm proficiency testing would . . . promote public safety . . ." *Parker* v. *District of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007), *aff'd sub nom Heller*, *supra*, 128 S. Ct. 2783.

The irreparable harm flowing from any delays in obtaining relief is palpable.

## II.     TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE THE RANGE BAN'S HARM.

There is no way to quantify, in terms of money damages, the inability to engage in protected Second Amendment activity such as defensive shooting, or the inability to engage in protected First Amendment activity of giving and receiving valuable instruction. The infringement of constitutional rights is frequently considered to be beyond quantification with money damages. *See, e.g. Christian Legal Soc'y* v. *Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

No legal remedies will be available to gun owners whose registration certificates cannot be renewed for lack of range training, nor will any legal remedies be available to gun owners who miss the city's October 12 grandfathering deadline for the same reason. And quite obviously, no

legal remedies will suffice to compensate those killed or injured for lack of firearms proficiency,

or lack of lawfully-possessed defensive arms, owing to the city's range ban.

## III.   PLAINTIFFS WILL PREVAIL ON THE MERITS, AS CHICAGO'S RANGE BAN VIOLATES THEIR SECOND AND FIRST AMENDMENT RIGHTS.

### A.   Using and Operating Gun Ranges Lie at the Core of the Second Amendment.

"[T]he Court has acknowledged that certain unarticulated rights are implicit in

enumerated guarantees . . . fundamental rights, even though not expressly guaranteed, have been

recognized by the Court as indispensable to the enjoyment of rights explicitly defined."

*Richmond Newspapers* v. *Virginia*, 448 U.S. 555, 579-80 (1980). Unsurprisingly, the Supreme

Court has noted that the rights to use and operate a gun range are inherent in the Second

Amendment: "The Constitution secures the right of the people to keep and bear arms. No doubt,

a citizen who keeps a gun or pistol under judicious precautions, *practices in safe places the use*

*of it*, *and in due time teaches his sons to do the same*, exercises his individual right." *Heller*, 128

S. Ct. at 2812 (citation omitted) (emphasis added).

"[T]o bear arms implies something more than the mere keeping; it implies the learning to

handle and use them in a way that makes those who keep them ready for their efficient use; in

other words, it implies the right to meet for voluntary discipline in arms . . ." *Heller*, 128 S. Ct. at

2811-12 (citation omitted). Indeed, to the extent the availability of "[a] well-regulated militia"

supplies a reason for the right's codification, U.S. Const. amend. II, "the adjective 'well-

regulated' implies nothing more than the imposition of proper discipline and training." *Heller*,

128 S. Ct. at 2800. "The militia consisted of the people bearing their own arms when called to

active service, arms which they kept and hence knew how to use." *United States* v. *Emerson*, 270

11

F.3d 203, 235 (5th Cir. 2001). "An effective militia requires not only that people have guns, but that they be able to shoot them with more danger to their adversaries than themselves." *Silveira* v. *Lockyer*, 328 F.3d 567, 587 (9th Cir. 2003) (Kleinfeld, J., dissenting).

Plaintiffs do not claim that gun ranges are beyond regulation. Churches and bookstores, too, must be built to code, and comply with constitutionally-adequate zoning requirements. But a blanket prohibition on gun ranges in a city the size of Chicago is unheard-of. Gun ranges exist in virtually every major American city, Hart Decl., ¶ 3, and indeed at least eleven gun ranges operate today in the City of Chicago without any apparent controversy. Pearson Decl., ¶ 6. Gun ranges have been open to the public in Chicago before. Brown Decl., ¶ 6.  Indeed, Chicago was built on, and remains famous for, by a bevy of heavy industrial operations – slaughter-houses, rail yards, factories, steel mills, and a major hub airport – all posing vastly greater environmental impact than a simple gun range, which can be safely located anywhere from Plaintiffs' truck trailer to the seventeenth floor of the Federal Reserve Bank building.

Owing to the unusual nature of this complete ban on ranges and traditional range activity, the laws will most likely fail. *Cf. McDonald*, 2010 U.S. Lexis at *77 (rarity of Chicago handgun ban indicates its unconstitutional nature) (plurality op.); *cf.* 36 U.S.C. §§ 40701, et seq. (Civilian Marksmanship Program); *see also Lawrence* v. *Texas*, 539 U.S. 558, 573 (2003) (only four states prohibit intimate practice); *cf. Kennedy* v. *Louisiana*, 128 S. Ct. 2641, 2653 (2008) (punishment known in only six states violates Eighth Amendment). Indeed, in *Heller*, neither the D.C. Circuit nor the Supreme Court bothered to engage in any balancing test or other extended analysis before striking down Washington, D.C.'s ban on the possession of functional firearms for self-defense, as that law literally contradicted a "core" aspect of Second Amendment rights. *Heller*, 128 S. Ct.

at 2818. A complete ban on gun ranges and traditional gun range activity will meet the same fate.

