# United States District Court
## Northern District of Illinois – CM/ECF LIVE, Ver 4.1.1 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:10–cv–05135
### *Internal Use Only*

Ezell et al., v. City of Chicago
Assigned to: Honorable Virginia M. Kendall
 Case in other court:  10–03525
Cause: 42:1983 Civil Rights Act

Date Filed: 08/16/2010
Jury Demand: None
Nature of Suit: 950 Constitutional – State Statute
Jurisdiction: Federal Question

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 08/16/2010 | 6 | 4 | MEMORANDUM by Action Target, Inc., Joseph I. Brown, Rhonda Ezell, William Hespen, Illinois State Rifle Association, Second Amendment Foundation, Inc. in support of motion for preliminary injunction, motion for permanent injunction,, 4 *(Corrected)* (Attachments: # 1 Declaration of Julianne Versnel, # 2 Exhibit (Exh. A to Versnel Declaration), # 3 Exhibit (Exh. B to Versnel Declaration), # 4 Declaration of Richard Pearson, # 5 Declaration of William Hespen, # 6 Declaration of Joseph I. Brown, # 7 Declaration of Rhonda Ezell, # 8 Declaration of Chris Hart)(Sigale, David) (Entered: 08/16/2010) |
| 08/17/2010 | 9 | 42 | MOTION for Leave to Appear Pro Hac Vice Filing fee $ 50, receipt number 0752–5123851. (Gura, Alan) (Entered: 08/17/2010) |
| 08/17/2010 | 10 | 44 | MINUTE entry before Honorable Virginia M. Kendall:Motion for leave to appear pro hac vice 9 is granted. Attorney Alan Gura for Action Target, Inc.,Alan Gura for Joseph I. Brown,Alan Gura for Rhonda Ezell,Alan Gura for William Hespen,Alan Gura for Illinois State Rifle Association,Alan Gura for Second Amendment Foundation, Inc. added. Mailed notice (smm) (Entered: 08/18/2010) |
| 08/22/2010 | 11 | 45 | MOTION by Plaintiffs Action Target, Inc., Joseph I. Brown, Rhonda Ezell, William Hespen, Illinois State Rifle Association, Second Amendment Foundation, Inc. for temporary restraining order (Attachments: # 1 Notice of Filing, # 2 Supplement Brief in Support, # 3 Text of Proposed Order, # 4 Declaration of Alan Gura)(Gura, Alan) (Entered: 08/22/2010) |
| 08/23/2010 | 12 | 64 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Action Target, Inc., Joseph I. Brown, Rhonda Ezell, William Hespen, Illinois State Rifle Association, Second Amendment Foundation, Inc. re complaint 1 (Sigale, David) (Entered: 08/23/2010) |
| 08/23/2010 | 13 | 65 | |

| | | | |
|---|---|---|---|
| | | | MINUTE entry before Honorable Virginia M. Kendall:Plaintiff's motion for preliminary and permanent injunction 4 are entered and briefed as follows: Responses due by 10/7/2010. Replies due by 10/14/2010. Oral argument set for 10/15/2010 @ 1:00 p.m. Defendant's oral motion for discovery on preliminary injunction is granted to 9/30/2010.Advised in open court notice (tsa, ) (Entered: 08/23/2010) |
| 08/23/2010 | 14 | 66 | MINUTE entry before Honorable Virginia M. Kendall:Plaintiff's motion for temporary restraining order 11 is set for hearing 8/23/2010 at 03:30 PM.Advised in open court notice (tsa, ) (Entered: 08/23/2010) |
| 08/23/2010 | 15 | 67 | RESPONSE by City Of Chicagoin Opposition to MOTION by Plaintiffs Action Target, Inc., Joseph I. Brown, Rhonda Ezell, William Hespen, Illinois State Rifle Association, Second Amendment Foundation, Inc. for temporary restraining order 11 (Worseck, Andrew) (Entered: 08/23/2010) |
| 08/23/2010 | 16 | 79 | MINUTE entry before Honorable Virginia M. Kendall:Temporary restraining order hearing held on 8/23/2010. Ruling set for 8/24/2010 at 09:30 AM.Advised in open court notice (tsa, ) (Entered: 08/23/2010) |
| 08/24/2010 | 17 | 80 | MINUTE entry before Honorable Virginia M. Kendall: Temporary restraining order hearing held on 8/24/2010. Plaintiff's motion for TRO 11 is denied without prejudice for the reasons stated on the record in open court. Minute entry 13 is stricken. Plaintiff's motion for preliminary and permanent injunction 4 is briefed as follows: Responses due by 9/20/2010 Replies due by 9/27/2010. Preliminary Injunction hearing set for 10/1/2010 at 01:00 PM. Defendant's oral motion to keep the previous schedule is denied. Any discovery shall be complete by 9/13/2010. Advised in open court notice (tsa, ) (Entered: 08/24/2010) |
| 09/02/2010 | 18 | 81 | MINUTE entry before Honorable Virginia M. Kendall:Initial status hearing set for 11/17/2010 @ 9:00 a.m. Joint Status Report due by 11/10/2010. (See Judge Kendall's web page found at www.ilnd.uscourts.gov for information about status reports). The parties are to report on the following: (1) Possibility of settlement in the case; (2) if no possibility of settlement exists, the nature and length of discovery necessary to get the case ready for trial. Plaintiff is to advise all other parties of the Court's action herein. Lead counsel is directed to appear at this status hearing.Mailed notice (tsa, ) (Entered: 09/02/2010) |
| 09/10/2010 | 21 | 82 | MOTION by Plaintiffs Action Target, Inc., Joseph I. Brown, Rhonda Ezell, William Hespen, Illinois State Rifle Association, Second Amendment Foundation, Inc. to quash *Unserved Subpoenas Duces tecum* (Sigale, David) (Entered: 09/10/2010) |

| 09/10/2010 | 22 | 84 | MEMORANDUM by Action Target, Inc., Joseph I. Brown, Rhonda Ezell, William Hespen, Illinois State Rifle Association, Second Amendment Foundation, Inc. in support of motion to quash 21 (Attachments: # 1 Declaration of Alan Gura)(Sigale, David) (Entered: 09/10/2010) |
| --- | --- | --- | --- |
| 09/10/2010 | 24 | 97 | MINUTE entry before Honorable Virginia M. Kendall:Emergency Motion by Plaintiffs Action Target, Inc., Joseph I. Brown, Rhonda Ezell, William Hespen, Illinois State Rifle Association, Second Amendment Foundation, Inc. to quash Unserved Subpoenas Duces tecum 21 is denied for the reasons stated on the record in open court.Advised in open court notice (tsa, ) (Entered: 09/13/2010) |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT OF |
| Plaintiffs, | ) | PLAINTIFFS' MOTION FOR |
| | ) | PRELIMINARY INJUNCTION |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

COME NOW the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action

Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and

through undersigned counsel, and submit their Memorandum of Points and Authorities in

Support of their Motion for Preliminary Injunction.

Dated: August 16, 2010                  Respectfully submitted,

Alan Gura (pro hac vice appl. pending)     David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                  Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405          4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                     Lisle, IL 60532
703.835.9085/Fax 703.997.7665            630.452.4547/Fax 630.596.4445


By: /s/ Alan Gura/                          By: /s/ David G. Sigale/


   Alan Gura                                David G. Sigale

                                         Attorneys for Plaintiffs

TABLE OF CONTENTS

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.    *Chicago's Training Requirement*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B.    *Chicago's Ban on the Operation of Gun Ranges*. . . . . . . . . . . . . . . . . . . . 2

    C.    *The Range Ban's Impact on Plaintiffs and the General Public*. . . . . . . . . . . . . . 4

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I.     PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE
      ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF. . . . . . . . . . . . . . . . . . . . . 9

II.    TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO
      RELIEVE THE RANGE BAN'S HARM. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.   PLAINTIFFS WILL PREVAIL ON THE MERITS, AS CHICAGO'S
      RANGE BAN VIOLATES THEIR SECOND AND
      FIRST AMENDMENT RIGHTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.    *Using and Operating Gun Ranges Lie at the Core of the Second Amendment*. . . 11

    B.    *The Use and Operation of Gun Ranges Constitutes Protected Speech*. . . . . . . . 13

         1.    *The First Amendment Guarantees A Right to Provide
             and Receive Instruction in the Use of Firearms at a
             Gun Range*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

         2.    *The Banning of Gun Ranges Impermissibly Burdens
             Protected Speech*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.   THE BALANCE OF INTERESTS FAVOR IMMEDIATE
      INJUNCTIVE RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TABLE OF AUTHORITIES

Cases

*Christian Legal Soc'y* v. *Walker*,
453 F.3d 853 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 15

*District of Columbia* v. *Heller*,
128 S. Ct. 2783 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 11, 12

*Edwards* v. *City of Goldsboro*,
178 F.3d 231 (4th Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Girl Scouts of Manitou Council, Inc.* v. *Girl Scouts of U.S., Inc.*,
549 F.3d 1079 (7th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Goulart* v. *Meadows*,
345 F.3d 239 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Holder* v. *Humanitarian Law Project*,
130 S. Ct. 2705 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kennedy* v. *Louisiana*,
128 S. Ct. 2641 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Keyishian* v. *Board of Regents*,
385 U.S. 589 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Lawrence* v. *Texas*,
539 U.S. 558 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McDonald* v. *City of Chicago*,
130 S. Ct. 3020 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 12, 13, 15

*National People's Action* v. *Wilmette*,
914 F.2d 1008 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Parker* v. *District of Columbia*,
478 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Richmond Newspapers* v. *Virginia*,
448 U.S. 555 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Silveira* v. *Lockyer*,
    328 F.3d 567 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sweezy* v. *New Hampshire*,
    354 U.S. 234 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States* v. *Emerson*,
    270 F.3d 203 (5th Cir. 2001).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States* v. *O'Brien*,
    391 U.S. 367 (1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Universal City Studios* v. *Corley*,
    273 F.3d 429 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14


Constitutional Provisions

U.S. Const. amend. II. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11


Statutes, Rules, and Ordinances

36 U.S.C. § 40701. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Chi. Mun. Code § 8-20-020 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-030. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-080. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-100(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-100(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-110(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3

Chi. Mun. Code § 8-20-110(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-120(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-140(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-140(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-140(d)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-170(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Chi. Mun. Code § 8-20-280. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Chi. Mun. Code § 8-20-300(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-20-300(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Chi. Mun. Code § 8-24-010. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Other Authorities

Dahleen Glanton & Duaa Eldeib, "Chicago Gun Law
    May Not Be Bulletproof," *Chicago Tribune*,
    July 11, 2010, *available at* http://articles.
    chicagotribune.com/2010-07-11/news/ct-met-
    chicago-gun-law- 20100708_1_ reasonable-
    restriction-gun-ordinance (last visited August 11, 2010). . . . . . . . . . . . . . . . . . . . . . . . . 4

iv

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

### PRELIMINARY STATEMENT

Chicago's newly-enacted ban on the operation of gun ranges flatly violates the rights to arms and speech, and poses an immediate threat to public safety. If not preliminarily enjoined, the range ban will irreparably harm not only the public at large, but also Plaintiffs and numerous others who must obtain range training within the next two months in order to keep firearms consistent with city law. Defendant has no valid interest in completely banning the gun ranges it concedes are necessary for public safety. Preliminary injunctive relief is warranted.

### STATEMENT OF FACTS

**A.**     ***Chicago's Training Requirement.***

Individuals exercising Second Amendment rights should know how to use their firearms safely and effectively. With proper care, guns provide security against violence, peace of mind, and recreational and social opportunities. But gun owners who are unfamiliar with or not proficient in the use of their guns might pose a danger to themselves and others, and may be unable to fully realize the defensive benefits of their guns in time of emergency.

Regardless of whether some level of training and proficiency among gun owners is merely a good idea, or should or could be mandated as a condition of owning firearms, the fact is that the City of Chicago demands at least one hour of range training as a condition for exercising the right to keep and bear arms. Chicago residents wishing to lawfully possess firearms in the city must first obtain a Chicago Firearms Permit ("CFP"). Chi. Mun. Code § 8-20-110(a). An application for a CFP "shall include . . . (7) an affidavit signed by a firearm instructor certified by

1

the State of Illinois to provide firearm training courses attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training . . ." Chi. Mun. Code § 8-20-120(a).

The requirement is not exclusive to new gun owners. Chicago firearm registrants whose registrations predate the CFP requirement's adoption must obtain a CFP, and the requisite training, in order to renew their firearm registration. Chi. Mun. Code § 8-20-110(d). If a registration is not timely renewed, the subject firearm may become unregisterable to the current owner and must be disposed of. Chi. Mun. Code §§ 8-20-140(d), 8-20-170(c).

Owing to, and as part of Chicago's recent changes to its firearms laws, the city enacted a ninety day grandfathering period wherein it will allow the registration of firearms previously acquired, but not registered, by city residents. Chi. Mun. Code § 8-20-140(d)(2). This ninety-day period will expire on October 12, 2010. Any individual wishing to take advantage of this opportunity must, within the ninety-day period, obtain a CFP and thus, must undergo at least one hour of range time. Accordingly, however beneficial firearms training ordinarily might be, Chicago's training requirements, and the penalties for non-compliance, accelerate the urgency of the need for publicly-accessible gun ranges.

**B.**    ***Chicago's Ban on the Operation of Gun Ranges.***

Chicago Mun. Code § 8-20-280, "Prohibition on shooting galleries and target ranges," provides, "Shooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited; provided that this provision shall not apply to any governmental agency . . ."

Additionally, a variety of Chicago code provisions, individually and as a whole, operate to bar the temporary lending and borrowing of firearms for purposes of training and

familiarization at a gun range. These include: Chi. Mun. Code §§ 8-20-020 (barring possession of handguns outside the home), 8-20-030 (barring possession of long guns outside one's home or fixed place of business), 8-20-080 (barring possession of ammunition without corresponding CFP and registration certificate), 8-20-100(a) (providing that generally, "no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm"), 8-20-100(d) (providing that "No person may loan, borrow, give or rent to or from another person, any firearm or ammunition except in accordance with this chapter"), 8-20-110(a) (mandating that each individual must have a valid CFP to possess a firearm), 8-20-140(a) (firearms may be possessed only with a registration certificate), and 8-24-010 (barring recreational shooting).

Every day in which an individual operates a gun range in violation of Chi. Mun. Code § 8-20-280; or transfers, loans, borrow, gives or rents firearms or ammunition in violation of Chi. Mun. Code § 8-20-100; or possesses an unregistered firearm in violation of Chi. Mun. Code § 8-20-140, is considered a separate and distinct offense. The penalty for a first offense in violation of these provisions is a fine ranging from $1,000 to $5,000 and/or incarceration ranging from 20 to 90 days. A subsequent offense carries a fine ranging from $5,000 to $10,000 and/or incarceration ranging from thirty days to six months. Chi. Mun. Code § 8-20-300(b).

Every day in which an individual possesses guns outside the home or fixed place of business in violation of Chi. Mun. Code §§ 8-20-020 or 8-20-030; possesses ammunition without a corresponding registration under Chi. Mun. Code § 8-20-080; or possesses a firearm without a CFP in violation of Chi. Mun. Code § 8-20-140, is considered a separate and distinct offense. The penalty for a first offense in violation of these provisions is a fine ranging from $1,000 to $5,000 and/or incarceration ranging from 20 to 90 days. Chi. Mun. Code § 8-20-

300(a). Discharging a firearm other than in self-defense or defense of another person, in violation of Chi. Mun. Code § 8-24-010, carries a penalty ranging from $500 to $1000.