**B.** **The Use and Operation of Gun Ranges Constitutes Protected Speech.**

1. *The First Amendment Guarantees A Right to Provide and Receive Instruction in the Use of Firearms at a Gun Range.*

The Supreme Court has long recognized that teaching and learning are protected by the First Amendment. *See*, *e.g. Keyishian* v. *Board of Regents*, 385 U.S. 589, 603 (1967) (First Amendment "does not tolerate laws that cast a pall of orthodoxy over the classroom"); *Sweezy* v. *New Hampshire*, 354 U.S. 234, 249-50 (1957) (plurality) ("right to lecture . . .could not be seriously debated," and noting that "teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding").

One week before the Supreme Court decided *McDonald*, the high court also decided *Holder* v. *Humanitarian Law Project*, 130 S. Ct. 2705, 2010 U.S. Lexis 5252 (2010). *Holder* considered the question of whether Congress could ban, as material support for terrorist organizations, "plaintiffs' speech to [terrorist] groups [that] imparts a 'specific skill' or communicates advice derived from 'specialized knowledge.'" *Holder*, at *47. Rejecting the government's arguments that such training and educational efforts were merely conduct with some communicative aspects, *Holder*, at *48-*49, the Court nonetheless upheld, under strict scrutiny, a prohibition on the provision of material support "in the form of speech" to designated terrorist organizations, *Holder*, at *49: "direct training" in "specific skills" of advocacy, *Holder*, at *63, and "teach[ing]" how to "present claims for relief." *Holder*, at *64.

Of course, teaching and learning, the conveyance and receipt of knowledge, are not limited to advocacy or expression. "Even dry information, devoid of advocacy, political

relevance, or artistic expression, has been accorded First Amendment protection." *Universal City Studios* v. *Corley*, 273 F.3d 429, 446 (2d Cir. 2001) (citations omitted). And protected teaching includes demonstrative and experiential conduct, not strictly oral conversation. For example, "instructing children on the topics of geography and fiber arts is a form of speech protected under the First Amendment." *Goulart* v. *Meadows*, 345 F.3d 239, 248 (4th Cir. 2003).

As is the provision of hands-on gun training. *Edwards* v. *City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999). In *Edwards*, a police officer asserted a valid First Amendment claim challenging his punishment for teaching a handgun safety class, completion of which was required for individuals wishing to obtain state permits to carry guns. "[T]he form of the [officer's] speech, presumably verbal as well as some written instruction accompanied by physical demonstrations . . . was entitled to protection." *Edwards*, 178 F.3d at 247. Indeed, because the speech concerned "a categorically public issue, the proper method of safely carrying a concealed handgun, knowledge of which is a prerequisite to obtaining a state permit . . . it occupies the highest rung of the hierarchy of First Amendment values." *Id.* (citation omitted).

## 2.   *The Banning of Gun Ranges Impermissibly Burdens Protected Speech.*

Even if the gun training and range use were merely conduct, the range ban's impact on gun education would nonetheless constitute a First Amendment violation. Because the range ban and associated laws undeniably burden expression, the laws can only survive if they are

> within the constitutional power of the Government; if [they] further[] an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*United States* v. *O'Brien*, 391 U.S. 367, 377 (1968). The laws fail all four factors. It is not within

14

the city's constitutional power to ban all gun ranges— doing so violates the Second Amendment. The city has no interest, let alone an important or substantial one, in banning all gun ranges. It maintains its own ranges, has historically had ranges open to the public, and initiated the ban only as a form of resisting *McDonald*. Indeed, the governmental interest here is precisely the suppression of gun education. And even if the city's actions were merely a form of regulating gun range activity in furtherance of some legitimate interest, a total ban is plainly overbroad.

## IV.    THE BALANCE OF INTERESTS FAVOR IMMEDIATE INJUNCTIVE RELIEF.

The Plaintiffs are certain to prevail on the merits. Absent relief they will suffer irreparable injury in the loss of Second and First Amendment rights, if not actual physical harm; the Aldermen's disliking of guns is not a legitimate interest; and as the defendant's law itself concedes, the public interest strongly favors firearms proficiency and education, to say nothing of respecting fundamental rights. *Christian Legal Soc'y*, 453 F.3d at 859. The balance of interests could not more completely tilt in favor of immediate injunctive relief.

## CONCLUSION

The city cannot ban the gun ranges whose value it recognizes by mandating gun training. Plaintiffs respectfully request that the motion for preliminary injunctive relief be granted.