Chicago's range ban, like much of Chicago's new firearms ordinance, was enacted out of hostility to the Second Amendment. Chicago's City Attorney explained the city-wide ban on gun stores was enacted, instead of mere zoning and other types of ordinary restrictions, because no Alderman wanted gun stores in his or her ward. Dahleen Glanton & Duaa Eldeib, "Chicago Gun Law May Not Be Bulletproof," *Chicago Tribune*, July 11, 2010, available at http://articles. chicagotribune.com/2010-07-11/news/ct-met-chicago-gun-law- 20100708_1_ reasonable- restriction-gun-ordinance (last visited August 11, 2010). The logic of banning all ranges, rather than regulating them as property uses, appears similar.

### C. The Range Ban's Impact on Plaintiffs and the General Public.

Every day that passes, existing firearms registrations predating Chicago's new firearms ordinance expire. Any individual facing registration expiration must obtain the necessary range training to timely seek a CFP. The failure to do so can lead to a loss of Second Amendment rights as the registered guns become unregisterable. Members and supporters of Plaintiffs SAF and ISRA need immediate range training for this reason. Versnel Decl., ¶ 3; Pearson Decl., ¶ 3.

Plaintiff William Hespen, a retired Chicago Police detective, faces this risk. Hespen has various registered guns, 24 of which will see their registrations expire on October 8, 2010. Hespen Decl., ¶¶ 2, 3. If he does not obtain range training by then, he will lose the ability to lawfully possess these firearms. Within one calendar year, he will lose the ability to lawfully possess his remaining firearms. Chicago's range ban interferes with Hespen's ability to obtain the required training. Hespen Decl., ¶¶ 4, 5.

4

Every day that passes, Chicagoans wishing to take advantage of the ninety-day grandfathering provision who cannot obtain the necessary range training draw one day closer to losing their right to keep otherwise registerable firearms in their homes. In a few short weeks, on October 12, 2010, their ability to do so will expire if they do not obtain range training. Members and supporters of Plaintiffs SAF and ISRA need immediate range training for this reason. Versnel Decl., ¶ 3; Pearson Decl., ¶ 3. Plaintiff Joseph I. Brown falls into this category. Brown would like to register a gun he currently owns but keeps outside the city. Brown Decl., ¶ 6. Chicago's range ban frustrates Brown's ability to obtain the required training. Brown Decl., ¶ 4.

Every day that passes without relief from Chicago's range ban, Chicago gun owners, including the members and supporters of Plaintiffs SAF and ISRA, are frustrated in their ability to maintain and improve their firearms proficiency and engage in recreational shooting. Plaintiff Rhonda Ezell has applied for a Chicago Firearms Permit, but traveling far outside the city to do so was a hardship, considering her poor health. Ezell Decl., ¶¶ 2, 3. Ezell cannot travel such distances easily in order to engage in recreational shooting. Ezell Decl., ¶ 4. Ezell would like to continue recreational shooting, and believes she needs to keep practicing with her handgun in order to remain proficient in its use so that she may be better able to defend herself in the event of another burglary. Ezell would welcome opportunities to learn how to maintain and improve her marksmanship, and would definitely visit a Chicago range for these purposes. *Id.*

Plaintiff Brown has frequented ranges in Chicago when they were available. Brown Decl., ¶ 6.  Brown regularly promotes the shooting sports and provides shooting instruction, and he would do so among his Chicago neighbors, but the lack of a local range impedes his ability to engage in this activity. Brown Decl., ¶¶ 2, 5. Plaintiff Action Target, Inc., has recently built gun

ranges for the Federal Reserve Bank, 230 S. LaSalle Street; Postal Inspectors, 743 S. Canal

Street; and Brinks, 4420 S. Tripp Avenue. It is bidding to retrofit Chicago gun ranges operated by

the Customs and Border Protection Service, and Federal Air Marshals, and would build ranges in

Chicago open to the public but for the challenged ordinances. Hart Decl., ¶¶ 4, 5.

Plaintiffs are greatly concerned that owing to the recent highly-publicized demise of

Chicago's handgun ban, many individuals seeking to become first-time gun owners might

purchase guns that are less-than-optimally suitable for their needs. It is quite obviously better for

potential gun owners, and in the interest of public safety, that prospective gun buyers experience

a variety of guns, or at least, those guns they are considering, *before* actually making their

purchases. And many people are introduced to shooting and gun ownership by visiting a range

prior to deciding to purchase a gun. Versnel Decl., ¶ 4; Pearson Decl.,¶ 4. Gun ranges

traditionally offer a variety of handguns for on-premises rental, and training classes usually

provide experience with a variety of firearms. Whatever the merit of Chicago's various

registration and possession requirements, their application within the context of gun ranges

impedes traditional gun range and training behavior.

Plaintiffs SAF and ISRA are in the business of promoting firearms education and

ownership, including by the securing of Second Amendment rights. Versnel Decl., ¶ 2; Pearson

Decl., ¶ 1. SAF and ISRA organized and were among the prevailing parties in *McDonald* v. *City

of Chicago*, 130 S. Ct. 3020 (2010). ISRA has long operated a gun range near Kankakee, Illinois,

for the benefit of its members, and to promote marksmanship and the shooting sports. Pearson

Decl., ¶ 5. Among ISRA's members and officers are various firearms trainers certified by the

State of Illinois who are qualified to provide the training mandated by the City of Chicago as a

prerequisite to obtaining a CFP. *Id.* The lack of gun ranges in Chicago is significantly impeding individuals' ability to maintain and obtain lawful gun ownership. Pearson Decl., ¶ 7.

To address the training crisis facing current and prospective Chicago gun owners, SAF and ISRA have contracted for the operation of a mobile range training facility in the city. SAF has placed a deposit guaranteeing the availability, for immediate delivery, of a mobile range facility, fully compliant with all federal environmental and safety standards, which contains three positions within a forty-eight foot truck trailer. Versnel Decl., ¶ 5; Exh. A. SAF has also secured a commercial space for the location of this range within Chicago, and plans to secure additional parking locations so that convenient range training may be provided to gun owners throughout the length and breadth of the City of Chicago. Versnel Decl., ¶ 5, Exh. B. This range would be operated by SAF in conjunction with ISRA's state-registered firearms trainers. Versnel Decl., ¶ 6; Pearson Decl., ¶ 8. Plaintiffs Brown and Hespen would receive their required training at this facility. Brown Decl., ¶ 4; Hespen Decl., ¶ 4.

But for the criminal enactments challenged in this complaint, SAF and ISRA would begin operating the mobile range within the City of Chicago by the end of September, 2010, but refrain from doing so for fear of arrest, prosecution, fine and incarceration of their principals and employees. Versnel Decl., ¶ 7, Pearson Decl., ¶ 9.  For the same reason, ISRA refrains from opening a more permanent range facility within the City of Chicago. Pearson Decl., ¶ 9, and Action Target is refraining from soliciting and conducting business in Chicago. Hart Decl., ¶ 5.

## SUMMARY OF ARGUMENT

Chicago's range ban unquestionably violates the constitutional guarantees of keeping arms and free speech, as do Chicago's other various ordinances that, regardless of their validity

as generally applied, undeniably frustrate constitutionally-secured activity in a gun range.

Considering the certainty of success on the merits, Plaintiffs are entitled to preliminary injunctive relief. Plaintiffs are suffering, and will continue to suffer, irreparable harm in the absence of injunctive relief, for which there is no adequate remedy at law. Granting Plaintiffs relief cannot injure defendant. And given the degree to which the range ban threatens public safety, the public interest – already favoring the exercise of fundamental rights – is clearly satisfied by immediately enjoining the city's unconstitutional practices.

## ARGUMENT

A plaintiff seeking a preliminary injunction must prove three threshold elements: "[f]irst, that absent a preliminary injunction, it will suffer irreparable harm in the interim period prior to final resolution of its claims. Second, that traditional legal remedies would be inadequate. And third, that its claim has some likelihood of succeeding on the merits." *Girl Scouts of Manitou Council, Inc.* v. *Girl Scouts of U.S., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citations omitted).

Upon satisfying these threshold requirements, the Court "must somehow balance the nature and degree of the plaintiff's injury, the likelihood of prevailing at trial, the possible injury to the defendant if the injunction is granted, and the wild card that is the 'public interest.'" *Id.* (citations omitted). In so doing, the court employs a sliding scale approach: "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Id.* (citations omitted).

Plaintiffs easily satisfy all three threshold requirements for obtaining preliminary injunctive relief, and the balance of interests weigh heavily in their favor.

I.     **PLAINTIFFS WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY INJUNCTIVE RELIEF.**

Ezell, Brown, Hespen, and other members and supporters of SAF and ISRA, enjoy a

fundamental right to keep and bear arms. *McDonald* v. *City of Chicago*, 130 S. Ct. 3020,  2010

U.S. Lexis 5523 at *64 (2010) (majority op.), at *113 (Thomas, J.). "[T]he inherent right of self-

defense has been central to the Second Amendment right." *District of Columbia* v. *Heller*, 128 S.

Ct. 2783, 2817 (2008).

However, if ranges are not immediately made available in Chicago, individuals including

the plaintiffs will be frustrated in their ability to obtain the training required by the city to

exercise Second Amendment rights. With expiration of the October 12 grandfathering period,

many gun owners, including Plaintiff Brown, will be unable to register their guns. And every

day, existing registrations are subject to expiration but for the obtaining of necessary range

training and a CFP. Plaintiff Hespen faces the loss of twenty-four guns by October 8.

SAF and ISRA not only have members and supporters facing the imminent loss of

Second Amendment rights for lack of access to ranges. Their organizational missions are

themselves immediately jeopardized, as SAF and ISRA have organized an effort to bring a range

to Chicago for training purposes that is stymied by the current range ban. Plaintiff Action Target,

a range builder and supplier, suffers harm in being prevented from pursuing its business.

"Even a temporary deprivation of first amendment freedom of expression rights is

generally sufficient to prove irreparable harm." *National People's Action* v. *Wilmette*, 914 F.2d

1008, 1013 (7th Cir. 1990) (citations omitted). Training people in the use of guns at a range, and

receiving such training, are undeniably protected by the First Amendment's free speech

guarantee. And even the temporary deprivation of Second Amendment rights to train with firearm more obviously causes irreparable harm, be it the harm from lack of proficiency with firearms or, as in Chicago, the harm in the consequential legal disability on keeping arms at all.

Considering that the Second Amendment exists to secure the right of self-defense, the inability to access constitutionally-protected arms, or to maintain proficiency in the use of those arms, causes a profound loss of a sense of one's security – to say nothing of the irreparable harm resulting from a successful criminal attack, or tragic accident that could have been averted with access to a firearm and proficiency in its use. Indeed, sustaining the constitutionality of Chicago's training requirement would inevitably require the recognition of the value of training: "Reasonable firearm proficiency testing would . . . promote public safety . . ." *Parker* v. *District of Columbia*, 478 F.3d 370, 399 (D.C. Cir. 2007), *aff'd sub nom Heller*, *supra*, 128 S. Ct. 2783.

The irreparable harm flowing from any delays in obtaining relief is palpable.

## II.     TRADITIONAL LEGAL REMEDIES ARE INADEQUATE TO RELIEVE THE RANGE BAN'S HARM.

There is no way to quantify, in terms of money damages, the inability to engage in protected Second Amendment activity such as defensive shooting, or the inability to engage in protected First Amendment activity of giving and receiving valuable instruction. The infringement of constitutional rights is frequently considered to be beyond quantification with money damages. *See, e.g. Christian Legal Soc'y* v. *Walker*, 453 F.3d 853, 859 (7th Cir. 2006).

No legal remedies will be available to gun owners whose registration certificates cannot be renewed for lack of range training, nor will any legal remedies be available to gun owners who miss the city's October 12 grandfathering deadline for the same reason. And quite obviously, no

10

legal remedies will suffice to compensate those killed or injured for lack of firearms proficiency, or lack of lawfully-possessed defensive arms, owing to the city's range ban.

## III.   PLAINTIFFS WILL PREVAIL ON THE MERITS, AS CHICAGO'S RANGE BAN VIOLATES THEIR SECOND AND FIRST AMENDMENT RIGHTS.

### A.   Using and Operating Gun Ranges Lie at the Core of the Second Amendment.

"[T]he Court has acknowledged that certain unarticulated rights are implicit in enumerated guarantees . . . fundamental rights, even though not expressly guaranteed, have been recognized by the Court as indispensable to the enjoyment of rights explicitly defined." *Richmond Newspapers* v. *Virginia*, 448 U.S. 555, 579-80 (1980). Unsurprisingly, the Supreme Court has noted that the rights to use and operate a gun range are inherent in the Second Amendment: "The Constitution secures the right of the people to keep and bear arms. No doubt, a citizen who keeps a gun or pistol under judicious precautions, *practices in safe places the use of it*, *and in due time teaches his sons to do the same*, exercises his individual right." *Heller*, 128 S. Ct. at 2812 (citation omitted) (emphasis added).

"[T]o bear arms implies something more than the mere keeping; it implies the learning to handle and use them in a way that makes those who keep them ready for their efficient use; in other words, it implies the right to meet for voluntary discipline in arms . . ." *Heller*, 128 S. Ct. at 2811-12 (citation omitted). Indeed, to the extent the availability of "[a] well-regulated militia" supplies a reason for the right's codification, U.S. Const. amend. II, "the adjective 'well-regulated' implies nothing more than the imposition of proper discipline and training." *Heller*, 128 S. Ct. at 2800. "The militia consisted of the people bearing their own arms when called to active service, arms which they kept and hence knew how to use." *United States* v. *Emerson*, 270

11

F.3d 203, 235 (5th Cir. 2001). "An effective militia requires not only that people have guns, but that they be able to shoot them with more danger to their adversaries than themselves." *Silveira* v. *Lockyer*, 328 F.3d 567, 587 (9th Cir. 2003) (Kleinfeld, J., dissenting).

Plaintiffs do not claim that gun ranges are beyond regulation. Churches and bookstores, too, must be built to code, and comply with constitutionally-adequate zoning requirements. But a blanket prohibition on gun ranges in a city the size of Chicago is unheard-of. Gun ranges exist in virtually every major American city, Hart Decl., ¶ 3, and indeed at least eleven gun ranges operate today in the City of Chicago without any apparent controversy. Pearson Decl., ¶ 6. Gun ranges have been open to the public in Chicago before. Brown Decl., ¶ 6.  Indeed, Chicago was built on, and remains famous for, by a bevy of heavy industrial operations – slaughter-houses, rail yards, factories, steel mills, and a major hub airport – all posing vastly greater environmental impact than a simple gun range, which can be safely located anywhere from Plaintiffs' truck trailer to the seventeenth floor of the Federal Reserve Bank building.