Dated: August 16, 2010                          Respectfully submitted,

Alan Gura (admitted pro hac vice)          David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                      Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405          4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                         Lisle, IL 60532
703.835.9085/Fax 703.997.7665             630.452.4547/Fax 630.596.4445

By:___/s/ Alan Gura/_____     By:_____/s/ David G. Sigale/_____
       Alan Gura                                   David G. Sigale
                                                   Attorneys for Plaintiffs

15



P.O. Box 121 · Sudbury, MA 01776 · 978-927-0911

## SERVICE AGREEMENT

1. **PARTIES:** This Agreement is between Blue Line Corporation, a Massachusetts corporation, and the undersigned Client.

2. **DEFINITIONS:**
   A. OWNER shall mean Blue Line Corporation, its officers, directors, stockholders, principals, agents, employees, contractors, successors and assigns.
   B. CLIENT shall mean the Town, Business, Agency, Company, University, College, Police Department or Other Entity and its officers and employees, which use the 48-foot trailer owned and operated by Owner as a mobile firearms training range (hereafter the "TRAILER").
   C. AUTHORIZED AGENT shall mean the person(s) signing this Agreement on behalf of the CLIENT who represents and warrants that he/she has full legal authority to sign this Agreement on behalf of said CLIENT.

3. **TERM OF USE:** The rights provided for in this Agreement shall be for the periodic use of the TRAILER for a period of one (1) year from the date of this Agreement as necessary for firearms training, qualifications or general use by the CLIENT as scheduled in advance by written agreement of the parties.

4. **USAGE FEE:** The CLIENT shall pay OWNER a fee as set forth in the quote or proposal for services rendered within the terms noted on the invoice. Quotes or proposals may have to be adjusted throughout the year of this contract when the needs of the CLIENT change from the previous rental, or if OWNER related costs rise throughout the year of this contract, such as fuel costs, labor or supplies.

5. **OWNER'S OBLIGATIONS:**
   A. The OWNER shall maintain the TRAILER, and all systems and facilities provided therein, in such condition as shall provide for safe use for the purpose for which it is intended, that is, as a firearms training and qualification range.
   B. The OWNER shall deliver the TRAILER to the property, or other designated area, of the CLIENT as scheduled and shall temporarily locate it in a safe manner in a position designated by the AUTHORIZED AGENT. The OWNER and/or the OWNER'S designee shall be responsible for opening and securely closing and locking the TRAILER on each day that it is to be available to the CLIENT for use under this Agreement, and shall provide employees, servants or agents on the site of the TRAILER at all times when it is "in use" by the CLIENT.
   C. NO firearms of any kind shall be left on the site or in the TRAILER when the TRAILER is not in active use by the CLIENT.
   D. The OWNER agrees to carry adequate insurance to cover its employees and other personnel assigned by it and for whom it is responsible who are on the site of, or inside the TRAILER, during its use. Said insurance is to be in effect at the time the TRAILER is located on the property of the CLIENT or in use by CLIENT as a firing range.
   E. To the extent permitted by law, the OWNER shall indemnify, defend, and hold the CLIENT harmless from and against any and all losses, property damage, personal injury, claims, demands, liabilities, actions, causes of actions, costs and expenses, including attorney's fees, arising out of the OWNER'S breach of this Agreement or the intentional misconduct of the OWNER, or its employees, servants or agents.

6.  CLIENT'S OBLIGATIONS:
    A.  The CLIENT shall assign certified firearms instructors or contract out with certified firearms instructors to supervise the instruction and qualification of the members of the CLIENT who uses the firearms training range for training purposes located within the TRAILER.
    B.  The CLIENT agrees to carry adequate insurance to cover its employees and other personnel assigned by it and for whom it is responsible when in use of the TRAILER as a firearms training range, or firing range
    C.  NO firearms of any kind shall be left on the site or in the TRAILER when the TRAILER is not in active use by the CLIENT.
    D.  To the fullest extent permitted by law, the CLIENT shall indemnify, defend, and hold the OWNER harmless from and against any and all losses, property damage, personal injury, claims, demands, liabilities, actions, causes of actions, costs and expenses, including attorney's fees, arising out of the CLIENT'S breach of this Agreement or the negligence or misconduct of the CLIENT, or its employees, servants or agents.

7.  TERMINATION:  Either party hereto may terminate this Agreement at any time for any reason by providing the non-terminating party with written notice stating the termination date, which shall not be sooner than ten days from the issuance of the said notice. Said notice shall be delivered in hand or sent via certified mail, return receipt requested, to the address set forth at the end of this Agreement. Upon receipt of the notice, the non-terminating party shall cease to incur additional expenses in connection with this Agreement. Upon such termination, the OWNER shall remove the TRAILER from the property of the CLIENT within seventy-two (72) hours, and shall be entitled to compensation for any use of the TRAILER or expenses incurred in the management, marketing, sales, delivery and removal of the TRAILER to the CLIENT prior to the termination date.