Owing to the unusual nature of this complete ban on ranges and traditional range activity, the laws will most likely fail. *Cf. McDonald*, 2010 U.S. Lexis at *77 (rarity of Chicago handgun ban indicates its unconstitutional nature) (plurality op.); *cf.* 36 U.S.C. §§ 40701, et seq. (Civilian Marksmanship Program); *see also Lawrence* v. *Texas*, 539 U.S. 558, 573 (2003) (only four states prohibit intimate practice); *cf. Kennedy* v. *Louisiana*, 128 S. Ct. 2641, 2653 (2008) (punishment known in only six states violates Eighth Amendment). Indeed, in *Heller*, neither the D.C. Circuit nor the Supreme Court bothered to engage in any balancing test or other extended analysis before striking down Washington, D.C.'s ban on the possession of functional firearms for self-defense, as that law literally contradicted a "core" aspect of Second Amendment rights. *Heller*, 128 S. Ct.

at 2818. A complete ban on gun ranges and traditional gun range activity will meet the same fate.

**B.      The Use and Operation of Gun Ranges Constitutes Protected Speech.**

      *1.      The First Amendment Guarantees A Right to Provide and Receive Instruction in the Use of Firearms at a Gun Range.*

The Supreme Court has long recognized that teaching and learning are protected by the First Amendment. *See*, *e.g.  Keyishian* v. *Board of Regents*, 385 U.S. 589, 603 (1967) (First Amendment "does not tolerate laws that cast a pall of orthodoxy over the classroom"); *Sweezy* v. *New Hampshire*, 354 U.S. 234, 249-50 (1957) (plurality) ("right to lecture . . .could not be seriously debated," and noting that "teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding").

One week before the Supreme Court decided *McDonald*, the high court also decided *Holder* v. *Humanitarian Law Project*, 130 S. Ct. 2705, 2010 U.S. Lexis 5252 (2010). *Holder* considered the question of whether Congress could ban, as material support for terrorist organizations, "plaintiffs' speech to [terrorist] groups [that] imparts a 'specific skill' or communicates advice derived from 'specialized knowledge.'" *Holder*, at *47. Rejecting the government's arguments that such training and educational efforts were merely conduct with some communicative aspects, *Holder*, at *48-*49, the Court nonetheless upheld, under strict scrutiny, a prohibition on the provision of material support "in the form of speech" to designated terrorist organizations, *Holder*, at *49: "direct training" in "specific skills" of advocacy, *Holder*, at *63, and "teach[ing]" how to "present claims for relief." *Holder*, at *64.

Of course, teaching and learning, the conveyance and receipt of knowledge, are not limited to advocacy or expression. "Even dry information, devoid of advocacy, political

relevance, or artistic expression, has been accorded First Amendment protection." *Universal City Studios* v. *Corley*, 273 F.3d 429, 446 (2d Cir. 2001) (citations omitted). And protected teaching includes demonstrative and experiential conduct, not strictly oral conversation. For example, "instructing children on the topics of geography and fiber arts is a form of speech protected under the First Amendment." *Goulart* v. *Meadows*, 345 F.3d 239, 248 (4th Cir. 2003).

As is the provision of hands-on gun training. *Edwards* v. *City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999). In *Edwards*, a police officer asserted a valid First Amendment claim challenging his punishment for teaching a handgun safety class, completion of which was required for individuals wishing to obtain state permits to carry guns. "[T]he form of the [officer's] speech, presumably verbal as well as some written instruction accompanied by physical demonstrations . . . was entitled to protection." *Edwards*, 178 F.3d at 247. Indeed, because the speech concerned "a categorically public issue, the proper method of safely carrying a concealed handgun, knowledge of which is a prerequisite to obtaining a state permit . . . it occupies the highest rung of the hierarchy of First Amendment values." *Id.* (citation omitted).

### 2.   *The Banning of Gun Ranges Impermissibly Burdens Protected Speech.*

Even if the gun training and range use were merely conduct, the range ban's impact on gun education would nonetheless constitute a First Amendment violation. Because the range ban and associated laws undeniably burden expression, the laws can only survive if they are

> within the constitutional power of the Government; if [they] further[] an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*United States* v. *O'Brien*, 391 U.S. 367, 377 (1968). The laws fail all four factors. It is not within

the city's constitutional power to ban all gun ranges— doing so violates the Second Amendment. The city has no interest, let alone an important or substantial one, in banning all gun ranges. It maintains its own ranges, has historically had ranges open to the public, and initiated the ban only as a form of resisting *McDonald*. Indeed, the governmental interest here is precisely the suppression of gun education. And even if the city's actions were merely a form of regulating gun range activity in furtherance of some legitimate interest, a total ban is plainly overbroad.

## IV.     THE BALANCE OF INTERESTS FAVOR IMMEDIATE INJUNCTIVE RELIEF.

The Plaintiffs are certain to prevail on the merits. Absent relief they will suffer irreparable injury in the loss of Second and First Amendment rights, if not actual physical harm; the Aldermen's disliking of guns is not a legitimate interest; and as the defendant's law itself concedes, the public interest strongly favors firearms proficiency and education, to say nothing of respecting fundamental rights. *Christian Legal Soc'y*, 453 F.3d at 859. The balance of interests could not more completely tilt in favor of immediate injunctive relief.

## CONCLUSION

The city cannot ban the gun ranges whose value it recognizes by mandating gun training. Plaintiffs respectfully request that the motion for preliminary injunctive relief be granted.

Dated: August 16, 2010                                  Respectfully submitted,

Alan Gura (admitted pro hac vice)            David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                           Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405           4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                               Lisle, IL 60532
703.835.9085/Fax 703.997.7665               630.452.4547/Fax 630.596.4445

By:___/s/ Alan Gura/_____     By:_____/s/ David G. Sigale/_____
     Alan Gura                                          David G. Sigale
                                     Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C- |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF |
| | ) | JULIANNE VERSNEL |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DECLARATION OF JULIANNE VERSNEL

I, Julianne Versnel, am competent to state, and declare the following based on my personal knowledge:

1.     I am the Director of Operations of the Second Amendment Foundation ("SAF").

2.     SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including many in Chicago. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.

3.     SAF members and supporters in Chicago are among the individuals who need immediate range training to maintain their ability to keep firearms for self-defense under Chicago's new firearms ordinance.

4.      Not every gun is suitable for every person. It is quite obviously better for potential gun owners, and in the interest of public safety, that prospective gun buyers experience a variety of guns, or at least, those guns they are considering, *before* actually making their purchases. And many people are introduced to shooting and gun ownership by visiting a range prior to deciding to purchase a gun.

5.      To fulfill SAF's organizational objectives, and serve our members and supporters, SAF has placed a deposit guaranteeing the availability, for immediate delivery, of a mobile range facility, fully compliant with all federal environmental and safety standards, which contains three rifle positions within a forty-eight foot truck trailer. A copy of this contract is attached hereto as Exhibit A. SAF has also secured a commercial space for the location of this range within Chicago. A copy of this lease agreement is attached hereto as Exhibit B. SAF plans to secure additional parking locations  so that convenient range training may be provided to gun owners throughout the length and breadth of the City of Chicago.

6.      The mobile range facility would be operated by SAF in conjunction with ISRA's state-certified firearms trainers.

7.      But for the criminal enactments challenged in this complaint, SAF and ISRA would begin operating the mobile range within the City of Chicago by the end of September, 2010, but refrain from doing so for fear of arrest, prosecution, fine and incarceration of our principals and employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 15 day of August, 2010

Julianne Versnel



P.O. Box 121 • Sudbury, MA 01776 • 978-927-0911

### SERVICE AGREEMENT

1. **PARTIES:** This Agreement is between Blue Line Corporation, a Massachusetts corporation, and the undersigned Client.

2. **DEFINITIONS:**
   A. OWNER shall mean Blue Line Corporation, its officers, directors, stockholders, principals, agents, employees, contractors, successors and assigns.
   B. CLIENT shall mean the Town, Business, Agency, Company, University, College, Police Department or Other Entity and its officers and employees, which use the 48-foot trailer owned and operated by Owner as a mobile firearms training range (hereafter the "TRAILER").
   C. AUTHORIZED AGENT shall mean the person(s) signing this Agreement on behalf of the CLIENT who represents and warrants that he/she has full legal authority to sign this Agreement on behalf of said CLIENT.

3. **TERM OF USE:** The rights provided for in this Agreement shall be for the periodic use of the TRAILER for a period of one (1) year from the date of this Agreement as necessary for firearms training, qualifications or general use by the CLIENT as scheduled in advance by written agreement of the parties.

4. **USAGE FEE:** The CLIENT shall pay OWNER a fee as set forth in the quote or proposal for services rendered within the terms noted on the invoice. Quotes or proposals may have to be adjusted throughout the year of this contract when the needs of the CLIENT change from the previous rental, or if OWNER related costs rise throughout the year of this contract, such as fuel costs, labor or supplies.

5. **OWNER'S OBLIGATIONS:**
   A. The OWNER shall maintain the TRAILER, and all systems and facilities provided therein, in such condition as shall provide for safe use for the purpose for which it is intended, that is, as a firearms training and qualification range.
   B. The OWNER shall deliver the TRAILER to the property, or other designated area, of the CLIENT as scheduled and shall temporarily locate it in a safe manner in a position designated by the AUTHORIZED AGENT. The OWNER and/or the OWNER'S designee shall be responsible for opening and securely closing and locking the TRAILER on each day that it is to be available to the CLIENT for use under this Agreement, and shall provide employees, servants or agents on the site of the TRAILER at all times when it is "in use" by the CLIENT.
   C. NO firearms of any kind shall be left on the site or in the TRAILER when the TRAILER is not in active use by the CLIENT.
   D. The OWNER agrees to carry adequate insurance to cover its employees and other personnel assigned by it and for whom it is responsible who are on the site of, or inside the TRAILER, during its use. Said insurance is to be in effect at the time the TRAILER is located on the property of the CLIENT or in use by CLIENT as a firing range.
   E. To the extent permitted by law, the OWNER shall indemnify, defend, and hold the CLIENT harmless from and against any and all losses, property damage, personal injury, claims, demands, liabilities, actions, causes of actions, costs and expenses, including attorney's fees, arising out of the OWNER'S breach of this Agreement or the intentional misconduct of the OWNER, or its employees, servants or agents.

6.  CLIENT'S OBLIGATIONS:
    A. The CLIENT shall assign certified firearms instructors or contract out with certified firearms instructors to supervise the instruction and qualification of the members of the CLIENT who uses the firearms training range for training purposes located within the TRAILER.
    B. The CLIENT agrees to carry adequate insurance to cover its employees and other personnel assigned by it and for whom it is responsible when in use of the TRAILER as a firearms training range, or firing range
    C. NO firearms of any kind shall be left on the site or in the TRAILER when the TRAILER is not in active use by the CLIENT.
    D. To the fullest extent permitted by law, the CLIENT shall indemnify, defend, and hold the OWNER harmless from and against any and all losses, property damage, personal injury, claims, demands, liabilities, actions, causes of actions, costs and expenses, including attorney's fees, arising out of the CLIENT'S breach of this Agreement or the negligence or misconduct of the CLIENT, or its employees, servants or agents.

7.  TERMINATION:  Either party hereto may terminate this Agreement at any time for any reason by providing the non-terminating party with written notice stating the termination date, which shall not be sooner than ten days from the issuance of the said notice. Said notice shall be delivered in hand or sent via certified mail, return receipt requested, to the address set forth at the end of this Agreement. Upon receipt of the notice, the non-terminating party shall cease to incur additional expenses in connection with this Agreement. Upon such termination, the OWNER shall remove the TRAILER from the property of the CLIENT within seventy-two (72) hours, and shall be entitled to compensation for any use of the TRAILER or expenses incurred in the management, marketing, sales, delivery and removal of the TRAILER to the CLIENT prior to the termination date.

8.  GOVERNING LAW:  This Agreement shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Massachusetts or any state where the TRAILER is in use.

9.  ENTIRE AGREEMENT:  This Agreement, including all quotes and proposals, constitutes the entire agreement between the parties with respect to the matter described. This Agreement supersedes all prior agreements, negotiations and representations, either written or oral, and shall not be modified or amended except by a written document executed by the parties hereto.

10. ASSIGNMENT:  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on this 26 day of July, 2010.

OWNER:                                              CLIENT:

**BLUE LINE CORPORATION**                           **Second Amendment Foundation**


By: _____          By: _____
Name:  Jerry Tilbor                         Name: Julianne Versnel
Title:    President                          Title: Director of Operations

P.O. Box 121 Sudbury, MA  01776            12500 NE 10th Place, Bellevue, WA  98005

_____          _____
(Print Address for Notice Purposes)         (Print Address for Notice Purposes)

INDUSTRIAL BUILDING LEASE
(For Use in Illinois)

NO. 1201
FEBRUARY, 1986

GEORGE E. COLE
LEGAL FORMS

CAUTION: Consult a lawyer before using or acting under this form. Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.

# INDUSTRIAL BUILDING LEASE

| DATE OF LEASE | TERM OF LEASE | | MONTHLY RENT |
|---|---|---|---|
| | BEGINNING | ENDING | |
| August 12, 2010 | September 15, 2010 | *MONTH TO MONTH* | $2,500 |

Location of Premises
3333 W. 36th St., Chicago IL  60632

Purpose
Trailer Storage  *FOR ONE TRAILER*

| | LESSEE | | LESSOR | |
|---|---|---|---|---|
| NAME | Second Amendment Foundation | NAME AND | ·Accurate Perforating Corporation |
| | 12500 NE 10th Pl | BUSINESS | ·3636 S. Kedzie Ave. |
| ADDRESS | Bellevue, WA  98005 | ADDRESS | ·Chicago, IL  60632 |

In consideration of the mutual covenants and agreements herein stated, Lessor hereby leases to Lessee and Lessee hereby leases from Lessor solely for the above purpose the premises designated above (the "Premises"), together with the appurtenances thereto, for the above Term.

**RENT**

1. Lessee shall pay Lessor or Lessor's agent as rent for the Premises the sum stated above, monthly in advance, until termination of this lease, at Lessor's address stated above or such other address as Lessor may designate in writing.

**CONDITION AND UPKEEP OF PREMISES**

2. Lessee has examined and knows the condition of the Premises and has received the same in good order and repair, and acknowledges that no representations as to the condition and repair thereof have been made by Lessor, or his agent, prior to or at the execution of this lease that are not herein expressed; Lessee will keep the Premises including all appurtenances, in good repair, replacing all broken glass with glass of the same size and quality as that broken, and will replace all damaged plumbing fixtures with others of equal quality and will keep the Premises, including adjoining alleys, in a clean and healthful condition according to the applicable municipal ordinances and the direction of the proper public officers during the term of this lease at Lessee's expense, and will without injury to the roof, remove all snow and ice from the same when necessary, and will remove the snow and ice from the sidewalk abutting the Premises; and upon the termination of this lease in any way, will yield up the Premises to Lessor, in good condition and repair, loss by fire and ordinary wear excepted, and will deliver the keys therefor at the place of payment of said rent.

**LESSEE NOT TO MISUSE; SUBLET; ASSIGNMENT**

3. Lessee will not allow the Premises to be used for any purpose that will increase the rate of insurance thereon, nor for any purpose other than that hereinbefore specified, and will not load floors with machinery or goods beyond the floor load rating prescribed by applicable municipal ordinances, and will not allow the Premises to be occupied in whole, or in part, by any other person, and will not sublet the same or any part thereof, nor assign this lease without in each case the written consent of the Lessor first had, and Lessee will not permit the Premises to be used for any unlawful purpose, or for any purpose that will injure the reputation of the building or increase the fire hazard of the building, or disturb the tenants or the neighborhood, and will not permit the same to remain vacant or unoccupied for more than ten consecutive days; and will not allow any signs, cards or placards to be posted, or placed thereon, nor permit any alteration of or addition to any part of the Premises, except by written consent of Lessor; all alterations and additions to the Premises shall remain for the benefit of Lessor unless otherwise provided in the consent aforesaid.