8.  GOVERNING LAW:  This Agreement shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Massachusetts or any state where the TRAILER is in use.

9.  ENTIRE AGREEMENT:  This Agreement, including all quotes and proposals, constitutes the entire agreement between the parties with respect to the matter described. This Agreement supersedes all prior agreements, negotiations and representations, either written or oral, and shall not be modified or amended except by a written document executed by the parties hereto.

10. ASSIGNMENT:  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on this 26 day of July, 2010.

OWNER:                                          CLIENT:

**BLUE LINE CORPORATION**                       **Second Amendment Foundation**


By: _____                    By: _____
Name:  Jerry Tilbor                             Name: Julianne Versnel
Title:    President                             Title: Director of Operations

P.O. Box 121 Sudbury, MA  01776                 12500 NE 10th Place, Bellevue, WA  98005

_____                _____
(Print Address for Notice Purposes)             (Print Address for Notice Purposes)

INDUSTRIAL BUILDING LEASE
(For Use in Illinois)

NO. 1201
FEBRUARY, 1986

GEORGE E. COLE
LEGAL FORMS

CAUTION: Consult a lawyer before using or acting under this form. Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.

# INDUSTRIAL BUILDING LEASE

| DATE OF LEASE | TERM OF LEASE | | MONTHLY RENT |
|---|---|---|---|
| | BEGINNING | ENDING | |
| August 12, 2010 | September 15, 2010 | MONTH TO MONTH | $2,500 |

Location of Premises
3333 W. 36ᵗʰ St., Chicago IL  60632

Purpose
Trailer Storage  FOR ONE TRAILER

| | LESSEE | | LESSOR |
|---|---|---|---|
| NAME | Second Amendment Foundation | NAME AND | ·Accurate Perforating Corporation |
| | 12500 NE 10ᵗʰ Pl | BUSINESS | ·3636 S. Kedzie Ave. |
| ADDRESS | Bellevue, WA  98005 | ADDRESS | ·Chicago, IL  60632 |

In consideration of the mutual covenants and agreements herein stated, Lessor hereby leases to Lessee and Lessee hereby leases from Lessor solely for the above purpose the premises designated above (the "Premises"), together with the appurtenances thereto, for the above Term.

**RENT**

1.  Lessee shall pay Lessor or Lessor's agent as rent for the Premises the sum stated above, monthly in advance, until termination of this lease, at Lessor's address stated above or such other address as Lessor may designate in writing.

**CONDITION AND UPKEEP OF PREMISES**

2.  Lessee has examined and knows the condition of the Premises and has received the same in good order and repair, and acknowledges that no representations as to the condition and repair thereof have been made by Lessor, or his agent, prior to or at the execution of this lease that are not herein expressed; Lessee will keep the Premises including all appurtenances, in good repair, replacing all broken glass with glass of the same size and quality as that broken, and will replace all damaged plumbing fixtures with others of equal quality and will keep the Premises, including adjoining alleys, in a clean and healthful condition according to the applicable municipal ordinances and the direction of the proper public officers during the term of this lease at Lessee's expense, and will without injury to the roof, remove all snow and ice from the same when necessary, and will remove the snow and ice from the sidewalk abutting the Premises; and upon the termination of this lease in any way, will yield up the Premises to Lessor, in good condition and repair, loss by fire and ordinary wear excepted, and will deliver the keys therefor at the place of payment of said rent.

**LESSEE NOT TO MISUSE; SUBLET; ASSIGNMENT**

3.  Lessee will not allow the Premises to be used for any purpose that will increase the rate of insurance thereon, nor for any purpose other than that hereinbefore specified, and will not load floors with machinery or goods beyond the floor load rating prescribed by applicable municipal ordinances, and will not allow the Premises to be occupied in whole, or in part, by any other person, and will not sublet the same or any part thereof, nor assign this lease without in each case the written consent of the Lessor first had, and Lessee will not permit the Premises to be used for any unlawful purpose, or for any purpose that will injure the reputation of the building or increase the fire hazard of the building, or disturb the tenants or the neighborhood, and will not permit the same to remain vacant or unoccupied for more than ten consecutive days; and will not allow any signs, cards or placards to be posted, or placed thereon, nor permit any alteration of or addition to any part of the Premises, except by written consent of Lessor; all alterations and additions to the Premises shall remain for the benefit of Lessor unless otherwise provided in the consent aforesaid.

**MECHANIC'S LIEN**

4.  Lessee will not permit any mechanic's lien or liens to be placed upon the Premises or any building or improvement thereon during the term hereof, and in case of the filing of such lien Lessee will promptly pay same. If default in payment thereof shall continue for thirty (30) days after written notice thereof from Lessor to the Lessee, the Lessor shall have the right and privilege at Lessor's option of paying the same or any portion thereof without inquiry as to the validity thereof, and any amounts so paid, including expenses and interest, shall be so much additional indebtedness hereunder due from Lessee to Lessor and shall be repaid to Lessor immediately on rendition of bill therefor.