**MECHANIC'S LIEN**

4. Lessee will not permit any mechanic's lien or liens to be placed upon the Premises or any building or improvement thereon during the term hereof, and in case of the filing of such lien Lessee will promptly pay same. If default in payment thereof shall continue for thirty (30) days after written notice thereof from Lessor to the Lessee, the Lessor shall have the right and privilege at Lessor's option of paying the same or any portion thereof without inquiry as to the validity thereof, and any amounts so paid, including expenses and interest, shall be so much additional indebtedness hereunder due from Lessee to Lessor and shall be repaid to Lessor immediately on rendition of bill therefor.

PAGE ONE

**INDEMNITY FOR ACCIDENTS**

5.  Lessee covenants and agrees that he will protect and save and keep the Lessor forever harmless and indemnified against and from any penalty or damages or charges imposed for any violation of any laws or ordinances whether occasioned by the neglect of Lessee or those holding under Lessee, and that Lessee will at all times protect, indemnify and save and keep harmless the Lessor against and from any and all loss, cost, damage or expense, arising out of or from any accident or other occurrence on or about the Premises, causing injury to any person or property whomsoever or whatsoever and will protect, indemnify and save and keep harmless the Lessor against and from any and all claims and against and from any and all loss, cost, damage or expense arising out of any failure of Lessee in any respect to comply with and perform all the requirements and provisions hereof.

**NON LIABILITY OF LESSOR**

6.  Except as provided by Illinois statute, Lessor shall not be liable for any damage occasioned by failure to keep the Premises in repair, nor for any damage done or occasioned by or from plumbing, gas, water, sprinkler, steam or other pipes or sewerage or the bursting, leaking or running of any pipes, tank or plumbing fixtures, in above, upon or about Premises or any building or improvement thereon nor for any damage occasioned by water, snow or ice being upon or coming through the roof, skylights, trap door or otherwise, nor for any damage arising from acts of neglect of any owners or occupants of adjacent or contiguous property.

**WATER GAS AND ELECTRIC CHARGES**

7.  Lessee will pay, in addition to the rent above specified, all water rents, gas and electric light and power bills taxed, levied or charged on the Premises, for and during the time for which this lease is granted, and in case said water rents and bills for gas, electric light and power shall not be paid when due, Lessor shall have the right to pay the same, which amounts so paid, together with any sums paid by Lessor to keep the Premises in a clean and healthy condition, as above specified, are declared to be so much additional rent and payable with the installment of rent next due thereafter.

**KEEP PREMISES IN REPAIR**

8.  Lessor shall not be obliged to incur any expense for repairing any improvements upon said demised premises or connected therewith, and the Lessee at his own expense will keep all improvements in good repair (injury by fire, or other causes beyond Lessee's control excepted) as well as in a good tenantable and whole-some condition, and will comply with all local or general regulations, laws and ordinances applicable , thereto as well as lawful requirements of all competent authorities in that behalf, Lessee will, as far as possible, keep said improvements from deterioration due to ordinary wear and from falling temporarily out of repair. If Lessee does not make repairs as required hereunder promptly and adequately, Lessor may but need not make such repairs and pay the costs thereof, and such costs shall be so much additional rent immediately due from and payable by Lessee to Lessor.

**ACCESS TO PREMISES**

9.  Lessee will allow Lessor free access to the Premises for the purpose of examining or exhibiting the same, or to make any needful repairs, or alterations thereof which Lessor may see fit to make and will allow to have placed upon the Premises at all times notice of "For Sale" and "To Rent", and will not interfere with the same.

**ABANDON-MENT AND RELETTING**

10.  If Lessee shall abandon or vacate the Premises, or if Lessee's right to occupy the Premises be terminated by Lessor by reason of Lessee's breach of any of the covenants herein, the same may be re-let by Lessor for such rent and upon such terms as Lessor may deem fit, subject to Illinois statute; and if a sufficient sum shall not thus be realized monthly, after paying the expenses of such re-letting and collecting to satisfy the rent hereby reserved, Lessee agrees to satisfy and pay all deficiency monthly during the remaining period of this lease.

**HOLDING OVER**

11.  Lessee will, at the termination of this lease by lapse of time or otherwise, yield up immediate posses-sion to Lessor, and failing so to do, will pay as liquidated damages, for the whole time such possession is with-held, the sum of  ( 150 one hundfed Fift Dollars ($  150. 00  ) per day; but the provisions of this clause shall not be held as a waiver by Lessor of any right of re-entry as hereinafter set forth; nor shall the receipt of said rent or any part thereof, or any other act in apparent affirmance of tenancy, operate as a waiver of the right to forfeit this lease and the term hereby granted for the period still unexpired, for a breach of any of the covenants herein.

**EXTRA FIRE HAZARD**

12.  There shall not be allowed, kept, or used on the Premises any inflammable or explosive liquids or materials save such as may be necessary for use in the business of the Lessee, and in such case, any such sub-stances shall be delivered and stored in amount, and used, in accordance with the rules of the applicable Board of Underwriters and statutes and ordinances now or hereafter in force.

**DEFAULT BY LESSEE**

13.  If default to be made in the payment of the above rent, or any part thereof, or in any of the covenants herein contained to be kept by the Lessee, Lessor may at any time thereafter at his election declare said term ended and reenter the Premises or any part thereof, with or (to the extent permitted by law) without notice or process of law, and remove Lessee of any persons occupying the same, without prejudice to any remedies which might otherwise be used for arrears of rent, and Lessor shall have at all times the right to distrain from rent due, and shall a valid and first lien upon all personal property which Lessee now owns, or may hereafter acquire or have an interest in, which is by law subject to such distraint, as security for payment of the rent herein reserved.

**NO RENT DEDUCTION OR SET OFF**

14.  Lessee's covenant to pay rent is and shall be independent of each and every other covenant of this lease. Lessee agrees that any claim by Lessee against Lessor shall not be deducted from rent nor set off against any claims for rent in any action. .

**RENT AFTER NOTICE OF SUIT**

15.  It is further agreed, by the parties hereto, that after the service of notice, or the commencement of a suit or after final judgment for possession of the Premises, Lessor may receive and collect any rent due, and that payment of said rent shall not waive or affect said notice, said suit, or said judgment.

PAGE TWO

**PAYMENT OF COSTS**

16.  Lessee will pay and discharge all reasonable costs, attorney's fees and expenses that shall be made and incurred by Lessor in enforcing the covenants and agreements of this lease.

**RIGHTS CUMULATIVE**

17.  The rights and remedies of Lessor under this lease are cumulative.  The exercise or use of any one or more thereof shall not bar Lessor from exercise or use of any other right or remedy provided herein or otherwise provided by law, nor shall exercise nor use of any right or remedy by Lessor waive any other right or remedy.

**FIRE AND CASUALTY**

18.  In case the Premises shall be rendered untenantable during the term of this lease by fire or other casualty, Lessor at his option may terminate the lease or repair the Premises within 60 days thereafter.  If Lessor elects to repair, this lease shall remain in effect provided such repairs are completed within said time.  If Lessor shall not have repaired the Premises within said time, then at the end of such time the term hereby created shall terminate.  If this lease is terminated by reason of fire or casualty as herein specified, rent shall be apportioned and paid to the day of such fire or other casualty.

**SUBORDINATION**

19.  This lease is subordinate to all mortgages which may now or hereafter affect the Premises.

**PLURALS; SUCCESSORS**

20.  The words "Lessor" and "Lessee" wherever herein occurring and used shall be construed to mean "Lessors" and "Lessees" in case more than one person constitutes either party to this lease; and all the covenants and agreements contained shall be binding upon, and inure to, their respective successors, heirs, executors, administrators and assigns and may be exercised by his or their attorney or agent.

**SEVERABILITY**

21.  Wherever possible each provision of this lease shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this lease shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this lease.

If this instrument is executed by a corporation, such execution has been authorized by a duly adopted resolution of the Board of Directors of such corporation.

This lease consists of ___3___ pages numbered 1 to ___3___ , including a rider consisting of _none_ pages, identified by Lessor and Lessee.

IN WITNESS WHEREOF, the parties hereto have executed this instrument as of the Date of Lease stated above.

LESSEE:                                                              LESSOR:

_____ (SEAL)          _____ (SEAL)

_____ (SEAL)          _____ (SEAL)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C- |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF |
| | ) | RICHARD PEARSON |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DECLARATION OF RICHARD PEARSON

I, Richard Pearson, am competent to state, and declare the following based on my personal knowledge:

1.      I am the Executive Director of the Illinois State Rifle Association ("ISRA").

2.      ISRA is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 17,000 members and supporters in Illinois, including many in Chicago. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. .

3.      ISRA members and supporters in Chicago are among the individuals who need immediate range training to maintain their ability to keep firearms for self-defense under Chicago's new firearms ordinance.

4.     Not every gun is suitable for every person. It is quite obviously better for potential gun owners, and in the interest of public safety, that prospective gun buyers experience a variety of guns, or at least, those guns they are considering, *before* actually making their purchases. And many people are introduced to shooting and gun ownership by visiting a range prior to deciding to purchase a gun.

5.     ISRA has long operated a gun range near Kankakee, Illinois, for the benefit of its members, and to promote marksmanship and the shooting sports. Among ISRA's members and officers are various firearms trainers certified by the State of Illinois who are qualified to provide the training mandated by the City of Chicago as a prerequisite to obtaining a Chicago Firearms Permit.

6.     There currently exist at least eleven gun ranges in the city of Chicago, but none are open to the public. These include five ranges are operated by the Chicago Police Department; four gun ranges operated by the federal government (Postal Inspectors, Air Marshals, Customs and Border Protection, and the Federal Reserve Bank); and two gun ranges operated by private security companies for their own purposes.

7.     There exists a severe shortage of range-time within a hundred miles of the City of Chicago, owing to the incredible demand on training facilities created by (1) the need of existing gun registrants to obtain officially-recognized training to continue their firearms ownership, (2) the need for people to obtain officially-recognized training in time for them to comply with the grandfathering provisions for previously acquired guns, and (3) an intense interest in firearms ownership as a result of the *McDonald* case, and the city's acquiescence in recognizing legal handgun ownership. Handguns, as the Supreme Court recognized, are overwhelmingly the arms of choice in our country for people wishing to have a means of self-defense, and handgun

ownership has just become legally possible in Chicago for the first time in decades. Without the construction of additional range facilities open to the public, including range facilities in Chicago, people who would register their firearms will not be able to do so.

8.      To fulfill ISRA's organizational objectives, and serve our members and supporters, ISRA will supply state certified firearms trainers to operate the mobile gun range being brought to the City of Chicago by the Second Amendment Foundation.

9.      But for the criminal enactments challenged in this complaint, SAF and ISRA would begin operating the mobile range within the City of Chicago by the end of September, 2010, but refrain from doing so for fear of arrest, prosecution, fine and incarceration of our principals and employees. For the same reason, ISRA refrains from opening a more permanent range facility within the City of Chicago. But for the ban on the operation of a gun range in the City of Chicago, ISRA would bring its many years of range operating experience to the city to continue fulfilling its essential mission.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the __5th__ day of August, 2010

Richard Pearson

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C- |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF WILLIAM HESPEN |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DECLARATION OF WILLIAM HESPEN**

I, William Hespen, am competent to state, and declare the following based on my personal knowledge:

1.     I am retired from a career as a Detective with the Chicago Police Department.

2.     I am currently the registered owner of various guns, including handguns, shotguns and rifles, which I registered under the previous Chicago registration ordinance. I enjoy shooting and collecting guns, and I also need guns for self-defense at my Chicago home.

3.     A large portion of my collection, comprising twenty-four firearms, will have its registration expire on October 8, 2010.  I would re-register these guns under the new ordinance, but cannot do so until I obtain my Chicago Firearms Permit. I understand that I must undergo one hour of formal range training to obtain that permit and register my guns.

4.     I understand that the Second Amendment Foundation and the Illinois State Rifle Association are planning to bring a mobile range to Chicago to offer the required city training for

people in my position. I would definitely utilize this facility to obtain the necessary range training in order to get my Chicago Firearms Permit.

5.      I am a member of the ISRA range near Kanakee, located 56 miles from my home. Driving a round-trip of 112 miles to shoot imposes a hardship on me and reduces my ability to maintain my marksmanship. I would use a range within the City of Chicago, were a range available.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the _7_ day of August, 2010

William Hespen

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C- |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF JOSEPH I. BROWN |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DECLARATION OF JOSEPH I. BROWN

I, Joseph I. Brown, am competent to state, and declare the following based on my personal knowledge:

1.     I am an honorably-discharged U.S. Army veteran. I served in the Pacific and European theaters during the Second World War, and was among the liberators of the infamous Dachau concentration camp.

2.     I am currently the Chairman of the Marksmanship Committee for the Department of Illinois, American Legion. I am also the Secretary and Treasurer of the Cook County Rifle League, and instruct a winter shooting league for junior shooters (boys and girls ages 12-20) that meets at the six-point indoor gun range located at the Morton Grove, Illinois American Legion Post 134.

3.     I would like to register a gun I currently keep outside the City of Chicago for possession inside my Chicago home, but cannot do so until I obtain my Chicago Firearms Permit.

I understand that I must undergo one hour of formal range training to obtain that permit and register my gun.

4.      I understand that the Second Amendment Foundation and the Illinois State Rifle Association are planning to bring a mobile range to Chicago to offer the required city training for people in my position. I would definitely utilize this facility to obtain the necessary range training in order to get my Chicago Firearms Permit.

5.      I would also engage in recreational shooting within the City of Chicago, and promote and provide instruction in the shooting sports, and marksmanship, to my Chicago neighbors at a local range, if one were available.

6.      Historically, Chicago has had various ranges open to the public. I have used the following gun ranges located in the City of Chicago: Small Bore Riflemen of Chicago, Clybourn and Fullerton Avenue; CECO, 22nd and Wabash Avenue, 2nd Floor; Roseland Gun Club, Roseland; Leadslingers Rifle Club, Oliphant & Northwest Highway; Chicago Rifle Club, Austin Town Hall, Austin and Lake Street; Lane Technical High School, Addison & Western Avenue; Gabby Hartnett's Range, Lincoln and Pulaski Road.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the _12_ day of August, 2010

_Joseph I. Brown_
Joseph I. Brown

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C- |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF RHONDA EZELL |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## DECLARATION OF RHONDA EZELL

I, Rhonda Ezell, am competent to state, and declare the following based on my personal knowledge:

1.      I have been the victim of three attempted burglaries at my Chicago home. I have applied for a Chicago Firearms Permit so that I may register my handgun. I need a handgun to defend myself in my home.

2.      To obtain the range training required by the City of Chicago as a condition of letting me have a Chicago Firearms Permit and keeping my gun, I traveled to a range in Dundee, Illinois, a significant distance from my home.

3.      Traveling to this gun range outside the city was a hardship. I suffer from interstitial lung disease, lupus, and end stage renal disease, for which I am currently awaiting a kidney transplant.