**INDEMNITY FOR ACCIDENTS**

5. Lessee covenants and agrees that he will protect and save and keep the Lessor forever harmless and indemnified against and from any penalty or damages or charges imposed for any violation of any laws or ordinances whether occasioned by the neglect of Lessee or those holding under Lessee, and that Lessee will at all times protect, indemnify and save and keep harmless the Lessor against and from any and all loss, cost, damage or expense, arising out of or from any accident or other occurrence on or about the Premises, causing injury to any person or property whomsoever or whatsoever and will protect, indemnify and save and keep harmless the Lessor against and from any and all claims and against and from any and all loss, cost, damage or expense arising out of any failure of Lessee in any respect to comply with and perform all the requirements and provisions hereof.

**NON LIABILITY OF LESSOR**

6. Except as provided by Illinois statute, Lessor shall not be liable for any damage occasioned by failure to keep the Premises in repair, nor for any damage done or occasioned by or from plumbing, gas, water, sprinkler, steam or other pipes or sewerage or the bursting, leaking or running of any pipes, tank or plumbing fixtures, in above, upon or about Premises or any building or improvement thereon nor for any damage occasioned by water, snow or ice being upon or coming through the roof, skylights, trap door or otherwise, nor for any damage arising from acts of neglect of any owners or occupants of adjacent or contiguous property.

**WATER GAS AND ELECTRIC CHARGES**

7. Lessee will pay, in addition to the rent above specified, all water rents, gas and electric light and power bills taxed, levied or charged on the Premises, for and during the time for which this lease is granted, and in case said water rents and bills for gas, electric light and power shall not be paid when due, Lessor shall have the right to pay the same, which amounts so paid, together with any sums paid by Lessor to keep the Premises in a clean and healthy condition, as above specified, are declared to be so much additional rent and payable with the installment of rent next due thereafter.

**KEEP PREMISES IN REPAIR**

8. Lessor shall not be obliged to incur any expense for repairing any improvements upon said demised premises or connected therewith, and the Lessee at his own expense will keep all improvements in good repair (injury by fire, or other causes beyond Lessee's control excepted) as well as in a good tenantable and wholesome condition, and will comply with all local or general regulations, laws and ordinances applicable , thereto as well as lawful requirements of all competent authorities in that behalf, Lessee will, as far as possible, keep said improvements from deterioration due to ordinary wear and from falling temporarily out of repair. If Lessee does not make repairs as required hereunder promptly and adequately, Lessor may but need not make such repairs and pay the costs thereof, and such costs shall be so much additional rent immediately due from and payable by Lessee to Lessor.

**ACCESS TO PREMISES**

9. Lessee will allow Lessor free access to the Premises for the purpose of examining or exhibiting the same, or to make any needful repairs, or alterations thereof which Lessor may see fit to make and will allow to have placed upon the Premises at all times notice of "For Sale" and "To Rent", and will not interfere with the same.

**ABANDONMENT AND RELETTING**

10. If Lessee shall abandon or vacate the Premises, or if Lessee's right to occupy the Premises be terminated by Lessor by reason of Lessee's breach of any of the covenants herein, the same may be re-let by Lessor for such rent and upon such terms as Lessor may deem fit, subject to Illinois statute; and if a sufficient sum shall not thus be realized monthly, after paying the expenses of such re-letting and collecting to satisfy the rent hereby reserved, Lessee agrees to satisfy and pay all deficiency monthly during the remaining period of this lease.

**HOLDING OVER**

11. Lessee will, at the termination of this lease by lapse of time or otherwise, yield up immediate possession to Lessor, and failing so to do, will pay as liquidated damages, for the whole time such possession is withheld, the sum of (150) ONE HUNDRED FIFTY Dollars ($ 150.00 ) per day; but the provisions of this clause shall not be held as a waiver by Lessor of any right of re-entry as hereinafter set forth; nor shall the receipt of said rent or any part thereof, or any other act in apparent affirmance of tenancy, operate as a waiver of the right to forfeit this lease and the term hereby granted for the period still unexpired, for a breach of any of the covenants herein.

**EXTRA FIRE HAZARD**

12. There shall not be allowed, kept, or used on the Premises any inflammable or explosive liquids or materials save such as may be necessary for use in the business of the Lessee, and in such case, any such substances shall be delivered and stored in amount, and used, in accordance with the rules of the applicable Board of Underwriters and statutes and ordinances now or hereafter in force.