4.      I would like to continue recreational shooting, and I believe I need to keep practicing with my handgun in order to remain proficient in its use so that I may be better able to

defend myself in the event of a fourth burglary. I would welcome opportunities to learn how to maintain and improve my marksmanship. However, given the current state of my health, I find it difficult to travel outside the city to use a gun range. I would definitely utilize a gun range inside the city of Chicago were one accessible to me.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 5th day of August, 2010

Rhonda Ezell

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C- |
|  | ) |  |
| Plaintiffs, | ) | DECLARATION OF CHRIS HART |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| CITY OF CHICAGO, | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**DECLARATION OF CHRIS HART**

I, Chris Hart, am competent to state, and declare the following based on my personal knowledge:

1.      I am the Midwest Range Consultant for Action Target, Inc.

2.      Action Target, Inc., is a Delaware corporation having its primary place of business in Utah. Action Target is a leading designer and builder of gun ranges, and renowned manufacturer and seller of gun range equipment and supplies. Action Target is engaged in the gun range business throughout the United States.

3.      Commercial gun ranges open to the public exist throughout the United States, and in virtually every major American city.

4.      As part of my duties, I coordinated Action Target's recent construction of a three-position rifle-rated gun range on the seventeenth floor of the Federal Reserve Bank of Chicago building, located at 230 South LaSalle Street, Chicago, Illinois, and a gun range for the United States Postal Inspectors at 743 South Canal Street, Chicago, Illinois. We have sent estimates for

retrofitting of gun ranges for U.S. Customs and Border Protection, located at 610 South Canal Street, Chicago, Illinois, and for the Federal Air Marshals, next to O'Hare Airport, located at 899 Upper Express Drive, Chicago, Illinois. In 2003, Action Target constructed a range for Brinks, located at 4420 S. Tripp Avenue, Chicago, Illinois.

5.      Several Action Target customers have expressed an interest to me in having Action Target build a commercial indoor shooting range within the city limits of Chicago. Action Target would pursue and solicit this work, and build and supply commercial gun ranges within the city of Chicago, were it lawful to do so. I refrain from engaging in the commercial range business in Chicago for fear of arrest, prosecution, fine and imprisonment under the provisions challenged in this lawsuit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the __14__ day of August, 2010

Chris Hart

(Revised 06/08)

# United States District Court  Northern District of Illinois
# MOTION FOR LEAVE TO APPEAR PRO HAC VICE

| | |
|---|---|
| Case Title: Rhonda Ezell, et al. | Plantiff(s) |
| VS. | |
| City of Chicago | Defendant(s) |

| | |
|---|---|
| Case Number:  10-CV-5135 | Judge:  Virginia Kendall |

I, _____ Alan Gura _____ hereby apply to the Court

under Local Rule 83.14 for permission to appear and participate in the above-entitled action on behalf of

_____ Plaintiffs Ezell, Brown, Hespen, Action Target, SAF, and ISRA, _____ by whom I have been retained.

I am a member in good standing and eligible to practice before the following courts:

| Title of Court | Date Admitted |
|---|---|
| Supreme Court of California | December 1, 1995 |
| District of Columbia Court of Appeals | January 6, 1997 |
| Supreme Court of Virginia | November 4, 2004 |
| | |

I have currently, or within the year preceding the date of this application, made pro hac vice applications to this Court in the following actions:

| Case Number | Case Title | Date of Application (Granted or Denied)* |
|---|---|---|
| 08-C-3645 | McDonald v. City of Chicago | Granted, 7/15/2008 |
| | | |
| | | |
| | | |

*If denied, please explain:
(Attach additional form if necessary)

Pursuant to Local Rule 83.15(a), applicants who do not have an office within the Northern District of Illinois must designate, at the time of filing their initial notice or pleading, a member of the bar of this Court having an office within this District upon who service of papers may be made.

**Has the applicant designated local counsel?**   Yes  ☉        No  ○

If you have not designated local counsel, Local Rule 83.15(b) provides that the designation must be made within thirty (30) days.

Has the applicant ever been:

| | | | |
|---|---|---|---|
| **censured, suspended, disbarred, or witherwise disciplined by any court?** | Yes ○ | No ● | |
| **or is the applicant currently the subject of an investigation of the applicant's professional conduct?** | Yes ○ | No ● | |
| **transferred to inactive status, voluntarily withdrawn, or resigned from the bar of nay court?** | Yes ○ | No ● | |
| **denied admission to the bar of any court?** | Yes ○ | No ● | |
| **held in contempt of court?** | Yes ○ | No ● | |

NOTE: If the answer to *any* of the above questions is yes, please attach a brief description of the incident(s) and the applicant's current status before any court, or any agency thereof, where disciplinary sanctions were imposed, or where an investigation or investigations of the applicant's conduct may have been instituted.

I have read the Rules of Professional Conduct for the Northern District of Illinois, effective November 12, 1991 (Local Rules 83.50 through 83.58), and the Standards for Professional Conduct within the Seventh Federal Judicial Circuit, effective December 15, 1992, and will faithfully adhere to them. I declare under penalty of perjury that the foregoing is true and correct.

| Aug 16, 2010 | S/  Alan Gura/ |
|---|---|
| Date | Electronic Signature of Applicant |

| Applicant's Name | Last Name<br>Gura | | First Name<br>Alan | | Middle Name/Initial |
|---|---|---|---|---|---|
| Applicant's Law Firm | Gura & Possessky, PLLC | | | | |
| Applicant's Address | Street Address<br>101 N. Columbus Street | | | | Room/Suite Number<br>Suite 405 |
| | City<br>Alexandria | State<br>VA | ZIP Code<br>22314 | Work Phone Number<br>703.835.9085 | |

**(The pro hac vice admission fee is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date, and shall be paid to the Clerk. No admission under Rule 83.14 is effective until such time as the fee has been paid.)**

**NOTE:** Attorneys seeking to appear pro hac vice may wish to consider filing a petition for admission to the general bar of the Court. The fee for admission to the General Bar is $150.00. The fee for pro hac vice admission is $100.00 for cases filed before February 1, 2001, and $50.00 for cases filed on or after that date. Admission to the general bar permits an attorney to practice before this Court. Pro hac vice admission entitles an attorney to appear in a particular case only. Application for such admission must be made in each case; and the admission fee must be paid in each case.

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 5135 | **DATE** | 8/17/2010 |
| **CASE TITLE** | Rhonda Ezell et al vs. City of Chicago | | |

**DOCKET ENTRY TEXT**

Motion for leave to appear pro hac vice [9] is granted.

Docketing to mail notices.

| | |
|---|---|
| Courtroom Deputy Initials: | TSA |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-CV-5135 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | MOTION FOR |
| v. | ) | TEMPORARY RESTRAINING ORDER |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

COME NOW the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action

Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and

through undersigned counsel, and move for the entry of a Temporary Restraining Order:

1.      Enjoining Defendant, its officers, agents, servants, employees, and all persons in

active concert or participation with them who receive actual notice of the injunction, from

enforcing Chicago Municipal Code § 8-20-280, barring operation of gun ranges open to the

public;

2.      Enjoining Defendant, its officers, agents, servants, employees, and all persons in

active concert or participation with them who receive actual notice of the injunction, from

enforcing Chicago Municipal Code §§ 8-20-020, 8-20-030, 8-20-080, 8-20-100, 8-20-110, 8-20-

140, and 8-24-010, or any other law, as against the ordinary operation and use of gun ranges open

to the public and the loan or rental of functional firearms within gun ranges open to the public.

FURTHER, Plaintiffs respectfully request that upon issuance of the temporary restraining order, the Court set their motion for preliminary injunction for hearing pursuant to Fed. R. Civ. Proc. 65(b)(3).

Dated: August 22, 2010                      Respectfully submitted,

Alan Gura (admitted pro hac vice)           David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                      Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405           4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                        Lisle, IL 60532
703.835.9085/Fax 703.997.7665              630.452.4547/Fax 630.596.4445


By: /s/ Alan Gura/                          By: /s/ David G. Sigale/

    Alan Gura                                   David G. Sigale

                                                Attorneys for Plaintiffs

CERTIFICATE OF SERVICE

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on August 22, 2010, he served a copy of the above Motion for Temporary Restraining Order, and this certificate of service, on:

Andrew W. Worseck
City of Chicago Department of Law
30 N. LaSalle Street, Suite 900
Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF).


/s/ Alan Gura
Alan Gura

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, JOSEPH I. BROWN, | ) | |
| WILLIAM HESPEN, ACTION TARGET, INC., | ) | |
| SECOND AMENDMENT FOUNDATION, INC., | ) | |
| and ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 10 CV 5135 |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

<u>NOTICE OF MOTION</u>

TO:    All Counsel of Record
        The Honorable Virginia M. Kendall

You are hereby notified that on the 23rd day of August, 2010 at 9:00 A.M., or as soon thereafter as counsel may be heard, I shall appear before the Honorable Virginia M. Kendall, or any Judge sitting in her stead, in Courtroom 2319 of the Everett McKinley Dirksen Building, 219 South Dearborn Street, Chicago, IL 60604, and then and there present the <u>Plaintiffs' *Ex Parte* Motion for Temporary Restraining Order</u>, a copy of which is filed simultaneously.

_____/s/ David G. Sigale_____
**One of the Attorneys for Plaintiffs**

David G. Sigale, Esq. (#6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547
dsigale@sigalelaw.com

Alan Gura (admitted *pro hac vice*)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085
alan@gurapossessky.com

**CERTIFICATE OF ATTORNEY AND NOTICE OF ELECTRONIC FILING**

The undersigned certifies that:

1.      On August 22, 2010, the foregoing document was electronically filed with the District Court Clerk *via* CM/ECF filing system; sending service to:

Andrew Worseck
City of Chicago, Department of Law
30 N. LaSalle Street, Suite 900
Chicago, IL 60602

2.      Pursuant to F.R.Civ.P. 5, the undersigned certifies that, to his best information and belief, there are no non-CM/ECF participants in this matter.

_____/s/ David G. Sigale_____
One of the Attorneys for Plaintiffs

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-CV-5135 |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT OF |
| v. | ) | EX PARTE MOTION FOR |
| | ) | TEMPORARY RESTRAINING ORDER |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
### EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

COME NOW the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action

Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and

through undersigned counsel, and submit their Memorandum of Points and Authorities in Support

of their Ex Parte Motion for Temporary Restraining Order.

Dated: August 22, 2010                           Respectfully submitted,

Alan Gura (admitted pro hac vice)        David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                     Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405        4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                        Lisle, IL 60532
703.835.9085/Fax 703.997.7665           630.452.4547/Fax 630.596.4445


By: /s/ Alan Gura/_____        By: /s/ David G. Sigale/_____
     Alan Gura                                    David G. Sigale


                                                   Attorneys for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER

INTRODUCTION

There is little to add that is not contained in Plaintiffs' brief in support of the motion for preliminary injunction, filed and immediately delivered to opposing counsel on Monday, August 16. Gura Decl., ¶ 2. The evidence and argument supporting both motions are identical, and there is no need to burden the Court with repetitive filing. But Plaintiffs wish to explain why circumstances have changed, and more immediate relief is now requested.

Plaintiffs seeking preliminary injunctive relief must balance the imminence of irreparable harm against the strong professional and judicial interest in affording the Defendant notice and an opportunity to be heard. Although the irreparable harm in this case is severe, counsel believed that providing one week's notice of presentment of a motion, at which time a briefing schedule and argument date could be set, would be fair to the Defendant and assure the Court that it could consider both sides adequately prior to ruling.

However, Defendant has decided to oppose the motion not by responding to it on the merits, but rather, by pursuing a dilatory practice that would deprive Plaintiffs of a meaningful opportunity to be heard. When Defendant gave notice of its intent this past Friday, Plaintiffs immediately gave notice of this motion. Defendant essentially has had a week's notice of this motion for a temporary restraining order, which it should have foreseen once it determined to seek an indefinite delay of the motion for preliminary injunction.

A temporary restraining order now appears to be the safest avenue for bringing Plaintiffs a measure of relief, and could also serve to expedite the hearing on the motion for preliminary

1

injunction, Fed. R. Civ. Proc. 65(b)(3), at which time Plaintiffs could suggest, given the lack of a

factual dispute and the purely legal nature of this case, that the Court consolidate the hearing with

a trial on the merits per Fed. R. Civ. Proc. 65(a)(2).

<u>STATEMENT OF FACTS</u>

Gun training saves lives and prevents serious injuries. For this reason, the City of Chicago

demands that firearm owners get trained at a gun range. Yet it bans the very ranges necessary to

obtain the required training.

As detailed in the preliminary injunction papers, every day that passes without injunctive

relief, people are liable to be killed or seriously injured for lack of adequate firearms proficiency,

either due to accidents, or inability to exercise proper self-defense. Every day that passes without

injunctive relief, people lose their Second Amendment rights because their registrations expire and

they cannot timely obtain gun range training necessary for renewal. On October 8, Plaintiff

Hespen's registration of 24 firearms will expire absent range training.

Every day that passes without injunctive relief, the city's October 12 deadline for

grandfathered registration of already-acquired guns draws nearer, yet with the intended

beneficiaries of this provision deprived of training opportunities. On October 12, Plaintiff Brown

will lose the ability to register his firearm absent range training.

These deadlines are not at issue in this lawsuit, and remain in place even if Plaintiffs

prevail, barring any additional relief. The longer it takes Plaintiffs to obtain injunctive relief, the

larger the number of people who will forever lose their right to keep their firearms – even firearms

currently registered under the previous ordinance. And of course, this is to say nothing of the

tragedies that might be averted by ensuring people can learn and practice the safe use of firearms.

2

Plaintiffs did not waste time or attempt to surprise the city. The moving papers were emailed to opposing counsel immediately upon filing of the lawsuit last week. Gura Decl., ¶¶ 2-3. Defendant responded by giving notice mid-day Friday that it would seek to have this case re-assigned to Judge Guzman, because he was assigned an earlier-filed case, *Benson* v. *City of Chicago*, No. 10-CV-4184. Gura Decl., ¶ 4.

Plaintiffs would oppose the motion for judicial reassignment as it lacks merit,[1] but do not begrudge the city its ability to have the motion considered. What alarmed Plaintiffs was Defendant's notice that it would invoke the fact of its judicial reassignment motion in asking this Court to avoid ruling on Plaintiff's request for injunctive relief. Notice of this motion for temporary restraining order was immediately given. Gura Decl, ¶ 4.  It is unclear how mere notice of a judicial reassignment motion can deprive a party of the right to be heard under Rule 65's provision authorizing relief from immediate, irreparable harm. Doing so would truly elevate process over substance, under circumstances where the rules clearly call upon the Court to resolve the urgent substantive issue.

For their part, the *Benson* plaintiffs "desire" to operate gun ranges in Chicago. First Am. Complaint, No. 10-CV-4184, at ¶¶ 56, 57. That is all. That simple conjectural expression of "desire" is the total substance of *Benson*'s challenge to the range ban. None of the *Benson* plaintiffs claim the range ban impacts their ability to register firearms; none have built or operated ranges in Chicago, or secured the imminent delivery of gun ranges to Chicago for training purposes. *Benson* plaintiffs raise no First Amendment argument, a critical component of this

---

[1]The very fact that the reassignment motion is intended to cause delay suggests that it lacks merit, as a required element of obtaining such relief is a showing that it is "likely to result in a substantial saving of judicial time and effort."  LR 40(b)(2).

lawsuit. Yet *Benson* raises numerous substantial constitutional issues having nothing to do with this case, relating to the carrying, transportation, storage, and sale of firearms.