**DEFAULT BY LESSEE**

13. If default to be made in the payment of the above rent, or any part thereof, or in any of the covenances herein contained to be kept by the Lessee, Lessor may at any time thereafter at his election declare said term ended and reenter the Premises or any part thereof, with or (to the extent permitted by law) without notice or process of law, and remove Lessee of any persons occupying the same, without prejudice to any remedies which might otherwise be used for arrears of rent, and Lessor shall have at all times the right to distrain from rent due, and shall a valid and first lien upon all personal property which Lessee now owns, or may hereafter acquire or have an interest in, which is by law subject to such distraint, as security for payment of the rent herein reserved.

**NO RENT DEDUCTION OR SET OFF**

14. Lessee's covenant to pay rent is and shall be independent of each and every other covenant of this lease. Lessee agrees that any claim by Lessee against Lessor shall not be deducted from rent not set off against any claims for rent in any action. .

**RENT AFTER NOTICE OF SUIT**

15. It is further agreed, by the parties hereto, that after the service of notice, or the commencement of a suit or after final judgment for possession of the Premises, Lessor may receive and collect any rent due, and that payment of said rent shall not waive or affect said notice, said suit, or said judgment.

**PAYMENT OF COSTS**

16.  Lessee will pay and discharge all reasonable costs, attorney's fees and expenses that shall be made and incurred by Lessor in enforcing the covenants and agreements of this lease.

**RIGHTS CUMULATIVE**

17.  The rights and remedies of Lessor under this lease are cumulative.  The exercise or use of any one or more thereof shall not bar Lessor from exercise or use of any other right or remedy provided herein or otherwise provided by law, nor shall exercise not use of any right or remedy by Lessor waive any other right or remedy.

**FIRE AND CASUALTY**

18.  In case the Premises shall be rendered untenantable during the term of this lease by fire or other casualty, Lessor at his option may terminate the lease or repair the Premises within 60 days thereafter.  If Lessor elects to repair, this lease shall remain in effect provided such repairs are completed within said time.  If Lessor shall not have repaired the Premises within said time, then at the end of such time the term hereby created shall terminate.  If this lease is terminated by reason of fire or casualty as herein specified, rent shall be apportioned and paid to the day of such fire or other casualty.

**SUBORDINATION**

19.  This lease is subordinate to all mortgages which may now or hereafter affect the Premises.

**PLURALS; SUCCESSORS**

20.  The words "Lessor" and "Lessee" wherever herein occurring and used shall be construed to mean "Lessors" and "Lessees" in case more than one person constitutes either party to this lease; and all the covenants and agreements contained shall be binding upon, and inure to, their respective successors, heirs, executors, administrators and assigns and may be exercised by his or their attorney or agent.

**SEVERABILITY**

21.  Wherever possible each provision of this lease shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this lease shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this lease.

If this instrument is executed by a corporation, such execution has been authorized by a duly adopted resolution of the Board of Directors of such corporation.

This lease consists of ___3___ pages numbered 1 to ___3___ , including a rider consisting of _none_ pages, identified by Lessor and Lessee.

IN WITNESS WHEREOF, the parties hereto have executed this instrument as of the Date of Lease stated above.

LESSEE:                                                        LESSOR:

_____ (SEAL)        _____ (SEAL)

_____ (SEAL)        _____ (SEAL)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C- |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF |
| | ) | JULIANNE VERSNEL |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## DECLARATION OF JULIANNE VERSNEL

I, Julianne Versnel, am competent to state, and declare the following based on my personal knowledge:

1.     I am the Director of Operations of the Second Amendment Foundation ("SAF").

2.     SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including many in Chicago. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.

3.     SAF members and supporters in Chicago are among the individuals who need immediate range training to maintain their ability to keep firearms for self-defense under Chicago's new firearms ordinance.

4.      Not every gun is suitable for every person. It is quite obviously better for potential gun owners, and in the interest of public safety, that prospective gun buyers experience a variety of guns, or at least, those guns they are considering, *before* actually making their purchases. And many people are introduced to shooting and gun ownership by visiting a range prior to deciding to purchase a gun.

5.      To fulfill SAF's organizational objectives, and serve our members and supporters, SAF has placed a deposit guaranteeing the availability, for immediate delivery, of a mobile range facility, fully compliant with all federal environmental and safety standards, which contains three rifle positions within a forty-eight foot truck trailer. A copy of this contract is attached hereto as Exhibit A. SAF has also secured a commercial space for the location of this range within Chicago. A copy of this lease agreement is attached hereto as Exhibit B.  SAF plans to secure additional parking locations  so that convenient range training may be provided to gun owners throughout the length and breadth of the City of Chicago.