And *Benson* is not yet at-issue. Asked when Defendant might respond to the *Benson* lawsuit, opposing counsel could only offer, "in due time." Gura Decl., ¶ 5. Moreover, the city has not (yet) sought the relation of a third case that overlaps with *Benson*, but does not at all intersect with this case: *Second Amendment Arms* v. *City of Chicago*, No. 10-CV-4257 (assigned to Judge Dow), the complaint in which has not yet been served.

In other words, *merely because other people claim they "desire" to operate gun ranges*, Defendant avers that Plaintiffs must be indefinitely deprived of their ability to obtain injunctive relief. Plaintiffs will need time to oppose the judicial reassignment motion, and if this Court disagrees with Judge Guzman's ruling, it could seek review before the Executive Committee. Local Rule 40.4(d).  Yet every day of additional delay causes additional irreparable harm.

Plaintiffs would not seek to stop the city from having its motion heard "in due time." They simply want the same consideration for their own motion, whose time has come.

<u>ARGUMENT</u>

It is the availability of immediate relief that could render the judicial reassignment motion pointless, and not the other way around. Defendant's fear that immediate injunctive relief would moot their judicial reassignment motion is precisely why that motion should be denied, whenever it gets heard, and why Defendant should concentrate on addressing the merits of this case instead of chasing judicial reassignment.

For purposes of the matter at hand, it would be highly inefficient for the Court to decline ruling on a ripe, fully-briefed request for injunctive relief, where Plaintiffs will suffer irreparable

4

injury and have worked hard taking significant preparatory action pending the Court's decision, merely because another set of Plaintiffs have proffered a conjectural statement of "desire," in a case not at issue where nothing has happened for over a month, and nothing may yet happen anytime soon.

No reason supports delaying this case pending a ruling on the reassignment motion. *First*, regardless of which judge rules on Plaintiffs' motion, or how that motion is ruled on, such order would be appealable; the Seventh Circuit will take up the matter and likely decide it before any meaningful progress is achieved in *Benson*. Thus, even if the case is re-assigned, the interest in judicial economy is best served by having Judge Guzman hold the allegedly overlapping argument in the as-yet unanswered *Benson* matter in abeyance, not by delaying this lawsuit indefinitely while *Benson* catches up – if it ever does, which is not clear.

*Second*, regardless of which judge rules on Plaintiffs' motion, or how that motion is ruled on, any appeal of that result by either side would be interlocutory in nature. The District Court would retain concurrent jurisdiction to consider the reassignment motion, or engage in any other proceedings. Defendant's motion will thus be considered "in due time." But it would certainly save Judge Guzman a great deal of time to have the range ban determined and on appeal in the (unlikely) event he would then wish to relate these distant cases.

*Finally*, the rules themselves strongly suggest that it would be improper to defer a ruling on Plaintiffs' motion. Not only is there no obvious authority for delaying a case averring imminent, irreparable harm simply because the Defendant wishes to obtain a judicial reassignment, but Rule 65 contemplates that there is a class of cases where the evidence submitted at the preliminary injunction stage suffices to convert the matter into a trial on the merits. Fed. R. Civ.

Proc. 65(a)(2). This may yet be such a case, because the basic facts are not at issue, only the law.

CONCLUSION

Doubtless, many people "desire" to operate gun ranges or other businesses impacted by the challenged ordinances. But that is not a reason to delay resolution of this case, which might even be ripe for final judgment.

The range ban clearly violates Plaintiffs' Second and First Amendment rights, causing irreparable injury. If the city is not interested in seriously addressing this litigation, the Court can and should proceed to rule immediately. Therefore, for the reasons supplied and upon the evidence submitted in connection with the motion for preliminary injunction, Plaintiffs respectfully request the entry of a temporary restraining order, and the scheduling of a hearing on their motion for preliminary injunction pursuant to Fed. R. Civ. Proc. 65(b)(3).

Dated: August 22, 2010                    Respectfully submitted,

Alan Gura (admitted pro hac vice)         David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                    Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405         4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                      Lisle, IL 60532
703.835.9085/Fax 703.997.7665            630.452.4547/Fax 630.596.4445

By:   /s/ Alan Gura/                      By:     /s/ David G. Sigale/
      Alan Gura                                   David G. Sigale
                                                  Attorneys for Plaintiffs

6

<u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on August 22, 2010, he served a copy of the above Memorandum of Points and Authorities in Support of the Motion for Temporary Restraining Order, and this certificate of service, on:

> Andrew W. Worseck
> City of Chicago Department of Law
> 30 N. LaSalle Street, Suite 900
> Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF).


/s/ Alan Gura
Alan Gura

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-CV-5135 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | [PROPOSED] ORDER |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**[PROPOSED] ORDER**

This matter came before the Court on Plaintiffs' motion for the entry of a Temporary

Restraining Order.  Having considered the matter, the Court finds that Plaintiffs suffer and will

continue to suffer irreparable harm in that they are unable to operate gun ranges; educate and

train people in the safe use of firearms; and learn and practice the safe use of firearms; such

prohibition frustrating compliance with the City of Chicago's training requirement for the

registration of firearms.

Defendant has received adequate notice of the Plaintiffs' claim for injunctive relief,

including notice of this motion.

Accordingly, the Court hereby issues this order temporarily

1.       Restraining Defendant, its officers, agents, servants, employees, and all persons in

active concert or participation with them who receive actual notice of the injunction, from

enforcing Chicago Municipal Code § 8-20-280, barring operation of gun ranges open to the

public;

2.      Restraining Defendant, its officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing Chicago Municipal Code §§ 8-20-020, 8-20-030, 8-20-080, 8-20-100, 8-20-110, 8-20-140, and 8-24-010, or any other law, as against the ordinary operation and use of gun ranges open to the public and the loan or rental of functional firearms within gun ranges open to the public.

The Court finds that no security is required as the Defendant will not suffer financial harm by issuance of this order. FURTHER, this order shall expire by its own terms at _____ on _____, 2010, at which time the Court will hear argument on Plaintiffs' motion for preliminary injunction.

SO ORDERED.

This the _____ day of August, 2010, at _____ am/pm.

_____
The Hon. Virginia M. Kendall
United States District Judge

<u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on August 22, 2010, he served a copy of the above Proposed Order, and this certificate of service, on:

Andrew W. Worseck
City of Chicago Department of Law
30 N. LaSalle Street, Suite 900
Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF).

/s/ Alan Gura_____
Alan Gura

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-CV-5135 |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF ALAN GURA |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**<u>DECLARATION OF ALAN GURA</u>**

I, Alan Gura, am competent to state, and declare the following based on my personal

knowledge:

1.      I am counsel for the plaintiffs in the above-captioned action.

2.      On the morning of Monday, August 16, 2010, at 10:41 Central Time, upon

receiving word that this case had been filed, I immediately emailed Mara Georges,

counsel for the City of Chicago, to advise her of the matter. I attached the

complaint, moving papers, and all but one of the declarations that I did not have in

final form.

3.      I wrote Ms. Georges, in part: "The city may already have been served, but I

wanted to give you a heads-up directly because we are seeking a preliminary

injunction, and I don't want to deprive the city of its time to review the matter and

come up with an opposition, if any (I guess that you would oppose)." Ms. Georges

later graciously acknowledged this email.

4.      On Friday, August 20, 2010, at 12:55 pm Central Time, I received a voice mail message from Michael Forti of the City of Chicago's Law Department. Mr. Forti advised that the City had filed its motion to reassign the case, and would use the fact of that motion to argue against having the court proceed with the motion for preliminary injunction. I returned Mr. Forti's call at 1:19 pm Central Time, and advised Mr. Forti, and his co-counsel Andrew Worseck who had joined our call, that unless they heard differently later, that the City was on notice of our motion for temporary restraining order. We had a good conversation, but could not come to agreement. I reconfirmed this motion with Mr. Forti at 3:29 p.m. I advised that the grounds were the same as those in the motion for preliminary injunction.

5.      I asked Mr. Forti whether the city planned to brief an opposition to the motion. He suggested the city would not file a brief. I asked Mr. Forti when the city might respond to the *Benson* matter. His answer was, "in due time."

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 22nd day of August, 2010

_____

Alan Gura

<u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on August 22, 2010, he served a copy of the above Memorandum of Points and Authorities in Support of the Motion for, and this certificate of service, on:

> Andrew W. Worseck
> City of Chicago Department of Law
> 30 N. LaSalle Street, Suite 900
> Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF).


> /s/ Alan Gura_____
> Alan Gura

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RHONDA EZELL, JOSEPH I. BROWN, <br> WILLIAM HESPEN, ACTION TARGET, INC., <br> SECOND AMENDMENT FOUNDATION, INC., <br> and ILLINOIS STATE RIFLE ASSOCIATION, <br><br>            Plaintiffs, <br><br> v. <br><br> CITY OF CHICAGO, <br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)    No.  10 CV 5135<br>)<br>)<br>)<br>)<br>) |

**LR 3.2 NOTIFICATION OF AFFILIATES**

Pursuant to Local Rule 3.2 of the Rules of the United States District Court for the Northern District of Illinois, Plaintiff, Action Target, Inc., hereby discloses the following publicly-held affiliate that owns more than 5% of its shares:

- BB&T /ATI Investment, LLC

Plaintiff, Second Amendment Foundation, a non-profit corporation, hereby states that it has no publicly held affiliates.

Plaintiff, Illinois State Rifle Association, a non-profit corporation, hereby states that it has no publicly held affiliates.

Respectfully submitted,

Alan Gura (admitted *pro hac vice*)
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

David G. Sigale (Atty. ID# 6238103)
Law Firm of David G. Sigale, P.C.
Corporate West I
4300 Commerce Court, Suite 300-3
Lisle, IL 60532
630.452.4547/Fax 630.596.4445

By:      /s/David G. Sigale
            David G. Sigale

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.0.3
### Eastern Division

Rhonda Ezell, et al.

                  Plaintiff,

v.                                  Case No.: 1:10–cv–05135

                                  Honorable Virginia M. Kendall

City Of Chicago

                  Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, August 23, 2010:

      MINUTE entry before Honorable Virginia M. Kendall:Plaintiff's motion for preliminary and permanent injunction [4] are entered and briefed as follows: Responses due by 10/7/2010. Replies due by 10/14/2010. Oral argument set for 10/15/2010 @; 1:00 p.m. Defendant's oral motion for discovery on preliminary injunction is granted to 9/30/2010.Advised in open court notice(tsa, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.0.3
### Eastern Division

Rhonda Ezell, et al.

                     Plaintiff,

v.                                  Case No.: 1:10–cv–05135
                                  Honorable Virginia M. Kendall

City Of Chicago

                     Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, August 23, 2010:

      MINUTE entry before Honorable Virginia M. Kendall:Plaintiff's motion for temporary restraining order [11] is set for hearing 8/23/2010 at 03:30 PM.Advised in open court notice(tsa, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, JOSEPH I. BROWN, | ) | |
| WILLIAM HESPEN, ACTION TARGET, INC., | ) | |
| SECOND AMENDMENT FOUNDATION, INC., | ) | |
| and ILLINOIS STATE RIFLE ASSOCIATION, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 10 CV 5135 |
| v. | ) | |
| | ) | JUDGE VIRGNIA M. KENDALL |
| CITY OF CHICAGO, a municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CITY OF CHICAGO'S RESPONSE TO PLAINTIFFS' MOTION FOR
TEMPORARY RESTRAINING ORDER**

The City of Chicago ("City"), by and through its attorney, Mara S. Georges, Corporation Counsel of the City of Chicago, hereby submits its written response to Plaintiffs' Motion for Temporary Restraining Order ("TRO"), which the City received only this morning.

**SUMMARY**

The Court should deny Plaintiffs' motion.  A TRO is an extraordinary remedy in any case, and particularly in this case, which seeks the right to operate mobile firearms ranges out of the back of truck – a clear public safety hazzard.

There is no irreparable harm that clearly demands the immediate cessation of the City's prohibition on shooting ranges, a duly-enacted public safety measure.  The ban on shooting ranges was on the books for nearly two months (it was passed on July 2) before Plaintiffs decided to challenge it.  And, by Plaintiffs' own admission, the only thing that prompted their TRO motion is the fact that, last Friday, the City filed a motion to reassign this case as related to a case

pending in front of Judge Guzman, <u>Benson v. City of Chicago</u>, which raises the exact same challenge to the City's range ban as does this suit. The purported harm to Plaintiffs had nothing to do with it.

Moreover, the alleged harm to Plaintiffs is clearly illusory and avoidable. Plaintiffs can simply travel to nearby suburbs – which they admittedly already do – to attain the one hour of training required for a Chicago Firearms Permit, or to attain any additional training they believe they need. They have nearly 2 months to do this before mid-October, the date some Plaintiffs fear they will lose their ability possess particular arms they currently own.

Further, there is an adequate remedy at law. Should the City's regulation be found unconstitutional, money damages would be available for any time and expense associated with traveling to training sites, or for the loss of particular firearms.

Additionally, a TRO enjoining the ban on shooting ranges would be futile. By Plaintiffs' own statements, the TRO would expire before the mobile ranges would even be able to begin operations. And even if it lasted indefinitely, the City have to enact duly-promulgated zoning, licensing, environmental, and public safety regulations and standards that would govern the location and operation of the ranges before any range could open for business. This is a governmental prerogative that Plaintiffs themselves concede is legitimate and do not ask the Court to enjoin, and it is one that could not be completed before mid-October.

Finally, Plaintiffs stand little chance of success on the merits, and the City would suffer irreparable harm if Plaintiffs were granted the right to begin operating their ranges immediately and free of valid public safety regulation.

2

## STANDARD

A TRO "is an extraordinary remedy that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." Somerset Place, LLC v. Sebelius, 684 F.Supp.2d 1037, 1040  (N.D. Ill. 2010) (emphasis in original) (citing Mazurek v. Armstrong, 520 U.S. 968 (1997)).  A party seeking a TRO must demonstrate as a threshold matter that (1) its case has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if preliminary injunctive relief is denied.  Somerset Place, 684 F.Supp.2d at 1040.  If this burden is met, the court then considers the irreparable harm that the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm the moving party will suffer if relief is denied.  Id.  Finally, the court considers the public interest served by granting or denying the relief, including the effects on non-parties. Id.  The court then weighs all of these factors applying a "sliding scale" approach, under which the more likely it is that plaintiff will succeed on the merits, the less the balance of irreparable harm need favor plaintiffs' position.  Id.

## ARGUMENT

Plaintiffs fall far short of satisfying their burden of making a clear showing on each of the three threshold elements for a TRO.  Moreover, even if they did satisfy that showing, the harm to the City would clearly outweigh any harm to Plaintiffs.