6.      The mobile range facility would be operated by SAF in conjunction with ISRA's state-certified firearms trainers.

7.      But for the criminal enactments challenged in this complaint, SAF and ISRA would begin operating the mobile range within the City of Chicago by the end of September, 2010, but refrain from doing so for fear of arrest, prosecution, fine and incarceration of our principals and employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 15 day of August, 2010

_____
Julianne Versnel

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C- |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF |
| | ) | RICHARD PEARSON |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DECLARATION OF RICHARD PEARSON**

I, Richard Pearson, am competent to state, and declare the following based on my
personal knowledge:

1.      I am the Executive Director of the Illinois State Rifle Association ("ISRA").

2.      ISRA is a non-profit membership organization incorporated under the laws of
Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 17,000
members and supporters in Illinois, including many in Chicago. The purposes of ISRA include
securing the Constitutional right to privately own and possess firearms within Illinois, through
education, outreach, and litigation. .

3.      ISRA members and supporters in Chicago are among the individuals who need
immediate range training to maintain their ability to keep firearms for self-defense under
Chicago's new firearms ordinance.

4.     Not every gun is suitable for every person. It is quite obviously better for potential gun owners, and in the interest of public safety, that prospective gun buyers experience a variety of guns, or at least, those guns they are considering, *before* actually making their purchases. And many people are introduced to shooting and gun ownership by visiting a range prior to deciding to purchase a gun.

5.     ISRA has long operated a gun range near Kankakee, Illinois, for the benefit of its members, and to promote marksmanship and the shooting sports. Among ISRA's members and officers are various firearms trainers certified by the State of Illinois who are qualified to provide the training mandated by the City of Chicago as a prerequisite to obtaining a Chicago Firearms Permit.

6.     There currently exist at least eleven gun ranges in the city of Chicago, but none are open to the public. These include five ranges are operated by the Chicago Police Department; four gun ranges operated by the federal government (Postal Inspectors, Air Marshals, Customs and Border Protection, and the Federal Reserve Bank); and two gun ranges operated by private security companies for their own purposes.

7.     There exists a severe shortage of range-time within a hundred miles of the City of Chicago, owing to the incredible demand on training facilities created by (1) the need of existing gun registrants to obtain officially-recognized training to continue their firearms ownership, (2) the need for people to obtain officially-recognized training in time for them to comply with the grandfathering provisions for previously acquired guns, and (3) an intense interest in firearms ownership as a result of the *McDonald* case, and the city's acquiescence in recognizing legal handgun ownership. Handguns, as the Supreme Court recognized, are overwhelmingly the arms of choice in our country for people wishing to have a means of self-defense, and handgun

ownership has just become legally possible in Chicago for the first time in decades. Without the construction of additional range facilities open to the public, including range facilities in Chicago, people who would register their firearms will not be able to do so.

8.     To fulfill ISRA's organizational objectives, and serve our members and supporters, ISRA will supply state certified firearms trainers to operate the mobile gun range being brought to the City of Chicago by the Second Amendment Foundation.

9.     But for the criminal enactments challenged in this complaint, SAF and ISRA would begin operating the mobile range within the City of Chicago by the end of September, 2010, but refrain from doing so for fear of arrest, prosecution, fine and incarceration of our principals and employees. For the same reason, ISRA refrains from opening a more permanent range facility within the City of Chicago. But for the ban on the operation of a gun range in the City of Chicago, ISRA would bring its many years of range operating experience to the city to continue fulfilling its essential mission.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the / 5th day of August, 2010

Richard Pearson

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C- |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF WILLIAM HESPEN |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DECLARATION OF WILLIAM HESPEN

I, William Hespen, am competent to state, and declare the following based on my personal knowledge:

1.    I am retired from a career as a Detective with the Chicago Police Department.

2.    I am currently the registered owner of various guns, including handguns, shotguns and rifles, which I registered under the previous Chicago registration ordinance. I enjoy shooting and collecting guns, and I also need guns for self-defense at my Chicago home.

3.    A large portion of my collection, comprising twenty-four firearms, will have its registration expire on October 8, 2010.  I would re-register these guns under the new ordinance, but cannot do so until I obtain my Chicago Firearms Permit. I understand that I must undergo one hour of formal range training to obtain that permit and register my guns.

4.    I understand that the Second Amendment Foundation and the Illinois State Rifle Association are planning to bring a mobile range to Chicago to offer the required city training for

people in my position. I would definitely utilize this facility to obtain the necessary range training in order to get my Chicago Firearms Permit.

5.      I am a member of the ISRA range near Kanakee, located 56 miles from my home. Driving a round-trip of 112 miles to shoot imposes a hardship on me and reduces my ability to maintain my marksmanship. I would use a range within the City of Chicago, were a range available.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the ⎯7 day of August, 2010

William Hespen

.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C- |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF JOSEPH I. BROWN |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DECLARATION OF JOSEPH I. BROWN

I, Joseph I. Brown, am competent to state, and declare the following based on my
personal knowledge:

1.      I am an honorably-discharged U.S. Army veteran. I served in the Pacific and
European theaters during the Second World War, and was among the liberators of the infamous
Dachau concentration camp.