**I.      There Is No Irreparable Harm, and An Adequate Remedy Exists.**

None of the harms alleged by Plaintiffs are irreparable.  An adequate remedy at law exists for each:

A.      Loss of right to possess particular firearms in mid-October.

Hespen and Brown fear that if they do not attain the one-hour of training they need to apply for a CFP before October 8 and 12, respectively, they will lose the ability to possess particular firearms they already own.  Plaintiffs' Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Preliminary Injunction ("Pl. Mem."), at 4-5.  This harm is hardly irreparable.  Plaintiffs need only travel to the suburbs over the next two months to attain the training.  Indeed, according to their affidavits, they already patronize shooting ranges in the suburbs in their own free time (Hespen travels to Kankakee, and Brown travels to Morton Grove).  Pl. Mem., Hespen Dec., ¶ 5; id., Brown Dec., ¶ 2.  The travel can hardly be deemed an irreparable harm when Plaintiffs freely choose to engage in it for recreational purposes.  Indeed, Ezell has already demonstrated that one can travel to the suburbs and receive the required CFP training.  Pl. Mem., Ezell Dec., ¶ 2.  If Brown and Hespen choose not to travel to the suburbs over the next two months for such training, that is a harm of their own creation.

And while the travel may entail additional expense, "[m]ere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to constitute irreparable injury.  See American Hospital Association v. Harris, 625 F.2d 1328, 1331 (7th Cir. 1980).  See also Blaich v. National Football League, 212 F.Supp. 319, 322-23 (S.D.N.Y. 1962) (no irreparable harm where plaintiffs, who complained of blackout of television program in their jurisdiction, could travel fifty miles to watch program; such travel was a mere "inconvenience" and not irreparable injury).  Indeed, any time and expense associated with such travel is compensable via money damages.  The belief that "money is never an adequate remedy for a constitutional wrong . . . is incorrect."  Campbell v. Miller, 373 F.3d 834,

4

835 (7th Cir. 2004).   Damages are a "normal" and "adequate" response to constitutional violations.  Id.[1]

Moreover, even if Plaintiffs were unable to obtain the training in time to apply for a CFP and thereby lose the ability to keep their particular firearms in Chicago, that loss would not be irreparable.  Plaintiffs could simply relocate those firearms outside the City and/or purchase a new firearm that would be registerable under the City's ordinance.  Either course presents merely an issue of money, which is fully compensable.

     B.    <u>Travel to suburbs to receive ongoing training</u>.

Hespen, Brown, and Ezell claim harm from not being able to practice firearms shooting in Chicago on an ongoing basis.  Pl. Mem., at 5-6.  For all the reasons just discussed, this harm is not irreparable.  Hespen and Brown already travel to the suburbs to shoot at gun ranges.  And Ezell can too and does so.  Pl. Mem., Ezell Dec., ¶ 2.[2]  The costs associated with this are compensable at law.

     C.    <u>Teaching about firearms</u>.

ISRA, SAF, Brown, and Hespen claim harm from being denied the ability to teach people about firearms.  Pl. Mem., at 6-7.  This harm is completely illusory.  Nothing in the City's ordinance prevents people from speaking or teaching about firearms.  The Code provision

---

[1] While it is true that in the First Amendment context, courts may find that the denial of speech rights constitutes irreparable injury, Plaintiffs' First Amendment claim here has not merit at all.  <u>See infra.</u>

[2] While the City understands that medical issues can, depending on their nature, complicate travel, Ezell's claim that travel to the suburbs is a hardship (Ezell Dec. ¶ 3) is vague and not supported by specific facts.  Nor does she indicate how frequently she believes she needs to receive training, and why she would be unable to travel to the suburbs on that schedule.

challenged here – 8-20-280 – merely prohibits the operation of shooting ranges.  The discharge

of a firearm at a shooting range is not speech; it is merely conduct that lacks even minimal

expressive component.  Plaintiffs' First Amendment claim should be rejected out of hand and is

hardly a basis for a TRO.

       D.     <u>Constructing and operating shooting ranges.</u>

Action Target claims harm from not being able to construct gun ranges in Chicago.  Pl.

Mem., at 6.   ISRA and SAF claim harm from not being able to operate gun ranges in Chicago.

<u>Id.</u> at 6-7.  These claimed injuries do not constitute irreparable harm.  Plaintiffs remain free to

engage in these activities elsewhere, and any lost profits or business opportunities stemming

from an inability to conduct these businesses in Chicago can be fully remedied via money

damages after a full trial on the merits.

## II.    There Is No Likelihood Of Success.

Plaintiffs cannot establish any likelihood of success.  First, the particular injunctive relief

they seek here (and in their preliminary injunction motion) is futile and would not redress the

claimed injury.  Second, Plaintiffs do not have a likelihood of success on the merits of their

claims.

### A.    The injunction Plaintiffs seek would be futile.

It is not an appropriate use of judicial power to issue an injunction where the injunction

would be futile.  <u>McKenzie v. City of Chicago</u>, 118 F.3d 552, 555 (7th Cir. 1997).  Here, granting

a TRO would be futile,  for two reasons.

<u>First</u>, the TRO would expire before the mobile ranges would be ready for operation.

Under Fed. R. Civ. P. 65(b)(2), a TRO would last for 14 days – <u>i.e.</u>, it would expire on

September 6.  However, Plaintiffs' affidavit indicates that the mobile ranges would not be ready until "the end" of September.  Pl. Mem., Versnel Dec., ¶ 7.  Thus, the TRO will not give Plaintiffs the relief they seek – the ordinance would resume operation before the ranges could open.  While it is true that under the Rule 65(b)(2), the TRO could be extended for an additional "like period" – i.e., 14 days – upon a showing of "good cause," such an extension would too be futile because it would enjoin the ordinance only until September 20 – which is before "the end" of September.

Second, even if the range ban were enjoined indefinitely, the City's core prerogative to regulate in the public safety would remain – and would effectively preclude the operation of the mobile ranges before mid-October.  The Second Amendment does not trump a municipality's right to ensure that a firearms range – especially a mobile one operating out of the back of truck – complies with the usual duly-enacted zoning, licensing, safety, and environmental regulations that govern any business in the City.  Indeed, Plaintiffs themselves "do not claim that gun ranges are beyond regulation."  Pl. Mem., at 12.

However, no such regulations currently exist, and, in particular, the City's Zoning Code does not even mention shooting ranges as a permissible primary use in any of its zoning classifications.  In the current state of affairs, therefore, the operation of mobile gun ranges would violate numerous City business regulations and could not lawfully open even if the range ban were enjoined.  Indeed, Plaintiffs' contract for use of a parking lot in the City itself declares that the rights granted thereunder are subject to local ordinances.  See Versnel Dec., Ex. B, at ¶ 12. Rather, if Plaintiffs were found to possess a Second Amendment right to gun ranges, numerous City Departments would then have to carefully devise and promulgate the appropriate safety

regulations, and the City Council would have to craft and enact new laws. Put simply, such comprehensive regulations could not be devised and enacted before mid-October – *and Plaintiffs do not even request that they be.* Therefore, granting the desired TRO would serve no purpose, because the mobile gun ranges still would not be able to operate before mid-October. And it goes without saying that even if Plaintiffs were to request the Court to affirmatively enjoin the City to pass such regulations before mid-October, the judicial intrusion into the City's core police power prerogative would turn the *status quo* on its head and be an abuse of discretion.

> **B.      Plaintiffs are likely to lose on the merits of their claims.**

As noted above, the City's prohibition on shooting ranges presents no First Amendment issue whatsoever, and the City would certainly prevail on that claim. Plaintiffs' Second Amendment claim is also unlikely to succeed on the merits. The core right of the Second Amendment is the right to possess a firearm in the home for purposes of self defense. See District of Columbia v. Heller, 128 S.Ct. 2783, 2817-18 (2008). The Second Amendment does not extend to every activity that might marginally enhance one's ability to exercise that right. For instance, while machine guns are undoubtedly effective for self defense, they are not protected under the Second Amendment because they are too dangerous. See Heller, 128 S.Ct. at 2815-17. Nothing in Heller indicates that a ban on shooting ranges is invalid under the Second Amendment. Indeed, the Court took pains to explain that may forms of arms-related activity outside the home, such as restrictions on arms carrying, on arms commerce, and on the types of places where arms may be brought are "presumptively lawful." Heller, 128 S.Ct. at 2817 n. 26. And the Court reiterated these points again this year in McDonald v. City of Chicago, 2010 WL 2555188, at *25 (2010). Given the serious public safety issues raised by the wide-spread

discharge of firearms at shooting ranges located in a dense urban environment, Plaintiffs stand little chance of success on their Second Amendment claim.

**III.    The City Will Suffer Irreparable Harm If Plaintiff Is Granted A Temporary Restraining Order.**

Plaintiffs clearly fail to demonstrate the threshold requirements for obtaining a TRO, and their motion should be denied on that basis alone.  Even if Plaintiffs had satisfied their threshold burden, however, the denial would still be appropriate because, under the sliding scale balancing test that would follow, the harm to the City of a TRO would clearly outweigh any harm to Plaintiffs.

As set forth above, Plaintiffs' motion should be denied because the Court cannot grant Plaintiffs the relief they seek, since they would still be subject to the City's right to regulate Plaintiffs' firearm ranges through zoning, safety, environmental, and other regulatory measures. Any meaningful injunction would therefore need to enjoin not only the City's enforcement of the range ban, but also the City's power to regulate in the interest of public health and safety.  With respect, the Court lacks this power, but even if the Court possessed it, the ensuing injunction would impose immediate and irreparable harm on the City and on the public.  For example, the City carefully regulates the use of all property in the City through its comprehensive zoning ordinance.  If Plaintiffs are allowed to place a mobile firearms range free of the City's zoning prerogative, they could select a property or a neighborhood which could dramatically increase the likelihood of injury or even death.  The City also has an extensive licensing system for all businesses operating in the City to ensure, among other things, that businesses and the products and services they offer are safe.  Again, an injunction preventing the City from devising

appropriate licensing standards and bringing the mobile ranges into its licensing system would

pose a clear safety risk to the public.  Without a proper assessment of the mobile firearms ranges,

the City could also suffer environmental harms, particularly if they are placed in the proximity of

sensitive environmental areas.

In balancing the hardships, there can be little question that the harm to the City and its

citizens from granting Plaintiffs the unfettered authority to erect mobile firearms ranges

anywhere in the City far outweighs any harm (if any) to Plaintiffs in having to obtain their

training in the suburbs.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, the Court should deny Plaintiffs' Motion for a

Temporary Restraining Order.

Respectfully submitted,


Mara S. Georges, Corporation Counsel for
  the City of Chicago

By: /s/ Andrew Worseck
Assistant Corporation Counsel

Michael A. Forti
Deputy Corporation Counsel
Mardell Nereim
Chief Assistant Corporation Counsel
Andrew W. Worseck
Assistant Corporation Counsel
William Macy Aguiar
Assistant Corporation Counsel
Rebecca Hirsch
Assistant Corporation Counsel
City of Chicago Department of Law

10

Constitutional and Commercial Litigation Division
30 N. LaSalle Street, Suite 1230
Chicago, IL 60602
312-744-9010

Dated:  August 23, 2010.

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned, an attorney of record for the City of Chicago, hereby certifies that on August 23, 2010, he served a copy of the **Defendant City of Chicago's Response to Plaintiffs' Motion for Temporary Restraining Order** along with this certificate of service, on:

David G. Sigale
Law Firm of David G. Sigale, P.C.
Corporate West 1
4300 Commerce Court, Suite 300-3
Lisle, IL  60532

Alan Gura
Gura & Possessky, PLLC
101 N. Columbus Street, Suite 405
Alexandria, VA  22314

by electronic means pursuant to Electronic Case Filing (ECF), and via hand delivery.


<u>/s/ Andrew Worseck</u>

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.0.3
### Eastern Division

Rhonda Ezell, et al.

     Plaintiff,

v.          Case No.: 1:10–cv–05135
            Honorable Virginia M. Kendall

City Of Chicago

      Defendant.

# NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, August 23, 2010:

   MINUTE entry before Honorable Virginia M. Kendall:Temporary restraining order hearing held on 8/23/2010. Ruling set for 8/24/2010 at 09:30 AM.Advised in open court notice(tsa, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.0.3**
**Eastern Division**

Rhonda Ezell, et al.

                      Plaintiff,

v.                                Case No.: 1:10–cv–05135
                                Honorable Virginia M. Kendall

City Of Chicago

                      Defendant.

# NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Tuesday, August 24, 2010:

      MINUTE entry before Honorable Virginia M. Kendall: Temporary restraining order hearing held on 8/24/2010. Plaintiff's motion for TRO [11] is denied without prejudice for the reasons stated on the record in open court. Minute entry [13] is stricken. Plaintiff's motion for preliminary and permanent injunction [4] is briefed as follows: Responses due by 9/20/2010 Replies due by 9/27/2010. Preliminary Injunction hearing set for 10/1/2010 at 01:00 PM. Defendant's oral motion to keep the previous schedule is denied. Any discovery shall be complete by 9/13/2010. Advised in open court notice(tsa, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.1.1
### Eastern Division

Rhonda Ezell, et al.

                     Plaintiff,

v.                                  Case No.: 1:10–cv–05135
                                  Honorable Virginia M. Kendall

City Of Chicago

                     Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, September 2, 2010:

      MINUTE entry before Honorable Virginia M. Kendall:Initial status hearing set for 11/17/2010 @ 9:00 a.m. Joint Status Report due by 11/10/2010. (See Judge Kendall's web page found at www.ilnd.uscourts.gov for information about status reports). The parties are to report on the following: (1) Possibility of settlement in the case; (2) if no possibility of settlement exists, the nature and length of discovery necessary to get the case ready for trial. Plaintiff is to advise all other parties of the Court's action herein. Lead counsel is directed to appear at this status hearing.Mailed notice(tsa, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RHONDA EZELL, et al.,      ) | Case No. 10-CV-5135 |
|      ) | |
| Plaintiffs,      ) | |
|      ) | EMERGENCY MOTION TO QUASH |
| v.      ) | DEPOSITION SUBPOENAS *DUCES* |
|      ) | *TECUM* |
| CITY OF CHICAGO,      ) | |
|      ) | |
| Defendant.      ) | |

**PLAINTIFFS' EMERGENCY MOTION TO QUASH DEPOSITION SUBPOENAS *DUCES TECUM***

COME NOW the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and through undersigned counsel, and move pursuant to Fed. R. Civ. Proc. 26(c) and 45 for the entry of an Order quashing any deposition subpoenas *duces tecum* or other request for production of documents that may have been served on Blue Line Corporation and/or Accurate Perforating, Inc.  FURTHER, Plaintiffs respectfully reserve the issue of sanctions.

Dated: September 10, 2010           Respectfully submitted,

Alan Gura (admitted *pro hac vice*)     David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC             Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405    4300 Commerce Court, Suite 300-3
Alexandria, VA 22314               Lisle, IL 60532
703.835.9085/Fax 703.997.7665      630.452.4547/Fax 630.596.4445

By:____/s/ Alan Gura_____    By: _____/s/ David G. Sigale_____
        Alan Gura                        David G. Sigale

                                   Attorneys for Plaintiffs

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the Plaintiffs, hereby certifies that on September 10, 2010, he served a copy of the above Motion, and this certificate of service, on:

Andrew W. Worseck, Esq.
City of Chicago Department of Law
30 North LaSalle Street, Suite 1230
Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF).