2.      I am currently the Chairman of the Marksmanship Committee for the Department
of Illinois, American Legion. I am also the Secretary and Treasurer of the Cook County Rifle
League, and instruct a winter shooting league for junior shooters (boys and girls ages 12-20) that
meets at the six-point indoor gun range located at the Morton Grove, Illinois American Legion
Post 134.

3.      I would like to register a gun I currently keep outside the City of Chicago for
possession inside my Chicago home, but cannot do so until I obtain my Chicago Firearms Permit.

I understand that I must undergo one hour of formal range training to obtain that permit and register my gun.

4.     I understand that the Second Amendment Foundation and the Illinois State Rifle Association are planning to bring a mobile range to Chicago to offer the required city training for people in my position. I would definitely utilize this facility to obtain the necessary range training in order to get my Chicago Firearms Permit.

5.     I would also engage in recreational shooting within the City of Chicago, and promote and provide instruction in the shooting sports, and marksmanship, to my Chicago neighbors at a local range, if one were available.

6.     Historically, Chicago has had various ranges open to the public. I have used the following gun ranges located in the City of Chicago: Small Bore Riflemen of Chicago, Clybourn and Fullerton Avenue; CECO, 22nd and Wabash Avenue, 2nd Floor; Roseland Gun Club, Roseland; Leadslingers Rifle Club, Oliphant & Northwest Highway; Chicago Rifle Club, Austin Town Hall, Austin and Lake Street; Lane Technical High School, Addison & Western Avenue; Gabby Hartnett's Range, Lincoln and Pulaski Road.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the _12_ day of August, 2010

Joseph Brown

Joseph I. Brown

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

RHONDA EZELL, et al.,      )    Case No. 10-C-
                           )
         Plaintiffs,    )    DECLARATION OF RHONDA EZELL
                           )
        v.            )
                           )
CITY OF CHICAGO,      )
                           )
        Defendant.    )
                           )
_____)

## DECLARATION OF RHONDA EZELL

I, Rhonda Ezell, am competent to state, and declare the following based on my personal knowledge:

1.    I have been the victim of three attempted burglaries at my Chicago home. I have applied for a Chicago Firearms Permit so that I may register my handgun. I need a handgun to defend myself in my home.

2.    To obtain the range training required by the City of Chicago as a condition of letting me have a Chicago Firearms Permit and keeping my gun, I traveled to a range in Dundee, Illinois, a significant distance from my home.

3.    Traveling to this gun range outside the city was a hardship. I suffer from interstitial lung disease, lupus, and end stage renal disease, for which I am currently awaiting a kidney transplant.

4.    I would like to continue recreational shooting, and I believe I need to keep practicing with my handgun in order to remain proficient in its use so that I may be better able to

defend myself in the event of a fourth burglary. I would welcome opportunities to learn how to maintain and improve my marksmanship. However, given the current state of my health, I find it difficult to travel outside the city to use a gun range. I would definitely utilize a gun range inside the city of Chicago were one accessible to me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 5th day of August, 2010

Rhonda Ezell

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C- |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF CHRIS HART |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**<u>DECLARATION OF CHRIS HART</u>**

I, Chris Hart, am competent to state, and declare the following based on my personal knowledge:

1.       I am the Midwest Range Consultant for Action Target, Inc.

2.       Action Target, Inc., is a Delaware corporation having its primary place of business in Utah. Action Target is a leading designer and builder of gun ranges, and renowned manufacturer and seller of gun range equipment and supplies. Action Target is engaged in the gun range business throughout the United States.

3.       Commercial gun ranges open to the public exist throughout the United States, and in virtually every major American city.

4.       As part of my duties, I coordinated Action Target's recent construction of a three-position rifle-rated gun range on the seventeenth floor of the Federal Reserve Bank of Chicago building, located at 230 South LaSalle Street, Chicago, Illinois, and a gun range for the United States Postal Inspectors at 743 South Canal Street, Chicago, Illinois. We have sent estimates for

retrofitting of gun ranges for U.S. Customs and Border Protection, located at 610 South Canal Street, Chicago, Illinois, and for the Federal Air Marshals, next to O'Hare Airport, located at 899 Upper Express Drive, Chicago, Illinois. In 2003, Action Target constructed a range for Brinks, located at 4420 S. Tripp Avenue, Chicago, Illinois.

5.      Several Action Target customers have expressed an interest to me in having Action Target build a commercial indoor shooting range within the city limits of Chicago. Action Target would pursue and solicit this work, and build and supply commercial gun ranges within the city of Chicago, were it lawful to do so. I refrain from engaging in the commercial range business in Chicago for fear of arrest, prosecution, fine and imprisonment under the provisions challenged in this lawsuit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the ⟨14⟩ day of August, 2010

Chris Hart