_____/s/ David G. Sigale_____
David G. Sigale

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, *et al*, | ) | Case No. 10-CV-5135 |
| | ) | |
| Plaintiffs, | ) | MEMORANDUM OF POINTS AND |
| | ) | AUTHORITIES IN SUPPORT OF |
| v. | ) | EMERGENCY MOTION TO QUASH |
| | ) | UNSERVED DEPOSITION SUBPOENAS |
| CITY OF CHICAGO, | ) | DUCES TECUM |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
EMERGENCY MOTION TO QUASH UNSERVED DEPOSITION SUBPOENAS *DUCES TECUM***

COME NOW the Plaintiffs, Rhonda Ezell, Joseph I. Brown, William Hespen, Action Target, Inc., Second Amendment Foundation, Inc., and Illinois State Rifle Association, by and through undersigned counsel, and submit their Memorandum of Points and Authorities in Support of their Emergency Motion to Quash Unserved Deposition Subpoenas *Duces Tecum*.

Dated: September 10, 2010                Respectfully submitted,

Alan Gura (admitted pro hac vice)        David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                   Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405        4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                     Lisle, IL 60532
703.835.9085/Fax 703.997.7665           630.452.4547/Fax 630.596.4445

By:_____/s/ Alan Gura_____      By: _____/s/ David G. Sigale_____
           Alan Gura                                David G. Sigale

                                          Attorneys for Plaintiffs

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

In one hour from the noticed time of this motion, Defendant intends to begin what promises to be an extraordinarily lengthy and intrusive deposition in Boston, Massachusetts, on a vast array of requested documents – without having given Plaintiffs *any* notice of the subject subpoenas *duces tecum*.  And on next Monday, September 13, 2010, it promises to repeat this event with another third-party deposition in Chicago.

This crystal clear violation of Rules 30 and 45 must be immediately enjoined.  Proper and complete notices of subpoenaed depositions, including subpoenaed documents, are not optional.

**STATEMENT OF FACTS**

The following facts are presented in the attached declaration of Plaintiffs' counsel.

As the Court may recall, Plaintiffs have contracted with Blue Line Corp. of Sudbury, MA, to provide a mobile firearms training range.  On September 1, Defendant served a "Notice of Deposition of Blue Line Corp." on Plaintiffs. The notice did not contain any request for documents, nor was any subpoena *duces tecum* served on Plaintiffs.

The parties, and the deponent's principal, Mr. Jerry Tilbor, agreed to schedule the deposition in Boston, MA at 11:00 a.m. Eastern Time, 10:00 a.m. Chicago Time, today.

Late last evening, following the Rosh Hashannah holiday (which Mr. Tilbor and Plaintiffs' counsel all celebrate), Plaintiffs' counsel called Mr. Tilbor to confirm the deposition. It quickly became apparent that Mr. Tilbor was served with substantial document requests, many of

1

which sound abusive from his description, although counsel has never seen the requests and Mr. Tilbor was not in a position to provide them. Counsel immediately called Defendant's counsel, Mr. William Aguiar, to meet and confer regarding the situation.

During the course of the conversation, it became apparent that not only were Plaintiffs not served with the subpoenas for the Blue Line Deposition, Plaintiffs were also not served with the subpoenas for Monday's deposition of another third party, Accurate Perforating, which leased to Plaintiffs the land on which their range would be situated.

Following service of Defendant's discovery on Accurate Perforating, Accurate gave notice of the lease's termination, effective October 31.  Plaintiffs still have possession of the land at this time, and through October 31, which is sufficient to cover the city's registration deadlines at issue in the case, and other suitable land is readily available and should be easily obtained – *if* Plaintiffs' landlords are not immediately hit with volumes of intrusive discovery. At the over five hour deposition of Plaintiff Second Amendment Foundation's Director of Operations, Julianne Versnel, Defendant's counsel, Mr. Andrew Worsack, intimated that Accurate's leasing land to Plaintiffs would jeopardize Accurate's own business operations.[1]

Mr. Aguiar read to Plaintiffs' counsel over the phone the requested discovery of Blue Line, but counsel did not get to discuss the requested discovery of Accurate. The discovery requested of Blue Line is vast, demanding virtually every document related to Blue Line's

---

[1] Defendant has also served deposition notices with substantial document requests on three third-party providers of range training. Plaintiffs were also served with substantial written discovery, which they were given barely 36 hours to comply with, and additional written discovery is now threatened. And in total, Defendant noticed (so far) 11 depositions in 13 days.

business for the last five years. Counsel can only imagine, based on the questioning of Ms. Versnel, what the city is demanding of Accurate.

At this writing, counsel must board an airplane for Boston in less than five hours, to attend a deposition of a party that includes a substantial demand for production of documents, and has just heard of the existence of this demand. Counsel has had no time to study this demand, prepare questions about its scope, object to it, or seek relief. Opposing counsel suggested that counsel should simply object on the record and telephone chambers from the deposition if there is a problem. Plaintiffs' counsel believe that telephoning chambers is the absolute last resort in any discovery dispute, and this motion is a better way of enforcing the plain and unambiguous requirements of Rule 45, which have not been met, and which are causing Plaintiffs, and counsel, substantial prejudice.

## **ARGUMENT**

Fed. R. Civ. Proc. 30(b)(2) provides:

> If a subpoena *duces tecum* is to be served on the deponent, the materials designated for production, as set out in the subpoena, *must* be listed in the notice or in an attachment.

(emphasis added).

Fed. R. Civ. Proc. 45(b) provides:

> If the subpoena commands the production of documents, electronically stored information, or tangible things . . . then before it is served, a notice *must* be served on each party.

(emphasis added).

There is nothing optional about these requirements. As the 1991 commentary explaining the notice provision of Rule 45 explains:

3

A provision requiring service of prior notice pursuant to Rule 5 of compulsory pretrial production or inspection has been added to paragraph (b)(1). The purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things. Such additional notice is not needed with respect to a deposition because of the requirement of notice imposed by Rule 30 or 31. But when production or inspection is sought independently of a deposition, other parties may need notice in order to monitor the discovery and in order to pursue access to any information that may or should be produced.

In other words, the Rules are designed to ensure that *no* subpoena *duces tecum* be effective, regardless of whether it is contained as part of a deposition or otherwise, unless the parties have been served. "[C]ompliance with the notice provision is not a mere formality . . . failure to serve other parties with the subpoena *duces tecum* renders the present notice insufficient." *Callanan* v. *Riggers & Erectors, Inc.*, 149 F.R.D. 519, 520 (D.V.I. 1992).

And "'prior notice' means prior to service." *Biocore Med. Techs., Inc.* v. *Khosrowshahi*, 181 F.R.D. 660, 667 (D. Kan. 1998).  "The Rule does not mandate mere notice of the service of any subpoena *duces tecum* but rather requires *prior notice* of such commanded production of documents."  *Anderson* v. *Gov't of the V.I.*, 180 F.R.D. 284, 291 (D.V.I. 1998). Reading Plaintiffs' subpoena late at night on the eve of the deposition is *not* satisfactory in the slightest.  Nor is any sort of limitation on the documents acceptable:

> [Plaintiff's] violation of Rule 45 deprived the defendants of the opportunity to object to the subpoenas. [Plaintiff] contends that any prejudice to the defendants was negated by its offer to stipulate not to use some of the subpoenaed documents. But a party may not ignore Rule 45's requirements and then, when caught, dictate the terms under which the subpoenaed materials will be used.

*Judson Atkinson Candies, Inc.* v. *Latini-Hohberger Dhimantec*, 529 F.3d 371, 387 (7th Cir. 2008); *see also Benitez* v. *Am. Std. Circuits, Inc.*, 2009 U.S. Dist. LEXIS 36359 (N.D. Ill. March 23, 2009).

Defendant's counsel offered that Plaintiffs should not object to not being served with

the subpoena, since it is not their discovery that is being sought. This is nonsensical. Rule 45

applies to requests from third parties, and the cases apply the Rule's clear mandate: discovery

cannot be sought, from *anyone*, without serving the parties. The prejudice to Plaintiffs is plain:

they have had no opportunity at all to object, or to prepare for the deposition if it is conducted

on the basis of the unserved subpoenas.

Under identical circumstances, the Eastern District of Pennsylvania held an attorney

who failed to serve third–party subpoenas on opposing counsel was "mistaken in asserting a

'no harm, no foul' defense." *Spencer* v. *Steinman*, 179 F.R.D. 484, 489 (E.D. Pa. 1998), *on*

*reconsideration*, 1999 U.S. Dist. LEXIS 23387 (E.D. Pa. Feb. 25, 1999).

> The risks attached to the misuse of the subpoena power are great. Under this delegation
> of public power, an attorney is licensed to access, through a non-party with no interest
> to object, the most personal and sensitive information about a party. By failing to
> receive prior notice of the information sought from the non-party, a party is deprived of
> its greatest safeguard under the Rule, i.e., the ability to object to the release of the
> information prior to its disclosure. Therefore, the loss of the opportunity to object prior
> to the release of the information caused injury to [the unserved party] regardless of
> whether the information ultimately was turned over to his counsel.

*Id.*; *United States* v. *Santiago-Lugo*, 904 F. Supp. 43, 47 (D.P.R. 1995). Moreover, "[w]hen the

[subpoena] power is misused, public confidence in the integrity of the judicial process is

eroded. Therefore, the failure to provide prior notice to [opponent] of the subpoenas to non-

parties also caused injury to the public." *Spencer*, 179 F.R.D. at 489 (footnote omitted).

Plaintiffs do not suggest that the failure to provide them notice was deliberate. We take

opposing counsel at his word that this was a clerical oversight.  *However*, what is not an

oversight is the insistence on enforcing the subpoena, necessitating counsel to be up at night

drafting this motion hours before the first improper deposition. The issue of sanctions is

respectfully reserved.

## **CONCLUSION**

Plaintiffs respectfully pray that the motion be granted and that the unserved deposition subpoenas *duces tecum* be quashed. Defendant may take its deposition of these parties without the documents, or not at all.

Dated: September 10, 2010                    Respectfully submitted,

Alan Gura (admitted pro hac vice)        David G. Sigale (Atty. ID# 6238103)
Gura & Possessky, PLLC                       Law Firm of David G. Sigale, P.C.
101 N. Columbus Street, Suite 405        4300 Commerce Court, Suite 300-3
Alexandria, VA 22314                            Lisle, IL 60532
703.835.9085/Fax 703.997.7665           630.452.4547/Fax 630.596.4445

By:____/s/ Alan Gura_____     By:    ____/s/ David G. Sigale_____
       Alan Gura                                             David G. Sigale

                                                                Attorneys for Plaintiffs

6

**CERTIFICATE OF SERVICE**

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on September 10, 2010, he served a copy of the above Memorandum of Points and Authorities and this certificate of service, on:

> Andrew W. Worseck, Esq.
> City of Chicago Department of Law
> 30 North LaSalle Street, Suite 1230
> Chicago, IL 60602

by electronic means pursuant to Electronic Case Filing (ECF).


　　　　　/s/ David G. Sigale
　　　　　David G. Sigale

7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-CV-5135 |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF ALAN GURA |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## DECLARATION OF ALAN GURA

I, Alan Gura, am competent to state, and declare the following based on my personal

knowledge:

1.      As the Court may recall, Plaintiffs have contracted with Blue Line Corp. of

Sudbury, MA, to provide a mobile firearms training range.

2.      On September 1, Defendant served a "Notice of Deposition of Blue Line Corp."

on Plaintiffs. The notice did not contain any request for documents, nor was any

subpoena duces tecum served on Plaintiffs.

3.      The parties, and the deponent's principal, Mr. Jerry Tilbor, agreed to schedule the

deposition in Boston, MA at 11:00 a.m. Eastern Time, 10:00 a.m. Chicago Time,

today.

4.      Late last evening, following the Rosh Hashana holiday (which Mr. Tilbor and

Plaintiffs' counsel all celebrate), I called Mr. Tilbor to confirm the deposition.

5.    During the conversation, it quickly became apparent that Mr. Tilbor was served

with substantial document requests, many of which sound abusive from his

description, although I have never seen the requests and Mr. Tilbor was not in a

position to provide them to me.

6.    I immediately called Defendant's counsel, Mr. Aguire, to meet and confer

regarding the situation. During the course of the conversation, it became apparent

that not only were we not served with the subpoenas for the Blue Line Deposition,

we were also not served with the subpoenas for Monday's deposition of another

third party, Accurate Perforating, which leased to Plaintiffs the land on which the

range would be situated.

7.    Following service of Defendant's discovery on Accurate Perforating, Accurate

gave notice of the lease's termination, effective October 31. Plaintiffs still have

possession of the land at this time, and through October 31, which is sufficient to

cover the city's registration deadlines at issue in the case, and other suitable land

is readily available and should be easily obtained – *if* Plaintiffs' landlords are not

immediately hit with volumes of intrusive discovery. At the over five hour

deposition of Plaintiff SAF's Director of Operations, Julianne Versnel,

Defendant's counsel, Mr. Worsack, intimated that Accurate's leasing land to

Plaintiffs would jeopardize Accurate's own business operations.[1]

---

[1] Defendant has also served deposition notices with substantial document requests on three third-party providers of range training. Plaintiffs were also served with substantial written discovery, which they were given barely 36 hours to comply with, and additional written discovery is now threatened. And in total, Defendant noticed (so far) 11 depositions in 13 days.

8.    Mr. Aguire read to me over the phone the requested discovery of Blue Line, but we did not get to discuss the requested discovery of Accurate. The discovery requested of Blue Line is vast, demanding virtually every document related to Blue Line's business for the last five years. I can only imagine, based on the questioning of Ms. Versnel, what the city is demanding of Accurate.

9.    At this writing, I must board an airplane for Boston in under five hours, to attend a deposition of a party that includes a substantial demand for production of documents, and I have just heard of the existence of this demand. I have had no time to study this demand, prepare questions about its scope, object to it, or seek relief.

10.   Opposing counsel suggested that I should simply object on the record and telephone chambers from the deposition if there is a problem. I believe that telephoning chambers is the absolute last resort in any discovery dispute, and this motion is a better way of enforcing the plain and unambiguous requirements of Rule 45, which have not been met, and which are causing my clients, and me, substantial prejudice.

I declare under penalty of perjury that the foregoing is true and correct.

This the 10th day of September, 2010.

_____
Alan Gura

CERTIFICATE OF SERVICE

The undersigned, an attorney of record for the plaintiffs, hereby certifies that on September 10, 2010, he served a copy of the above Declaration, and this certificate of service, on:

William Macy Aguiar
City of Chicago Department of Law
30 N. LaSalle Street, Suite 900
Chicago, IL 60602


by electronic means pursuant to Electronic Case Filing (ECF).


/s/ Alan Gura
Alan Gura

## UNITED STATES DISTRICT COURT
### FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 4.1.1
### Eastern Division

Rhonda Ezell, et al.

                              Plaintiff,

v.                                         Case No.: 1:10–cv–05135
                                           Honorable Virginia M. Kendall

City Of Chicago

                              Defendant.

---

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Friday, September 10, 2010:

      MINUTE entry before Honorable Virginia M. Kendall:Emergency Motion by Plaintiffs Action Target, Inc., Joseph I. Brown, Rhonda Ezell, William Hespen, Illinois State Rifle Association, Second Amendment Foundation, Inc. to quash Unserved Subpoenas Duces tecum [21] is denied for the reasons stated on the record in open court.Advised in open court notice(tsa, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.