# United States District Court
## Northern District of Illinois – <span style="color:red">CM/ECF LIVE, Ver 4.1.1</span> (Chicago)
## CIVIL DOCKET FOR CASE #: 1:10–cv–05135
### *Internal Use Only*

Ezell et al., v. City of Chicago
Assigned to: Honorable Virginia M. Kendall
Case in other court:  10–03525
Cause: 42:1983 Civil Rights Act

Date Filed: 08/16/2010
Jury Demand: None
Nature of Suit: 950 Constitutional – State Statute
Jurisdiction: Federal Question

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 09/15/2010 | 32 | 2 | MEMORANDUM by City Of Chicago in Opposition to motion for temporary restraining order,, 25 (Attachments: # 1 Exhibit A–C, # 2 Exhibit D, # 3 Exhibit E–K, # 4 Exhibit L–P)(Aguiar, William) (Entered: 09/15/2010) |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **EZELL, ET AL.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-CV-5135** |
| | ) | **Judge Virginia M. Kendall** |
| **CITY OF CHICAGO,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER**

Defendant City of Chicago (the "City"), by its attorney, Mara S. Georges, Corporation Counsel for the City of Chicago, hereby submits its Memorandum in Opposition to Plaintiffs' Second Motion for a Temporary Restraining Order.

**INTRODUCTION**

In their third emergency motion filed in the last two weeks, and their second motion for a temporary restraining order, Plaintiffs claim that the potential arrival of a mobile firing range on September 24 somehow creates irreparable harm. On August 24, 2010, this Court found that Plaintiffs had not shown that they would suffer irreparable injury because they had the ability to get training outside the borders of the City. *See* Transcript of Proceedings dated August 24, 2010, attached hereto as Exhibit A, at 75. The arrival of a mobile training range on September 24 does not change that finding. A mobile range might be a potential remedy for the alleged harm Plaintiffs claim to suffer, but the remedy cannot possibly make the alleged harm irreparable. Therefore, as explained below, Plaintiffs cannot show that they will suffer irreparable harm or that they have an inadequate remedy at law if they were to prevail on the merits of this case. In addition, Plaintiffs do

not have a likelihood of prevailing on the merits, and, in any event, the balance of harms and the public interest weigh heavily against allowing firing ranges into the City before any final decision on the merits.  This is particularly true in this case, where the discovery that has taken place shows that Plaintiffs have no careful plans on where they will place the mobile range and how they will run it.

## FACTUAL BACKGROUND

The mobile shooting range will "be operated by SAF in conjunction with ISRA's state-certified firearms trainers."  Declaration of Julianne Versnel dated August 15, 2010, attached as Exhibit B, ¶ 6.  However, SAF has never managed or operated a shooting range.  Deposition of Julianne Versnel, attached as Exhibit C, at 25.[1]  SAF will not staff any employee to the range, and it has not even decided who at SAF will oversee the range from afar.  *Id.* at 65-66.  SAF claims that ISRA will be in charge of operating the range and training customers.  *Id.* at 41-44.  But SAF does not know whether ISRA has ever operated a mobile range before.  *Id.* at 34.  In fact, ISRA has not.  Deposition of Richard Pearson, attached as Exhibit D, at 36.  Nor does SAF know who at ISRA will be responsible for what happens at the range, what rules the ISRA range master would apply, or what state, county, or local laws would apply.  Ex. C at 42, 43, 124-26.[2]  There are no written agreements between SAF and ISRA regarding the mobile range.  Ex. D at 56.  Indeed, ISRA does not have a single document relating to the endeavor with SAF.  *Id.* at 51.

---

[1]  Indeed, prior to this case, SAF had never even contracted for a mobile shooting range.  Ex. C at 24.  It also does not know whether it needs a license to operate a shooting range in Illinois, nor did it try to find out.  *Id.* at 30-31.

[2]  For its part, ISRA never attempted to find out whether SAF had any prior experience with operating a mobile range.  Ex. D at 102.

Aside from agreeing to help run the range, ISRA has not discussed with SAF "any specifics about specific roles that ISRA would play" at the range. *Id.* at 57.   While Mr. Pearson, ISRA's Executive Director, testified that ISRA will in fact set the safety protocols for the mobile range (*id.* at 68, 99-100), he has yet to do so (*id.* at 68) and has never done so for a mobile range.  *Id.* at 36, 69.[3] Nor has he "spoken to anyone that has any experience in operating a mobile shooting range or being a range master . . . or a trainer at a mobile shooting range."  *Id.* at 106.  And while "[t]he layout of the particular range" impacts what the rules of the range will be (*id.* at 27-28), Mr. Pearson has never even seen a mobile range.  *Id.* at 36, 68-69.  Nor has he communicated with Blue Line, the supplier of the mobile range, about it, and does not know whether it has ever been used for civilian training. *Id.* at 61, 104, 113-14.  He also has not visited the site where the range would be placed, and he does not know where on the site it would be placed.   *Id.* at 111-12.   Moreover, the ISRA person responsible for inspecting the trailer and replacing worn insulation and bullet traps so that bullets will not escape the trailer will "[p]robably not" have done those tasks before on a mobile range.  *Id.* at 183-84.

Other critical gaps in the protocol remain.  For instance, SAF and ISRA have not discussed how customers will be armed.  *Id.* at 70.  According to SAF, "[t]he range would not supply firearms" and customers will have to bring their own.  Ex. C at 53, 123.  ISRA, on the other hand, testified that the range *will* supply the arms and that customers *will not* be allowed to bring their own.  Ex. D at 70.  Moreover, SAF has not determined what "logistics" would be used to respond to crowds sitting in the parking lot outside the range with their weapons.  Ex. C at 123-24.  For his part, Mr. Pearson "ha[d] no idea" whether customers bringing their own weapons would be turned away.  Ex. D at 122.

---

[3] Further, Mr. Pearson is not a state-licensed firearms instructor.  Ex. D at 42-43.

Further, Mr. Pearson testified that port-o-potties would be provided to allow customers to wash lead residue from their hands that can "penetrate their skin." *Id.* at 153. But he had not contacted any port-o-potty providers (*id.* at 180), and Larry Cohen, the Chairman of Accurate Perforating, testified that port-o-potties would not be permitted on the Accurate site. Deposition of Larry Cohen, attached as Exhibit E, at 63.

Problems also beset the two locations chosen by Plaintiffs to operate the range. SAF asserts that it has leased land from Accurate Perforating. Ex. B, ¶ 5. However, Mr. Cohen, testified that Accurate does not own the property, and that the lease (even if valid) merely grants the right to store the trailer, but not to open it to the public. Ex. E, at 40, 42, 64-65, 100-01. Indeed, the lease states that its "purpose" is "storage" for "one trailer." Ex. B, Ex. B thereto, at 1.[4]

Plaintiffs now assert that they have just leased a second location (at 6300-6400 South Bell) to operate the trailer. Declaration of Julianne Versnel dated September 12, 2010, attached as Exhibit F, ¶¶ 10-11.[5] However, the purported lease is not signed by the property owner. *Id.* at Ex. D. Moreover, Plaintiffs' description of the site as "industrial" is grossly misleading. Plaintiffs' Memorandum of Points and Authorities ("TRO Mem."), at 12. While noting that one side borders a railroad yard, they omit that a swath of single-family homes spans another side, and that three

---

[4] Moreover, the lease states that SAF has "examined and knows the condition of the Premises." Ex. B at Ex. B, ¶ 2. In fact, SAF has never visited the property (JV Dep, at 106), much less examined it. Ex. C at 140-41. Ms. Versnel could not even recall whether she has ever seen a photograph of the location. *Id.* at 128. She does not know whether the parcel is a parking lot, or something else (*id.* at 133) or whether it is surrounded by fences or gates. *Id.* at 192. And SAF's contract with Blue Line Corporation for provision of the trailer states that SAF's "authorized agent" – namely, Ms. Versnel – will designate a place on the site where the trailer can be safely placed. Ex. B at Ex. A, ¶¶ 2.C., 5.B. However, Versnel has not done this, either. Ex. C at 106-07. The Blue Line contract further requires SAF to acquire adequate insurance to cover its employees, but SAF has not approached any insurance carriers. *Id.* 110-11.

[5] The City has not yet had the opportunity to conduct discovery regarding this new location.

4

schools and three churches are within mere blocks of the site.[6]

ISRA has not talked to anyone at the City regarding the mobile range. Ex. D at 57, 64. It has made no attempt to see what Chicago zoning, building code, safety services, or environmental provisions would apply to the range. *Id.* at 103-05. Nor has it inquired whether a building permit, business license, or City inspection would be necessary. *Id.* Mr. Pearson does not even know whether range staff will check whether customers are entitled under Chicago law to handle firearms. *Id.* at 119.[7]

Mr. Pearson contends that there is "a severe shortage or range time within a hundred miles of the City of Chicago." Declaration of Richard Pearson dated September 12, 2010, attached as Exhibit H, ¶ 7 . However, this claim is not supported by any documents. Ex. D at 49-51. Nor has Mr. Pearson learned this from range operators, seen any evidence of overcrowding at a range, or spoken with any customer who was delayed or turned away by a range. *Id.* at 80-81. Rather, Mr. Pearson contends the statement is supported by the experience of two individuals, but he acknowledged that they were able to get their training, and that he did not know how long they had to wait. *Id.* at 78-80. Mr. Pearson further contends that the statement is supported by the mere fact that there are 105,000 FOID card holders in Chicago, which means that there is a "tremendous" number of people seeking training. *Id.* at 78-79. But he acknowledged that he "[has] no idea" how

---

[6] *See* Exhibit G hereto (satellite image of neighborhood; site is bordered in red; single family homes are bordered in yellow; schools are bordered in blue; and churches are marked by green dots).

[7] In light of Plaintiffs' utter lack of knowledge and preparation, the half-baked mobile range plan appears to be the handiwork of Plaintiffs' counsel. Indeed, when Mr. Pearson was asked "[w]hose idea was it for the ISRA to partner with the SAF on this mobile shooting range project," he answered "I will skip that question" and "[t]hat would be in the privileged area." Ex. D at 96-97. Plaintiffs' counsel directed Mr. Pearson not to answer the question, and repeated the instruction when Mr. Pearson was asked "[w]as it Mr. Gura's idea or Mr. Sigale's idea?" *Id.* at 97.

many of these people need training by October 12, or even how many of them want to register a firearm in Chicago.  *Id.* at 80-81.  Indeed, he is "not aware of any instance where a Chicago resident who wanted to register a gun in Chicago was not able to obtain the necessary training at a range outside of Chicago."  *Id.* at 84-85.  Indeed, there are at least 19 range training providers with 50 miles of Chicago.  *See* Argument, Part II.B.2, *infra*.

The range ban has not impacted the information ISRA conveys in Chicago or the ways it coveys it.  Ex. D at 134.  The range ban prevents ISRA only from operating a facility where guns are discharged.  *Id.* at 133.  ISRA is free to open facilities for firearms discussion and education, and to distribute firearms information and literature.  *Id.* at 132-33.  In particular, ISRA is able to provide in Chicago the exact same firearms instruction it provides at its "picnic pavilion" in Bonfield, Illinois, which "isn't the range."  *Id.* at 20, 134.  The instruction includes safe gun use, storage, loading, posture, and aiming.  *Id.* at 16-17, 21-22.  It does not require students to actually handle firearms.  *Id.* at 18.  Indeed, handling is prohibited because of "safety" concerns:  instructors "don't know if [the students] have any experience" handling firearms, and "we don't want them fooling around with anything else other than listening to the instructor."  *Id.* at 18, 20.  Instead, instructors use various visual aids and literature.  *Id.* at 19.  And firearm grip, stance, side alignment, aim, and holstering can all be taught through use of a "blue gun," which is simply a plastic replica of a firearm given to students.  *Id.* at 21-22.

## STANDARD

A TRO is treated the same as a preliminary injunction.  Both are "an extraordinary and drastic remedy, which should not be granted unless the movant carries the burden of persuasion by a clear showing."  *Recycled Paper Greetings, Inc. v. Davis*, 533 F. Supp. 2d 798, 803 (N.D. Ill.

2008).  To prevail, the moving party must demonstrate "(1) a reasonable likelihood of success on the merits, and (2) no adequate remedy at law and irreparable harm if the preliminary relief is denied."  *Mil-Mar Shoe Co. v. Shonac Corp.*, 75 F. 3d 1153, 1156 (7th Cir. 1996).  "If the moving party clears these hurdles, the court must then consider: (3) the irreparable harm the non-moving party will suffer if the injunction is granted balanced against the irreparable harm the moving party will suffer if the injunction is denied, and (4) the public interest, i.e. the effect that granting or denying the injunction will have on non-parties."  *Id.*  The purpose of this balancing is "to minimize the cost of potential error."  *Girl Scouts of Manitou Council v. Girl Scouts of the U.S.A.*, 549 F.3d 1079,1086 (7th Cir. 2008).

## ARGUMENT

### I.  There Is No Irreparable Harm To Plaintiffs And Plaintiffs Have An Adequate Remedy At Law.

"A harm is 'irreparable' if it 'cannot be prevented or fully rectified by the final judgment after trial.'"  *Girl Scouts*, 549 F.3d at 1089.  Plaintiffs cannot meet their burden of showing that they will suffer irreparable harm. The individual plaintiffs in this case will not suffer any irreparable harm if they must go to the suburbs for one hour of range training in order to obtain a CFP.  Ms. Ezell has already completed her one hour of training at a firing range in the suburbs and has her CFP. Deposition of Rhonda Ezell, attached as Exhibit I, at 33, 36.   Mr. Brown goes to a suburban gun range in Morton Grove between 250 to 270 times a year in the winter months and has been to the ISRA range in Bonfield, Illinois about 10 times in the last year.  Deposition of Joseph Brown, attached as Exhibit J, at 14, 27.  At deposition, he testified that he had not completed his training because "I have not gotten around to it." *Id.*. at 44.  Mr. Hespen testified at deposition that he had

been to the ISRA range in Bonfield about 10 times in the past year, but had not yet completed the training required for a CFP because he had heard that the City's ordinance might be amended to allow retired police officers, like him, to get their CFP without training. Deposition of William Hespen, attached as Exhibit K, at 42-43. When he was asked if he would obtain the training outside the City if the ordinance was not amended, he said "Absolutely." *Id.* at 43. He is able to drive outside the City to go to firing ranges. *Id.* at 34. In fact, there are approximately nineteen gun ranges located in the suburbs, *see* Argument, Part II.B.2, *infra*, including ranges accessible by public transportation, and businesses in the City that offer classroom training and arrange for range training in nearby suburbs.[8] The arrival of a mobile range that will be here for only a few days and can only accommodate three people at a time will not change these facts or create any irreparable harm. Moreover, any harm resulting from a trip to the suburbs can be remedied with money damages after a trial. *See Campbell v. Miller*, 373 F.3d 834, 835 (7th Cir. 2004) (the belief that "money is never an adequate remedy for a constitutional wrong . . . is incorrect").

The other Plaintiffs also fail to meet their burden of showing irreparable harm. Neither SAF nor ISRA are able to identify any member who is unable to obtain range training in the suburbs in

---

[8] Plaintiffs claim that there is a shortage of range space in the Chicago area, but they have no evidence to support this claim. They rely on a Declaration from ISRA's Executive Director, Richard Pearson. *See* TRO Mem. at 2-3. At his deposition, however, Mr. Pearson admitted that he had no personal knowledge to support his statement, other than having heard that a few people who trained at one facility in Chicago had "scheduling problems," information he described as "hearsay," and that he counted all the FOID card holders in Chicago and assumed they would all need range training right away. He conceded, though, that he did not know how many were seeking training and that he had no knowledge of overcrowding at any ranges. *See* Ex. D at 78-81. Plaintiffs also rely on a declaration from the owner of a gun training facility located in the City, who stated that he has few options to train his clients at suburban ranges, not because there are not enough ranges, but because suburban ranges "are locking out Chicago-based instructors, so that they can keep the CFP training market for themselves." Declaration of Andre Queen dated September 12, 2010, attached as Exhibit L, ¶ 3. This doesn't mean that there is a shortage of range space, but rather that suburban range owners want to do the training themselves.

order to obtain a CFP.  They make the sweeping claim that all of their members in the City will lose the ability to register their guns without range training, *see* TRO Mem. at 2, but they make no effort to explain why these members have not or cannot obtain range training in suburban Chicago, like the individual plaintiffs.  Their failure to come forward with even one individual who cannot obtain range training is telling.[9]

Moreover, the organizations themselves will not suffer irreparable harm.  The Supreme Court has said that the  Second Amendment confers "an *individual* right to keep and bear arms."  *District of Columbia v. Heller*, 128 S. Ct. 2783, 2799 (2008) (emphasis added).  Organizations like SAF and ISRA do not have a Second Amendment right at all, much less a Second Amendment right to operate a gun range, and Plaintiffs cite no authority to the contrary.  In addition, Action Target, Inc., which designs and builds gun ranges, has no Second Amendment right to design and construct a gun range in Chicago.  Therefore, SAF, ISRA and Action Target will not suffer any harm, much less irreparable harm due to the ban on gun ranges. Again, the possible arrival of a mobile range does not change the fact that these entities are not suffering irreparable harm.

Plaintiffs have argued that any alleged violation of their Second Amendment rights constitutes irreparable harm.  They cannot cite any support for this radical claim.  The City  has not found even a single case in which a court has held that a violation of the Second Amendment itself constitutes irreparable harm.  Moreover, the Supreme Court in *McDonald v. City of Chicago*, 130 S. St. 3020 (2010), did not treat Second Amendment rights as an urgent matter.  Although the City's

---

[9] Plaintiffs also make the hyperbolic claim that without adequate training, "people get injured and killed," and assert that this amounts to irreparable harm.  This is speculation and does not constitute irreparable harm to any of Plaintiffs.  Moreover, the City has not denied anyone training; it requires training. Any injury that might result from lack of training is not caused by the City's ordinance.

ordinance was challenged in the case before it, after the Court held that the Second Amendment was

incorporated through the Fourteenth Amendment, it remanded the case to the lower courts without

striking down the City's ordinance.  *See id.* at 3050.  It could have struck down the ordinance itself,

or expedited the remand if there was any urgency.  Furthermore, McDonald involved the core

Second Amendment right to keep a handgun in the home for self defense.  If even the core right did

not merit immediate action, certainly the alleged peripheral right  to have a shooting range available

does not either.

> To the extent that any of Plaintiffs are relying on the First Amendment to claim irreparable

harm, their claim fails because the City's ordinance does not prevent any plaintiff from talking about

or teaching anything about guns.  The only thing the ordinance keeps plaintiffs from doing is

shooting guns at a gun range, and no court has ever held that shooting a gun is an activity protected

by the First Amendment.[10]  That makes sense, because shooting guns is not expressive activity.

> Plaintiffs attempt to make much of what they refer to as the "October 12 deadline," TRO

Mem. at 2, without acknowledging what the "deadline" actually is.  It is a benefit to people who

owned guns in violation of the previous law and want to obtain a CFP, not a detriment.  Section 8-

20-140(d)(2) of the City's Responsible Gun Owner Ordinance allows a person to obtain a CFP for

previously illegal firearms that were kept in the City but not registered under the City's prior

---

[10] Plaintiffs cite *Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999), for the proposition that gun training at a range is protected First Amendment speech.  *See* TRO Mem. at 7.  *Edwards* was an employment case in which the court concluded, at an early stage in the litigation, *id.* at 248,  that the plaintiff had stated a claim that he had been suspended from his employment in retaliation for "express[ing] his personal views on and advocacy of firearms safety," by teaching a gun safety course in his off-duty hours. *Id* at 238.  The court noted, in passing, that the instruction he provided was "presumably verbal as well as some written instructions accompanied by physical demonstrations."  *Id.* at 247.  The court, however, did not say that the physical demonstrations involved shooting a gun, nor did it hold that shooting a gun was expressive activity protected by the First Amendment.

ordinance.[11]  Surely, this Court cannot find irreparable harm results from a deadline for an amnesty period allowing individuals who were in violation of the previous law to comply with the new ordinance.  Moreover, this amnesty period does not apply to firearms owned by a Chicago resident that are kept outside of Chicago.  Section 8-20-140(d)(1) allows the individual who has firearms kept outside the City to apply for a CFP after bringing the firearm into the City.  In addition, Chicago Police Department regulations provide that anyone whose firearm registration expires before October 12, like Hespen, may submit an application for a CFP by October 12, 2010.  *See* City of Chicago Department of Police Rules and Regulations, Firearms - Chapter 8-20, Rule 5.3, attached as Exhibit M.  Moreover, although this deadline looms in Plaintiffs' view, it is a problem of Plaintiffs' own making, since training is readily available and Plaintiffs have failed identified who cannot obtain training by October 12.

In any event, the amnesty period does not affect the Second Amendment right to have a handgun in the home for self defense.  People are free to acquire firearms at any time in accordance with the ordinance and apply for a CFP within 5 days of taking possession of the firearm in the City.  *See* Chicago Mun. Code § 8-20-140(d)(1).  At the very worst, if some unidentified individual were to lose the right to apply for a CFP for a particular lawfully kept firearm, the loss of that firearm could be remedied by money damages.  That person would have an adequate remedy at law.  Neither

---

[11] That section provides:

> Notwithstanding any provision of this chapter to the contrary, a person has 90 days after the effective date of this 2010 ordinance to register a firearm, including a handgun, which had not been previously registered; provided that the person and firearm meet all the requirements of this ordinance.

Municipal Code of Chicago, 8-20-140(d)(2), attached as Exhibit N.

that person, nor any other person, would lose their Second Amendment right to acquire a handgun and apply for a CFP.

## II.      Plaintiffs Do Not Have A Likelihood of Success on the Merits.

### A.      Plaintiffs Cannot Prevail on Their First Amendment Claims.

As discussed above, Plaintiffs have no likelihood of prevailing on the merits of their First Amendment claims because the City's Ordinance does not place any restrictions whatsoever on speaking, teaching, learning, or communicating about guns, or otherwise prohibit Plaintiffs' expression of speech in any manner. The Ordinance's only prohibition is on the *activity* of actually shooting guns at a gun range within the City limits.

Not one court has ever held that the act of shooting a gun is an activity protected by the First Amendment. In fact, Plaintiffs themselves do not even advance this argument, instead arguing only broadly that "[g]un training is speech." TRO Mem, p. 10. But Plaintiffs can engage in, and in fact some already have received, all forms of gun training within the City, short of shooting a live firearm. Ms. Ezell testified that she attended a four-hour gun safety training class at Fidelity Investigative Training Academy ("Fidelity"), located in the City. Ex. I. at 38-39. Mr. Queen, the Executive Director of Fidelity, testified about the content of these training classes, stating that the instructors employ handouts, power points, and demonstrations to impart a great deal of information regarding the safe and responsible use of firearms. Deposition of Andre Queen, attached as Exhibit O, at 29-33. Likewise, Mr. Pearson testified that ISRA is free to open facilities for firearms discussion and education and to distribute firearms information and literature, including safe gun use, storage, loading, posture, and aiming, in Chicago. Ex. D at 16-17, 21-22, 132-34.

For this reason, Plaintiffs' reliance on *Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir.

1999), is entirely misplaced.   The *Edwards* court did not hold that shooting a gun was expressive activity protected by the First Amendment.  Rather, it held that advocacy of firearm safety, including teaching a gun safety course where information was presumably provided both verbally and through written instruction, was protected speech.  *Id*. at 247.  This is precisely the type of training that is available to all Chicago residents, and that Ms. Ezell received. Nothing in the Ordinance prevents, circumscribes, or interferes with this expression, and Plaintiffs' First Amendment claims therefore have no merit and no likelihood of success.

### B.   Plaintiffs Cannot Prevail on Their Second Amendment Claims.

#### 1.   The Organizational Plaintiffs Cannot Prevail on Any of Their Constitutional Claims.

Because the *Heller* Court only recognized the Second Amendment as protecting an *individual* right to keep and bear arms for purposes of self defense, *see* 128 S. Ct. at 2799, Plaintiffs SAF, ISRA, and Action Target do not possess any right protected by the Second Amendment.  They therefore have no likelihood of success on their Second Amendment claims.

#### 2.   The Individual Plaintiffs Have No Likelihood of Success on Their Second Amendment Claims.

Plaintiffs Ezell, Hespen, and Brown similarly have no likelihood of prevailing on their claims that the City's ban on firearms ranges violates their Second Amendment rights.  In *Heller*, the Supreme Court invalidated a District of Columbia law that banned possession of a handgun in the home for self-defense and required lawfully owned firearms in the home to be kept inoperable.  *Id*. at 2817-18.  In striking down the District's law, the Court did not identify what level of scrutiny applied to legislation implicating the Second Amendment right except to state that the District's handgun prohibition would fail constitutional muster "[u]nder any of the standards of scrutiny that

[the Court has] applied to enumerated constitutional rights." *Id.* at 2817.

Following incorporation of the Second Amendment right recognized in *Heller*, *see McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), the Seventh Circuit ruled that 18 U.S.C. § 922(g)(9), which prohibits individuals convicted of misdemeanor domestic violence from possessing firearms, passes constitutional muster. *See United States v. Skoien*, No. 08-3770, 2010 WL 2735747 (7th Cir. July 13, 2010) (en banc).   In upholding the categorical exclusion from firearm possession, the *Skoien* Court expressly declined to "get more deeply into the 'levels of scrutiny' quagmire," because it found that the goal of § 922(g)(9) -- to prevent "armed mayhem" -- is an important government objective and there is a substantial relation between § 922(g)(9) and that objective. *Id.* at *3.   In two subsequent cases,  the Seventh Circuit ruled that categorical exclusions from possession of firearms are subject to intermediate scrutiny, which requires that the challenged law must be "substantially related to an important governmental objective." *See United States v. Yancey*, No. 09-1138, 2010 WL 3447736, at *2 (7th Cir. Sept. 3, 2010) (ruling that 18 U.S.C. § 922(g)(3), which prohibits an individual who is an unlawful user of or an addict of any controlled substance from possession of a firearm, passes intermediate scrutiny); *United States v. Williams*, No.09-3174, 2010 WL 3035483 (7th Cir. Aug. 5, 2010) (holding that 18 U.S.C. § 922(g)(1), which prohibits felons from possessing firearms, passes intermediate scrutiny).

Although the Seventh Circuit has required that laws prohibiting an individual from possessing a firearm satisfy intermediate scrutiny, it has explicitly "reserve[d] the question whether a different kind of firearm regulation might require a different approach."  *Yancey*, 2010 WL 3447736, at *2; *see Williams*, 2010 WL 3035483, at *6 (examining the categorical exclusion from firearm possession "using the intermediate scrutiny framework without determining that it would

14

be the precise test applicable to all challenges to gun restrictions"). Thus, what level of scrutiny applies to the City's prohibition of firing ranges in its borders – which is *not* a categorical exclusion from possession of firearms – is a question of first impression.

Intermediate scrutiny is not the appropriate level of scrutiny for the Court to apply to the City's ban on firing ranges. Because the Seventh Circuit has only applied intermediate scrutiny to laws that absolutely prohibit an individual from possession of a firearm under any circumstance, it should not apply that standard to the City's ban on firing ranges which does not stop any citizen from exercising his or her Second Amendment right. The Court should instead review the firing range ban under either a "reasonable regulation" standard, which is the consensus in States that recognize a firearms right, *see* Adam Winkler, *Scrutinizing the Second Amendment*, 105 Mich. L. Rev. 683, 716-17 (2007), or the "undue burden" standard adopted to evaluate restrictions on a woman's constitutional right to an abortion. *See Yancey*, 2010 WL 3447736, at *3 (finding that prior state jurisprudence, as surveyed by Winkler, is relevant to assessing Second Amendment claims).

Under the "reasonable regulation" standard, the Court "identifies the underlying governmental objectives and weig[hs] those goals against the burden on the individual." *Id.*; *see, e.g., Benjamin v. Bailey*, 662 A.2d 1226, 1233 (Conn. 1995); *Robertson v. City & County of Denver*, 874 P.2d 325, 329-30 (Colo. 1994); *Mosby v. Devine*, 851 A.2d 1031, 1044 (R.I. 2004). The City's ban on the operation of firearms ranges within its borders easily meets the "reasonable regulation" standard. Firearms ranges pose considerable public safety, health, and environmental concerns, and the Chicago City Council has determined that these risks warrant a ban on the operation of ranges in the City. And SAF's proposal to bring a mobile range into the City raises heightened concerns because SAF does not have a fully-vetted plan that addresses the myriad public safety issues, not the

15

least of which is that the 6331 S. Bell location SAF has selected for operating the mobile range is directly across the street from single family homes and is in close proximity to an elementary school and a church.  *See* Statement of Facts, *supra*.

This substantial interest far outweighs any purported burden on Plaintiffs.  Ezell was able to obtain her one hour of range time in the Chicago suburbs and has legally registered her handgun with the City.  *See* Ex. I at 33, 36.  Hespen testified that he has traveled 56 miles each way to the ISRA shooting range in Bonfield, Illinois about 10 times in the past year and that he is able to drive outside the City to go to other firing ranges.  *See* Ex. K at 34, 42-43.  Indeed, Hespen stated  that he would "absolutely" travel outside the City to obtain his one hour of range training if necessary.  *Id.* at 34-25.  Brown similarly testified that he goes to a suburban range in Morton Grove, Illinois between 250 to 270 times a year and has also visited the ISRA Bonfield range about 10 times in the past year.  *See* Ex. J at 27.  Finally, there are at least 19 ranges in close proximity of the City.  *See, e.g.*, Ex. K at 56, 59, 61-63; Ex. J at 42-44; Ex. D at 40-41, 170-176; http://www.wheretoshoot.org, produced by the National Shooting Sports Foundation, attached as Exhibit P.  Plaintiffs therefore cannot claim that they are burdened in any significant way by traveling to the Chicago suburbs to obtain their one hour of range training.

The City's ban also easily satisfies the undue burden test, adopted by the Supreme Court in *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 878 (1992), for use in evaluating restrictions placed on a woman's constitutional right to abortion.  Under the undue burden standard, a state may enact legislation advancing its interests provided that legislation does not "place a substantial obstacle in the path" of an individual seeking to exercise her constitutional rights.  *Id.*  As discussed above, Plaintiffs' own actions demonstrate that the City has not placed "a substantial obstacle" in

16

Plaintiffs' paths by requiring they obtain their one hour of training outside the City.  Moreover, the large number of ranges within close proximity to the City eliminates any concern that the unidentified members of SAF or ISRA cannot obtain their one hour of range training.

As a result, Plaintiffs Ezell, Hespen, and Brown have no likelihood of success on the merits of their Second Amendment claims, and their request for a temporary restraining order therefore fails.

### III.   The Balance of Harms and the Public Interest Weigh Heavily Against Preliminary Relief.

Only if this Court finds that Plaintiffs have met their burden of showing irreparable harm, an inadequate remedy at law and likelihood of success on the merits, should it then balance Plaintiffs injury and likelihood of success on the merits against the possible injury to the City and the public interest.  *See*, *e.g.*, *Girl Scouts of Manitou*, 549 F.3d at1086.  The purpose of this balancing is "to minimize the cost of potential error."  *Id.*  Here, the lack of planning by Plaintiffs, as well as the potential for people to show up with firearms at mobile gun ranges at whatever place in the City someone chooses to place the range weighs heavily against granting interim relief in this case.

Plaintiffs are asking this Court to enjoin the enforcement of numerous provisions of the City's ordinance, including the provision making it unlawful to carry a handgun outside the person's home, *see* Chicago Mun. Code § 8-20-020,  to allow them to bring a mobile range into the City to be placed in locations they chose.  But if this Court were to enjoin the enforcement of the provision that bars gun ranges in the City, anyone, not just Plaintiffs, will be able to bring mobile ranges into the City.  Because the City has not allowed gun ranges in the City, it currently has no regulatory scheme for ranges.  More specifically, there is no provision in the Zoning Code allowing gun ranges

in appropriate areas; no provision in the Municipal Code and no regulations governing who may own and operate a gun range and how it should operate; and no environmental regulations even though gun ranges emit and dispose of lead, a hazardous substance.[12]  If this Court were to grant preliminary relief in this case, it would be allowing gun ranges in the City before the City had any opportunity to enact regulatory provisions.  This Court would be allowing anyone to bring in a gun range to any location, regardless of how irresponsible that person is, no matter where they chose to place it.  It would be allowing anyone, even gang members, to carry firearms to the range.  The dangers to the City, its public safety enforcement and the public interest are obvious and weigh against any preliminary relief in this case.

Plaintiffs have not carefully thought through the implications of their own ever-changing plans.  Plaintiffs, for example, have represented to this Court that they have a lease to place the mobile range on a lot next to a railroad.  *See* TRO Mem. at 5.  Plaintiffs failed, however, to let this Court know that although there is a railroad on one side of the lot, on the other side is a full block of single family homes, a church and an elementary school.  If the City were to allow any such property use in the area, the owners of the neighboring properties would be entitled to notice and an opportunity to be heard in accordance with due process.  Plaintiffs, however, ask this Court to issue an order that would force a firing range upon these single family homeowners, church-goers, and parents of elementary school children.  This Court should not do so.

Neither SAF nor ISRA has any firm plans for how they will operate the range.  Mr. Pearson,

---

[12] Plaintiffs may claim that the City should simply tell them what to do or create regulations immediately, but that is not the way local government works.  City officials do not willy-nilly pronounce regulations from the top of their heads.  Zoning and licensing, for example require action by the City Council, which takes time and must comply with due process.

18

Executive Director of ISRA, has not yet developed the safety protocol.  Ex. D at 68. He further testified that he had not discussed any specifics regarding operation of the range with SAF. Ex. D at 57, despite the fact that the complaint alleges that SAF would operate the range in conjunction with trainers from ISRA, *see* Complaint at ¶ 40.  While ISRA claimed it would have weapons at the range, Ms. Versnel of SAF testified at deposition that people would bring their own firearms.  Ex. C. at 123-24.  In any event, Plaintiffs seek to strike down the provision of the ordinance that prohibits carrying firearms, so this Court would be allowing anyone to carry firearms to ranges in the City, even if ISRA plans on having weapons at the range.

Finally, the mobile range from Blue Line will be here only for a few days, from September 24 to September 30, according to Mr. Tilbor, or October 1, according to Ms. Versnel. It has only three positions for shooting at any time.  At the most, it would only allow training of a limited number of people.  Any benefit to Plaintiffs is heavily outweighed by the harms to the City and to the public interest if injunctive relief is granted.

## CONCLUSION

For all the above reasons, Plaintiffs' *Ex Parte* Motion For a Temporary Restraining Order should be denied.

Date: September 15, 2010                     Respectfully submitted,

                                             MARA S. GEORGES,
                                             Corporation Counsel for the City of Chicago

                                             By:     /s/ William Macy Aguiar
                                                     Assistant Corporation Counsel

19

Michael A. Forti
Mardell Nereim
Andrew W. Worseck
William Macy Aguiar
Rebecca Alfert Hirsch
City of Chicago, Department of Law
Constitutional and Commercial Litigation Division
30 North LaSalle Street, Suite 1230
Chicago, Illinois 60602
(312) 744-9018 / 6975  / 7129 / 4216

Attorneys for Defendants

# Exhibit A

09:52:01

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RHONDA EZELL, et al.,                    Case No. 1:10-cv-05135

  Plaintiffs,                          Chicago, Illinois
                                         August 24, 2010
     v.                               Emergency Motion for TRO

CITY OF CHICAGO,

  Defendant.

----------------------------------

VOLUME 2
TRANSCRIPT OF EMERGENCY MOTION FOR TRO
BEFORE THE HONORABLE VIRGINIA M. KENDALL
UNITED STATES DISTRICT JUDGE

<u>APPEARANCES</u>:

For the Plaintiffs:     Gura & Possessky, PLLC
                        By:  Alan Gura
                        101 N. Columbus St., Ste. 405
                        Alexandria, VA 22314
                        (703) 835-9085

                               - and -

                        Law Firm of David G. Sigale, P.C.
                        By:  David G. Sigale
                        4300 Commerce Ct., Ste. 300-3
                        Lisle, IL 60532
                        (630) 452-4547

1

2

3   <u>APPEARANCES</u>:

4

5   For the Defendant:        Chicago Corporation Counsel
                              By:  Andrew W. Worseck, and
6                                  William M. Aguiar
                              30 N. LaSalle Street
7                             Chicago, IL 60602
                              (312) 744-2784

8

9   <u>COURT REPORTER</u>:        FEDERAL OFFICIAL COURT REPORTER
                              April M. Metzler, RPR, CRR, FCRR
10                            219 South Dearborn St., Rm. 2318-A
                              Chicago, IL 60604
11                            (312) 408-5154
                              April_Metzler@ilnd.uscourts.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Proceedings recorded by mechanical stenography; transcript
     produced by notereading.

09:53:08    1    intermediate scrutiny.

09:53:10    2         And so in looking at the cases that were presented to

09:53:12    3    me both orally and in the papers, I note that the plaintiffs'

09:53:19    4    position that strict scrutiny should apply is not supported in

09:53:24    5    any particular case as of yet.  I think this issue as to

09:53:28    6    whether the use of a weapon in a particular location comes

09:53:32    7    from the core value of the Second Amendment, as defined in

09:53:37    8    McDonald and Heller, is not set forth in any other subsequent

09:53:41    9    case to that or in that case in particular.

09:53:43   10         I think that the cases that have looked at it

09:53:47   11    subsequent to those cases have looked at a class of prohibited

09:53:50   12    individuals and they have looked at a class of weapons or they

09:53:57   13    have looked at, right, different type of weapons, such as the

09:54:01   14    obliterated serial number, the Third Circuit case.  And so

09:54:06   15    each of those cases that have looked at the scrutiny to be

09:54:08   16    applied in those settings have applied an intermediate

09:54:12   17    scrutiny.

09:54:12   18         And I think to be on the safe side, the Court is

09:54:16   19    inclined to apply an intermediate scrutiny, although I think

09:54:20   20    the City probably could make an argument that the lower level

09:54:27   21    of scrutiny is available to them still, although they haven't

09:54:31   22    really done that or certainly haven't elucidated that.

09:54:36   23         So we start then with an understanding, from my

09:54:38   24    perspective, that we are not looking at this from a strict

09:54:43   25    scrutiny standard but we are looking at it from an

09:54:46  1   intermediate scrutiny standard.

09:54:47  2        The City, though, has problems with that in that if

09:54:50  3   we are looking at time, place, manner restrictions, we have an

09:54:57  4   absolute ban on all firing ranges within the City.  We don't

09:55:01  5   have any details about where one might be placed or how one

09:55:05  6   might be placed.

09:55:06  7        So that is my analysis of your scrutiny standard.  So

09:55:11  8   moving forward I think that will be one main issue to address,

09:55:16  9   is the level of scrutiny to be applied.  This Court will apply

09:55:20  10  intermediate scrutiny today.

09:55:22  11       Now, have we irreparable injury and inadequate remedy

09:55:29  12  at law today?  I don't think so.  I don't think you have it

09:55:32  13  today.  I'll tell you why.

09:55:34  14       I think that right now under an intermediate scrutiny

09:55:39  15  standard what you have is you have the ability of your

09:55:41  16  plaintiffs, who are the individual plaintiffs, to move outside

09:55:45  17  of the borders of the city to get their training before

09:55:48  18  October 8th.  And so they do have a remedy and an avenue and

09:55:54  19  they have been doing that, according to their affidavits.

09:55:57  20       As far as the firing range, the mobile one, it can't

09:56:02  21  get here yet.  According to your own representations, it is a

09:56:08  22  contracted vehicle that looks like it's coming at the earliest

09:56:12  23  mid-September.  For that reason, there is no immediate as of

09:56:16  24  June -- or what is today -- August 24th injury that is

09:56:21  25  irreparable.

09:56:23  1       But that is a denial without prejudice, meaning that
09:56:27  2  it can be soon enough an irreparable injury.  And I think that
09:56:32  3  this changes my previous ruling yesterday about the
09:56:37  4  preliminary injunction, because I gave the City time to do
09:56:40  5  this discovery.  And now I see that it would much better
09:56:46  6  benefit the parties and the Court to address it on a much more
09:56:48  7  expedited basis.  And so I want to change my discovery
09:56:53  8  rulings, so that we get a completely briefed preliminary
09:56:58  9  injunction motion before the Court before that October 8th
09:57:02  10 ruling.
09:57:03  11       I also am saying to the plaintiffs, this is a denial
09:57:06  12 without prejudice.  This is one that you can bring again,
09:57:10  13 which should raise a concern on the City's part as far as this
09:57:14  14 intermediate scrutiny analysis, because when you apply it,
09:57:18  15 you'll see that we have some issues as to whether or not you
09:57:20  16 have any reasonable time, place, manner bases.
09:57:24  17       I also feel like the City needs to give me in future
09:57:28  18 filings a more elucidated basis for its reasons for
09:57:35  19 eliminating them within the borders.  It is so atypical from
09:57:41  20 the other cases that I read in that when we were looking at
09:57:45  21 restrictions in the 922 context, for example, we were saying,
09:57:49  22 If you're a felon, you can't have a weapon.  If you possess
09:57:53  23 this type of weapon, you can't.  If you have an obliterated
09:57:56  24 serial number, you can't possess this.  So we are very
9:57:59   25 categorically looking.

82

10:04:04    1    MR. GURA: Thank you, your Honor.

10:04:05    2    MR. WORSECK: Thank you, your Honor.

10:04:07    3    MR. AGUIAR: Thank you, your Honor.

10:04:08    4    MR. SIGALE: Thank you, your Honor.

10:04:09    5    (Concluded at 10:04 a.m.)

            6                   - - -

            7

            8

            9

           10

           11

           12           C E R T I F I C A T E

           13

           14    I certify that the foregoing is a correct transcript from

           15    the record of proceedings in the above-entitled matter.

           16

           17    /s/April M. Metzler, RPR, CRR, FCRR   August 24, 2010

           18    April M. Metzler, RPR, CRR, FCRR      Date

           19    Official Federal Court Reporter

           20

           21

           22

           23

           24

           25

# Exhibit B

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C- |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF |
| | ) | JULIANNE VERSNEL |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DECLARATION OF JULIANNE VERSNEL**

I, Julianne Versnel, am competent to state, and declare the following based on my personal knowledge:

1.      I am the Director of Operations of the Second Amendment Foundation ("SAF").

2.      SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including many in Chicago. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right to privately own and possess firearms, and the consequences of gun control.

3.      SAF members and supporters in Chicago are among the individuals who need immediate range training to maintain their ability to keep firearms for self-defense under Chicago's new firearms ordinance.

4.      Not every gun is suitable for every person. It is quite obviously better for potential gun owners, and in the interest of public safety, that prospective gun buyers experience a variety of guns, or at least, those guns they are considering, *before* actually making their purchases. And many people are introduced to shooting and gun ownership by visiting a range prior to deciding to purchase a gun.

5.      To fulfill SAF's organizational objectives, and serve our members and supporters, SAF has placed a deposit guaranteeing the availability, for immediate delivery, of a mobile range facility, fully compliant with all federal environmental and safety standards, which contains three rifle positions within a forty-eight foot truck trailer. A copy of this contract is attached hereto as Exhibit A. SAF has also secured a commercial space for the location of this range within Chicago. A copy of this lease agreement is attached hereto as Exhibit B.  SAF plans to secure additional parking locations  so that convenient range training may be provided to gun owners throughout the length and breadth of the City of Chicago.

6.      The mobile range facility would be operated by SAF in conjunction with ISRA's state-certified firearms trainers.

7.      But for the criminal enactments challenged in this complaint, SAF and ISRA would begin operating the mobile range within the City of Chicago by the end of September, 2010, but refrain from doing so for fear of arrest, prosecution, fine and incarceration of our principals and employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the _15_ day of August, 2010

Julianne Versnel

# BLUE LINE Corp.

P.O. Box 121 • Sudbury, MA 01776 • 978-927-0911

## SERVICE AGREEMENT

1. **PARTIES:** This Agreement is between Blue Line Corporation, a Massachusetts corporation, and the undersigned Client.

2. **DEFINITIONS:**
   A. OWNER shall mean Blue Line Corporation, its officers, directors, stockholders, principals, agents, employees, contractors, successors and assigns.
   B. CLIENT shall mean the Town, Business, Agency, Company, University, College, Police Department or Other Entity and its officers and employees, which use the 48-foot trailer Owned and operated by Owner as a mobile firearms training range (hereafter the "TRAILER").
   C. AUTHORIZED AGENT shall mean the person(s) signing this Agreement on behalf of the CLIENT who represents and warrants that he/she has full legal authority to sign this Agreement on behalf of said CLIENT.

3. **TERM OF USE:** The rights provided for in this Agreement shall be for the periodic use of the TRAILER for a period of one (1) year from the date of this Agreement as necessary for firearms training, qualifications or general use by the CLIENT as scheduled in advance by written agreement of the parties.

4. **USAGE FEE:** The CLIENT shall pay OWNER a fee as set forth in the quote or proposal for services rendered within the terms noted on the invoice. Quotes or proposals may have to be adjusted throughout the year of this contract when the needs of the CLIENT change from the previous rental, or if OWNER related costs rise throughout the year of this contract, such as fuel costs, labor or supplies.

5. **OWNER'S OBLIGATIONS:**
   A. The OWNER shall maintain the TRAILER, and all systems and facilities provided therein, in such condition as shall provide for safe use for the purpose for which it is intended, that is, as a firearms training and qualification range.
   B. The OWNER shall deliver the TRAILER to the property, or other designated area, of the CLIENT as scheduled and shall temporarily locate it in a safe manner in a position designated by the AUTHORIZED AGENT. The OWNER and/or the OWNER'S designee shall be responsible for opening and securely closing and locking the TRAILER on each day that it is to be available to the CLIENT for use under this Agreement, and shall provide employees, servants or agents on the site of the TRAILER at all times when it is "in use" by the CLIENT.
   C. NO firearms of any kind shall be left on the site or in the TRAILER when the TRAILER is not in active use by the CLIENT.
   D. The OWNER agrees to carry adequate insurance to cover its employees and other personnel assigned by it and for whom it is responsible who are on the site of, or inside the TRAILER, during its use. Said insurance is to be in effect at the time the TRAILER is located on the property of the CLIENT or in use by CLIENT as a firing range.
   E. To the extent permitted by law, the OWNER shall indemnify, defend, and hold the CLIENT harmless from and against any and all losses, property damage, personal injury, claims, demands, liabilities, actions, causes of actions, costs and expenses, including attorney's fees, arising out of the OWNER'S breach of this Agreement or the intentional misconduct of the OWNER, or its employees, servants or agents.

6. CLIENT'S OBLIGATIONS:
   A. The CLIENT shall assign certified firearms instructors or contract out with certified firearms instructors to supervise the instruction and qualification of the members of the CLIENT who uses the firearms training range for training purposes located within the TRAILER.
   B. The CLIENT agrees to carry adequate insurance to cover its employees and other personnel assigned by it and for whom it is responsible when in use of the TRAILER as a firearms training range, or firing range
   C. NO firearms of any kind shall be left on the site or in the TRAILER when the TRAILER is not in active use by the CLIENT.
   D. To the fullest extent permitted by law, the CLIENT shall indemnify, defend, and hold the OWNER harmless from and against any and all losses, property damage, personal injury, claims, demands, liabilities, actions, causes of actions, costs and expenses, including attorney's fees, arising out of the CLIENT'S breach of this Agreement or the negligence or misconduct of the CLIENT, or its employees, servants or agents.

7. TERMINATION:  Either party hereto may terminate this Agreement at any time for any reason by providing the non-terminating party with written notice stating the termination date, which shall not be sooner than ten days from the issuance of the said notice. Said notice shall be delivered in hand or sent via certified mail, return receipt requested, to the address set forth at the end of this Agreement. Upon receipt of the notice, the non-terminating party shall cease to incur additional expenses in connection with this Agreement. Upon such termination, the OWNER shall remove the TRAILER from the property of the CLIENT within seventy-two (72) hours, and shall be entitled to compensation for any use of the TRAILER or expenses incurred in the management, marketing, sales, delivery and removal of the TRAILER to the CLIENT prior to the termination date.

8. GOVERNING LAW:  This Agreement shall be governed by, construed and enforced in accordance with the laws of the Commonwealth of Massachusetts or any state where the TRAILER is in use.

9. ENTIRE AGREEMENT:  This Agreement, including all quotes and proposals, constitutes the entire agreement between the parties with respect to the matter described. This Agreement supersedes all prior agreements, negotiations and representations, either written or oral, and shall not be modified or amended except by a written document executed by the parties hereto.

10. ASSIGNMENT:   This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on this 26 day of July, 2010.

OWNER:                                          CLIENT:

**BLUE LINE CORPORATION**                       **Second Amendment Foundation**


By: _____        By: _____
Name:  Jerry Tilbor                             Name: Julianne Versnel
Title:    President                             Title: Director of Operations

P.O. Box 121 Sudbury, MA  01776                 12500 NE 10th Place, Bellevue, WA  98005

_____                         _____
(Print Address for Notice Purposes)             (Print Address for Notice Purposes)

INDUSTRIAL BUILDING LEASE
(For Use in Illinois)

NO. 1201
FEBRUARY, 1986

GEORGE E. COLE
LEGAL FORMS

CAUTION: Consult a lawyer before using or acting under this form. Neither the publisher nor the seller of this form makes any warranty with respect thereto, including any warranty of merchantability or fitness for a particular purpose.

# INDUSTRIAL BUILDING LEASE

| DATE OF LEASE | TERM OF LEASE | | MONTHLY RENT |
|---|---|---|---|
| | BEGINNING | ENDING | |
| August 12, 2010 | September 15, 2010 | *MONTH TO MONTH* | $2,500 |

Location of Premises
3333 W. 36th St., Chicago IL 60632

Purpose
Trailer Storage *FOR ONE TRAILER*

| LESSEE | | LESSOR | |
|---|---|---|---|
| NAME | Second Amendment Foundation | NAME AND | Accurate Perforating Corporation |
| | 12500 NE 10th Pl | BUSINESS | 3636 S. Kedzie Ave. |
| ADDRESS | Bellevue, WA 98005 | ADDRESS | Chicago, IL 60632 |

In consideration of the mutual covenants and agreements herein stated, Lessor hereby leases to Lessee and Lessee hereby leases from Lessor solely for the above purpose the premises designated above (the "Premises"), together with the appurtenances thereto, for the above Term.

**RENT**

1. Lessee shall pay Lessor or Lessor's agent as rent for the Premises the sum stated above, monthly in advance, until termination of this lease, at Lessor's address stated above or such other address as Lessor may designate in writing.

**CONDITION AND UPKEEP OF PREMISES**

2. Lessee has examined and knows the condition of the Premises and has received the same in good order and repair, and acknowledges that no representations as to the condition and repair thereof have been made by Lessor, or his agent, prior to or at the execution of this lease that are not herein expressed; Lessee will keep the Premises including all appurtenances, in good repair, replacing all broken glass with glass of the same size and quality as that broken, and will replace all damaged plumbing fixtures with others of equal quality and will keep the Premises, including adjoining alleys, in a clean and healthful condition according to the applicable municipal ordinances and the direction of the proper public officers during the term of this lease at Lessee's expense, and will without injury to the roof, remove all snow and ice from the same when necessary, and will remove the snow and ice from the sidewalk abutting the Premises; and upon the termination of this lease in any way, will yield up the Premises to Lessor, in good condition and repair, loss by fire and ordinary wear excepted, and will deliver the keys therefor at the place of payment of said rent.

**LESSEE NOT TO MISUSE; SUBLET; ASSIGNMENT**

3. Lessee will not allow the Premises to be used for any purpose that will increase the rate of insurance thereon, nor for any purpose other than that hereinbefore specified, and will not load floors with machinery or goods beyond the floor load rating prescribed by applicable municipal ordinances, and will not allow the Premises to be occupied in whole, or in part, by any other person, and will not sublet the same or any part thereof, nor assign this lease without in each case the written consent of the Lessor first had, and Lessee will not permit the Premises to be used for any unlawful purpose, or for any purpose that will injure the reputation of the building or increase the fire hazard of the building, or disturb the tenants or the neighborhood, and will not permit the same to remain vacant or unoccupied for more than ten consecutive days; and will not allow any signs, cards or placards to be posted, or placed thereon, nor permit any alteration of or addition to any part of the Premises, except by written consent of Lessor; all alterations and additions to the Premises shall remain for the benefit of Lessor unless otherwise provided in the consent aforesaid.

**MECHANIC'S LIEN**

4. Lessee will not permit any mechanic's lien or liens to be placed upon the Premises or any building or improvement thereon during the term hereof, and in case of the filing of such lien Lessee will promptly pay same. If default in payment thereof shall continue for thirty (30) days after written notice thereof from Lessor to the Lessee, the Lessor shall have the right and privilege at Lessor's option of paying the same or any portion thereof without inquiry as to the validity thereof, and any amounts so paid, including expenses and interest, shall be so much additional indebtedness hereunder due from Lessee to Lessor and shall be repaid to Lessor immediately on rendition of bill therefor.

PAGE ONE

**INDEMNITY FOR ACCIDENTS**

5.  Lessee covenants and agrees that he will protect and save and keep the Lessor forever harmless and indemnified against and from any penalty or damages or charges imposed for any violation of any laws or ordinances whether occasioned by the neglect of Lessee or those holding under Lessee, and that Lessee will at all times protect, indemnify and save and keep harmless the Lessor against and from any and all loss, cost, damage or expense, arising out of or from any accident or other occurrence on or about the Premises, causing injury to any person or property whomsoever or whatsoever and will protect, indemnify and save and keep harmless the Lessor against and from any and all claims and against and from any and all loss, cost, damage or expense arising out of any failure of Lessee in any respect to comply with and perform all the requirements and provisions hereof.

**NON LIABILITY OF LESSOR**

6.  Except as provided by Illinois statute, Lessor shall not be liable for any damage occasioned by failure to keep the Premises in repair, nor for any damage done or occasioned by or from plumbing, gas, water, sprinkler, steam or other pipes or sewerage or the bursting, leaking or running of any pipes, tank or plumbing fixtures, in above, upon or about Premises or any building or improvement thereon nor for any damage occasioned by water, snow or ice being upon or coming through the roof, skylights, trap door or otherwise, nor for any damage arising from acts of neglect of any owners or occupants of adjacent or contiguous property.

**WATER GAS AND ELECTRIC CHARGES**

7.  Lessee will pay, in addition to the rent above specified, all water rents, gas and electric light and power bills taxed, levied or charged on the Premises, for and during the time for which this lease is granted, and in case said water rents and bills for gas, electric light and power shall not be paid when due, Lessor shall have the right to pay the same, which amounts so paid, together with any sums paid by Lessor to keep the Premises in a clean and healthy condition, as above specified, are declared to be so much additional rent and payable with the installment of rent next due thereafter.

**KEEP PREMISES IN REPAIR**

8.  Lessor shall not be obliged to incur any expense for repairing any improvements upon said demised premises or connected therewith, and the Lessee at his own expense will keep all improvements in good repair (injury by fire, or other causes beyond Lessee's control excepted) as well as in a good tenantable and wholesome condition, and will comply with all local or general regulations, laws and ordinances applicable , thereto as well as lawful requirements of all competent authorities in that behalf, Lessee will, as far as possible, keep said improvements from deterioration due to ordinary wear and from falling temporarily out of repair. If Lessee does not make repairs as required hereunder promptly and adequately, Lessor may but need not make such repairs and pay the costs thereof, and such costs shall be so much additional rent immediately due from and payable by Lessee to Lessor.

**ACCESS TO PREMISES**

9.  Lessee will allow Lessor free access to the Premises for the purpose of examining or exhibiting the same, or to make any needful repairs, or alterations thereof which Lessor may see fit to make and will allow to have placed upon the Premises at all times notice of "For Sale" and "To Rent", and will not interfere with the same.

**ABANDONMENT AND RELETTING**

10.  If Lessee shall abandon or vacate the Premises, or if Lessee's right to occupy the Premises be terminated by Lessor by reason of Lessee's breach of any of the covenants herein, the same may be re-let by Lessor for such rent and upon such terms as Lessor may deem fit, subject to Illinois statute; and if a sufficient sum shall not thus be realized monthly, after paying the expenses of such re-letting and collecting to satisfy the rent hereby reserved, Lessee agrees to satisfy and pay all deficiency monthly during the remaining period of this lease.

**HOLDING OVER**

11.  Lessee will, at the termination of this lease by lapse of time or otherwise, yield up immediate possession to Lessor, and failing so to do, will pay as liquidated damages, for the whole time such possession is withheld, the sum of (150) one hundred fifty Dollars ($ 150.00 ) per day; but the provisions of this clause shall not be held as a waiver by Lessor of any right of re-entry as hereinafter set forth; nor shall the receipt of said rent or any part thereof, or any other act in apparent affirmance of tenancy, operate as a waiver of the right to forfeit this lease and the term hereby granted for the period still unexpired, for a breach of any of the covenants herein.

**EXTRA FIRE HAZARD**

12.  There shall not be allowed, kept, or used on the Premises any inflammable or explosive liquids or materials save such as may be necessary for use in the business of the Lessee, and in such case, any such substances shall be delivered and stored in amount, and used, in accordance with the rules of the applicable Board of Underwriters and statutes and ordinances now or hereafter in force.

**DEFAULT BY LESSEE**

13.  If default be made in the payment of the above rent, or any part thereof, or in any of the covenances herein contained to be kept by the Lessee, Lessor may at any time thereafter at his election declare said term ended and reenter the Premises or any part thereof, with or (to the extent permitted by law) without notice or process of law, and remove Lessee of any persons occupying the same, without prejudice to any remedies which might otherwise be used for arrears of rent, and Lessor shall have at all times the right to distrain from rent due, and shall a valid and first lien upon all personal property which Lessee now owns, or may hereafter acquire or have an interest in, which is by law subject to such distraint, as security for payment of the rent herein reserved.

**NO RENT DEDUCTION OR SET OFF**

14.  Lessee's covenant to pay rent is and shall be independent of each and every other covenant of this lease. Lessee agrees that any claim by Lessee against Lessor shall not be deducted from rent nor set off against any claims for rent in any action. .

**RENT AFTER NOTICE OF SUIT**

15.  It is further agreed, by the parties hereto, that after the service of notice, or the commencement of a suit or after final judgment for possession of the Premises, Lessor may receive and collect any rent due, and that payment of said rent shall not waive or affect said notice, said suit, or said judgment.

PAGE TWO

**PAYMENT OF COSTS**

16.  Lessee will pay and discharge all reasonable costs, attorney's fees and expenses that shall be made and incurred by Lessor in enforcing the covenants and agreements of this lease.

**RIGHTS CUMULATIVE**

17.  The rights and remedies of Lessor under this lease are cumulative. The exercise or use of any one or more thereof shall not bar Lessor from exercise or use of any other right or remedy provided herein or otherwise provided by law, nor shall exercise not use of any right or remedy by Lessor waive any other right or remedy.

**FIRE AND CASUALTY**

18.  In case the Premises shall be rendered untenantable during the term of this lease by fire or other casualty, Lessor at his option may terminate the lease or repair the Premises within 60 days thereafter. If Lessor elects to repair, this lease shall remain in effect provided such repairs are completed within said time. If Lessor shall not have repaired the Premises within said time, then at the end of such time the term hereby created shall terminate. If this lease is terminated by reason of fire or casualty as herein specified, rent shall be apportioned and paid to the day of such fire or other casualty.

**SUBORDINATION**

19.  This lease is subordinate to all mortgages which may now or hereafter affect the Premises.

**PLURALS; SUCCESSORS**

20.  The words "Lessor" and "Lessee" wherever herein occurring and used shall be construed to mean "Lessors" and "Lessees" in case more than one person constitutes either party to this lease; and all the covenants and agreements contained shall be binding upon, and inure to, their respective successors, heirs, executors, administrators and assigns and may be exercised by his or their attorney or agent.

**SEVERABILITY**

21.  Wherever possible each provision of this lease shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this lease shall be prohibited by or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this lease.

If this instrument is executed by a corporation, such execution has been authorized by a duly adopted resolution of the Board of Directors of such corporation.

This lease consists of ____3____ pages numbered 1 to ____3____ , including a rider consisting of ___none___ pages, identified by Lessor and Lessee.

IN WITNESS WHEREOF, the parties hereto have executed this instrument as of the Date of Lease stated above.

LESSEE:                                                    LESSOR:

_____ (SEAL)        _____ (SEAL)

_____ (SEAL)        _____ (SEAL)

# Exhibit C

Juliane Versnel                              September 2, 2010

1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION


EZELL, et al,                    )
                 Plaintiffs,     ) No. 10-CV-5135
        vs.                      ) Judge
CITY OF CHICAGO,                 ) Virginia M.
                 Defendants.     ) Kendall


        The deposition of JULIANE VERSNEL,
called as a witness for examination, taken pursuant
to the Federal Rules of Civil Procedure of the
United States District Courts pertaining to the
taking of depositions, taken before LISA C. HAMALA,
a Notary Public within and for the County of Cook,
State of Illinois, and a Certified Shorthand
Reporter of said state, CSR No. 84-3335, at Suite
1230, 30 North LaSalle Street, Chicago, Illinois,
on the 2nd day of September, A.D. 2010, at 1:40
p.m.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                      September 2, 2010

2

1    PRESENT:

2

3         GURA & POSSESSKY, P.L.L.C.,

4         (101 North Columbus Street,   Suite 405,

5         Arlington, Virginia 22314,

6         703-835-9085), by:

7         MR. ALAN GURA,

8         alan@gurapossessky.com,

9              -and-

10        LAW FIRM OF DAVID G. SIGALE, P.C.,

11        (Corporate West 1,

12        4300 Commerce Court, Suite 300-3,

13        Lisle, Illinois 60532,

14        630-452-4547), by:

15        MR. DAVID G. SIGALE,

16        dsigale@sigalelaw.com,

17             appeared on behalf of the Plaintiffs;

18

19

20

21

22

23

24



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

3

1      PRESENT: (Continued)

2

3             CORPORATION COUNSEL

4             CITY OF CHICAGO,

5             (30 North LaSalle Street, Suite 1230,

6             Chicago, Illinois 60602,

7             312-744-4216), by:

8             MR. ANDREW WORSECK,

9             aworseck@cityofchicago.org,

10                appeared on behalf of the Defendants.

11

12    ALSO PRESENT:

13            MR. RICHARD PEARSON,

14                Illinois State Rifle Association.

15

16

17

18

19

20

21

22

23    REPORTED BY:   LISA C. HAMALA, CSR.

24                Illinois CSR No. 84-3335.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                              September 2, 2010

24

1   provision or operation of a shooting range, is that

2   correct?

3          A.     That's correct.

4          Q.     So operation of a shooting --

5   THE WITNESS:  I have a problem.

6   MR. GURA:  Okay.

7   THE WITNESS:  I have a problem because --

8          MR. GURA:  Could you read the last question

9   and answer.

10                (WHEREUPON, the record was read by

11                the reporter as requested.)

12  BY THE WITNESS:

13         A.     The question is overly broad.

14  BY MR. WORSECK:

15         Q.     How can I make it a better question?

16         A.     The SAF has never contracted for a

17  mobile firing range until we did with Blue Line.

18         Q.     That's the contract at issue in this

19  case?

20         A.     Yes.

21         Q.     Has the SAF ever contracted for

22  operation or use of a stationary bricks and mortar

23  shooting range, outdoor stationary shooting range?

24         A.     The SAF has contracted for the use of an



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                          September 2, 2010

25

1    outdoor shooting range.  For the use.

2         Q.    Aside from the use of an outdoor

3    shooting range, there are no other contracts that

4    the SAF has entered into with respect to shooting

5    ranges, excluding this contract at issue in this

6    case?

7         A.    That's correct.

8         Q.    Has the SAF ever managed or operated a

9    shooting range of any type anywhere?

10        A.    No.

11        Q.    So the management and operation of

12   shooting ranges really isn't one of the SAF's

13   purposes, is that correct?

14        MR. GURA:  Objection.  Argumentative.  Assumes

15   facts not in evidence.

16             You may answer it.

17   BY THE WITNESS:

18        A.    Please repeat that.

19             (WHEREUPON, the record was read by

20             the reporter as requested.)

21        MR. GURA:  I objected that that's

22   argumentative and assumes facts not in evidence.

23   BY THE WITNESS:

24        A.    It is part of our education, legal



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

30

1    BY THE WITNESS:

2         A.     I don't know.

3    BY MR. WORSECK:

4         Q.     So you're contracting for the operation

5    of a shooting range in Illinois, and you don't know

6    if a license is required for that enterprise?

7         A.     Let's step back.

8                Are you talking about the individuals,

9    or now have we moved on to an item?

10        Q.     I'm talking about the enterprise.

11        A.     Define "enterprise" for me.

12        Q.     This mobile shooting range that's going

13   to be in the back of a truck.  You may have

14   individuals coming in there on various days of the

15   week to teach individuals in the use of firearms.

16               Is a license needed by the SAF, who is

17   the contracting entity for this shooting range and

18   the operating entity of the shooting range, to

19   actually operate the shooting range in Illinois?

20        MR. GURA:  Objection.  Calls for a legal

21   opinion.

22               If you were to ask me, I might give you

23   an answer because I'm a lawyer.  This is not my

24   deposition, but it is Ms. Versnel's deposition.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

31

1      BY THE WITNESS:

2          A.     I don't know.

3      BY MR. WORSECK:

4          Q.     Did you think it was important that you

5      look into that question before you signed a

6      contract to operate a shooting range in Illinois?

7          MR. GURA:  Objection.  Attorney-client

8      communication at this point.

9          MR. WORSECK:  I asked did she think it was

10     important.  What's in her head is not

11     attorney-client privilege.

12         MR. GURA:  Well, I don't want you going there.

13         MR. WORSECK:  When I get close, you can

14     object.

15     BY THE WITNESS:

16         A.     No.

17     BY MR. WORSECK:

18         Q.     You did not think it was important?

19         A.     No.

20         Q.     How did the idea of bringing a mobile

21     shooting range into Chicago come about?

22         A.     It was an outgrowth of the proposed

23     ordinances that the City of Chicago circulated on

24     approximately July 1, 2010.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

1    been a partner with the SAF for a long time.  They

2    were a co-plaintiff with us in McDonald's vs.

3    Chicago.

4         Q.    Whose idea was it to team up with ISRA

5    with respect to the operation of this range?

6         A.    Mr. Moran, Mr. Pearson, Mr. Gottlieb,

7    myself.

8         Q.    Has ISRA ever operated a mobile shooting

9    range?

10        MR. GURA:  Objection.  Calls for speculation.

11   Lacks foundation.

12   BY THE WITNESS:

13        A.    I don't know.

14   BY MR. WORSECK:

15        Q.    When deciding to team up with ISRA for

16   the operation of a mobile shooting range in

17   Chicago, you didn't bother to find out if ISRA ever

18   operated a mobile shooting range anywhere, is that

19   correct?

20        MR. GURA:  Objection.  Argumentative at this

21   point.

22   BY THE WITNESS:

23        A.    Would you rephrase that.

24



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

42

1    before you figure out who is going to do what on

2    this range?

3         A.    There is an agreement in principle upon

4    roles.

5         Q.    What is that agreement?

6         A.    That ISRA would take a large role in

7    providing the certified trainers and meeting the

8    requirements in terms of personnel for the City of

9    Chicago.  The SAF would provide other assistance --

10   other assistance as needed.

11        Q.    Is this arrangement written down

12   anywhere?

13        A.    No.

14        Q.    Who are the people on both sides, SAF

15   and ISRA, that came to this arrangement?

16        A.    To the best of my knowledge, myself,

17   Alan Gottlieb, Richard Pearson.

18        Q.    Is Mr. Pearson sort of the ISRA point

19   person when it comes to operation of this range in

20   Chicago?

21        A.    Yes.

22        Q.    Is he going to be overseeing its

23   operation when it is open to the public, if it is?

24        MR. GURA:  Objection.  Calls for speculation.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

43

1    Lacks foundation.  Vague and ambiguous as to what

2    you mean by overseeing.

3              The ISRA has operated a firearms range

4    for many years.  Mr. Pearson is the organization's

5    executive director.

6              I'm not sure how they would consider

7    themselves to be overseeing his oversight.  This

8    witness is not qualified to speak to internal ISRA

9    management.

10   BY MR. WORSECK:

11        Q.    If this range opens in Chicago, who is

12   going to be the ISRA person responsible for that?

13        A.    ISRA would have to decide that.  I don't

14   know.

15        Q.    Again, you did not think it important to

16   find out who at ISRA would be responsible for the

17   operation of this range, even though, as you just

18   explained to me, ISRA is going to be the

19   responsible party as between ISRA and the SAF in

20   terms of operating the range and training people in

21   the range?

22        MR. GURA:  Objection.  Relevance.

23             I don't understand the relevance of the

24   question.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                        September 2, 2010

53

1        Q.    Sure.   Again, hours of operation.

2    Number of customers that can use it at one time.

3    Kinds of guns that could be used at the range.

4    Where the guns would be stored.

5            Could people bring their own, or is the

6    range going to supply guns?

7        A.    The range would not supply firearms.

8    The number of people we could put through

9    specifically, where people might stand to come in

10   and other items are dictated and could not be

11   determined until the City of Chicago allowed us to

12   make final arrangements to bring the unit in.

13       Q.    These were all topics that you discussed

14   with ISRA?

15       A.    I discussed with ISRA that there were

16   decisions concerning the specific mechanics of

17   operation within the City of Chicago with the

18   exception of the requirements to have a range

19   master and certified trainers whom at the Chicago

20   police license requirements on premises.

21            The rest is dictated by the City of

22   Chicago.   We are unable to proceed upon

23   hypotheticals.

24       Q.    What are those hypotheticals?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

65

1    we are all clear.  That's on the record.  We don't

2    need to rewrite this now.

3    BY MR. WORSECK:

4         Q.    Subject to that change and the typo, any

5    other changes?

6         A.    No.

7         Q.    I want to go back to the definition of

8    operation that I was using most recently, namely

9    opening the mobile truck for use by the public.

10        THE WITNESS:  I'm just too literal.  I have

11   four children.  They ask questions until they get

12   the answer.  They change words and different

13   things --

14        MR. WORSECK:  Lawyers do that, too.

15   BY THE WITNESS:

16        A.    Does this mean physically opening,

17   starting operation?

18   BY MR. WORSECK:

19        Q.    Should you prevail on your preliminary

20   injunction and should Chicago be required to allow

21   this range to open under some set of circumstances,

22   is there anyone at the SAF that will be sort of the

23   day-to-day person in charge of or overseeing what

24   goes on at that site?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

66

1      A.      No one from the SAF, to the best of my

2   knowledge, would be physically in Illinois.

3      Q.      Is there anyone back at SAF headquarters

4   or anywhere else in the country that would be

5   responsible for overseeing or be a point person or

6   getting a nightly phone call with an update as to

7   what happens on that site?

8      MR. GURA:   Objection.  Calls for speculation.

9   BY THE WITNESS:

10     A.      Yes.

11  BY MR. WORSECK:

12     Q.      Who would that person be?

13     A.      I believe that it could be one of three

14  people.

15     Q.      Who?

16     A.      Alan Gottlieb, me, and it is possible it

17  could be Massad Ayoob.

18     Q.      But that decision has not been made as

19  to who that particular person would be?

20     A.      No.

21     Q.      I would like to refer you back to

22  Exhibit No. 1, the Declaration.

23          Exhibit A thereto is the Blue Line

24  contract, and talks a little about this.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

                                                                    106

1     client," etcetera.

2              So SAF is the client.  You're the

3     authorized agent because you signed the contract.

4          A.    Okay.

5          Q.    Paragraph 5B basically says that the

6     authorized agent, namely you, will designate a

7     temporary location for the truck where it will be

8     placed in a safe manner.

9          A.    Okay.

10         Q.    Have you made that designation yet?

11         MR. GURA:  Objection.  Assumes facts not in

12    evidence.

13             The truck isn't there.

14         MR. WORSECK:  We're talking about the place it

15    would be put.

16    BY THE WITNESS:

17         A.    We have leased land that, to the best of

18    our ability, and in checking with the owner, meets

19    this criteria.

20    BY MR. WORSECK:

21         Q.    Have you visited the site?

22         A.    No.

23         Q.    Have you identified any particular spot

24    on the site where this truck can be located in a



Toll Free: 800.708.8087
Facsimile: 312.673.8138

ESQUIRE
an Alexander Gallo Company

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                        September 2, 2010

1     safe manner?

2         A.    No.

3         Q.    To your knowledge, has anyone selected

4     such a site at this property?

5         MR. GURA:  Objection.  I think it is asked and

6     answered.

7     BY THE WITNESS:

8         A.    When we looked for property to lease, we

9     entered into the lease agreement, and we disclosed

10    to the owner of the property what we were going to

11    do with the property and other information

12    concerning the size of the item, space requirements

13    to put it in, how loud it would be, the sound.

14        MR. WORSECK:  Again, I'm trying to move this

15    along.

16        MR. GURA:  No, you're not.

17    BY MR. WORSECK:

18        Q.    You're asking a Federal judge to order

19    this mobile truck shooting range be immediately

20    placed in Chicago.

21              To your knowledge, has anyone picked the

22    particular spot on the land that you have signed a

23    lease for where this truck will be located in a

24    safe manner?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

110

1    Q.    Paragraph 6, "Client"s Obligations,"
2    Subparagraph A, "The client shall assign certified
3    firearms instructors or contract out with certified
4    firearms instructors."
5           Aside from generally talking with ISRA
6    about ISRA providing instructors, has any
7    particular selection been made of specific
8    individuals that would be the instructors?
9    A.    No.
10   Q.    Paragraph 6, Subparagraph B, "The client
11   agrees to carry insurance to cover its employees
12   and other personnel assigned by it and for whom it
13   is responsible when in use of the trailer as a
14   firearms training range or firing range."
15          Has SAF acquired that insurance?
16   A.    It doesn't have the trailer or the
17   place, so you can't get insurance for it without
18   that information.
19   Q.    Has SAF had any discussions with any
20   insurance carriers about an insurance policy that
21   would meet these obligations?
22   A.    There has been discussion of which
23   options to use to procure the proper insurance.
24   Q.    Are those internal SAF discussions?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

111

1       A.      Yes.

2       Q.      No insurance agents have been approached

3    about a policy that would meet these obligations?

4       A.      No.

5       Q.      Do you know how much that insurance

6    would cost in a ballpark figure?

7       A.      I have no idea.

8       Q.      Would it cover members of the public

9    that would show up to use the range?

10      A.      Yes.

11      Q.      Why do you say that?

12      A.      Because we will have to get liability

13   insurance.  To the best of my knowledge, the

14   insurance company is going to want us to have

15   liability insurance.

16              It would be injudicious of us not to be

17   carrying liability insurance.

18      Q.      The SAF's plans are to acquire insurance

19   that would cover members of the public using the

20   range?

21      A.      Yes.

22      Q.      Have you had any discussions about that

23   form of insurance, insurance that would cover

24   members of the public with any insurance companies



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

123

1    people in the trailer.

2           There would also be an appropriate

3    number of instructors and a range master.

4    BY MR. WORSECK:

5        Q.    Would more than three members of the

6    public be allowed in the trailer at once?

7        MR. GURA:  Objection.  Asked and answered.

8    Calls for speculation.  Lacks foundation.

9    BY THE WITNESS:

10       A.    The range master will have to make those

11   determinations.

12   BY MR. WORSECK:

13       Q.    What will be done with members of the

14   public who can't get into the trailer?

15           Say you have 50 people show up on a

16   Saturday afternoon.

17       A.    Logistics have not been determined.

18       Q.    The range does not provide weapons?

19       A.    No.

20       Q.    The people have to bring their own

21   weapons, is that correct?

22       A.    That's correct.

23       Q.    You could have 50 people on a Saturday

24   afternoon sitting in a parking lot with weapons,



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

124

1      correct?

2          A.    The logistics have not been determined.

3          Q.    I understand there's a one-hour range

4      training component to the City's CFP application

5      process.

6                Would the members of the public be

7      allowed to spend more than an hour during any one

8      visit to the truck?

9          A.    The specific logistics have not been

10     determined.  However, since our goal is to provide

11     the individuals in Chicago with the necessary range

12     time to get their Chicago pistol or firearm permit,

13     one hour would appear to be the most judicious use

14     of the resources.

15         Q.    Will members of the public who are

16     bringing their weapons to the site be required to

17     follow any particular protocol with respect to the

18     storage or carrying or use of weapons while waiting

19     to get into the truck?

20         A.    Members of the general public will have

21     to follow the laws of Illinois and laws of Cook

22     County and laws of the City of Chicago.

23                They will also have to follow the safe

24     storage policies and any other policy as to be



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

125

1     determined by the range master.

2          Q.    Do you know what any of those are?

3          MR. GURA:   Objection.   What "those" are you

4     referring to?   That's compound.

5     BY MR. WORSECK:

6          Q.    Do you know what those are?

7          MR. GURA:   "Those" refers to a whole list of

8     four --

9          MR. WORSECK:   Read that last answer.

10                    (WHEREUPON, the record was read by

11                     the reporter as requested.)

12         MR. GURA:   I counted five or so -- calls for

13    legal opinion.   The witness lacks foundation to

14    whatever the range master will order.

15    BY MR. WORSECK:

16         Q.    My question is, again, do you know what

17    those are?

18         A.    I don't know the specific laws of the

19    State of Illinois for transport of firearms.   I

20    don't know the specific laws of Cook County for the

21    transport of firearms.

22              I do not know what the laws are of the

23    City of Chicago in terms of safe transport of

24    firearms.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                               September 2, 2010

126

1            I can't know what the range master will
2    determine is necessary.  The range master has the
3    discretion to do what he feels makes the area most
4    safe.
5            Q.    Would a fee be charged to the members of
6    the public that want to use this range?
7            A.    Our hope is there is no fee charged.
8            Q.    But that will be something that the SAF
9    decides?
10           A.    Yes.  It is our desire there be no fee
11   charged.
12           Q.    What factors would impact whether a fee
13   is charged?
14           MR. GURA:  Objection.  Calls for speculation.
15   BY THE WITNESS:
16           A.    Whether a fee is charged will be
17   dependent upon the cost of the range master and
18   certified firearms instructors.
19   BY MR. WORSECK:
20           Q.    Any other factors?
21           A.    No.
22           Q.    Let's talk about the other contract
23   attached to your Declaration, the lease for the
24   site with Accurate Perforating Corporation.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                   September 2, 2010

128

1        Q.     Does this area look familiar to you?

2        A.     No.

3        Q.     Do you recognize any of the buildings or

4    streets?

5        A.     No.

6        Q.     Have you ever looked at an overhead shot

7    of this property that's the subject of your

8    contract?

9        A.     No.

10       Q.     Have you ever looked at any photographs

11   of the property?

12       A.     I don't recall.

13       Q.     Can you identify on this photograph the

14   parcel of land that's the subject of your lease.

15       MR. GURA:   Objection.   Irrelevant.   Lacks

16   foundation.

17   BY THE WITNESS:

18       A.     You told me it is up here (indicating).

19       MR. GURA:   The witness stated she is not

20   familiar --

21   BY MR. WORSECK:

22       Q.     I was pointing up here (indicating).

23       A.     Okay.   No.

24       Q.     Can you identify on this photograph the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

133

1    concerns he had with that?

2         A.    He told me the noise would not be a

3    problem since there are loud noises coming out of

4    his place already.

5              I told him, as Jerry told me, it would

6    sound like a nail gun.  He said there was not a

7    problem.

8              We discussed that this would be

9    month-to-month as we did not know when the City

10   would allow us to bring it in.  That it could come

11   at any time.  That it was empty.

12        Q.    The parking lot was empty?

13        A.    The parcel of land.  I don't know what

14   it is.

15        Q.    The lease, as you said, is

16   month-to-month, and it could be terminated by

17   either party on a monthly basis, is that correct?

18        A.    I'm sure there is some clause about how

19   many days notice you have to give, but I don't know

20   off the top of my head.

21        Q.    Generally speaking, either party could

22   terminate the lease?

23        A.    On a monthly basis, yes.

24        Q.    How was Accurate Perforating selected or



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

140

1        That was the date you initialed this and

2   sent it back.

3        A.    I spoke with Larry Cohen.  I left a

4   message for him late one evening on the Accurate

5   Perforating voicemail.  He called me back on

6   Thursday, August 26.  I was in San Francisco.

7        We discussed changing the date.  He was

8   amenable to the change of the date.  I told him

9   when I got back, I would send him the change.

10       Q.    That was the last communication?

11       A.    Yes.

12       Q.    If we can look back at Exhibit B to your

13   your Declaration.

14       "Lessee has examined and knows the

15   condition of the premises.  Has received the same

16   in good order and repair and acknowledges that no

17   representations as to the condition and repair

18   thereof have been made by the lessor or his agent

19   prior to or at the execution of the lease that are

20   not herein expressed."

21       You see that?

22       A.    Yes.

23       Q.    You have not, nor has anyone else at SAF

24   examined the premises, is that correct?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

141

1       A.      That's correct.

2       Q.      You have not received those premises

3   yet, have you?

4       A.      No, not yet.

5       Q.      What's the City of Chicago zoning

6   district classification that applies to this

7   property?

8           MR. GURA:   Objection.   Calls for speculation.

9   Calls for legal opinion.

10              It's completely irrelevant to this

11  lawsuit and our claims.

12  BY THE WITNESS:

13      A.      I don't know.

14  BY MR. WORSECK:

15      Q.      Do you know if the zoning classification

16  that applies permits shooting ranges?

17          MR. GURA:   Objection.   Asked and answered.

18  She told you she doesn't know what the

19  classification is.   How would she know what it

20  permits or doesn't?

21  BY THE WITNESS:

22      A.      Shooting ranges are illegal within the

23  city of Chicago.

24          MR. GURA:   I would also like to object that



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

192

1    to do with the Jerry of Blue Line --

2         MR. GURA:  It is subject to the objections and

3    subject to the continuing obligation to provide

4    things.

5              It is understood by counsel, especially

6    given the extreme time constraints, perfection may

7    not be achieved, although we hope.

8         MR. WORSECK:  I'm noting for the record, as to

9    Exhibit No. 6, the document request responses, you

10   did not make any corrections to the document

11   subject to these discussions we had about.

12        MR. GURA:  You didn't change anything?

13        THE WITNESS:  No.

14        MR. WORSECK:  Okay.

15   BY MR. WORSECK:

16        Q.    Two more questions.

17              Are there any fences or gates that

18   surround the parking lot at Accurate Perforating?

19        A.    I have no idea.  I don't know.

20        Q.    Do you know anything about the specific

21   specifications of the shooting stalls in the truck

22   in terms of what they are made out of, how dense

23   they are, whether or not they prevent bullets going

24   laterally from one position to another?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

204

1    STATE OF ILLINOIS )

2                      )   SS:

3    COUNTY OF C O O K )

4               I, LISA C. HAMALA, a Notary Public

5    within and for the County of Cook, State of

6    Illinois, and a Certified Shorthand Reporter of

7    said state, do hereby certify:

8               That previous to the commencement of the

9    examination of the witness, the witness was duly

10   sworn to testify the whole truth concerning the

11   matters herein;

12              That the foregoing deposition transcript

13   was reported stenographically by me, was thereafter

14   reduced to typewriting under my personal direction

15   and constitutes a true record of the testimony

16   given and the proceedings had;

17              That the said deposition was taken

18   before me at the time and place specified;

19              That I am not a relative or employee or

20   attorney or counsel, nor a relative or employee of

21   such attorney or counsel for any of the parties

22   hereto, nor interested directly or indirectly in

23   the outcome of this action.

24              IN WITNESS WHEREOF, I do hereunto set my



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Juliane Versnel                                    September 2, 2010

205

1    hand of Chicago, Illinois, this 7th day of

2    September, 2010.

3

4                Notary Public, Cook County, Illinois.

5                My commission expires August 23, 2012.

6

7

8    C.S.R. Certificate No. 84-3335.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

# Exhibit D

Richard Pearson                                          September 8, 2010

1

### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

EZELL, et al,                          )
                Plaintiffs,   ) No. 10-CV-5135
           vs.                    ) Judge
CITY OF CHICAGO,                       ) Virginia M.
              Defendants.   ) Kendall


       The deposition of RICHARD A. PEARSON
called as a witness for examination, taken pursuant
to the Federal Rules of Civil Procedure of the
United States District Courts pertaining to the
taking of depositions, taken before LISA C. HAMALA,
a Notary Public within and for the County of Cook,
State of Illinois, and a Certified Shorthand
Reporter of said state, CSR No. 84-3335, at Suite
1230, 30 North LaSalle Street, Chicago, Illinois,
on the 8th day of September, A.D. 2010, at 1:16
p.m.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

2

1    PRESENT:

2         LAW FIRM OF DAVID G. SIGALE, P.C.,

3         (Corporate West 1,

4         4300 Commerce Court, Suite 300-3,

5         Lisle, Illinois 60532,

6         630-452-4547), by:

7         MR. DAVID G. SIGALE,

8         dsigale@sigalelaw.com,

9              appeared on behalf of the Plaintiffs;

10

11        CORPORATION COUNSEL

12        CITY OF CHICAGO,

13        (30 North LaSalle Street, Suite 1230,

14        Chicago, Illinois 60602,

15        312-744-4216), by:

16        MR. ANDREW WORSECK,

17        aworseck@cityofchicago.org,

18             appeared on behalf of the Defendants.

19

20

21

22

23    REPORTED BY:  LISA C. HAMALA, CSR.

24             Illinois CSR No. 84-3335.



# ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

16

1      A.     A picnic pavilion we use to meet in and
2    train people under.  There are a variety of utility
3    buildings for storage of targets, equipment, target
4    frames, tables, chairs.  That sort of thing.
5      Q.     The picnic pavilion has tables, chairs?
6      A.     Yes.
7      Q.     Is that outdoor structure just with a
8    roof and table and chairs, but otherwise open to
9    the air?
10     A.     Yes.  Open to the air.
11     Q.     What kind of training does the ISRA
12   provide in the picnic pavilion?
13     A.     Whenever we have class, which could be
14   rifle, pistol, shotgun, that's what we use.
15     Q.     So an instructor teaches class in the
16   picnic pavilion based on one of the three types of
17   weapons?
18     A.     Depending on the discipline.
19     Q.     How many students are allowed in these
20   classes at one particular time?
21     A.     Up to 40.
22     Q.     What types of subjects are taught in the
23   classes?
24     A.     Basic pistol classes, combat pistol



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

1       classes, bull's eye classes, which is target

2       shooting.

3                   International pistol, shotgun classes,

4       high-power classes, 22-small bore classes.

5                   Every kind of discipline.

6           Q.      As far as the subjects, do you teach

7       safe gun use, safe gun storage, how to load and

8       hold the gun, how to aim.

9                   Are those kinds of things encompassed in

10      the classes?

11          A.      Yes.

12          Q.      Do the students have weapons during the

13      classes?

14          MR. SIGALE:   Objection to form.

15                  You could answer if you understand.

16                  My objection is there are so many

17      different classes, I prefer if you broke it down.

18      BY MR. WORSECK:

19          Q.      We can start at the top.

20                  Generally speaking, are students

21      permitted to have their own weapons in hand during

22      the training classes under the picnic pavilion?

23          A.      Yes.

24          Q.      Are there any instances where the



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

18

1    students are not permitted to have their own

2    weapons in hand?

3         A.    I need to clarify that.

4         Q.    Sure.

5         THE WITNESS:  Can I do that?

6         MR. SIGALE:  Yes.

7    BY THE WITNESS:

8         A.    Okay.  They don't have their firearms

9    under the picnic pavilion.  They are only allowed

10   to handle them on the range.  Sometimes they bring

11   their own and sometimes we provide them.

12   BY MR. WORSECK:

13        Q.    On the range?

14        A.    Yes.

15        Q.    When in the pavilion taking the class

16   and listening to the instructor, there is no

17   instance where a student is allowed to have his or

18   her own firearm in hand, is that correct?

19        A.    That's correct.

20        Q.    Do the instructors have their own

21   firearms in hand during the classes in the picnic

22   pavilion?

23        A.    They may have.

24        Q.    Is that a decision up to their own



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

19

1   judgment, or are there any rules that specify when

2   the instructor could have a weapon under the picnic

3   pavilion?

4          A.     Only if it has been checked by another

5   instructor or two to make sure it is unloaded.

6          Q.     Do the instructors use any visual aids

7   like blow-ups, white boards or slide projectors,

8   posters?

9          A.     Not slide projectors, but visual aids of

10  all kinds.

11         Q.     Is literature given to the students,

12  pamphlets, handbooks?

13         A.     Yes.

14         Q.     Those publications and posters, visual

15  aids all convey information about gun training, gun

16  safety, use, etcetera?

17         A.     Yes.

18         Q.     Why aren't students allowed to have

19  their own firearms in hand when taking classes in

20  the picnic pavilion?

21         A.     If they bring their own firearms, we

22  take them to an area and check the firearm making

23  sure it is unloaded.  Then we retain the firearm

24  until they are ready to use it.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

20

1              That's a safety reason.

2         Q.      So it's a safety reason is the reason

3    why the students aren't allowed to have their own

4    guns in hand?

5         A.      Yes, and the fact they can only handle

6    them on the range.  This isn't the range.

7         Q.      Are there specific safety reasons that

8    play here?

9              Can you elaborate more on the safety

10   concerns that are behind this rule of not allowing

11   the students to have their own weapons in hand.

12        A.      Yes, I can.  First of all, you don't

13   know if they have any experience or a lot of

14   experience.  But it doesn't matter.

15             Safety is the first concern always when

16   handling firearms.  So we remove the firearms and

17   make sure they are not loaded.  We give them back

18   when they reach the range.

19             The pavilion isn't a place to shoot a

20   firearm because it has no barriers around it, you

21   know, to retain the bullet and that sort of thing.

22             For teaching reasons, we don't want them

23   fooling around with anything else other than

24   listening to the instructor.



ESQUIRE
an Alexander Gallo company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                               September 8, 2010

21

1          We have blue guns.  I don't know if
2      you're familiar with them.  They are a training
3      firearm that are blue plastic and fake.
4          Q.    Are the students allowed to handle the
5      blue gun?
6          A.    Yes.
7          Q.    Does each student have a blue gun, or is
8      it sort of the thing that's passed around?
9          A.    It can be passed around.  There is only
10     one set of blue guns, and the instructor retains
11     those and uses the students as props in how to
12     handle them properly.
13         Q.    What specific types of training are
14     taught by using the blue gun?
15         A.    Grip, stance, side alignment and general
16     safety.
17         Q.    The blue gun, can you open the chamber,
18     take it apart, or is it just a solitary piece --
19         A.    It's a solid piece of plastic.
20         Q.    The blue gun training takes place under
21     the pavilion?
22         A.    Yes.
23         Q.    Aside from actually pulling the trigger,
24     a student can use the blue gun in the picnic



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                              September 8, 2010

22

1    pavilion to learn how to hold the gun, stand with

2    it, aim the gun, how to holster the gun, all those

3    sorts of things?

4         A.    Yes, in demonstrations of safety and

5    what is not safe.

6         Q.    Is there any cost to these training

7    courses?

8         A.    The answer is yes.

9         Q.    That was kind of a bad question.

10             Is a fee charged to the students?

11        A.    Yes.

12        Q.    What is the fee?

13        A.    Anywhere from 0 to $200.

14        Q.    What determines how much money a

15   particular student would have to pay?

16        A.    The type of class and the instructors

17   and cost of the material.

18        Q.    Do the material costs include -- what do

19   the material costs include?

20        A.    The pamphlets.  Some cost is in there

21   for the use of the ISRA firearms if they are used.

22   The cost of printing copies, forms of all kinds.

23             It's a class, so there are books, paper.

24   Everything like that.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

27

1       Q.      What situations would those be?

2       MR. SIGALE:   Objection as to speculation.

3               You could answer.

4   BY THE WITNESS:

5       A.      By putting in a new shotgun trap

6   requires different rules.   Things like that.

7   BY MR. WORSECK:

8       Q.      How long does it take the Range

9   Committee to review some proposed changes to the

10  rules?

11      A.      I generally write the rules.   Send it

12  out to them.   They look at it.   So within two,

13  three days.

14      Q.      Who sits on the Range Committee?

15      A.      Myself, Don Moran, Jack Cantilon, Mike

16  Biggers, Jim Trimby, Mike Vitalakis.   I don't know

17  how to spell that.

18              There are 13.

19      Q.      What kind of factors impact what the

20  rules will be for a given range?   What do you need

21  to take into account?

22      A.      First of all, on all ranges the first

23  thing you take in are gun handling rules on that

24  range.   That the muzzle is always in a safe



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

28

1      direction.   Not loaded until ready to use.   Many

2      others.

3                Then the type of firearm used impacts

4      that.   The range of the firearm impacts that.

5          Q.      Any other factors?

6          A.      The layout of the particular range

7      impacts that.

8          Q.      Does it matter what kind of students you

9      have at the range?

10                For instance, beginners versus 20-year

11     members of the ISRA, that kind of thing?

12         A.      No.

13         Q.      Does the ISRA have different rules of

14     the range for each of the five different ranges

15     that you talked about earlier, the pistol range,

16     high-power range, shotgun range?

17         A.      Some of those rules are the same in all

18     ranges and then some are particularly tailored to

19     that range.

20         Q.      Would the specific rules for each range

21     be contained in the book you mentioned?

22         A.      Yes.   It is listed under the range.

23         Q.      The rules specific to each particular

24     shooting range at Bonfield, do those also go



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

36

1        A.    If I explain the fee structure, maybe

2    that will help.  There is a base fee for people

3    over 65 and under 65.

4             People under 65 have an $80-a-year work

5    fee which they do not have to pay if they volunteer

6    two days.  If they don't volunteer the two days,

7    they get charged $80.

8             Your first year as a member, you're

9    charged an initiation fee that is $80.

10            Beyond that, the only thing I would know

11   would be a match fee, or sometimes they throw it in

12   the pot and have a picnic.

13       Q.    Okay.  Has the ISRA ever operated a

14   mobile shooting range?

15       A.    No.

16       Q.    Have you personally ever operated or

17   trained or had any association with a mobile

18   shooting range?

19       A.    No.

20       Q.    Does the ISRA have insurance for the

21   Bonfield range?

22       A.    Yes.

23       Q.    What kind of policy?

24       A.    A comprehensive journal liability policy



ESQUIRE

an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                     September 8, 2010

40

1   Sports Foundation.  It's on their website called

2   "wheretoshoot."

3        Q.     That's the website you identified in

4   your Interrogatory responses?

5        A.     Yes.

6        Q.     Aside from what's listed on that

7   website, do you have any other familiarity with how

8   many ranges are within X number of miles of

9   Chicago?

10       A.     No.  All the ranges I know would be

11   listed there.

12       Q.     Do you shoot at any ranges other than

13   the Bonfield range?

14       A.     I have shot at many ranges.  I was a

15   very short-time member of the U.S. Shooting Team.

16   I shot at Quanaco, Virginia, Ft. Denning, Prado

17   California, Indiana International Shooting Range,

18   Camp Perry, Ohio.

19            All over the place.

20       Q.     Have you ever been to any shooting

21   ranges within the Chicagoland area?

22       A.     Yes.

23       Q.     Which ranges?

24       A.     I have been to Chuck's Gun Shop, Gat



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

41

1    Guns, Midwest in Lyons.

2              I think that's all.  I was actually at a

3    couple that are now closed.  Bell's.

4         Q.    Is it fair to say you have visited each

5    of those ranges while you were living in

6    Chatsworth?

7         A.    Yes.  It is part of my duties as

8    Executive Director.

9         Q.    To visit those ranges?

10        A.    Yes.

11        Q.    Why would you need to visit those ranges

12   in your ISRA capacity?

13        A.    I'm supposed to know everything that's

14   out there as well as I can.

15        Q.    What kinds of things are you supposed to

16   know about these ranges?

17        A.    I like to look at them.  How they are

18   constructed, laid out.  I have my own ideas about

19   shooting ranges.  I like to see what others think.

20   What kind of hardware they use.

21        Q.    So opinions could differ as to how best

22   to build a shooting range or operate one?

23        A.    There are different companies that build

24   shooting ranges.  I like to see what they actually



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

42

1    have in practice if I can.

2         Q.    You might disagree with their set-up?

3         A.    I might not like them.  I can't

4    disagree, but I might not like them.

5         Q.    Have you ever come across a range set-up

6    that, in your opinion, was unsafe?

7         A.    Not recently.  Maybe years ago.

8         Q.    How many years ago?

9         A.    1970's.  When they first started, there

10   were some out there that weren't too good.

11        Q.    What about them made them not too good?

12        A.    Poor ventilation systems.  Dark, dreary.

13        Q.    Any other factors?

14        A.    I may not like the target return or how

15   much space was allowed for each person.

16              That sort of thing.  The attitude of the

17   people.

18        Q.    You mean the operators, trainers?

19        A.    Yes.

20        Q.    Were any of those in the Chicago area?

21        A.    No.

22        Q.    Are you a State-licensed firearm

23   instructor?

24        A.    No, I am not.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

43

1      Q.      Were you ever?

2      A.      No, I have never been.

3      Q.      So one does not need a license from

4   Illinois to instruct in the use of firearms?

5      A.      No.  My license has come from the

6   National Rifle Association.

7      Q.      You don't need a State license?

8      A.      No.

9      Q.      It is lawful to instruct in the use of

10  firearms in the State of Illinois without a license

11  from the State?

12     A.      Yes.

13     Q.      Does the State of Illinois require any

14  sort of license to be a range operator?

15     A.      No.

16     Q.      Or to be a range master?

17     A.      No.

18     Q.      Does the NRA offer a license for the

19  position of range operator?

20     A.      I don't know.

21     Q.      Do they offer one for range masters?

22     A.      Yes.  They are actually called range

23  officers.

24     Q.      Do you hold that license, as well?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                September 8, 2010

49

1       A.    Yes.

2       Q.    You didn't find anything the second time

3   around?

4       A.    No.

5       Q.    In the course of preparing your

6   responses to the Document Requests, did you speak

7   with anyone?

8       MR. SIGALE:   If the answer is attorney, you

9   can say.  I will object if the next question is

10  what you talked about.

11          If the answer is you spoke with your

12  attorney, say that.

13  BY THE WITNESS:

14      A.    Yes.

15  BY MR. WORSECK:

16      Q.    Other than your attorneys, did you speak

17  with anyone?

18      A.    No.

19      Q.    Turn to the second page of Exhibit

20  No. 3.

21          Request No. 2, do you see that?

22      A.    Yes.

23      Q.    It reads "All documents related to the

24  statement contained in the Declaration of Richard



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                September 8, 2010

50

1    Pearson in support of plaintiff's motion for a

2    preliminary injunction.   That there exists a severe

3    shortage of range time within 100 miles of the City

4    of Chicago."

5           The Answer reads "NSSF documents the

6    availability of ranges available at

7    www.wheretoshoot.org."

8           That's the only document that relates to

9    your claim that there's a "severe shortage of range

10   time within 100 miles of Chicago"?

11        A.    For the purposes of the Chicago Firearms

12   Permit.

13        Q.    There are no other documents that

14   discuss or talk about or reflect the shortage of

15   range time?

16        A.    No.

17        Q.    Does this website talk about a shortage

18   of range time in Chicago?

19        A.    It is just a list of ranges.

20        Q.    In the Chicago area?

21        A.    Within a radius.

22        Q.    So it just lists the ranges that are

23   within a certain distance of Chicago, but it

24   doesn't say anything about whether there's a



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

51

1    shortage of range time within that radius?

2         A.    No.  It includes all kinds of ranges.

3    Shotgun ranges.  Things that wouldn't apply.

4         Q.    Look at Request No. 3.

5              "All documents related to any

6    communications or agreements between you and the

7    Second Amendment Foundation regarding the placement

8    of a mobile firearms range within the city."

9              The Answer provided is "None."

10        A.    Right.

11        Q.    There are no documents that you have or

12   that the ISRA has relating to this endeavor with

13   the SAF to provide or operate a mobile shooting

14   range in Chicago?

15        A.    No.

16        Q.    Were there any oral communications that

17   you had with the SAF about that?

18        A.    We agreed to help run one, assist in

19   running a mobile shooting range orally.

20        Q.    When was the first communication between

21   the SAF and the ISRA on that topic?

22        A.    I don't know exactly, but before I went

23   to Camp Perry, Ohio.  I went there on July 12.

24        Q.    How did that communication come about?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

56

1       A.      Right.   I said three, but there could be
2    four.  I don't know exactly.
3       MR. SIGALE:   By "communications," you're
4    referring orally, is that the question -- actually,
5    objection to form.
6       MR. WORSECK:   Sure.
7    BY MR. WORSECK:
8       Q.      The only oral communications you had
9    with the SAF about the operation of the mobile
10   shooting range in Chicago took place during these
11   three or four phone calls involving this group of
12   people?
13      A.      Yes.
14      Q.      It is my understanding when we talked
15   earlier about your Document Requests, there were no
16   written communications at all at any time between
17   the ISRA and the SAF about this mobile shooting
18   range?
19      A.      No.
20      Q.      Were any agreements reached between the
21   ISRA and the SAF about this mobile shooting range?
22      A.      That we verbally agreed to operate it.
23      Q.      There was no written agreement?
24      A.      No.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

57

1      Q.      Can you be more specific about the oral

2   agreement, verbal agreement?

3      A.      There wasn't much more to it than that.

4      Q.      You simply said "We will agree to help

5   run this range"?

6      A.      Yes.

7      Q.      You didn't get into any specifics about

8   specific roles that the ISRA would play with

9   respect to the mobile shooting range?

10     A.      No.

11     Q.      Has the ISRA ever had any communication

12  with the City of Chicago either orally or a written

13  communication regarding operating or running this

14  mobile shooting range in Chicago?

15     A.      No.

16     Q.      Aside from the NSSF website that we

17  talked about a few minutes ago, are you aware of

18  any other documents out there that anyone might

19  have listing or discussing the number of shooting

20  ranges within a certain amount of distance from the

21  city of Chicago?

22     A.      There is a document out there called --

23  it is a book called "Black's Wing and Clay."

24          It has other stuff in it.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

61

1    question.   That's my objection.

2    BY MR. WORSECK:

3        Q.    Are you aware of any member of the ISRA

4    who is also a Chicago resident that has requested

5    or asked about range training within the City of

6    Chicago?

7        A.    No.

8        Q.    Look at No. 2.

9             So I'm clear, there were no

10   communications at all between the ISRA and Blue

11   Line Corporation regarding the delivery or

12   placement or operation of the mobile shooting

13   range, is that correct?

14       A.    None.

15       Q.    Why were there no communications?

16       A.    My job wasn't to deal with Blue Line.

17       Q.    Whose job was that?

18       A.    The Second Amendment Foundation's.

19       Q.    Did you discuss the Blue Line range with

20   anyone?

21       A.    Outside of those phone calls, no.

22       THE WITNESS:   Is that an answer?

23       MR. SIGALE:   Yes.   I will object to the

24   question.   It asks for privileged information.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

64

1    with real estate agents about securing other sites?

2         A.    No.

3         Q.    It hasn't looked at a map of the city to

4    try to identify some other sites?

5         A.    I actually thought about that, but I

6    didn't have a map of the city to look at.

7         Q.    Earlier you stated that there had been

8    no communications at all between the ISRA and the

9    City of Chicago regarding this mobile range?

10        A.    No.  I don't think so.

11        Q.    You do recall saying there had not been

12   any communications?

13        A.    I have talked to no one about this

14   mobile range with the city or got anything from

15   them.

16        Q.    And why not?

17        A.    It is not my job.  It is Second

18   Amendment's job.

19        Q.    Look at Interrogatory No. 7.

20              "Identify all applications, including

21   but not limited to licensing to" -- I think that's

22   a typo.

23              "Licensing and zoning applications you

24   have filed with the City related to the placement



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

68

1    on site?

2        A.    At least one trainer and one range

3    officer.

4        Q.    Will there be any other staff?

5        A.    There could be.  There could be a

6    clerical person there.

7        Q.    You mentioned that you would develop the

8    safety protocols at the range?

9        A.    Yes.

10       Q.    When would you do that?

11       A.    Probably soon.  Next few days probably.

12       Q.    Why haven't you done that already?

13       A.    Because it is very simple to do.  A

14   mobile shooting range is like any other shooting

15   range.  Safety protocols are safety protocols.

16       Q.    Do you need to actually see the range,

17   visit it before you could develop the safety

18   protocols?

19       A.    No.

20       Q.    Have you ever seen the Blue Line trailer

21   that the SAF hopes to bring to the city?

22       A.    Only on the website.

23       Q.    Have you ever seen any sort of mobile

24   shooting range trailer?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

69

1       A.    No.   Only on websites.

2       Q.    You never developed a safety protocol

3    for a mobile firing range trailer?

4       A.    No.

5       Q.    Will the safety protocol need to be

6    subjected to the ISRA Range Committee review

7    process?

8       A.    Probably not.

9       Q.    Why not?

10       A.    Because it is a different project.   I

11    will probably show it to the instructors.

12       Q.    How is it different?

13       A.    The Range Committee deals with one

14    shooting range, that one.

15       Q.    The Bonfield range?

16       A.    Yes.

17       Q.    Are the safety protocols different than

18    the rules of the range?

19       A.    The answer is sometimes.   The general

20    safety protocols generally apply anywhere.

21    Whatever range you're at.   Doesn't matter.

22       Q.    The safety protocols that you would

23    create for the mobile shooting range in Chicago

24    would be the general --



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

70

1       A.      Similar to the ones for the Bonfield

2   range, yes.

3       Q.      Would you need to develop any specific

4   rules of the range for the mobile shooting range in

5   Chicago?

6       A.      No.  We use the protocol for the new

7   students.  We maintain control of their firearms.

8   That sort of stuff.

9               They would only get them on the range.

10  They would be inspected by a range officer.  That

11  we keep them until it is their turn.

12      Q.      Will members of the public showing up to

13  the range be able to bring their own weapons, or

14  will the range supply them?

15      A.      At this moment we are talking about

16  supplying them.

17      Q.      The range would supply them?

18      A.      Yes.

19      Q.      The public wouldn't be able to bring

20  their own weapons?

21      A.      No.

22      Q.      What discussions have you had on that

23  topic with the SAF?

24      A.      None.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

78

1    to the incredible demand on training facilities

2    created by one, the need of existing gun

3    registrants to obtain officially-recognized

4    training to continue firearms ownership.

5             Two, the need for people to obtain

6    officially-recognized training in time for them to

7    comply with the grandfathering provisions for

8    previously acquired guns.  Three, an intense

9    interest in firearms ownership as a result of the

10   McDonald case and the City's acquiescence in

11   recognizing legal handgun ownership."

12            Do you see that?

13       A.    Yes.

14       Q.    What is your basis for saying that

15   there's a severe shortage of range time within

16   100 miles of Chicago?

17       A.    Well, a couple people who travel with

18   Fidelity were having scheduling problems, I

19   understand.  That's also hearsay, I guess.

20            The other thing is there are 105,000

21   FOID cardholders in the city of Chicago and only

22   maybe very few shooting ranges.

23            If all those people are gun owners or

24   already have guns registered, or at least desire to



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

79

1    be firearm owners, the amount of people that would

2    have to use a range would be unbelievable,

3    tremendous.

4              You're talking about at least 100,000

5    hours of range time on a very few ranges.

6         Q.    Is there any other basis?

7         A.    Well, that these people have a very

8    short time to get this done.

9              I believe all previous registrants in

10   the city have to go -- even though they registered

11   previously, they have to go back to get this

12   training to re-register their firearms.

13             I don't know how many gun registrants

14   there are in the city actually.  I think there

15   would be a lot.

16        Q.    Any other basis?

17        A.    No.

18        Q.    So the first basis that you mentioned

19   was hearsay regarding a couple of people who were

20   trying to get the training through Fidelity, and

21   they were having trouble?

22        A.    Right.  They had to schedule different

23   places because there was not enough time.

24        Q.    Do you know if they were able to get



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

80

1     scheduled someplace?

2         A.    They did.

3         Q.    Do you know how many people we're

4     talking about here?

5         A.    No.

6         Q.    Was Fidelity able to schedule them, or

7     did they have to go through someone else?

8         A.    I don't know that answer.

9         Q.    Do you know how long they had to wait to

10    find a place?

11        A.    No.  I don't know that either.

12        Q.    What's your basis for saying there are

13    105,000 FOID cardholders who reside in Chicago?

14        A.    I asked the State Police.  That's what

15    they told me.

16        Q.    When did you do that?

17        A.    It must have been in June, early June.

18        Q.    How many of those 105,000 FOID

19    cardholders need to get training before October 12?

20        A.    I have no idea.

21        Q.    How many of those 105,000 FOID

22    cardholders want to register a firearm in Chicago?

23        A.    I do not know.

24        Q.    Have you spoken to anyone who runs a



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

81

1        shooting range about whether they are super busy

2        with Chicago residents wanting to get their

3        training requirements satisfied?

4               A.     No.

5               Q.     Have you visited any range in the

6        Chicago area and seen any evidence of overcrowding

7        or a lack of space available to Chicago residents

8        who want to get their training requirements

9        satisfied?

10              A.     No.

11              Q.     Have you spoken with any person who had

12       to wait to find a slot at a training course outside

13       Chicago or who was turned away from a training

14       course?

15              A.     No.

16              Q.     Is it your understanding that a person

17       who fails to get the training requirement satisfied

18       by October 12 could still come in at some future

19       date after October 12 and submit a CFP application

20       and registration application for a weapon?

21              MR. SIGALE:   Objection as to foundation.

22                     Answer if you know.

23       BY THE WITNESS:

24              A.     I don't know.



ESQUIRE

an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

                                                                    84

1    range facilities in Chicago, people who would

2    register their firearms will not be able to do so."

3          A.    Okay.  I was on the wrong page.

4                Yes.

5          Q.    Okay.  What is your basis for saying

6    that Chicago residents would not be able to

7    register firearms unless ranges are built within

8    the city of Chicago?

9          A.    I believe with the drive time and amount

10   of expense it takes, it would be very difficult for

11   them, if not impossible.

12         Q.    What's your basis for that statement?

13         A.    We have all these people -- we have

14   105,000 FOID cardholders out there.

15               To register a firearm, there is no way

16   ranges outside the city could handle it.  It makes

17   perfect sense to put ranges inside the city because

18   it would be easier for residents and more

19   profitable for the City.

20         Q.    You are not aware of any instance where

21   a Chicago resident who wanted to register a gun in

22   Chicago was not able to obtain the

23   necessary training at a range outside of Chicago,

24   are you?


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

85

1        A.    Not at this time, no.

2        Q.    Are you familiar with any specifics

3    regarding the amount of time or amount of expense

4    associated with a Chicago resident traveling to the

5    suburbs to obtain their range training?

6        A.    Only a couple of incidents.

7        Q.    Which?

8        A.    The case where Rhonda and the other

9    person had to travel from Chicago out to Dundee

10   which is about 50 miles and back.

11       Q.    Rhonda Ezell, one of your co-plaintiffs?

12       A.    Yes.

13       Q.    Who is the other person?

14       A.    One of her classmates.  I don't know the

15   person's name.

16       Q.    What was the situation faced by that

17   classmate?

18       A.    To drive back into the city.  I only

19   know that because Rhonda got lost.

20       Q.    Did that classmate go to the same range

21   that Rhonda went to?

22       A.    Yes.

23       Q.    Do you know where that classmate lives

24   in the city?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

96

1        A.     He spoke to me about it.  Otherwise, it
2    was in one of those phone conversations that we
3    had.
4        Q.     You had a private conversation with Don
5    Moran about having a mobile shooting range in
6    Chicago?
7        A.     Not a conversation, but an idea that
8    popped up.  It took more time to explain it.
9        Q.     That was between you and Don Moran, and
10   then there was a phone call with a group we
11   discussed earlier where this idea was discussed?
12       A.     Yes.
13       Q.     Whose idea was it for the ISRA to
14   partner with the SAF on this mobile shooting range
15   project?
16       MR. SIGALE:  Objection to the extent the
17   question calls for attorney-client communications
18   and otherwise privileged information.
19   BY THE WITNESS:
20       A.     I will skip that question.
21       MR. WORSECK:  Are you instructing the witness
22   not to answer that question?
23       MR. SIGALE:  I'm instructing the witness not
24   to answer if the answer involves attorney-client



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                              September 8, 2010

97

1     communications or privileged communications.

2          THE WITNESS:   Repeat the question.

3     BY MR. WORSECK:

4          Q.    Whose idea was it for the ISRA and the

5     SAF to partner up on this mobile shooting range?

6          MR. SIGALE:   Same objection.

7     BY THE WITNESS:

8          A.    That would be in the privileged area.

9          MR. SIGALE:   I'm directing my client not to

10    answer.

11    BY MR. WORSECK:

12         Q.    Was it Mr. Gura's idea or Mr. Sigale's

13    idea?

14         MR. SIGALE:   Same objection.

15              Don't answer the question.

16    BY MR. WORSECK:

17         Q.    Did the SAF ever communicate to you any

18    of the specifications of the mobile shooting truck?

19         A.    No.

20         Q.    What is the SAF's role with respect to

21    the mobile shooting truck?

22         MR. SIGALE:   Objection to foundation.

23              Answer if you know.

24    BY THE WITNESS:



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

99

1     mobile shooting truck?

2          A.    I don't know.

3          MR. SIGALE:   Same objection.

4     BY MR. WORSECK:

5          Q.    What is Ms. Versnel's role with respect

6     to the mobile shooting truck?

7          A.    I think her role is to procure.

8          MR. SIGALE:   Same objection -- did you get

9     that, Lisa?

10         THE REPORTER:   "I think her role is to

11    procure."

12    BY THE WITNESS:

13         A.    Yes.   I think her role is to procure.

14         MR. SIGALE:   Just make sure you speak up.

15    BY MR. WORSECK:

16         Q.    Does she have any other role aside from

17    procuring the mobile shooting truck?

18         A.    I don't know.

19         MR. SIGALE:   Same objection.

20    BY MR. WORSECK:

21         Q.    We have already talked about some of the

22    roles that the ISRA is going to play with respect

23    to the truck.

24               One of those is providing trainers?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                              September 8, 2010

100

1          A.      Yes.

2          Q.      The second is providing the range

3     officers or range master?

4          A.      Yes.

5          Q.      The third is setting the rules of the

6     range?

7          A.      Yes.

8          Q.      Is the ISRA going to have a role with

9     respect to opening and closing the truck?

10         A.      If we are operating it, I would

11    certainly think.

12         Q.      Do you know any particulars about that?

13         A.      No.

14         Q.      Do you know if Blue Line will have any

15    role to play with respect to the opening or closing

16    or operation of the truck?

17         A.      No.

18         Q.      Will the SAF have any role on that

19    issue?

20         MR. SIGALE:   Objection.   Foundation.

21    Speculation.

22    BY THE WITNESS:

23         A.      I don't know.

24



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

102

1    BY MR. WORSECK:

2         Q.     You're not aware of any other role?

3         A.     No.

4         Q.     Did you ever ask the SAF if they were

5    going to have any other role?

6         A.     No.

7         Q.     Did you inquire about whether the SAF

8    had any prior experience with dealing with a mobile

9    shooting range?

10        A.     Say that again.

11        Q.     Did you ever try to see if the SAF had

12   any prior experience with procuring or operating a

13   mobile shooting range before you decided to partner

14   with them on this project?

15        A.     No.

16        Q.     Are you aware there are contracts that

17   exist between the SAF and -- there is one between

18   SAF and Blue Line.  A second between SAF and

19   Accurate Perforating.

20               Are you generally familiar that those

21   contracts exist, or is this news to you?

22        A.     I suspected they exist.  I never seen

23   any.

24        Q.     You have never seen any contract by any



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

103

1    party concerning this mobile shooting range?

2         A.    No.

3         Q.    The ISRA is not a party to any contract

4    with this mobile shooting range?

5         A.    No.

6         Q.    We talked a little before about what

7    hurdles might exist as to a permanent shooting

8    range.

9              I want to talk about this particular

10   mobile shooting range that's the subject of your

11   lawsuit.

12             Did you or the ISRA, anyone at the ISRA

13   take any efforts to figure out what the City of

14   Chicago zoning laws are that could bear upon the

15   mobile shooting range?

16        A.    No.

17        Q.    Did you or anyone at the ISRA take any

18   effort to see what City of Chicago building code

19   provisions might apply to the operation of the

20   mobile shooting range?

21        A.    No.

22        Q.    Did you or anyone at the ISRA inquire as

23   to whether a City of Chicago building permit would

24   be required before the mobile shooting range could



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

104

1    open?

2         A.    No.

3         Q.    Did you or anyone at the ISRA inquire as

4    to whether a City of Chicago business license would

5    be required before the range could open?

6         A.    No.

7         Q.    Did you or anyone at the ISRA inquire as

8    to whether the shooting range would need to be

9    inspected by any City official before it could open

10   to the public?

11        A.    No.

12        Q.    Did you or anyone at the ISRA look into

13   whether there would be City of Chicago regulations

14   governing the provision of restrooms, first aid,

15   safety services to the mobile shooting range?

16        A.    No.

17        Q.    Did you or anyone at the ISRA

18   investigate whether there were any City of Chicago

19   laws, regulations governing capacity limits at the

20   shooting range?

21             How many people could be in the range at

22   one time or in the parking lot at one time?

23        A.    No.

24        Q.    Did you or anyone at the ISRA



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                September 8, 2010

105

1       investigate any City of Chicago environmental

2       regulations that would apply to the mobile firing

3       range?

4               A.     No.

5               Q.     To your knowledge, did anyone at the SAF

6       look at any of these issues we have just discussed,

7       zoning issues, building code, business license,

8       building permit, city inspections, restrooms, first

9       aid, safety provisions, capacity limits,

10      environmental regulations?

11              MR. SIGALE:  Objection.  Foundation and

12      speculation.

13      BY THE WITNESS:

14              A.     I don't know.

15      BY MR. WORSECK:

16              Q.     You're not aware of anyone at the SAF

17      having looked at any of those issues?

18              A.     No.

19              Q.     When did you first learn of the idea of

20      using a Blue Line supplied trailer as the mobile

21      shooting range in Chicago?

22              A.     It was in one of those phone

23      conversations.

24              Q.     Had you ever heard of Blue Line before



Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

106

1      that communication?

2          A.    No.

3          Q.    Have you undertaken any efforts to learn

4      any more information about Blue Line aside from

5      what might have been discussed on these phone

6      calls?

7          A.    I went to the website and read the

8      website.

9          Q.    Anything else?

10         A.    No.

11         Q.    You have not spoken to anyone at Blue

12     Line?

13         A.    No.

14         Q.    Have you spoken to anyone that has any

15     experience in operating a mobile shooting range or

16     being a range master at a mobile shooting range or

17     a trainer at a mobile shooting range?

18         A.    No.

19         Q.    Did anyone consult you or the ISRA

20     concerning the contracts at issue in the case?

21             The contracts meaning the contract

22     between SAF and Blue Line and the contract between

23     SAF and Accurate Perforating?

24         A.    No.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

111

1    BY MR. WORSECK:

2        Q.    Someone at the ISRA?

3        A.    Yes.

4        Q.    But you have not figured out who that

5    would be yet?

6        A.    No.

7        Q.    What are the hours of operation that

8    will be used for the mobile range?

9        A.    That hasn't been determined yet.

10       Q.    Who will make that decision?

11       A.    Probably I will.

12       Q.    Will you consult with anyone else?

13       A.    I'm sure I will.

14       Q.    Who would you consult with?

15       A.    Instructors and range officers.  The

16   scheduling of the people will determine a lot of

17   that.

18       Q.    Have you ever visited the Accurate

19   Perforating site?

20       A.    No.

21       Q.    So you have never looked at any of their

22   land where this trailer might be placed?

23       A.    No.

24       Q.    You don't know what specific spot on



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

112

1    their land the trailer might be placed?

2        A.    No.

3        Q.    If I showed you a map or photograph of

4    the Accurate Perforating grounds, you wouldn't be

5    able to point to any spot on the grounds where the

6    trailer would be placed?

7        MR. SIGALE:   Objection to relevance.

8             You could answer.

9    BY THE WITNESS:

10       A.    No, I wouldn't.

11   BY MR. WORSECK:

12       Q.    What will be done with the weapons that

13   the mobile range will supply to customers at the

14   end of the day?

15       MR. SIGALE:   Objection.   Foundation.

16   Speculation.

17            If you know, you could answer.

18   BY THE WITNESS:

19       A.    They will be disassembled and removed

20   from the premises.

21   BY MR. WORSECK:

22       Q.    By the --

23       A.    Instructors and range officers.

24       Q.    Would any weapons be stored in the truck



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                   September 8, 2010

                                                                    113

1    overnight?

2         A.    No.

3         Q.    Will any ammunition be stored in the

4    truck overnight?

5         A.    No.

6         Q.    Have you discussed with anyone the issue

7    of civilians using this mobile shooting range and

8    any unique issues associated with civilians using

9    the mobile shooting range as opposed to law

10   enforcement officers using the mobile shooting

11   range?

12        MR. SIGALE:   Objection to form.

13   BY THE WITNESS:

14        A.    I would assume they would all be

15   civilians.  They would all have to be trained.

16   BY MR. WORSECK:

17        Q.    Do you know whether this particular Blue

18   Line trailer is used for any particular training

19   purpose?

20        A.    Firearms training.  Law enforcement

21   training.

22        Q.    It is used for law enforcement?

23        A.    Yes, according to the website.

24        Q.    Are you familiar with the Blue Line



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

114

1    mobile range ever having been used for civilian

2    training before?

3         MR. SIGALE:   Objection to foundation.

4    BY THE WITNESS:

5         A.    I have no idea.

6    BY MR. WORSECK:

7         Q.    You're not aware of any instance where

8    it was used for civilian training?

9         A.    Or where it has not been.  I just don't

10   know.

11        Q.    Did you discuss the fact civilians would

12   be using this mobile shooting range for training?

13        A.    No.

14        Q.    Are there any differences in terms of

15   safety protocols or rules of the range or rules on

16   when you could have your weapon on you and when you

17   could have it assembled and loaded that apply when

18   you're dealing with law enforcement officers that

19   would be different than when dealing with

20   civilians?

21        MR. SIGALE:   Objection to foundation.

22   Speculation.

23             Answer if you know.

24



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                          September 8, 2010

119

1    not require, will any effort be made to make sure

2    that the applicant satisfies whatever it might be

3    that Chicago requires?

4         MR. SIGALE:   Objection to asked and answered,

5    as well as relevance and foundation.

6              Answer if you can.

7    BY THE WITNESS:

8         A.    Say that again.

9    BY MR. WORSECK:

10        Q.    Sure.   Will any effort be made to see

11   whether the applicant that wants to sign up for a

12   slot at the range satisfies all Chicago laws

13   governing firearms, use or possession, whatever

14   they may be, before they are allowed to use the

15   range?

16        MR. SIGALE:   Objection.   Speculative.   Calls

17   for a conclusion.   Incomplete hypothetical.

18             I don't see the relevance of it.

19   BY THE WITNESS:

20        A.    I don't know.

21   BY MR. WORSECK:

22        Q.    You don't know whether any effort will

23   be made?

24        MR. SIGALE:   Same objection.   He already



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

122

1        A.     No.   We will ask them not to bring
2    anything.
3        Q.     If they do, would you turn them away?
4        MR. SIGALE:   Objection.   Speculative.
5    Foundation.
6    BY THE WITNESS:
7        A.     I have no idea.
8    BY MR. WORSECK:
9        Q.     What kind of bullet trap is used in the
10   mobile shooting range?
11       A.     I forgot the name of it.   I don't
12   remember the name.
13       Q.     Does the mobile range offer 360-degree
14   protection?
15       A.     Yes.
16       Q.     How do you know that?
17       A.     I read it on their website.
18       Q.     Aside from seeing it on the website, did
19   you do anything else to confirm that?
20       A.     I spoke to someone who attended a
21   demonstration firing in all directions.   Nothing
22   left the range.
23       Q.     That was someone who had attended a
24   demonstration at this particular Blue Line trailer?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

132

1    address to say "David and Mary want to meet you for

2    coffee at Joe's."

3         Q.    The ISRA could open up an office with a

4    meeting room in Chicago open to members to meet and

5    talk and learn about firearms, right?

6         A.    I wouldn't want to do it without a

7    shooting range attached.

8         Q.    But that's your decision, that you don't

9    want to operate that particular kind of office?

10        MR. SIGALE:   Objection.   Relevance.

11   Argumentative.

12   BY THE WITNESS:

13        A.    The idea here is the shooting range is a

14   first and second amendment right.   The City of

15   Chicago is preventing that by not allowing any.

16             People who are firearm owners, whether

17   ISRA members or not, individual citizens or not,

18   that just become interested in firearms have no way

19   to meet and enjoy the sport.

20   BY MR. WORSECK:

21        Q.    Is the ISRA prohibited from opening an

22   office in Chicago open to whomever it wants to open

23   it to to come visit, meet, talk and learn about

24   firearms?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                September 8, 2010

133

1        A.      No.

2        Q.      The only thing that the ISRA is

3    prohibited from doing in the city is operating a

4    facility where guns are discharged, is that

5    correct?

6        A.      Or bought and sold.

7        Q.      Okay.  But you're not challenging that

8    here, is that correct?

9        A.      That's correct.

10       Q.      Isn't it correct that the ISRA provides

11   written information to members and non-members

12   about firearms?

13       A.      Yes.

14       Q.      Nothing in the shooting range ban

15   prohibits the ISRA from doing that, is that

16   correct?

17       A.      No.

18       Q.      The ISRA operates a website that

19   contains all kinds of information, is that correct?

20       A.      Yes.

21       Q.      Nothing in the ban on shooting ranges

22   has in any way impacted what the ISRA puts on its

23   website, is that correct?

24       A.      Well, not negatively.  No.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                        September 8, 2010

1      Q.    We talked earlier about the picnic

2    pavilion at Bonfield and about the kinds of

3    training and instruction that is provided to

4    students in the picnic pavilion, do you recall

5    that?

6      A.    Yes.

7      Q.    Is there anything in the Chicago ban on

8    shooting ranges that prohibits the ISRA from

9    offering those same services and training courses

10   to people in Chicago?

11     A.    In the ban there isn't anything, no.

12     Q.    Has the ISRA changed anything about the

13   ways it communicates information or the types of

14   information it communicates as a result of the ban

15   on shooting ranges?

16     A.    No.

17     Q.    How does the ban on shooting ranges

18   impact the second amendment rights of the ISRA?

19     MR. SIGALE:  Same objection as before.  It is

20   a legal conclusion.  Objection to foundation.

21          You could offer the best lay opinion you

22   think you can.

23   BY THE WITNESS:

24     A.    Because it prevents people from



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

153

1          Q.      All right.   Spring-boarding from there

2     and talking about the nuts and bolts, are there any

3     other logistical -- you mentioned other staff.

4               The range master, range officer.

5          A.      Yes.

6          Q.      Maybe a clerical person.   You mentioned

7     instructors and staff.

8               Other than what I just mentioned and

9     what you just agreed with, are there other

10    logistical items that need to be performed to get a

11    mobile range up and running in a parking lot in the

12    city?

13         A.      No.

14         Q.      What about washrooms?

15         A.      Get a couple handicapped accessible

16    port-o-potties and wash stations for people to wash

17    their hands after they come out of the shooting

18    range.

19         Q.      Why?

20         A.      Because of any powder residue or lead

21    contamination on their hands, they should wash it

22    off in cold water to make sure it doesn't penetrate

23    their skin.   That does it.

24               So a wash station.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

170

1      Q.     Are you familiar with Maxon Shooters

2    Supplies in DesPlaines?

3      A.     I have been there once.

4      Q.     Do you recall how many lanes it has?

5      A.     I don't know.

6      Q.     What about Midwest in Lyons?

7      A.     12, I believe.

8      Q.     J.R. in Aurora?

9      A.     I have not been there.

10     Q.     What about Mega Sports in Plainfield?

11     A.     I have been there, but I have not been

12   on the range.

13     Q.     You know Plainfield, is that correct?

14     A.     Yes.

15     Q.     Will County?

16     A.     Yes.  Route 30.

17     Q.     If you were to take 55 South from the

18   city, do you know approximately how many miles, or

19   how long it would take to get there?

20     A.     I think it is 292A, right?

21     Q.     No.  I'm not sure.

22     A.     So it must be 294.

23            It starts at 294, and the exit for Mega

24   Sports is 257.  So that's about 40 miles out there.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                      September 8, 2010

171

1      Q.      Where in Aurora is J.R.'s?

2      A.      I have never been there.

3              St. Charles only lets you shoot

4      shotguns, so it doesn't count.

5      Q.      Gat Guns in Dundee, that's the one

6      Rhonda Ezell went to, right?

7      A.      Right.

8              MR. WORSECK:   Objection.   Lack of foundation.

9      BY MR. SIGALE:

10     Q.      Do you know if that's the one?

11     A.      Yes.

12     Q.      How do you know that?

13     A.      She told me.

14     Q.      Have you been there yourself?

15     A.      Yes.

16     Q.      Do you know how many firing positions?

17     A.      The range I was in had eight, but I

18     don't know if he has more, but I know he has eight.

19     Q.      Are you familiar with Knollwood

20     Sportsman Club in Lake Bluff?

21     A.      No.

22     Q.      Do you know where Lake Bluff is?

23     A.      Yes.

24     Q.      Can you say where that is?



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                September 8, 2010

172

1      A.     North.

2      Q.     How far north?  I used to live there, so

3  I know, but I'm asking you.

4      A.     Not far from Gurnee.

5      Q.     How about Chuck's Gun Shop in Riverdale?

6      A.     South.

7      Q.     Are you familiar with it?

8      A.     I have shot in that range.

9      Q.     How many firing positions?

10     A.     Only five, I think.  Small range.

11            The others like Knollwood and Elgin

12  Rifle and Wheaton, they are all private ranges.

13            I'm not sure about Northern Illinois

14  Tactical.  I think it is a training range for

15  police trainers.  I think.  I don't know.  I didn't

16  know that was there.

17     Q.     Where is Elburn?

18     A.     Way out west off Route 47.  I have a

19  friend that lives there.  It's almost in Morris.

20  It must be 60 miles, but it doesn't matter.

21            They don't shoot.  They just shoot

22  shotguns there.

23     Q.     So based on your knowledge, which of the

24  ones on this list are close to the city, and then I



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

173

1    will ask how you define close to the city.

2        MR. WORSECK:  Objection to this whole line of

3    questioning.

4            Location of ranges and their distance

5    from the city are facts judiciously noticeable.

6            The witness says he basically hasn't

7    been to almost all of these ranges, and he doesn't

8    know what kind of shooting capacities they offer.

9            Having him now say what he in his

10   opinion thinks is close or far is entirely

11   pointless.

12       MR. SIGALE:  Your objection is noted.

13   BY THE WITNESS:

14       A.    The closest would be Chuck's, I think.

15   BY MR. SIGALE:

16       Q.    The next farthest?

17       A.    Next closest, you mean.

18       Q.    Yes.

19       A.    Probably Midwest in Lyons.

20       Q.    Then?

21       A.    Probably Maxon would be the next one.

22   J.R. is clear out in Aurora.  Mega is clear out in

23   Plainfield.  Aurora would be further than

24   Plainfield.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

174

1           Gat Guns is way out there someplace,

2    too.   Route 25.

3           Q.    Are you aware of any others that there

4    are handgun ranges that are not on this list that

5    are open to the public -- you said on this list

6    Maxon you would probably put third farthest --

7    closest?

8           A.    Yes.

9           Q.    That far or closer to the city, are you

10   aware of any handgun training ranges open to the

11   public that are not on this list?

12          A.    No.

13          Q.    Turn to the next page quickly.

14          Obviously if we're doing 60 miles for

15   60101, then there is going to be some overlap with

16   the 30 miles of 60101.

17          I will ask you if there is anything on

18   this list that, for some reason, isn't on this

19   30-mile radius list that you would nonetheless say

20   is as close or closer to the city as Maxon?

21          A.    No.

22          Q.    You have read the whole list?   You're

23   sure?

24          A.    Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

175

1        Q.     As Executive Director of the ISRA, is
2   knowledge about the shooting ranges in Illinois
3   part of your job?
4        A.     Yes.
5        Q.     How so?
6        A.     Because I get requests from people
7   wanting to know where people could shoot.  What's
8   close to their home, and that sort of thing.
9            A lot don't have a computer or websites,
10  so you have to tell them.  You kind of have to know
11  what they do there.
12           Wheaton Rifle only shoots 22-rifles, so
13  unless they are interested in that, it is of no
14  value.
15       MR. SIGALE:   Okay, Richard.
16           Nothing else.
17       MR. WORSECK:   I have a few follow-up.
18           FURTHER EXAMINATION
19  BY MR. WORSECK:
20       Q.     I just want to go back over the first
21  page of Exhibit No. 6 and run down the page.
22           Maxon Shooters, you never visited that
23  site?
24       A.     I have, yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

1        Q.      How many positions do they offer?

2        A.      I don't remember.

3        Q.      Midwest Sporting Goods, when did you

4    visit that site?

5        A.      About two months ago.

6        Q.      J.R. Shooting Sports, you never visited

7    there?

8        A.      No.

9        Q.      You don't know how many positions they

10   offer?

11       A.      No.

12       Q.      Mega Sports, you have never been on the

13   range, is that correct?

14       A.      I have been there and seen the range,

15   but I have not been on it.

16               I think they have 12, though.

17       Q.      St. Charles Sportsman Club, you never

18   visited there?

19       A.      That's a shotgun range.

20       Q.      You don't know how many positions they

21   offer, do you?

22       A.      For pistol, 0.

23       Q.      For shotguns?

24       A.      No -- wait.  I have been to St. Charles.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

180

1    code when you entered it?

2        A.    No.

3        Q.    Who gave you that zip code?

4        A.    I just picked it out.  I thought 601 was

5    Chicago, so I just chose it.

6        Q.    You didn't try to figure out an actual

7    city of Chicago zip code and enter that zip code

8    into the query, did you?

9        A.    No.  What's this zip code?

10       Q.    60602.

11       A.    I'll try it.

12       Q.    How many miles does the city of Chicago

13   boundaries span going north to south?

14       A.    I have no idea.

15       Q.    What's the span going east to west?

16       A.    Less than north to south, but that I

17   have no idea either.

18       Q.    Have you contacted any of the

19   port-o-potty companies and discussed with them the

20   provisioning of washroom facilities to the mobile

21   range site in Chicago?

22       A.    No.

23       Q.    Have you started any work on the safety

24   protocol or rules of the range for the mobile site



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                    September 8, 2010

183

1   BY THE WITNESS:

2        A.    Well, as a first amendment right, it

3   applies to the organization that wants to promote

4   shooting.

5   BY MR. WORSECK:

6        Q.    The right to keep and bear arms grants

7   businesses or entities the right to operate a

8   shooting range?

9        MR. SIGALE:  Same objections.  Same caveat.

10   BY THE WITNESS:

11        A.    I would say so.

12   BY MR. WORSECK:

13        Q.    Are you aware of anyone who has been

14   arrested or prosecuted or fined for operating a

15   shooting range in Chicago?

16        A.    No.

17        Q.    Who will be responsible for inspecting

18   the mobile range -- strike that.

19             Earlier Mr. Sigale asked you questions

20   about how will you know that bullets won't start

21   breaching the walls of the range, and how will you

22   know the walls aren't being compromised, etcetera.

23             You talked about how people will inspect

24   the structure and replace the insulation or bullet



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

184

1      traps, what have you, in order to make sure

2      breaches don't occur.

3                  Do you remember that line of

4      questioning?

5          A.     Yes.

6          Q.     Who would be responsible for doing that

7      work at this mobile range site in Chicago?

8          A.     The range safety officer.

9          Q.     That will be an ISRA person?

10         A.     Yes.

11         Q.     Will that person have ever done those

12     jobs on a mobile shooting range before?

13         A.     Probably not.

14         Q.     How will that person know when it is

15     time to swap out parts and equipment within the

16     range to maintain its safety?

17         MR. SIGALE:   Objection to foundation.

18                  You could answer if you know.

19     BY THE WITNESS:

20         A.     These things are geared to take over a

21     million rounds apiece.  We have lots of time.

22     BY MR. WORSECK:

23         Q.     So it is your understanding the range

24     supplied to Chicago will be a new mobile shooting



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                   September 8, 2010

187

```
 1    STATE OF ILLINOIS )
 2                      )  SS:
 3    COUNTY OF C O O K )
 4              I, LISA C. HAMALA, a Notary Public
 5    within and for the County of Cook, State of
 6    Illinois, and a Certified Shorthand Reporter of
 7    said state, do hereby certify:
 8              That previous to the commencement of the
 9    examination of the witness, the witness was duly
10    sworn to testify the whole truth concerning the
11    matters herein;
12              That the foregoing deposition transcript
13    was reported stenographically by me, was thereafter
14    reduced to typewriting under my personal direction
15    and constitutes a true record of the testimony
16    given and the proceedings had;
17              That the said deposition was taken
18    before me at the time and place specified;
19              That I am not a relative or employee or
20    attorney or counsel, nor a relative or employee of
21    such attorney or counsel for any of the parties
22    hereto, nor interested directly or indirectly in
23    the outcome of this action.
24              IN WITNESS WHEREOF, I do hereunto set my
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Richard Pearson                                        September 8, 2010

188

1    hand of Chicago, Illinois, this 10th day of

2    September, 2010.

3

4                    Notary Public, Cook County, Illinois.

5                    My commission expires August 23, 2012.

6

7

8    C.S.R. Certificate No. 84-3335.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

# Exhibit E

Larry Cohen                                      September 13, 2010

1

### IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

EZELL, et al,                          )
           Plaintiffs,  ) No. 10-CV-5135
      vs.                      ) Judge
CITY OF CHICAGO,                       ) Virginia M.
         Defendants.   ) Kendall


      The deposition of LARRY COHEN, called as
a witness for examination, taken pursuant to the
Federal Rules of Civil Procedure of the United
States District Courts pertaining to the taking of
depositions, taken before LISA C. HAMALA, a Notary
Public within and for the County of Cook, State of
Illinois, and a Certified Shorthand Reporter of
said state, CSR No. 84-3335, at Suite 1230, 30
North LaSalle Street, Chicago, Illinois, on the 3rd
day of September, A.D. 2010, at 1:05 p.m.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Larry Cohen                                September 13, 2010

2

1    PRESENT:

2

3        LAW FIRM OF DAVID G. SIGALE, P.C.,

4        (Corporate West 1,

5        4300 Commerce Court, Suite 300-3,

6        Lisle, Illinois 60532,

7        630-452-4547), by:

8        MR. DAVID G. SIGALE,

9        dsigale@sigalelaw.com,

10            appeared on behalf of the Plaintiffs;

11

12       CORPORATION COUNSEL

13       CITY OF CHICAGO,

14       (30 North LaSalle Street, Suite 1230,

15       Chicago, Illinois 60602,

16       312-744-4216), by:

17       MR. ANDREW WORSECK,

18            aworseck@cityofchicago.org,

19            appeared on behalf of the Defendants.

20

21

22

23    REPORTED BY: LISA C. HAMALA, CSR.

24            Illinois CSR No. 84-3335.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

3

1    PRESENT: (Continued)

2

3         LURIE & UNTERBERGER, LTD.,

4         (30 North LaSalle Street, Suite 2040,

5         Chicago, Illinois 60602,

6         312-236-3380), by:

7    MR. MARK J. UNTERBERGER,

8             appeared on behalf of the Deponent.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    REPORTED BY:  LISA C. HAMALA, CSR.

24             Illinois CSR No. 84-3335.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

40

1   the truck was not part of the Accurate Perforating

2   site?

3       A.      That's correct.

4       Q.      Accurate Perforating does not have

5   dominion over that particular site?

6       A.      That's correct.

7       Q.      That site is owned by 36th and Kedzie

8   Building Corporation?

9       A.      That's correct.

10      Q.      The property described in the lease with

11  the Second Amendment Foundation is not owned by

12  Accurate Perforating, is that correct?

13      A.      That's correct.

14      Q.      Accurate Perforating did not have

15  authority to sign a lease with respect to that

16  property?

17      MR. SIGALE:   Objection to the legal

18  conclusion.   Foundation.

19      MR. UNTERBERGER:   Agreed.

20  BY MR. WORSECK:

21      Q.      You could answer.

22      A.      I believe it did not have authority to

23  sign the lease with regard to the property where

24  the location was going to be.



**ESQUIRE**
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Larry Cohen                                    September 13, 2010

42

1      A.    Yes.

2      Q.    That circle is where you would put the

3  truck if it were left up to you?

4      A.    Yes.

5      Q.    But that piece of land is not owned by

6  Accurate Perforating, is that correct?

7      A.    That's correct.

8      Q.    Nor is it even managed or operated by

9  Accurate Perforating?

10     A.    That's correct.

11     Q.    Referring you back to Exhibit No. 1,

12  about halfway into the stack we were looking at the

13  lease.

14           At the box up towards the top, "Location

15  of Premises:  3333 West 36th Street," where is that

16  address on Exhibit No. 3?

17     A.    Where the circle is.

18     MR. SIGALE:  To the west, the empty lot

19  circle?

20     THE WITNESS:  Yes.

21  BY MR. WORSECK:

22     Q.    Have you had any discussions with anyone

23  regarding where specifically on the property -- and

24  when I use the word "property" here, I'm referring



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Larry Cohen                                    September 13, 2010

63

1       A.      I have not had discussions with anybody
2   with regard to that.
3       Q.      Would the SAF be permitted to put
4   port-o-potties on the site?
5       A.      They were permitted to only put a
6   trailer on the site.  Nothing else.
7       Q.      So they would not be allowed to put
8   port-o-potties on the site?
9       A.      No.
10      Q.      What is your understanding of what this
11  trailer will be used for, if anything?
12      THE WITNESS:  Let me talk to my lawyer.
13      MR. UNTERBERGER:  Repeat the question.
14      THE WITNESS:  I understand it.  I just want to
15  see --
16                  (WHEREUPON, there was a
17                  conference between the witness
18                  and counsel.)
19      MR. WORSECK:  Back on the record.
20      MR. UNTERBERGER:  Reask the question that was
21  asked.
22                  (WHEREUPON, the record was read by
23                  the reporter as requested.)
24



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Larry Cohen                                    September 13, 2010

64

1    BY THE WITNESS:

2        A.    The only discussions I had were with

3    either Julianne or Alan Gura.  They said they

4    needed a site to file this lawsuit with the City.

5    If they were going to operate -- we never talked

6    about actually operating the gun range.

7              We talked about whether the gun range

8    was even going to be allowed to be put there.  That

9    was only going to be by order of the Court.

10             If the Court did not order the trailer

11   to be put there, the trailer was not going to be

12   allowed to be put there.

13             We never had any discussion about the

14   actual operation of the gun range or what the use

15   of it inside was.

16             I knew there was a gun range in it.  As

17   far as I was concerned, until somebody actually

18   goes in and shoots a gun, it is just a trailer.

19             If it were illegal to shoot a gun inside

20   the trailer, I was relying on the lease that

21   nothing illegal could be done on the premises.  If

22   it was illegal, they couldn't do it.

23   BY MR. WORSECK:

24       Q.    You never discussed with the Second



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Larry Cohen                                           September 13, 2010

65

1    Amendment Foundation the idea that the trailer
2    would be open to the public for use as a shooting
3    range?
4         A.    No.
5         Q.    They never asked you to grant them that
6    right?
7         A.    No.   They asked me the right to grant
8    them a space for one trailer to be stored.
9         Q.    To park the trailer?
10        A.    To park the trailer.
11        Q.    You never had any discussions with the
12   Second Amendment Foundation, Mr. Gura or anyone
13   else about the actual operation of the truck, and
14   what would happen if the truck started operating,
15   how the public would get there, and what they would
16   be allowed to do.
17              Nothing like that?
18        A.    None whatsoever.   My understanding of it
19   was that it was just the static trailer that had a
20   -- I knew there was a gun range inside.
21              There was never any discussion about its
22   use.
23        Q.    Was it Ms. Versnel or Mr. Gura or both
24   that talked about this issue of needing a site to



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Larry Cohen                                              September 13, 2010

100

1      Q.      How often have you used this form lease
2   for property other than buildings?
3      A.      I don't know.
4      Q.      Can you ballpark estimate?
5      MR. UNTERBERGER:  His answer was "I don't
6   know."
7   BY THE WITNESS:
8      A.      I don't know what form -- have I leased
9   things other than buildings?  Yes.
10         Have I used this form to lease other
11   buildings?  I don't know.
12   BY MR. WORSECK:
13      Q.      Looking a few lines down under the
14   title, "Purpose:  Trailer storage for one trailer."
15         That's consistent with what we discussed
16   earlier concerning your understanding that the
17   lease was simply for the parking of the trailer on
18   the lot, and for nothing more beyond that, is that
19   correct?
20      A.      Yes.
21      Q.      Certainly not for the operation of a
22   shooting range that would be open to members of the
23   public, is that correct?
24      A.      Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Larry Cohen                                    September 13, 2010

101

1      Q.     Does anything in this contract refer to
2  the trailer being used as a shooting range that
3  would be open to members of the public?
4      A.     No.
5      Q.     If you look at the first introductory
6  statement in the lease, it reads "In consideration
7  of the mutual covenants and agreements herein
8  stated, Lessor hereby leases to Lessee and Lessee
9  hereby leases from Lessor solely for the above
10  purpose the premises designated above," etcetera.
11          Do you see that?
12      A.     Yes.
13      Q.     Is it fair to say the use of the word
14  "solely" in that sentence means that nothing beyond
15  storing the trailer would be permissible under the
16  lease?
17      MR. SIGALE:   Objection to the legal
18  conclusion.
19  BY MR. WORSECK:
20      Q.     To your understanding.
21      A.     Yes.
22      Q.     If the Second Amendment Foundation, or
23  anyone else acting on their behalf, attempted to
24  operate the trailer as a shooting range open to



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Larry Cohen                                September 13, 2010

166

1    STATE OF ILLINOIS )

2                      )  SS:

3    COUNTY OF C O O K )

4               I, LISA C. HAMALA, a Notary Public

5    within and for the County of Cook, State of

6    Illinois, and a Certified Shorthand Reporter of

7    said state, do hereby certify:

8               That previous to the commencement of the

9    examination of the witness, the witness was duly

10   sworn to testify the whole truth concerning the

11   matters herein;

12              That the foregoing deposition transcript

13   was reported stenographically by me, was thereafter

14   reduced to typewriting under my personal direction

15   and constitutes a true record of the testimony

16   given and the proceedings had;

17              That the said deposition was taken

18   before me at the time and place specified;

19              That I am not a relative or employee or

20   attorney or counsel, nor a relative or employee of

21   such attorney or counsel for any of the parties

22   hereto, nor interested directly or indirectly in

23   the outcome of this action.

24              IN WITNESS WHEREOF, I do hereunto set my



# ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Larry Cohen                                    September 13, 2010

167

1    hand of Chicago, Illinois, this 15th day of
2    September, 2010.

3

4                  Notary Public, Cook County, Illinois.
5                  My commission expires August 23, 2012.

6

7

8    C.S.R. Certificate No. 84-3335.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

# Exhibit F

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C-5135 |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF |
| | ) | JULIANNE VERSNEL |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DECLARATION OF JULIANNE VERSNEL

I, Julianne Versnel, am competent to state, and declare the following based on my personal knowledge:

1.      I am the Director of Operations of the Second Amendment Foundation ("SAF"). I have worked with the foundation in numerous capacities for thirty-four years.

2.      SAF has approximately 1,700 members in Chicago. Most of our members own guns.

3.      My deposition in this case lasted over five hours. As part of this deposition, the city's attorney argued with me at great length about whether SAF's corporate purpose allows us to bring a gun range to Chicago and file this lawsuit. As part of this line of inquiry, I was repeatedly asked, in different ways, why SAF's general statement of purpose does not specifically mention, literally, that the organization may bring a range to Chicago and file this lawsuit, and why I interpret our mission statement as permitting this activity.

4. The Second Amendment Foundation exists to promote Second Amendment rights. The mobile gun range project and this lawsuit were approved by SAF's Board of Directors and Executive Vice President. Filing strategic civil rights lawsuits against the City of Chicago over its gun laws is within the essential core purpose of SAF, as is ensuring that our members can exercise Second Amendment rights in Chicago by having access to required range training. We brought *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010). Our membership is enthusiastic and supportive of our efforts in this case. No one, other than the city's attorney at my deposition, has ever suggested that it is not within SAF's mission to bring a gun range to Chicago and challenge the city's range ban.

5. I located our first landlord, Accurate Perforating, by searching the internet for industrial space for lease in Chicago. My search led me to a real estate leasing broker, Beverly Hayes. I explained to Ms. Hayes exactly what SAF would do with the property -- operate a mobile gun range inside a trailer, and Ms. Hayes placed me in touch with Accurate Perforating's Larry Cohen. I explained to Mr. Cohen exactly what SAF would do with the property -- operate a mobile gun range inside a trailer. Mr. Cohen agreed to lease us the land. I was explaining the range to Mr. Cohen and told him the only noise was something similar to a nail gun. He said that that would be quieter than the noise emanating from his factory.

6. Following the Court's denial of our first motion for temporary restraining order, I renegotiated SAF's lease with Accurate so that the start date would be moved up to August 31, from September 15.

7. At my deposition, the city's attorney asked me numerous questions about whether a gun range in Chicago would violate zoning codes, building codes, parking regulations, environmental regulations, and the like, and whether it would place Accurate Perforating in

violation of the law. While I cannot give any legal opinions, I did understand the questioning as threatening our landlord, Accurate Perforating, with retaliation for leasing us the property on which to operate the range.

8.     Mr. Cohen told me on September 3 that he would be changing the location of the property that we had leased. On September 7, I was told that the lease would be terminated.

9.     I immediately began searching the internet for a replacement land. On September 8, Accurate formally terminated our lease effective October 31. Exhibit C.

10.     On September 9, I reached an agreement in principle with Leo Solarte of First Western Properties, to rent a portion of 6300-6400 South Bell. This property is a vacant two-acre parking lot, with high powered lights, that used to store cars for a car dealership. The property has an electric fence, and barbed wire at the top of the fence on the street side. The opposite side borders a railroad yard. Another portion of this property is currently occupied by a wrecking company. I am told that it is zoned M1-2, Limited Manufacturing District.

11.     On September 10, I received a formal lease offer from Mr. Solarte, which I accepted and returned September 11 with the required payment. Our lease for the Bell property starts September 15, and SAF has paid for the first two months' rent. A copy of that lease agreement is attached as Exhibit D.

12.     Accordingly, SAF now has two properties suitable for the mobile gun range, starting September 15. We will consider abandoning possession of the Accurate property, and operate exclusively at Bell, provided that Accurate refunds our money and that nothing occurs limiting our options to Accurate's land.

13.     SAF has now arranged with Blue Line to have the Blue Line mobile range begin operations in Chicago on September 24. Blue Line has indicated that it could operate on either

parcel of our land, or anywhere else in Chicago where a truck trailer can be parked. SAF has paid Blue Line the first $7,500 of the non-refundable fee to get the range to Chicago.

14.     As a practical matter, SAF does not wish to have the range sitting idle in Chicago while people are scheduled for its use. Lead time is needed to schedule the trainers, to contact our membership and alert them to the range's arrival and availability. Ten days is sufficient lead time to ensure that everyone and everything will be in place for the range's arrival.

15.     The only thing stopping the range's operation on September 24 is Chicago's range ban. If the Court issues an injunction, the range will commence training Chicagoans for their Chicago Firearms Permits on September 24.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 12th day of September, 2010

Julianne Versnel

## MEMO

TO:       SECOND AMENDMENT FOUNDATION
             12500 NE 10TH PLACE
             BELLEVUE, WASHINGTON 98005
             LESSEE

FROM:   ACCURATE PERFORATING CORPORATION
             LESSOR

DATE:   SEPTEMBER 8, 2010

RE:      TERMINATION OF INDUSTRIAL BUILDING LEASE

---

You are hereby notified that the Industrial Building Lease dated August 12, 2010, commencing August 31, 2010 on a month-to-month basis, is hereby terminated effective October 31, 2010.

Accurate Perforating Corporation

By: _____

Date Signed:   9 - 8 - 10

## LAND LEASE

THIS AGREEMENT is made and executed this 11 day of September, 2010, by and between GILLESPIE PROPERTIES, LLC of Downers Grove, Cook County, Illinois, hereinafter referred to as "LESSOR", and SECOND AMENDMENT FOUNDATION, of Bellevue, King County, Washington, hereinafter referred to as "LESSEE".

WHEREAS, Lessor is the owner of a certain piece or parcel of land: 6331 S. Bell situated in Chicago, Cook County, Illinois 60636. WHEREAS, Lessee desires to lease enough approximately two-thousand (2,000) square feet of the aforesaid parcel, hereinafter referred to as "PREMISES", from Lessor month-to-month in accordance with the terms and conditions hereinafter set forth;

WHEREAS, Lessor agrees to lease the Premises to Lessee in accordance with the terms and conditions hereinafter set forth.

NOW THEREFORE, the parties hereto intending to be legally bound hereby, in consideration of the above covenants and conditions and those hereinafter stated, mutually covenant and agree as follows:

1. Use: Lessor hereby leases to Lessee and Lessee rents from Lessor, for the purpose of providing a mobile shooting range.

2. Terms: The term of this Agreement is month-to-month having commenced on the 15 day of September.

3. Rent: Lessee shall pay Lessor the sum of One thousand five hundred ($1,500.00) Dollars per month in advance commencing on the eighth day of September, and monthly thereafter on the same day of each consecutive month during the original term hereof or any extension thereof. Lessee agrees to pay the rent to Lessor at GILLESPIE PROPERTIES, LLC , 2001 BUTTERFIELD RD., SUITE 520, DOWNERS GROVE, IL 60515, or at such other place as Lessor may from time to time request.

~~Security Deposit: A security deposit of $_____ shall be deposited with the Lessor. At the expiration of the lease, the security deposit will be returned to Lessee less any damages to the property.~~

4. Late Fee: If payment is not received by the 10th of each calendar month a 10% (ten percent) late charge will be assessed to the tenant and paid.

5. **Indemnification by Lessee: Lessee hereby covenants and agrees that he will indemnify, defend and hold harmless, the Lessor from any and all claims, demands, suits, causes of action, losses, damages, expenses and/or any and all litigation arising out of occurrences, in or at the Premises or as occasioned or suffered by the Lessee or any of his employees, agents, invitees, occupants, or other**

persons in attendance in or at the Premises, including for any damages awarded for such claims, demands, causes of action, losses, damages and expenses or for costs or attorney's fees, due to the error, act or omission of the Lessee. Lessee shall provide Lessor with a Certificate of Insurance providing proof that Lessee has adequate insurance prior to any use of the premises.

5. Laws, Regulations and Codes: Lessee shall at all times during the term of this Agreement comply with all local, state and federal laws, building, land use ordinances, fire and sanitation regulations and codes as they affect Lessee's enjoyment of the Premises.

6. Waste and Nuisance: Lessee hereby covenants and agrees not to commit waste on or at the Premises or allow it to be committed nor permit maintenance of a nuisance or any other noxious matter which may interfere with or affect the Premises.

7. Environmental:. Tenant shall not use or permit the use of any part of the Premises for any purpose prohibited by law. Tenant shall, at its sole expense, comply with and conform to all of the requirements of all governmental authorities having jurisdiction over the Building which relate in any way to the condition, use and occupancy of the Premises throughout the entire Term of this Lease. Without limitation of the foregoing, Tenant covenants and agrees not to bring into the Premises or to use, store, treat or dispose, or permit the use, storage, treatment or disposal, in the Premises of (i) any hazardous substance or regulated materials as defined under any present or future federal, state or local law, rule or regulation or (ii) any explosives or any flammable substances, including, but not limited to, gasoline, liquefied petroleum gas, turpentine, kerosene and naphtha (the substances and materials referred to in clauses (i) and (ii) hereof are collectively referred to herein as "**Hazardous Materials**"), except for such materials customarily used in office and trading operations (x) in such quantities which do not exceed any legal limits, and (y) used, stored, treated and disposed of in compliance with all applicable laws and regulations.

   a. Environmental Disclosure. Tenant, from time to time, upon not less than ten (10) days' prior written request by Landlord, will provide Landlord with such information in Tenant's possession which Landlord may request regarding Tenant's operations in the Premises (including, without limitation, whether or not such operations involve the generation, transportation, storage, treatment or disposal of Hazardous Materials) and shall cooperate with Landlord in the event Landlord is required to prepare any disclosure document or instrument pursuant to the provisions of any federal, state or local laws, rules or regulations in connection with such Hazardous Materials

8. Surrender of Premises: Unless otherwise agreed between the parties or unless as otherwise provided for by the terms of this Agreement, Lessee hereby covenants and agrees to surrender the premises at the end of the term arranged for under this Agreement or any extension hereof, and to remove all Lessee's personal property occupying the Premises, so that it is restored to the same or similar condition it was in before Lessee first occupied it. Any and all property not removed from the Premises at the end of the

term of this Agreement or any extension hereof, will be considered to have reverted to the status of building improvements belonging to the Lessor or to have abandoned as to any and all rights or claims of Less, and will be at Lessor's sole right of disposal.

9. Holding Over: At the termination of the term of this lease, by lapse of time or otherwise, Lessee will yield up immediate possession of the Premises to Lessor, in good condition and repair, loss by fire and ordinary wear expected, and will return the keys therefore to Lessor at the place of payment of rent. If Lessee retains possession of the Premises or any part thereof after the termination of the term by lapse of time or otherwise, then Lessor may at its option within thirty days after termination of the term serve written notice upon Lessee that such holdings over constitutes either (a) a renewal of this lease for the one year, and from year to year thereafter, at double the rental (computed on an annual basis) specified in Section 1, or (b) creation of a month to month tenancy, upon the terms of this lease except at double the monthly rental specified in Section 1, or (c) creation of a tenancy at sufferance, at a rental rate of 200% of base rent dollars per day, for the time Lessee remains in possession. If no such written notice is served then a tenancy a tenancy at sufferance with rental as stated at (c) shall have been created. Lessee shall also pay to Lessor all damages sustained by Lessor resulting from retention of possession by Lessee. The provisions of this paragraph shall not constitute a waiver by Lessor of any right of re-entry as hereinafter set forth; nor shall receipt of any rent or any other act in apparent affirmance of tenancy operate as a waiver of the right to terminate this lease for a breach of any of the covenants herein.

9. Assignment and Subordination: Lessee during the term hereof, shall not have the right to sell, assign, sublease, mortgage or encumber any part or all of the Premises, without the prior written consent of the Lessor, which may be unreasonably withheld at the sole discretion of the Lessor.

10. Time of the Essence: Time is of the essence with respect to any time period for the performance of any conduct or act by either party set forth in this Agreement.

11. Binding Effect: This Agreement shall be binding upon and inure to the benefit of the parties hereto, their respective heirs, executors, administrators, successors and assigns.

12. Cancellation: This lease can be cancelled by either party with thirty (30) days written notice.

13. Governing Law: This Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

14. Integration: This Agreement contains and constitutes the final expression of the intent of the parties hereto and is the complete and exclusive statement of the terms and conditions agreed upon by the parties hereto. No modifications or amendment of this Agreement will be valid unless stated in writing and executed by the parties hereto, and

no parol or intrinsic evidence shall be admissible to explain or contradict the terms hereof.

15. <u>Counterparts:</u> This Agreement may be executed simultaneously in one or more copies or counterparts, each of which shall be deemed an original, but all of which together shall constitute and be one and the same Agreement.

16. <u>No Recording:</u> The parties covenant and agree that this Agreement shall not be recorded at the Office of the Recorder of Deeds of Cook County.

LESSEE:                                          LESSOR:

_____

Gillepie Properties, LLC

**Mail Correspondence:**

**If to tenant:**                               **If to landlord:**
Second Amendment Foundation            Gillespie Properties, LLC
12500 NE 10th Place                         2001 Butterfield Rd., Suite 520
Bellevue, WA 98005                          Downers Grove, IL 60515

# Exhibit G



# Exhibit H

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C-5135 |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF |
| | ) | RICHARD PEARSON |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DECLARATION OF RICHARD PEARSON

I, Richard Pearson, am competent to state, and declare the following based on my personal knowledge:

1.      I am the Executive Director of the Illinois State Rifle Association ("ISRA").

2.      ISRA is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 17,000 members and supporters in Illinois. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation.

3.      ISRA members and supporters in Chicago are among the individuals who need immediate range training to maintain their ability to keep firearms for self-defense under Chicago's new firearms ordinance. ISRA has approximately 1,144 members in Chicago. Most of our members are gun owners.

4.     Not every gun is suitable for every person. It is quite obviously better for potential gun owners, and in the interest of public safety, that prospective gun buyers experience a variety of guns, or at least, those guns they are considering, *before* actually making their purchases. And many people are introduced to shooting and gun ownership by visiting a range prior to deciding to purchase a gun.

5.     ISRA has long operated a gun range near Kankakee, Illinois, for the benefit of its members, and to promote marksmanship and the shooting sports. Among ISRA's members and officers are various firearms trainers certified by the State of Illinois who are qualified to provide the training mandated by the City of Chicago as a prerequisite to obtaining a Chicago Firearms Permit.

6.     There currently exist at least ten gun ranges in the city of Chicago, but none are open to the public. These include five ranges are operated by the Chicago Police Department; four gun ranges operated by the federal government (Postal Inspectors, Air Marshals, Customs and Border Protection, and the Federal Reserve Bank); and at least one gun range operated by a private security company for its own purposes. Previously I declared there were two security company ranges, but this was an oversight on my part, for which I apologize. The fact remains that there are ranges in Chicago, but none that the public can access.

7.     There exists a severe shortage of range-time within a hundred miles of the City of Chicago, owing to the incredible demand on training facilities created by (1) the need of existing gun registrants to obtain officially-recognized training to continue their firearms ownership, (2) the need for people to obtain officially-recognized training in time for them to comply with the grandfathering provisions for previously acquired guns, and (3) an intense interest in firearms ownership as a result of the *McDonald* case, and the city's acquiescence in recognizing legal

handgun ownership. Handguns, as the Supreme Court recognized, are overwhelmingly the arms of choice in our country for people wishing to have a means of self-defense, and handgun ownership has just become legally possible in Chicago for the first time in decades. Without the construction of additional range facilities open to the public, including range facilities in Chicago, people who would register their firearms will not be able to do so.

8.      To fulfill ISRA's organizational objectives, and serve our members and supporters, ISRA will supply state certified firearms trainers to operate the mobile gun range being brought to the City of Chicago by the Second Amendment Foundation.

9.      ISRA has a comprehensive general liability insurance policy which covers its fixed range and other activities of the ISRA. It will cover the mobile range as well. However, I will need to add the address of the mobile range as soon as the decision is made as to where it's going to be located, either at the Accurate Perforating or the Bell lot, and once we have the Court's permission. The policy is designed for shooting ranges and has $1,000,000/$2,000,000 general liability coverage with a $5,000,000 umbrella over that. Range insurance is readily available.

10.     But for the criminal enactments challenged in this complaint, SAF and ISRA would operate the mobile range within the City of Chicago on September 24, 2010.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 12th day of September, 2010

Richard Pearson

# Exhibit I

1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

EZELL, et al,                    )

              Plaintiffs,   ) No. 10-CV-5135

       vs.              ) Judge

CITY OF CHICAGO,                 ) Virginia M.

             Defendants.   ) Kendall


      The deposition of RHONDA MICHELLE EZELL,

called as a witness for examination, taken pursuant

to the Federal Rules of Civil Procedure of the

United States District Courts pertaining to the

taking of depositions, taken before LISA C. HAMALA,

a Notary Public within and for the County of Cook,

State of Illinois, and a Certified Shorthand

Reporter of said state, CSR No. 84-3335, at Suite

1230, 30 North LaSalle Street, Chicago, Illinois,

on the 2nd day of September, A.D. 2010, at 10:10

a.m.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Rhonda Ezell                                    September 2, 2010

2

1    PRESENT:

2

3         GURA & POSSESSKY, P.L.L.C.,

4         (101 North Columbus Street,   Suite 405,

5         Arlington, Virginia 22314,

6         703-835-9085), by:

7         MR. ALAN GURA,

8         alan@gurapossessky.com,

9                    -and-

10        LAW FIRM OF DAVID G. SIGALE, P.C.,

11        (Corporate West 1,

12        4300 Commerce Court, Suite 300-3,

13        Lisle, Illinois 60532,

14        630-452-4547), by:

15        MR. DAVID G. SIGALE,

16        dsigale@sigalelaw.com,

17             appeared on behalf of the Plaintiffs;

18

19

20

21

22

23

24



Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Rhonda Ezell                                    September 2, 2010

3

1    PRESENT: (Continued)

2

3           CORPORATION COUNSEL

4           CITY OF CHICAGO,

5           (30 North LaSalle Street, Suite 1230,

6           Chicago, Illinois 60602,

7           312-744-4216), by:

8           MR. WILLIAM MACY AGUIAR and

9           MS. REBECCA ALFERT HIRSCH,

10          waguiar@cityofchicago.org,

11          rebecca.hirsch@cityofchicago.org,

12              appeared on behalf of the Defendants.

13

14   ALSO PRESENT:

15          MR. RICHARD PEARSON,

16              Illinois State Rifle Association.

17          MS. JULIANE VERSNEL,

18              Plaintiff.

19

20

21

22

23   REPORTED BY:  LISA C. HAMALA, CSR.

24              Illinois CSR No. 84-3335.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

33

1       Q.      Has your application been approved for a

2   Chicago Firearms Permit?

3       A.      Yes.

4       Q.      Do you know approximately when that was

5   approved?

6       A.      Approximately August 5.

7       MR. GURA:  For the record, we provided a copy

8   of the permit which the City also has which you're

9   copying.

10      MR. AGUIAR:  Yes.

11  BY MR. AGUIAR:

12      Q.      Now that you have your CFP, have you

13  filed an application to register a firearm with the

14  City of Chicago?

15      A.      Yes.

16      Q.      Which of the two or both of the guns

17  listed in No. 4 here that we looked at a second ago

18  have you applied for a Firearms Registration

19  Certificate?

20      A.      The Ruger.

21      Q.      Has your application been approved?

22      A.      Yes.

23      Q.      Let's talk about the Lorcin .380 for a

24  second.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Rhonda Ezell                                              September 2, 2010

36

1    gifted to you from a friend, whatever, to bring it

2    into the city and register it?

3              I'll try it this way.

4              Do you want to get another gun?

5         A.   I would like to think that I could

6    purchase what I want.

7         Q.   Yes.  Sitting here today, do you plan to

8    get one?

9              Do you have any present plans to go out

10   and get another gun?

11        A.   No.

12        Q.   Let's look at Exhibit No. 2, your

13   Declaration.

14             You say in Paragraph 2 that you

15   "traveled to a range in Dundee" to obtain your

16   firearms range training, is that correct?

17        A.   Yes.

18        Q.   In Answers to Interrogatories, Exhibit

19   No. 4, Questions 9 and 10, you answer some of the

20   questions about your trip to Dundee.

21             You went on July 25, 2010.  You went by

22   yourself?

23        A.   Yes.

24        Q.   How far away is Dundee from your home?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Rhonda Ezell                                             September 2, 2010

38

1    Q.    What was the name of the range that you
2    went to in Dundee?
3          Would it have been Gat Guns?
4    A.    Yes.
5    Q.    That would have been the place you went
6    to in Dundee?
7    A.    Yes.
8    Q.    Why did you select Gat Guns for range
9    training?
10   MR. GURA:   Objection.  Assumes a fact not in
11   evidence.
12   BY MR. AGUIAR:
13   Q.    Did you select to go to Gat Guns to get
14   your range training?
15   A.    No.
16   Q.    How did you come to go to Gat Guns then?
17   A.    The school that I chose to do my
18   training at, they selected the place.
19   Q.    What was the school that you went to for
20   training?
21   A.    Fidelity Investigation Training.
22   Q.    Are they located in the City of Chicago?
23   A.    Yes.
24   Q.    Do you know approximately what street



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

39

1    they are on?

2        A.    Belmont.

3        Q.    Does Fidelity Training just do the

4    classroom instruction?

5        A.    It was a two-day deal with them.  We did

6    classroom one day.  That's when we find out what we

7    would do the next day, which was the range.

8        Q.    Is it safe to say you did the classroom

9    instruction at Fidelity on July 24?

10       A.    Yes.

11       Q.    Then you went to Gat Guns on the 25th?

12       A.    Yes.

13       Q.    Let's talk about July 24 for a second

14   while at Fidelity.

15             Did you drive yourself there that day?

16       A.    Yes.

17       Q.    About how long did it take to get there?

18       A.    The city was flooded.  There was a

19   storm.  It had taken a while.

20       Q.    Say an hour or less?

21       A.    About an hour.

22       Q.    How long did the classroom instruction

23   take on July 24?

24       A.    Four hours.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Rhonda Ezell                                    September 2, 2010

63

1    STATE OF ILLINOIS )

2                     )  SS:

3    COUNTY OF C O O K )

4              I, LISA C. HAMALA, a Notary Public

5    within and for the County of Cook, State of

6    Illinois, and a Certified Shorthand Reporter of

7    said state, do hereby certify:

8              That previous to the commencement of the

9    examination of the witness, the witness was duly

10   sworn to testify the whole truth concerning the

11   matters herein;

12             That the foregoing deposition transcript

13   was reported stenographically by me, was thereafter

14   reduced to typewriting under my personal direction

15   and constitutes a true record of the testimony

16   given and the proceedings had;

17             That the said deposition was taken

18   before me at the time and place specified;

19             That I am not a relative or employee or

20   attorney or counsel, nor a relative or employee of

21   such attorney or counsel for any of the parties

22   hereto, nor interested directly or indirectly in

23   the outcome of this action.

24             IN WITNESS WHEREOF, I do hereunto set my



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Rhonda Ezell                                    September 2, 2010

64

1    hand of Chicago, Illinois, this 7th day of

2    September, 2010.

3

4              Notary Public, Cook County, Illinois.

5              My commission expires August 23, 2012.

6

7

8    C.S.R. Certificate No. 84-3335.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

# Exhibit J

JOSEPH I. BROWN                              September 3, 2010

1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

EZELL, et al,                    )
                Plaintiffs,      ) No. 10-CV-5135
        vs.                      ) Judge
CITY OF CHICAGO,                 ) Virginia M.
                Defendants.      ) Kendall


        The deposition of JOSEPH I. BROWN,
called as a witness for examination, taken pursuant
to the Federal Rules of Civil Procedure of the
United States District Courts pertaining to the
taking of depositions, taken before LISA C. HAMALA,
a Notary Public within and for the County of Cook,
State of Illinois, and a Certified Shorthand
Reporter of said state, CSR No. 84-3335, at Suite
1230, 30 North LaSalle Street, Chicago, Illinois,
on the 3rd day of September, A.D. 2010, at 11:05
a.m.


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

JOSEPH I. BROWN                                September 3, 2010

2

1    PRESENT:

2

3        LAW FIRM OF DAVID G. SIGALE, P.C.,

4        (Corporate West 1,

5        4300 Commerce Court, Suite 300-3,

6        Lisle, Illinois 60532,

7        630-452-4547), by:

8        MR. DAVID G. SIGALE,

9        dsigale@sigalelaw.com,

10           appeared on behalf of the Plaintiffs;

11

12       CORPORATION COUNSEL

13       CITY OF CHICAGO,

14       (30 North LaSalle Street, Suite 1230,

15       Chicago, Illinois 60602,

16       312-744-4216), by:

17       MS. REBECCA ALFERT HIRSCH,

18           rebecca.hirsch@cityofchicago.org,

19           appeared on behalf of the Defendants.

20

21

22

23   REPORTED BY: LISA C. HAMALA, CSR.

24           Illinois CSR No. 84-3335.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

14

1          A.      Yes.  It was Bell Post 242 in Chicago.

2          Q.      When did you switch, if that's the

3     correct term?

4          A.      Approximately 15 years ago.

5          Q.      Why?

6          A.      Membership fell off.

7          Q.      Are you free, and I don't know much

8     about the American Legion, as a member to pick

9     whatever Post you would like to be a member of?

10         A.      Yes.

11         Q.      Why did you select the Morton Grove

12    Post?

13         A.      It offered much more facilities.

14         Q.      What type of facilities?

15         A.      They have the parties, parades, color

16    guard, rifle team, rifle club.

17         Q.      How often do you go to the Post?

18         A.      Well, right now it is summertime.  I'm

19    in there, I would say, 250, 270 times a year during

20    winter months.

21         Q.      So do you go more during the winter?

22         A.      Absolutely, yes.

23         Q.      How often, to kind of understand, do you

24    go during the summer and winter?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

JOSEPH I. BROWN                                September 3, 2010

27

1            MR. SIGALE:   What's "there"?

2      BY MS. HIRSCH:

3            Q.    The ISRA shooting range in Bonfield,

4      Illinois.

5            A.    50 times.

6            Q.    How many times in the last year?

7            A.    10.

8            Q.    Approximately once a month?

9            A.    Yes.

10           Q.    Do you go more in the winter or summer?

11           A.    Summertime.

12           Q.    This past summer, how many times have

13     you been there?

14           A.    Eight times.

15           Q.    How long does it take to get there?

16           A.    Approximately an hour-and-a-half.

17           Q.    Did you drive?

18           A.    With my son.

19           Q.    Do you go to utilize the range?

20           A.    Yes.

21           Q.    Do you go for any other purpose?

22           A.    Just for open house.

23           Q.    Why do you go to this one sometimes

24     instead of just going to Morton Grove?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

JOSEPH I. BROWN                                    September 3, 2010

42

1        A.     No.

2        Q.     If I told you -- this is hypothetical,

3    but I would just like to know your answer.

4               If I told you Illinois Gun Works range

5    was actually closer to the house than where the

6    mobile training unit was going to be located, do

7    you think you would go there for training?

8        MR. SIGALE:   Objection to the speculation.

9               You may answer.

10   BY THE WITNESS:

11       A.     If it is close to the house, yes.

12   BY MS. HIRSCH:

13       Q.     Have you ever heard of a gun range

14   called Bell's Guns in Franklin Park, Illinois?

15       A.     Yes.

16       Q.     Have you ever been there?

17       A.     Yes.

18       Q.     When?

19       A.     Years ago.

20       Q.     More than five years ago?

21       A.     Yes.

22       Q.     Did you use the range?  Was that the

23   purpose of the visit?

24       A.     Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

JOSEPH I. BROWN                                    September 3, 2010

43

1      Q.     How many times would you say you went

2   there?

3      MR. SIGALE:  Ever, is that what you're asking?

4   BY MS. HIRSCH:

5      Q.     Yes.  If you could recall.

6      A.     I don't know.

7      Q.     A lot?

8      MR. SIGALE:  Objection to form.

9            Either you know how many times you went

10  or you don't.

11  BY THE WITNESS:

12     A.     I don't know.  I can't recall.

13  BY MS. HIRSCH:

14     Q.     Would you say you have been there at

15  least 50 times?

16     A.     No.

17     Q.     Less than 50 times?

18     A.     Yes.

19     Q.     Would you say you have been there at

20  least 25 times?

21     A.     Yes.

22     Q.     Have you looked into getting your one

23  hour of training at the Bell's Guns?

24     A.     No.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

44

1        Q.     Why not?

2        A.     I have not gotten around to it.

3        Q.     When you went to Bell's Guns previously,

4    did you drive?

5        A.     Yes.

6        Q.     One more.  Have you ever heard of Gun

7    World in Bensenville?

8        A.     Yes.

9        Q.     Have you ever been there?

10       A.     No.

11       Q.     Exhibit No. 1, Paragraph 6, "List

12   several ranges that historically were open to the

13   public within the City of Chicago," is that

14   correct?

15       A.     Yes.

16       Q.     I just was a little unclear about how

17   many there were here.  So I want to walk through

18   these with you.

19              The first is "Small Bore Riflemen of

20   Chicago," is that correct?

21       A.     Yes.

22       Q.     That was at Clybourn and Fullerton, is

23   that correct?

24       A.     Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

JOSEPH I. BROWN                                    September 3, 2010

58

```
 1    STATE OF ILLINOIS )
 2                      )  SS:
 3    COUNTY OF C O O K )
 4            I, LISA C. HAMALA, a Notary Public
 5    within and for the County of Cook, State of
 6    Illinois, and a Certified Shorthand Reporter of
 7    said state, do hereby certify:
 8            That previous to the commencement of the
 9    examination of the witness, the witness was duly
10    sworn to testify the whole truth concerning the
11    matters herein;
12            That the foregoing deposition transcript
13    was reported stenographically by me, was thereafter
14    reduced to typewriting under my personal direction
15    and constitutes a true record of the testimony
16    given and the proceedings had;
17            That the said deposition was taken
18    before me at the time and place specified;
19            That I am not a relative or employee or
20    attorney or counsel, nor a relative or employee of
21    such attorney or counsel for any of the parties
22    hereto, nor interested directly or indirectly in
23    the outcome of this action.
24            IN WITNESS WHEREOF, I do hereunto set my
```



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

JOSEPH I. BROWN                                    September 3, 2010

59

1    hand of Chicago, Illinois, this 8th day of
2    September, 2010.
3
4              Notary Public, Cook County, Illinois.
5              My commission expires August 23, 2012.
6
7
8    C.S.R. Certificate No. 84-3335.
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24



Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

# Exhibit K

WILLIAM EDWARD HESPEN                    September 3, 2010

1

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION


EZELL, et al,                    )

            Plaintiffs,  ) No. 10-CV-5135

        vs.              ) Judge

CITY OF CHICAGO,                 ) Virginia M.

           Defendants.  ) Kendall


      The deposition of WILLIAM EDWARD HESPEN,

called as a witness for examination, taken pursuant

to the Federal Rules of Civil Procedure of the

United States District Courts pertaining to the

taking of depositions, taken before LISA C. HAMALA,

a Notary Public within and for the County of Cook,

State of Illinois, and a Certified Shorthand

Reporter of said state, CSR No. 84-3335, at Suite

1230, 30 North LaSalle Street, Chicago, Illinois,

on the 3rd day of September, A.D. 2010, at 1:45

p.m.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

WILLIAM EDWARD HESPEN                              September 3, 2010

2

 1    PRESENT:

 2

 3         LAW FIRM OF DAVID G. SIGALE, P.C.,

 4         (Corporate West 1,

 5         4300 Commerce Court, Suite 300-3,

 6         Lisle, Illinois 60532,

 7         630-452-4547), by:

 8         MR. DAVID G. SIGALE,

 9         dsigale@sigalelaw.com,

10             appeared on behalf of the Plaintiffs;

11

12         CORPORATION COUNSEL

13         CITY OF CHICAGO,

14         (30 North LaSalle Street, Suite 1230,

15         Chicago, Illinois 60602,

16         312-744-4216), by:

17         MR. WILLIAM MACY AGUIAR,

18             waguiar@cityofchicago.org,

19             appeared on behalf of the Defendants.

20

21

22

23    REPORTED BY: LISA C. HAMALA, CSR.

24             Illinois CSR No. 84-3335.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

WILLIAM EDWARD HESPEN                    September 3, 2010

25

1    yesterday, it was your understanding that as a

2    retired police officer, you were still required

3    under the new ordinance to obtain a CFP before you

4    could register your guns?

5         A.    That's correct.

6         Q.    But based on the conversation that you

7    had yesterday at 47th and Kedzie, someone told you

8    that you might not need to do that at some time in

9    the future?

10        A.    No.   That's not correct.   You still need

11   the CFP, except the fee would be waived and the

12   classroom and the range training providing you went

13   and got your Concealed Carry Permit through the

14   Illinois Retired Officers Program.

15        Q.    Did she say that was, in fact, the case,

16   or that was something that could come down the

17   road?

18        MR. SIGALE:   Objection.   Asked and answered.

19   BY THE WITNESS:

20        A.    Could come down the road.

21   BY MR. AGUIAR:

22        Q.    As you sit here today, is it still your

23   understanding you have to at this point still

24   obtain the CFP under the rules as they stand right



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

WILLIAM EDWARD HESPEN                    September 3, 2010

34

1       Q.     Is there any other harm that you could

2   think of that you would suffer from driving

3   25 miles outside the city to obtain your four hours

4   of training?

5       A.     No.

6       Q.     If you wanted to, you could drive

7   outside of the city to obtain the four hours of

8   training?

9       MR. SIGALE:   Objection.   Asked and answered.

10  It is not even the issue.

11  BY THE WITNESS:

12      A.     Repeat the question.

13      MR. AGUIAR:   Please read it back.

14                (WHEREUPON, the record was read by

15                the reporter as requested.)

16      MR. SIGALE:   Same objections.

17  BY THE WITNESS:

18      A.     Again, I have no choice.   I would have

19  to.

20  BY MR. AGUIAR:

21      Q.     The question is you can do it?

22      A.     Yes.   I have no choice.   I can do it.

23      Q.     Again, if, in fact, the ordinance is not

24  amended before October 12, you will go and obtain



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

WILLIAM EDWARD HESPEN                                September 3, 2010

35

1   the training necessary to file for a CFP?

2        A.    Absolutely.

3        Q.    Turn to Interrogatory No. 7.

4              We ask you to "Identify all firearm

5   ranges you have visited in the past five years."

6              You identify "Illinois State Rifle

7   Association in Bonfield, Illinois."

8              First of all, are you a member of ISRA?

9        A.    Yes.

10       Q.    How long have you been a member of ISRA?

11       A.    Over 10 years.

12       Q.    Is the ISRA range in Bonfield limited to

13  only ISRA members, do you know?

14       A.    If you're a member of the -- you have to

15  be a member of the Association to use the range.

16  You also have to be a range member.  You can bring

17  a guest.

18       Q.    Are you limited to the number of guests

19  that you could bring?

20       A.    I don't know.

21       Q.    Do you have to pay anything to be a

22  range member?

23       A.    Yes.

24       Q.    What is that?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

42

1       Q.     October?

2       A.     Yes.

3       Q.     Could you obtain the required one hour

4   of training, one-hour range training at the ISRA

5   range?

6       A.     I don't know.

7       Q.     Have you looked into whether you could

8   obtain that one-hour training at the ISRA range?

9       A.     No.

10      Q.     Why haven't you looked into it there

11  since you go there all the time?

12      A.     Again, I was waiting to see if this

13  ordinance was going to be amended.

14             I heard rumors prior to speaking to gun

15  registration, but that was just rumors.

16             People I spoke to or current law

17  enforcement officers said there looks like there

18  would be an amendment for retirees, but no one knew

19  for sure.

20      Q.     Is it fair to say you have not done

21  anything to look into the one-hour range shooting

22  training that you need because you were looking to

23  a possible amendment to the ordinance?

24      A.     Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

WILLIAM EDWARD HESPEN                               September 3, 2010

                                                                    43

1          Q.     Have you done any investigation as to

2    obtaining that one hour of range training?

3          MR. SIGALE:   Objection.   Didn't he just answer

4    this?

5                 Asked and answered.

6    BY MR. AGUIAR:

7          Q.     Have you done anything at all to look

8    into obtaining that one hour of range training to

9    obtain your CFP?

10         A.     No.

11         Q.     If the ordinance is not amended the way

12   you described, do you intend to obtain your one

13   hour of range training?

14         A.     Absolutely.

15         Q.     Do you know where you will go to obtain

16   that one hour of range training?

17         A.     I would attempt to find a location to

18   get it done immediately.

19         Q.     You will drive outside the city of

20   Chicago to obtain that firearms training?

21         A.     Again, yes, I will because I have no

22   other choice.

23         Q.     As we spoke earlier about the four hours

24   of classroom instruction, does driving 25 miles



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

WILLIAM EDWARD HESPEN                                    September 3, 2010

56

1          Q.      You have been there three or four times
2      in the past year.
3                  Any difficulties in getting there?
4          A.      None that I recall.
5          Q.      Your statement that "Closer gun ranges
6      in the suburbs are crowded and have little
7      capacity" is based solely on Midwest Guns?
8          A.      No.  I have seen other ranges.
9          Q.      Do you recall what others you have seen?
10         A.      There is one called Mega Sports in Will
11     County.
12         Q.      When was the last time you were there?
13         A.      Probably back in July.
14         Q.      How many times have you been there in
15     the past 12 months?
16         A.      Maybe three, four times.
17         Q.      Each time you drove yourself there?
18         A.      Not directly there, no.
19         Q.      What do you mean?
20         A.      My son used to live in Shorewood,
21     Illinois.  When I would visit him, Mega Sports,
22     there is a gun shop connected with the range.  I go
23     to look at the guns.
24         Q.      When at Mega Sports, do you stop to



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

59

1    the name of it.

2          Q.    Where is it located?

3          A.    I believe on North Avenue west of First

4    Avenue.  I was out there not looking at guns.  I

5    was working at the time.

6          Q.    You were on the job?

7          A.    Yes.

8          Q.    While there, did you happen to observe

9    the ranges?

10         A.    No.  I seen people coming in and out of

11   a door that, I assume, was a range back there.

12               That would have been a long drive for me

13   if I was going on my own.  Working, I had to go out

14   there as part of my investigation.

15         Q.    Are those the only three ranges which

16   form the basis for your statement about the closer

17   ranges?

18         A.    Another called Rinks.  Just inside Will

19   County off of Archer Avenue at Route 171.

20         Q.    When was the last time you were at

21   Rinks?

22         A.    Again, a lot of these ranges I have

23   stopped -- a lot of these are connected with a gun

24   shop.  I don't go to the range.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

WILLIAM EDWARD HESPEN                    September 3, 2010

61

1     It is in Will County.  I don't know.

2          Q.    Any other ranges that you have seen,

3     whether it is going to the range itself or a gun

4     shop which has a range, which forms the basis for

5     your statement that suburban ranges are crowded?

6          A.    I don't recall.

7          Q.    Have you ever been to Chuck's Gun Shop?

8          A.    Yes.

9          Q.    That's in Riverdale?

10         A.    Yes.

11         Q.    Does it have a range?

12         A.    Not sure.

13         Q.    How often do you go there?

14         A.    I think I had been there maybe once or

15    twice in the last five years.

16         Q.    What about a place called Bell's Guns in

17    Franklin Park, are you familiar with that place?

18         A.    I have heard of it and probably have

19    been there, but I couldn't remember the last time I

20    was.

21         Q.    Have you been in the past five years, do

22    you think?

23         A.    No.

24         Q.    What about Gun World in Bensenville,



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

WILLIAM EDWARD HESPEN                                September 3, 2010

62

1   have you heard of that place?

2       A.      Yes.

3       Q.      Have you been there?

4       A.      Do you have an address?

5       Q.      421 Irving Park Road.

6       A.      Right near O'Hare.  I might have been.

7   I was in a gun shop in that area.  It could have

8   been that.

9       Q.      You're saying that's near O'Hare, that

10  address?

11      A.       If it is the one I'm thinking of, it

12  could be.

13      Q.      Would you have any difficulty getting to

14  O'Hare by car, driving to Bensenville?

15      A.       I if knew the address, I could probably

16  find it.  I think it would be rather difficult

17  driving out there.

18      Q.      Why would that be?

19      A.      Kind of a long ride up to O'Hare.

20      Q.      You think that's a long ride?

21      A.      I do.

22      Q.      You think it is less than 56 miles to

23  get to O'Hare from your house?

24      A.      Yes.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

WILLIAM EDWARD HESPEN                          September 3, 2010

63

1    Q.    How about Southwest Range & Training in

2    Chicago Ridge, Illinois, have you ever heard of

3    that place?

4    A.    No.   Where is that at?

5    Q.    10349 Southwest Highway.

6    A.    There used to be a gun shop out there,

7    but I didn't know they had a range out there.

8    Q.    Do you happen to know how close Chicago

9    Ridge is to your home?

10   A.    Are you talking about that address

11   there?   I believe -- not sure.

12         I want to say it is around maybe 105th,

13   107th and Narragansett, but I'm not sure.

14   Q.    You don't know where Chicago Ridge is in

15   relation to where you are?

16   A.    I would say southwest to my location.   I

17   don't know how many miles.

18   Q.    What about Illinois Gun Works in Elmwood

19   Park, 7229 West Grand, have you ever heard of that

20   place?

21   A.    Yes.

22   Q.    Have you been there?

23   A.    Yes.

24   Q.    How many times?



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

1    STATE OF ILLINOIS )

2                     )  SS:

3    COUNTY OF C O O K )

4              I, LISA C. HAMALA, a Notary Public

5    within and for the County of Cook, State of

6    Illinois, and a Certified Shorthand Reporter of

7    said state, do hereby certify:

8              That previous to the commencement of the

9    examination of the witness, the witness was duly

10   sworn to testify the whole truth concerning the

11   matters herein;

12             That the foregoing deposition transcript

13   was reported stenographically by me, was thereafter

14   reduced to typewriting under my personal direction

15   and constitutes a true record of the testimony

16   given and the proceedings had;

17             That the said deposition was taken

18   before me at the time and place specified;

19             That I am not a relative or employee or

20   attorney or counsel, nor a relative or employee of

21   such attorney or counsel for any of the parties

22   hereto, nor interested directly or indirectly in

23   the outcome of this action.

24             IN WITNESS WHEREOF, I do hereunto set my


ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

WILLIAM EDWARD HESPEN                    September 3, 2010

98

1    hand of Chicago, Illinois, this 8th day of

2    September, 2010.

3

4                    Notary Public, Cook County, Illinois.

5                    My commission expires August 23, 2012.

6

7

8    C.S.R. Certificate No. 84-3335.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

# Exhibit L

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RHONDA EZELL, et al., | ) | Case No. 10-C-5135 |
| | ) | |
| Plaintiffs, | ) | DECLARATION OF |
| | ) | ANDRE QUEEN |
| v. | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF ANDRE QUEEN

I, André Queen, am competent to state, and declare the following based on my personal knowledge:

1.  I am the Executive Director of Fidelity Investigative Training Academy. Fidelity is a state-licensed investigative and security academy located in Chicago, license number 102-000232.

2.  We employ state-certified firearms instructors, and offer the Chicago Firearms Permit (CFP) class to members of the public so that they may register and safely operate firearms.

3.  Our ability to provide range training is limited because the suburban ranges are locking out Chicago-based instructors, so that they can keep the CFP training market for themselves. For example, we have been excluded from Illinois Gun Works and Midwest Guns. We have an agreement with G.A.T. to use their range for our class, but G.A.T. is now running their own program, and I am concerned

that we may lose access to their range at some point. Recently, G.A.T. informed
me that it would charge us $250 per week to have use of their range for 2 hours
per week for training our CFP students. G.A.T. is also located in Dundee, Illinois,
a significant drive from Chicago. We also use Maxon's Gun Range in Des Plains,
but that range is not open on Mondays and has only ten lanes. Maxon's is usually
a forty-five minute drive from Chicago, without traffic.

4.     The lack of adequate range facilities costs us customers, both because there is
simply not enough range time to take on the students that we can serve, and
because the cost and time associated with using the ranges that are available
discourages customers.

5.     Fidelity is interested in sharing the mobile range that the Plaintiffs in this case are
bringing to Chicago, and is also interested in bringing in its own mobile range, at
least until it can construct its own permanent range in Chicago. I have previously
met with representatives of a mobile range manufacturer, Laser Shot, at the
Midwest Police and Security Expo in Rosemont, Illinois, which is sponsored by
the Illinois Association of Chiefs of Police. I was impressed with Laser Shot and
their mobile range product.

6.     I have also visited the Meggitt website and have researched their mobile ranges. I
believe that their ranges are well-constructed and ideal for our use.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 12th day of September, 2010

Andre Queen

# Exhibit M

**CITY OF CHICAGO**
**DEPARTMENT OF POLICE**

**RULES AND REGULATIONS**
**FIREARMS- CHAPTER 8-20**

These rules shall be effective on July 12, 2010.

The Superintendent, pursuant to Chapter 8-20 of the Municipal Code of Chicago, hereby promulgates the following the Rules and Regulations.

**RULE I     DEFINITIONS**

**1.1** "Chicago Firearm Permit" or "CFP" means the permit issued by the City which allows a person to possess a firearm.

**1.2** "FOID" means the Firearm Owner's Identification Card issued pursuant to the Illinois Firearm Owners Identification Card Act, 430 ILCS 65/1 et seq., as amended.

**1.3** "Department" means the Chicago Police Department.

**1.4.** "Police Headquarters" means the Chicago Police Headquarters, located at 3510 South Michigan Avenue, Chicago, Illinois, 60653

**1.5** "State certified firearms instructor" means a person approved by the Illinois Department of Financial and Professional Regulation to instruct firearm safety and training courses.

**RULE 2     TRAINING**

**2.1** Every applicant for a CFP shall submit an affidavit signed by a state certified firearms instructor, attesting that the applicant has completed a firearm safety and training course which complies with rule 2.2.

A copy of the affidavit to be completed by the firearms instructor may be downloaded from the department's web site at www.chicagopolice.org.

**2.2** The firearm safety and training course shall consist of 1 hour of range training and 4 hours of classroom training, which shall include all of the following:
    (a) instruction in the dangers of and misuse of firearms, and their care, cleaning and storage and safety rules;
    (b) practice firing on a range with live ammunition;
    (c) instruction in the legal use of firearms; and
    (d) a presentation of the ethical and moral considerations necessary for any person who possesses a firearm.

**RULE III     CHICAGO FIREARM PERMITS**

**3.1** A person applying for a CFP shall file the application in person at Police Headquarters, Monday through Friday (closed on holidays) between the hours of 8:30 a.m. and 3:30 p.m..

A copy of the CFP application may be downloaded from the department's web site

at www.chicagopolice.org.

    **3.2**  When submitting the CFP application, the applicant shall bring the following:

(a)  the applicant's Illinois firearm owner's identification number and a copy of the applicant's FOID card;

(b)  two identical photographs of the applicant taken within 30 days immediately prior to the date of filing the application, equivalent to passport size, showing the full face, head and shoulders of the applicant in a clear and distinguishing manner;

(c) the applicant's Illinois driver's license number or Illinois identification card, and a copy of the applicant's driver's license or Illinois identification card;

(d) an affidavit signed by a state certified firearms instructor to provide firearm training courses which includes the following information:

(1) the name and signature of the applicant;
(2) the name, address and phone number of the instructor;
(3) the location where the training occurred;
(4) a statement that the training provided at least one hour of range training and four hours of classroom instruction that is in compliance with rule 2.2;
(5) a statement that the applicant successfully completed the training; and
(6) a statement attesting to the correctness of the information provided in the affidavit.

(e), if the applicant does not have a valid Illinois driver's license, a letter signed by a licensed optometrist or ophthalmologist, attesting that the applicant has vision better than or equal to that required to obtain a valid Illinois driver's license under the standards established in the Illinois Vehicle Code.

    **3.3**  For an application of a person 18 years or older but less than 21 years old, the applicant shall submit an affidavit from the applicant's parent or legal guardian.   The affidavit shall include the following:

(a) the applicant's age;
(b) a statement that the applicant has never been convicted of a misdemeanor, other than a traffic offense or been adjudged a delinquent;
(c) a statement that the parent or legal guardian consents to the applicant possessing a firearm;
(d) a statement that the parent or legal guardian is not an individual prohibited from having a FOID or CFP; and
(e) an attestation as to the correctness of the information on the affidavit.

    If consent is given by a legal guardian, the applicant shall submit a certified copy of the guardianship court order.

    **3.4**  After submitting a complete application, the applicant shall submit to fingerprinting.

    **3.5**  An application shall not be considered complete until all the required information and fingerprints are submitted.

**RULE IV   Firearm Registration Certificates**
    **4.1**   An applicant shall submit a complete firearm registration application.   The application may be obtained either in person at Police Headquarters, Monday through Friday (closed holidays) between the hours of 8:30 a.m. and 3:30 p.m., or may be downloaded from the Department's web site at www.chicagopolice.org.

    **4.2**   The firearm registration application may be either submitted in person at Police Headquarters, or may be mailed to:

> Chicago Police Headquarters
> Gun Registration Program, Unit 163
> Room 1027SE
> 3510 South Michigan Avenue
> Chicago, Illinois 60653

    **4.3**   Any applicant who is exempt from obtaining a CFP shall submit evidence, as required by the superintendent, demonstrating the basis for the exemption.   Such evidence may include, but is not limited to, an identification card or license issued by a governmental agency in the United States.

    **4.4**   An annual registration report shall be submitted either in person at Police Headquarters or mailed to the address listed in Rule 4.2.

    **4.5**   Any applicant who has recently moved into the city shall provide evidence of such recent relocation, which may include, but not be limited to, a driver's license, utility bills, a lease, and any other information requested by the superintendent.

**RULE V    90 day grace period-calculation**
    **5.1**   For purposes of calculating the 90-day grace period pursuant to section 8-20-140(d)(2), with respect to any applicant who submits an application for a CFP prior to October 12, 2010, and such application is subsequently approved, the applicant shall be eligible to register each firearm possessed by the applicant prior to July 12, 2010; provided that the firearm meets the requirements of the ordinance.

    **5.2**   An applicant who submits an application for a registration certificate for a firearm owned by the applicant prior July 12, 2010 shall submit evidence that the firearm was owned by the applicant prior to July 12, 2010.   Such evidence may include, but is not limited to, a receipt showing the date the firearm was purchased, or an affidavit in which the applicant attests that the applicant owned the firearm prior to July 12, 2010.

    **5.3**   For any registration certificate issued prior to July 12, 2010 and expiring on or before October 12, 2010, if the person issued the registration certificate submits an application for a CFP prior to October 12, 2010, the expiration date of the registration certificate shall be deemed to be extended until the superintendent either approves or denies the person's CFP application, and if applicable, the person's application for a registration certificate.   If the CFP application is denied, the person shall immediately dispose of the firearm in accordance with the provisions of the ordinance.

**RULE VI   Destruction and disposal of firearms**
    **6.1**   If a CFP or registration certificate is lost, stolen or destroyed, the person shall file a police report within 72 hours of the discovery of such loss, theft or destruction.

**6.2**   If a firearm is lost, missing or stolen, the person shall file a police report immediately.

**6.3**   If a person sells, transfers, permanently removes from the city, or otherwise disposes of a firearm, the person shall submit a firearms disposition form. The form shall be submitted either in person at Police Headquarters, or mailed to the address listed in Rule 4.2.

**6.4**   Any person whose CFP or firearm registration certificate is revoked shall immediately dispose of the firearm in accordance with the ordinance, and submit a firearm disposition form in accordance with Rule 6.3.

## RULE VII Change of information

**7.1**   Every person issued a CFP or registration certificate shall keep all information required by the ordinance current.   Any change in such information shall be reported to the superintendent by submitting an amended CFP or registration certificate application either in person at Police Headquarters, or by mailing an amended application to the address listed in Rule 4.2.

## RULE VIII Revocation of a CFP or registration certificate

**8.1**   Every person whose CFP or registration certificate has been revoked shall immediately return the revoked CFP or registration certificate to the department either in person at Police Headquarters, or by mailing the revoked CFP or registration certificate to the address listed in Rule 4.2.

**8.2**   Any CFP or registration certificate that is revoked shall be seized by the department.

## RULE IX Surrender of firearms

**9.1**   Any person issued a CFP or registration certificate who wishes to surrender the firearm to the Chicago Police Department may do so by calling 911.

# Exhibit N

# ORDINANCE

**WHEREAS,** A recent study by the Centers for Disease Control and Prevention found that in the United States there were 30,896 deaths from firearms in 2006, making firearms one of the top ten causes of death in the country; and

**WHEREAS,** Annually, more than 100,000 people in our nation are shot or killed with a firearm, with more than 3,000 of these victims being children or teenagers; and

**WHEREAS,** The United States is one of the few remaining developed nations that places only a minimal restrictions on the sale or possession of firearms; and

**WHEREAS,** Firearm-related injuries and deaths are the cause of significant social and economic costs to the City and our communities and have a severe impact on our criminal justice and health care systems; and

**WHEREAS,** In 2009, in the City there were 1,815 aggravated batteries with a firearm, of which 83 were shootings inside a residence, and there were 379 murders with a firearm, of which 34 were murders involving a firearm inside a home; and

**WHEREAS,** Between the beginning of this year and June, 15, 2010, there were 742 aggravated batteries with a firearm, of which 36 took place inside a residence, and 152 murders with a firearm, of which 19 were inside a residence; and

**WHEREAS,** Given the dangerous and deadly nature of handguns, in 1982 the City of Chicago enacted a ban on registering handguns as a method to protect public safety and the health and welfare of its residents; and

**WHEREAS,** In 2008, the Supreme Court of the United States decided the case of *District of Columbia v. Heller,* which held that the Second Amendment to the United States Constitution protects an individual right to possess a firearm unconnected with service in the militia; and

**WHEREAS,** After the *Heller* decision, the City's handgun registration ban was challenged in the case of *McDonald v. the City of Chicago*; and

**WHEREAS,** On June 28, 2010, the Supreme Court issued its opinion in the *McDonald* case and ruled that the Second Amendment's right to possess a handgun for self-defense in the home also applied to the states; and

**WHEREAS,** Although the State of Illinois has already enacted several laws to regulate the sale and possession of firearms, these laws are not sufficient to protect the City from the unique and heightened risk of firearm violence, especially handgun violence, endemic in densely populated urban areas, and

**WHEREAS,** In order to provide for the ongoing protection of the public welfare and safety, it is essential for the City Council of the City of Chicago to promptly pass an ordinance that provides for reasonable regulation of firearms in compliance with the rulings of the United States Supreme Court, but still is effective in protecting the public from the potentially deadly consequences of gun violence in our City; and

**WHEREAS**, When a gun is registered with the City, certain personal identifying information, such as the registrant's address, is obtained so that a first responder can be advised that a gun is present in that home. In order to protect the privacy and safety of people registering guns, any information provided in the registration procedure should not be available to the public. The City is requesting that Illinois Attorney General Lisa Madigan issue an opinion, as expeditiously as possible, on whether the information provided to the City for gun registration is exempt from disclosure under the Illinois Freedom of Information Act, 5 ILCS 140, et seq.; and

**WHEREAS**, As a consequence of the United States Supreme Court decisions in *Heller* and *McDonald*, it is anticipated that gun ownership in many communities, including large urban areas, will increase. To ensure public safety and the welfare of a community, it is essential that local law enforcement agencies be made aware of any gun brought into their jurisdictions. Therefore, the United States Congress must pass a law mandating that the Bureau of Alcohol, Tobacco, Firearms and Explosives timely notify a local law enforcement agency of any purchase or sale of a firearm by a resident of that community; and

**WHEREAS**, In addition, the ability to have handguns in a home will expose taxpayers to greater costs and expenses associated with the increased number of incidents involving a first responder entering a home where a gun is present. In order to minimize the impact of these costs to the taxpayers, the United States Congress and the State of Illinois must pass laws that grant immunity for the City and its first responders from any civil liability for any accidental or lawfully intentional actions by the first responders in responding to a situation in a home where a gun is present and the first responder perceives a danger caused by the presence of the gun; now, therefore,

### BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF CHICAGO:

**SECTION 1.** Chapter 2-14 of the Municipal Code of Chicago is hereby amended by deleting the language struck through, and by adding the language underscored, as follows:

**2-14-132 Impoundment.**

(1)    Whenever the owner of a vehicle seized and impounded pursuant to Sections 3-46-076, 3-56-155, 4-68-195, 9-80-220 or 9-112-555 of this Code (for purposes of this section, the "status-related offense sections"), or Sections 7-24-225, 7-24-226, 7-28-390, 7-28-440, 7-38-115(c-5), 8-4-130, 8-8-060, 8-20-015, 8-20-070, 9-12-090, 9-76-145, 9-80-240, 9-92-035, 11-4-1410, 11-4-1500 or 15-20-270 of this Code (for purposes of this section, the "use-related offense sections") requests a preliminary hearing in person and in writing at the department of administrative hearings, within 15 days after the vehicle is seized and impounded, an administrative law officer of the department of administrative hearings shall conduct such preliminary hearing within 48 hours of request, excluding Saturdays, Sundays and legal holidays, unless the vehicle was seized and impounded pursuant to Section 7-24-225 and the department of police determines that it must retain custody of the vehicle under the applicable state or federal forfeiture law. If, after the hearing, the administrative law officer determines that there is probable cause to believe that the vehicle was used in a violation of this Code for which seizure and impoundment applies, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle is eligible for impoundment under that section, the administrative law officer shall order the continued impoundment of the vehicle as provided in this section unless the owner of the vehicle pays to the city the amount of the administrative penalty prescribed for the code violation plus fees for towing and storing the vehicle. If the vehicle is also subject to immobilization for unpaid parking and/or compliance violations, the owner of the vehicle must also pay the amounts due for all such outstanding violations prior to the release of the vehicle. If

the administrative law officer determines there is no such probable cause, or, if the impoundment is pursuant to Section 9-92-035, that the subject vehicle has previously been determined not to be eligible for impoundment under that section, the vehicle will be returned without penalty or other fees.

*(omitted text is unaffected by this ordinance)*

**2-14-190    Municipal hearings division – Jurisdiction.**

(a)    The department of administrative hearings is authorized to establish a system of administrative adjudication for the enforcement of all provisions of the Municipal Code that are not adjudicated by the vehicle, buildings, environmental safety or consumer affairs hearings divisions, except that it shall not adjudicate violations of the following chapters and sections: chapter 4-92 (Massage Establishments and Massage Services); chapter 4-144 (Weapons); <u>and Section 7-28-190 (Health Nuisances – Throwing Objects into Roadways)</u>; ~~chapter 8-20 (Weapons), other than Section 8-20-015 (Unlawful Firearm in Motor Vehicle – Impoundment); and chapter 8-24 (Firearms and Other Weapons)~~.

*(omitted text is unaffected by this ordinance)*

SECTION 2.    Chapter 2-84 of the Municipal Code of Chicago is hereby amended by adding a new section 2-84-075, as follows:

<u>**2-84-075 Sale of firearms and ammunition authorized by the superintendent.**</u>

<u>Notwithstanding any other provision of this code to the contrary, the superintendent may authorize the sale of firearms or ammunition by a person issued a federal firearms license to a member of the police department, if that member is authorized to carry such firearm or ammunition. Such sales shall be conducted at department of police facilities.</u>

SECTION 3.    Title 4 of the Municipal Code of Chicago is hereby amended by adding a new section 4-144-065, by adding the language underscored, and by deleting the language struck through, as follows:

**4-144-010    License – Required.**

It shall be unlawful for any person to engage in the business of selling, or to sell<u>,</u> ~~or~~ give away <u>or otherwise transfer</u>, any ~~pistol, revolver or other firearm,~~ dagger, stiletto, billie, derringer, bowie knife, dirk, stun gun or taser, as defined in Section 24-1 of the Illinois Criminal Code, 720 ILCS 5/24-1, or other deadly weapon which can be carried or concealed on the person<u>, or any ammunition, as that term is defined in Section 8-20-010</u>, without securing a weapons dealer license. The license required by this chapter shall be in addition to any other license required by law.    <u>It shall be unlawful for any person licensed under this chapter to engage in the business of selling, or to sell, give away or otherwise transfer, any firearm as that term is defined in Section 8-20-010.</u>

**4-144-061    Sale of certain handgun ammunition prohibited.**

Except as allowed by <u>section 8-20-100(e)</u> ~~subsection (e) of Section 8-20-170 of this Code~~, it shall be unlawful for any person to sell, offer for sale, expose for sale, barter or give away to any person within the city, any <u>armor piercing or .50 caliber</u> ammunition ~~of the following calibers and types:~~

~~.45 automatic~~
~~.380 automatic~~
~~.38 special~~

.357 magnum
.25 caliber
.22 caliber, including .22 long
9 millimeter

Any other ammunition, regardless of the designation by the manufacturer, distributor or seller, that is capable of being used as a substitute for any of the foregoing.

**4-144-062   Sale of <u>ammunition to minors-prohibited.</u> handguns without childproofing or safety devices prohibited.**
<u>No person licensed under this chapter shall sell or otherwise transfer any ammunition to a person who is under the age of 18.</u>

Except as allowed by subsection (e) of Section 8-20-170 of this Code, it shall be unlawful for any person to sell, barter or give away to any person any handgun which does not contain:
(1)   A safety mechanism to hinder the use of the handgun by unauthorized users. Such devices shall include, but shall not be limited to, trigger locks, combination handle locks, and solenoid use-limitation devices, and
(2)   A load indicator device that provides reasonable warning to potential users such that users even unfamiliar with the weapon would be forewarned and would understand the nature of the warning.

Safety mechanism means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun by other than the owner of the handgun and those specifically authorized by the owner to use the handgun.

A trigger lock means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the handgun without first removing the trigger lock by use of the trigger lock's key.

A combination handle lock means a device that is part of the handgun which precludes the use of the handgun unless the combination tumblers are properly aligned.

A solenoid use-limitation device means a device which precludes, by use of a solenoid, the firing of the handgun unless a magnet of the appropriate strength is placed in proximity to the handle of the weapon.

A load indicator means a device which plainly indicates that a bullet is placed in the handgun in a way that pulling the trigger or otherwise handling the handgun may result in detonation.

**<u>4-144-065  Sale of metal piercing bullets.</u>**
<u>No person licensed under this chapter shall sell, offer for sale, expose for sale, barter, give away or otherwise transfer any metal piercing bullets, as that term is defined in section 8-20-010.</u>

**SECTION 4.**   Chapter 8-20, Articles I and II, section 8-20-010 through and including section 8-20-260 of the Municipal Code of Chicago are deleted in their entirety and replaced with the following language;

**ARTICLE I.   DEFINITIONS.**

**8-20-010 Definitions:**
For purposes of this chapter the following terms shall apply:

"The Act" means the Illinois Firearm Owners Identification Card Act, 430 ILCS 65/1 et seq., as amended.

"Ammunition" means any self-contained cartridge or shotgun shell, by whatever name known, which is designed to be used or adaptable to use in a firearm; excluding however;
> (1) any ammunition used exclusively for line-throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or
> (2) any ammunition designed exclusively for use with a stud or rivet driver or other similar industrial ammunition.

"Antique firearm" has the same meaning ascribed to that term in 18 U.S.C. § 921(a)(16).

"Assault weapon" means:
(1) A semiautomatic rifle that has the ability to accept a detachable magazine and has one or more of the following:
> (i)   a folding or telescoping stock
> (ii)  a handgun grip which protrudes conspicuously beneath the action
> (iii) a bayonet mount
> (iv)  a flash suppressor or a barrel having a threaded muzzle
> (v)   a grenade launcher; or

(2) A semiautomatic shotgun that has one or more of the following:
> (i)   a folding or telescoping stock
> (ii)  a handgun grip which protrudes conspicuously beneath the action
> (iii) a fixed magazine capacity in excess of 5 rounds
> (iv)  an ability to accept a detachable magazine; or

(3)  A semiautomatic handgun that has an ability to accept a detachable magazine and has one or more of the following:
> (i)   an ammunition magazine that attaches to thehandgun outside thehandgun grip
> (ii)  a barrel having a threaded muzzle
> (iii) a shroud that is attached to, or partially or completely encircles the barrel, and permits the shooter to hold the firearm with the non-trigger hand without being burned;
> (iv) a manufactured weight of 50 ounces or more when the handgun is unloaded
> (v) a semiautomatic version of an automatic firearm.

"Chicago Firearm Permit" or "CFP" means the permit issued by the City which allows a person to possess a firearm.

"Corrections officer" means wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of an offense.

"Department" means the department of police.

"Dwelling unit" has the same meaning ascribed to that term in section 17-17-0248.

"Duty-related firearm" shall mean any firearm which is authorized by any law enforcement agency or employer to be utilized by their personnel in the performance of their official duties.

"Firearm" means any device, by whatever name known, which is designed or restored to expel a projectile or projectiles by the action of any explosive, expansion of gas or escape of gas. Provided, that such term shall not include:

    (1)   any pneumatic gun, spring gun, paint ball gun or B-B gun which either expels a single globular projectile not exceeding .18 inch in diameter and which has a maximum muzzle velocity of less than 700 feet per second or breakable paint balls containing washable marking colors;

    (2)   any device used exclusively for line-throwing, signaling, or safety and required or recommended by the United States Coast Guard or Interstate Commerce Commission; or

    (3)   any device used exclusively for firing explosives, rivets, stud cartridges, or any similar industrial ammunition.

"Firearm case" means any firearm case, carrying box, shipping box or other similar container that is designed for the safe transportation of the firearm.

"FOID" means the Firearm Owner's Identification Card issued pursuant to the Act.

"Handgun" means a firearm designed to be held and fired by the use of a single hand, and includes a combination of parts from which such firearm can be assembled.

"High capacity magazine" means any ammunition magazine having a capacity of more than 12 rounds of ammunition.

"Home" means the inside of a person's dwelling unit which is traditionally used for living purposes, including the basement and attic. A "home" does not include: (i) any garage, including an attached garage, on the lot; (ii) any space outside the dwelling unit, including any stairs, porches, back, side or front yard space, or common areas; or (iii) any dormitory, hotel, or group living, as that term is defined in section 17-17-0102-A.

"Laser sight accessory" means a laser sighting device which is either integrated into a firearm or capable of being attached to a firearm.

"Lawful transportation" means the transportation of a firearm by a person:

    (1) in compliance with section 8-20-090; or

    (2) who has a valid FOID card, a CFP and firearm registration certificate, if applicable, and the firearm is: (i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case.

"Long gun" means any firearm, other than a handgun.

"Machine gun" means any firearm which can fire multiple rounds of ammunition by a single function of the firing device or one press of the trigger.

"Metal piercing bullet" means any bullet that is manufactured with other than a lead or

lead alloy core, or ammunition of which the bullet itself is wholly composed of, or machined from, a metal or metal alloy other than lead, or any other bullet that is manufactured to defeat or penetrate bullet resistant properties of soft body armor or any other type of bullet resistant clothing which meets the minimum requirements of the current National Institute for Justice Standards for "Ballistic Resistance of Police Body Armor."

"Organization" means partnership, company, corporation or other business entity, or any group or association of two or more persons united for a common purpose.

"Peace officer" means any person who by virtue of his office or public employment is vested by law with a duty to maintain public order or make arrests for offenses, whether that duty extends to all offenses or is limited to specific offenses.

"Retired department police officer" means a person who is retired from the department in good standing and without any disciplinary charges pending, and who is, or is eligible to become, an annuitant of the Policemen's Annuity and Benefit Fund of the City of Chicago.

"Sawed-off shotgun" means a shotgun having one or more barrels less than 18 inches in length and any weapon made from a shotgun, whether by alteration, modification or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Security personnel" means special agents employed by a railroad or public utility to perform police functions, guards of armored car companies, watchmen, security guards or persons regularly employed in a commercial or industrial operation for the protection of persons employed by, or property related to, such commercial or industrial operation; and watchmen while in the performance of the duties of their employment.

"Short-barreled rifle" means a rifle having one or more barrels less than 16 inches in length, and any weapon made from a rifle, whether by alteration, modification, or otherwise, if such weapon, as modified, has an overall length of less than 26 inches.

"Superintendent" means the superintendent of the department or his designated representative.

"Safety mechanism" means a design adaption or nondetachable accessory that lessens the likelihood of unanticipated use of the handgun.

"Trigger lock" means a device that when locked in place by means of a key, prevents a potential user from pulling the trigger of the firearm without first removing the trigger lock by use of the trigger lock's key.

"Unregisterable firearm" means any firearm listed in section 8-20-170.

"Unsafe handgun" means any handgun that is listed on the superintendent's roster of unsafe handguns because, in the determination of the superintendent, the handgun is unsafe due to its size, ability to be concealed, detectability, quality of manufacturing, quality of materials, ballistic accuracy, weight, reliability, caliber, or other factors which makes the design or operation of the handgun otherwise inappropriate for lawful use.

"Violent crime" has the same meaning ascribed to that term in the Rights of Crime Victims and Witnesses Act, 725 ILCS 120/1, et seq., as amended.

- 7 -

## ARTICLE II.   POSSESSION OF FIREARMS

**8-20-020 Unlawful possession of handguns.**

(a) It is unlawful for any person to carry or possess a handgun, except when in the person's home.

(b) The provisions of this section shall not apply to:

(1) peace officers, and any person summoned by a peace officer to assist in making arrests or preserving the peace, while assisting such officer;

(2) corrections officers while in the performance of their official duty, or while commuting between their homes and places of employment;

(3) members of the Armed Services or Reserve Forces of the United States or the Illinois National Guard or the Reserve Officers Training Corps, while in the performance of their official duty;

(4) security personnel;

(5) persons licensed as private security contractors, private detectives, or private alarm contractors, or employed by an agency certified by the Illinois Department of Professional Regulation;

(6) persons regularly employed in a commercial or industrial operation as a security guard for the protection of persons employed and private property related to such commercial or industrial operation, while in the performance of their duties or traveling between sites or properties belonging to the employer, and who, as a security guard, is registered with the Illinois Department of Professional Regulation;

(7) persons employed by a financial institution for the protection of other employees and property related to such financial institution, while in the performance of their duties, commuting between their homes and places of employment, or traveling between sites or properties owned or operated by such financial institution;

(8) persons employed by an armored car company to drive an armored car, while in the performance of their duties;

(9) persons who have been classified as peace officers pursuant to the Peace Officer Fire Investigation Act;

(10) investigators of the Office of the State's Attorneys Appellate Prosecutor authorized by the board of governors of the Office of the State's Attorneys Appellate Prosecutor to carry weapons pursuant to Section 7.06 of the State's Attorneys Appellate Prosecutor's Act;

(11) special investigators appointed by a State's Attorney under Section 3-9005 of the Counties Code;

(12) probation officers while in the performance of their duties, or while

commuting between their homes, places of employment or specific locations that are part of their assigned duties, with the consent of the chief judge of the circuit for which they are employed;

(13) court security officers while in the performance of their official duties, or while commuting between their homes and places of employment, with the consent of the sheriff;

(14) persons employed as an armed security guard at a nuclear energy, storage, weapons or development site or facility regulated by the Nuclear Regulatory Commission who have completed the background screening and training mandated by the rules and regulations of the Nuclear Regulatory Commission;

(15) duly authorized military or civil organizations while parading, with the special permission of the Governor;

(16) persons engaged in the manufacture, transportation, or sale of firearms to persons authorized under this subsection to possess those firearms;

(17) a person while engaged in the lawful transportation of a firearm.

**8-20-030 Unlawful possession of long guns.**
(a) It is unlawful for any person to carry or possess a long gun, except when in the person's home or fixed place of business.

(b)   The provisions of this section shall not apply to:
(1) any person listed in section 8-20-020(b); or
(2) any duly licensed hunter who has a valid FOID card, a CFP and firearm registration certificate, while engaged in hunting in an area where hunting is permitted.

**8-20-035 Unlawful possession of unregisterable firearms.**
(a) It is unlawful for any person to carry or posses any unregisterable firearm.

(b)   The provisions of this section shall not apply to corrections officers, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers, to the extent that any such person is otherwise authorized to acquire or possess assault weapons, and is acting within the scope of his duties, or to any person while engaged in the manufacturing, transportation or sale of assault weapons to people authorized to possess them under this section.

(c) Notwithstanding the provisions of subsection (a), those firearms listed in section 8-20-170(a) may be possessed and used by the department for training and tactical operation, as authorized by the superintendent.

(d) Any firearm carried or possessed in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-040 Firearms kept or maintained in a home.**
Subject to section 8-20-050, every person who keeps or possesses a firearm in his home shall keep no more than one firearm in his home assembled and operable.  If more than one

person in the home has a valid CFP and registration certificate, each person with a valid CFP and registration certificate is entitled to have one such firearm assembled and operable in the home.   All other firearms kept or possessed by that person in his home shall be broken down in a nonfunctioning state or shall have a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render the firearm temporarily inoperable.

The provisions of this section shall not apply to peace officers.

**8-20-050 Firearms- Protection of minors.**

(a) It is unlawful for any person to keep or possess any firearm or ammunition in his home if the person knows or has reason to believe that a minor under the age of 18 years is likely to gain access to the firearm or ammunition, unless:

(1) the person is physically present in the home and the firearm is either being held by the person or is physically secured on the person's body;

(2) the firearm is secured by a trigger lock or other mechanism, other than the firearm safety mechanism, designed to render a firearm temporarily inoperable; or

(3) the firearm and ammunition are placed in a securely locked box or container.

(b) No person shall be punished for a violation of this section under the following circumstances:

(1) if the minor gains access to the firearm and uses it in a lawful act of self-defense or defense of another; or

(2) if the minor gains access to the firearm because of an unlawful entry of the premises by the minor or another person.

The provisions of this section shall not apply to peace officers.

**8-20-060   Possession of a laser sight accessory, firearm silencer or muffler.**

(a) It is unlawful for any person to carry, possess, display for sale, sell or otherwise transfer any laser sight accessory, or a firearm silencer or muffler.

(b) The provisions of this section shall not apply to any members of the armed forces of the United States, or the organized militia of this or any other state, or peace officers, to the extent that any such person is otherwise authorized to acquire or possess a laser sight accessory, or firearm silencer or muffler, and is acting within the scope of his duties.

(c) Any laser sight accessory, or firearm silencer or muffler, carried, possessed, displayed or sold in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-070 Unlawful firearm, laser sight accessory, or firearm silencer or muffler in a motor vehicle – Impoundment.**

(a)   The owner of record of any motor vehicle that contains a firearm registered to a person who is not the driver or occupant of the vehicle, an unregistered firearm, a firearm that is not being lawfully transported, an unregisterable firearm, a laser sight accessory, or a firearm silencer or muffler, shall be liable to the city for an administrative penalty of $1,000.00 plus any towing and storage fees applicable under Section 9-92-080. Any such vehicle shall be subject to seizure and impoundment pursuant to this section.

(b)   Whenever a police officer has probable cause to believe that a vehicle is subject to seizure and impoundment pursuant to this section, the police officer shall provide for the towing of the vehicle to a facility controlled by the city or its agents. Before or at the time the vehicle is towed, the police officer shall notify any person identifying himself as the owner of the vehicle at the time of the alleged violation, of the fact of the seizure and of the vehicle owner's right to request a vehicle impoundment hearing to be conducted under Section 2-14-132 of this Code.

(c)   The provisions of Section 2-14-132 shall apply whenever a motor vehicle is seized and impounded pursuant to this section.

**8-20-080 Possession of ammunition.**
(a) It is unlawful for any person to carry or possess any ammunition in the city, unless the person:

(1)   has a valid CFP and registration certificate for a firearm of the same gauge or caliber as the ammunition possessed, and while in possession of the ammunition, has the CFP and registration certificate in his possession when he is not in his home, or, when he is in his home, has the CFP and registration certificate readily available in his home; or

(2) is a licensed weapons dealer; or

(3) is a person listed in section 8-20-020(b).

(b) Any ammunition carried or possessed in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-085   High capacity magazines and metal piercing bullets – Sale and possession prohibited – Exceptions.**
(a) It is unlawful for any person to carry, possess, sell, offer or display for sale, or otherwise transfer any high capacity magazine or metal piercing bullets.  This section shall not apply to corrections officers, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers, to the extent that any such person is otherwise authorized to acquire or possess metal piercing bullets, and is acting within the scope of his duties, or to any person while in the manufacturing, transportation or sale of high capacity magazines or metal piercing bullets to people authorized to possess them under this section.

(b)   Any high capacity magazine or metal piercing bullets carried, possessed, displayed, sold or otherwise transferred in violation of this section is hereby declared to be contraband and shall be seized by and forfeited to the city.

**8-20-090 Interstate transportation of firearms.**
It shall not be a violation of this chapter if a person transporting a firearm or ammunition while engaged in interstate travel is in compliance with 18 U.S.C.A. §926A.  There shall be a rebuttable presumption that any person within the city for more than 24 hours is not engaged in interstate travel, and is subject to the provisions of this chapter.

**8-20-100 Permissible sales and transfers of firearms and ammunition.**
(a)   Except as authorized by subsection (e) and section 2-84-075, no firearm may be sold, acquired or otherwise transferred within the city, except through inheritance of the firearm.

- 11 -

(b)   No ammunition may be sold or otherwise transferred within the city, except through a licensed weapons dealer, or as otherwise allowed by this code.

(c)   No firearm or ammunition shall be security for, or be taken or received by way of any mortgage, deposit, pledge or pawn.

(d)   No person may loan, borrow, give or rent to or from another person, any firearm or ammunition except in accordance with this chapter.

(e)   Notwithstanding any other provision of this section, a peace officer may sell or transfer any lawfully held firearm or ammunition to another peace officer in accordance with the other provisions of this chapter.

## ARTICLE III.   PERMITS FOR AND REGISTRATION OF FIREARMS.

### 8-20-110 CFP-Required

(a) Subject to subsection (d), it is unlawful for any person to carry or possess a firearm without a CFP.

(b) No CFP application shall be approved unless the applicant:

(1) is 21 years of age or older; provided that an application of a person 18 years or older but less than 21 may be approved if the person has the written consent of his parent or legal guardian to possess and acquire a firearm or firearm ammunition and that he has never been convicted of a misdemeanor, other than a traffic offense or adjudged a delinquent; provided that such parent or legal guardian is not an individual prohibited from having a FOID or CFP, and that the parent files an affidavit with the department attesting that the parent is not an individual prohibited from having a FOID or CFP;

(2) possesses a valid Illinois FOID;

(3) has not been convicted by a court in any jurisdiction of:
(i)    a violent crime,
(ii)   two or more offenses for driving under the influence of alcohol or other drugs; or
(iii) an unlawful use of a weapon that is a firearm;

(4) has vision better than or equal to that required to obtain a valid driver's license under the standards established by the Illinois Vehicle Code;

(5) is not otherwise ineligible to possess a firearm under any federal, state or local law, statute or ordinance; and

(6) has not been convicted, adjudicated, admitted to, or found liable for a violation of section 8-20-060 or 8-20-100.

(c)   Each CFP issued shall be accompanied by a copy of this ordinance.

(d)   Any person who has a valid firearm registration certificate issued before the effective date of this 2010 ordinance shall be exempted from acquiring a CFP until the expiration of the registration certificate; provided that upon the expiration of the registration certificate, the person

shall be required to obtain a CFP.   Any such person who has submitted an application for a CFP prior to or on the date of the expiration of his current registration certificate shall be deemed to be in compliance with the requirement for a CFP while his application is pending.

(e)  The provisions of this section shall not apply to any person listed in section 8-20-020(b)(1)-(16) or a person engaged in interstate travel in compliance with section 8-20-100.

## 8-20-120   CFP-application

(a)   An applicant for a CFP shall submit an application to the superintendent on a form or in a manner prescribed by the superintendent. The application shall include the following:

(1)   name, residential address and telephone number of the applicant;

(2)   the applicant's date of birth and sex;

(3)   the applicant's Illinois firearm owner's identification number and a copy of the applicant's FOID card;

(4)   evidence that the applicant meets the criteria of section 8-20-110;

(5)   two identical photographs of the applicant taken within 30 days immediately prior to the date of filing the application, equivalent to passport size, showing the full face, head and shoulders of the applicant in a clear and distinguishing manner;

(6) the applicant's Illinois driver's license number and a copy of the applicant's driver's license or Illinois identification card;

(7) an affidavit signed by a firearm instructor certified by the State of Illinois to provide firearm training courses attesting that the applicant has completed a firearm safety and training course, which, at a minimum, provides one hour of range training and four hours of classroom instruction that is in compliance with the requirements of the classroom instruction course, as established in rules and regulations; and

(8) any other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination as to whether the terms of this chapter have been complied with.

The superintendent shall be the custodian of all applications for CFPs under this chapter.

(b) The applicant shall submit to fingerprinting in accordance with procedures established in rules and regulations promulgated by the superintendent.

(c)  For an application for a CFP submitted within 180 days of the effective date of this 2010 ordinance, the superintendent shall either approve or deny such application no later than 120 days after the date the application is submitted, unless good cause is shown.  For an application for a CFP submitted thereafter, the superintendent shall either approve or deny an application within 45 days from the date the application is submitted, unless good cause is shown.  An application shall not be deemed submitted until the applicant provides all the required information or documentation.

(d) All CFPs issued by the superintendent shall contain the applicant's name, date of birth, sex, and signature. Each CFP shall have the expiration date boldly and conspicuously displayed on the face of the CFP.

**8-20-130    CFP card-fee and expiration.**
(a) A CFP card shall expire 3 years after the date of issuance.

(b) The fee shall be $100.00.

(c) The CFP fee shall not be applicable to any resident of the city who is a retired department police officer.

**8-20-140    Firearm registration certificate-required**
(a) Subject to subsection (d), it is unlawful for any person to carry or possess a firearm without a firearm registration certificate.

(b) No application for a registration certificate shall be approved unless the applicant has been issued a valid CFP; provided no CFP shall be required for the issuance of a registration certificate if the person is an exempt person pursuant to section 8-20-110(e).

(c)    An applicant for a registration certificate shall submit an application to the superintendent on a form or in a manner prescribed by the superintendent. The application shall include the following:

> (1) name, telephone number and the address at which the firearm shall be located;

> (2) a copy of the applicant's CFP and Illinois FOID card;

> (3) the name of the manufacturer, the caliber or gauge, the model, type and the serial number identification of the firearm to be registered;

> (4) the source from which the firearm was obtained;

> (5) the address at which the firearm will be located;

> (6) if an antique firearm, the year of manufacture of the firearm;

> (7) the date the firearm was acquired; and

> (8) any other information as the superintendent shall find reasonably necessary to effectuate the purpose of this chapter and to arrive at a fair determination as to whether the terms of this chapter have been complied with.

The superintendent shall be the custodian of all applications for registration certificates under this chapter.

(d)    (1) Subject to subsection (d)(2), an application for a registration certificate shall be submitted no later than 5 business days after a person takes possession within the city of a firearm from any source; provided that any applicant who has submitted a complete application within the required 5 business days shall be considered in compliance with this subsection until his registration certificate is

either approved or denied.

(2) Notwithstanding any provision of this chapter to the contrary, a person has 90 days after the effective date of this 2010 ordinance to register a firearm, including a handgun, which had not been previously registered; provided that the person and firearm meet all the requirements of this ordinance.

(e)    For an application for a firearm registration certificate submitted within 180 days after the effective date of this 2010 ordinance, the superintendent shall either approve or deny such  application no later than 45 days after the date the application is submitted.  For an application for a firearm registration certificate submitted thereafter, the superintendent shall either approve or deny the application within 21 days of the submission of the application, unless good cause is shown.  An application shall not be deemed submitted until the applicant provides all the required information or documentation.

(f) The provisions of this section shall not apply to:

(1)  firearms owned or under the direct control or custody of any federal, state or local governmental authority maintained in the course of its official duties;

(2)  duty-related firearms owned and possessed by peace officers who are not residents of the city;

(3) duty-related firearms owned or possessed by corrections officers and who are not residents of the city;

(4) firearms owned, manufactured or possessed by licensed manufacturers of firearms, bulk transporters or licensed sellers of firearms at wholesale or retail, provided that such persons have federal firearms license;

(5) any nonresident of the city participating in any lawful recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction; provided that such firearm shall be (i) broken down in a nonfunctioning state; (ii) not immediately accessible; and (iii) unloaded and in a firearm case;

(6) persons licensed as private security contractors, security guards, private detectives, or private alarm contractors, or employed by an agency certified as such by the Department of Professional Regulation;

(7) duty-related firearms of investigators of the Office of the State's Attorneys Appellate Prosecutor authorized by the board of governors of the Office of the State's Attorneys Appellate Prosecutor to carry weapons pursuant to Section 7.06 of the State's Attorneys Appellate Prosecutor's Act;

(8) duty-related firearms of special investigators appointed by a State's Attorney under Section 3-9005 of the Counties Code;

(9) firearms being transported by a person engaged in interstate travel in compliance with section 8-20-100; or

(10) those persons summoned by a peace officer to assist in making an arrest or preserving the peace while actually engaged in assisting the peace officer.

(g) Each registration certificate issued shall contain a unique registration certificate number, the person's name, the address at which the firearm will be located, and any other information the superintendent deems necessary to identify the person and the firearm.

**8-20-145 Registration certificates- expiration.**

(a) A registration certificate issued prior to the effective date of this 2010 ordinance shall remain in effect until its expiration.

(b) For registration certificates issued after the effective date of this 2010 ordinance, a registration certificate shall expire on the same date as the date of the expiration of the CFP issued to that person.

(c) A person shall file an annual registration report with the superintendent on a form, and in a manner, prescribed by the superintendent.   The annual registration report shall set forth such information as required by the superintendent in rules and regulations.   If a person has multiple registration certificates, the superintendent may align the dates for the annual registration reports to the same reporting date and combine such annual registration reports into one report.

Failure to file an annual registration report may result in revocation of a person's CFP or registration certificate, and may cause that firearm to become unregisterable to that person.

**8-20-150 Application fees.**

(a)   A nonrefundable application fee of $15.00 shall be payable for each firearm registered.   The fee shall accompany each initial application for a registration certificate.

(b) Any person who files an annual registration report late shall pay a late filing fee of $60.00.

(c) The application fee shall not be applicable to: (1) any duty-related firearm of a peace officer domiciled in the city, or (2) any duty-related firearm that was registered to that retired department police officer at the time of the his separation from active duty in the department.

**8-20-160 Restrictions on issuance of registration certificates.**

(a)   Subject to subsections(b) and (c), the superintendent shall issue no more than one firearm registration certificate to a person for a handgun during any 30-day period; provided that the superintendent may permit a person first becoming a city resident to register more than one handgun if those handguns were lawfully owned in another jurisdiction for a period of 6 months prior to the date of application.

(b)   In addition to a registration certificate for a handgun pursuant to subsection (a), an applicant may be issued a registration certificate for:

     (1) any firearm possessed by an applicant that was lawfully registered on the date of the enactment of this ordinance;

     (2) any long gun which is eligible to be registered; or

     (3) any antique firearm, including antique handguns.

The burden of proving that a firearm is an antique firearm shall be on the applicant.

(c) In addition to a registration certificate for a handgun pursuant to subsection (a), a retired department police officer may be issued a registration certificate for each duty-related handgun that was registered to that retired department police officer at the time of the his separation from active duty in the department.

### 8-20-170   Unregisterable firearms.

No registration certificate shall be approved for any of the following types of firearms:

(a) a sawed-off shotgun, .50 caliber rifle, machine gun, or short-barreled rifle;

(b) an unsafe handgun;

(c) a firearm that becomes unregisterable under the provisions of this chapter; provided that it shall only be unregistrerable for that person; or

(d)  assault weapons, unless they are owned by a person who is entitled to carry or possess them pursuant to section 8-20-035.

### 8-20-180 CFP and registration certificate-General provisions.

(a)    After issuance of a CFP or a registration certificate to a person, the person shall examine the CFP or registration certificate to insure that the information thereon is correct. If the information is incorrect in any respect, the person shall return it to the superintendent with a signed statement showing the nature of the error. The superintendent shall correct the error if it occurred as a result of the superintendent's administrative process.

In the event that the error resulted from incorrect information contained in the application, the person shall submit an amended application setting forth the correct information and a statement explaining the error in the original application.

(b) A CFP and the registration certificate shall be valid only for the person to whom it was issued.

(c) A registration certificate shall only be valid for the address on the registration certificate.  Except in the lawful transportation of a firearm, a person shall not carry or possess any firearm at any location other than that authorized by the registration certificate.

(d) A CFP or registration certificate shall not be subject to sale, assignment, or transfer, voluntary or involuntary.

(e)  Any application for a CFP or a registration certificate shall be held in abeyance when there is a criminal proceeding for a violent crime, or an offense involving a weapon, or a proceeding to deny or revoke a CFP or firearm registration certificate pending against the person, until such proceeding has terminated.

### 8-20-185 Additional duties.

(a) Every person issued a CFP or a firearm registration certificate, in addition to any other requirements of this code, shall immediately notify the department in a manner prescribed by the superintendent of:

(1) the destruction of his firearm, or when the person knows, or should have known, that his firearm is lost, stolen or otherwise missing;

- 17 -

(2) the loss, theft or destruction of the CFP or registration certificate within 72 hours of the discovery of such loss, theft, or destruction;

(3) a change in any of the information appearing on the CFP or firearm registration certificate;
(4) the sale, transfer, inheritance, or other disposition of the firearm not less than 48 hours prior to delivery.

(b) Every person issued a CFP or a firearm registration certificate, in addition to any other requirements of this code, shall:

(1) immediately return to the superintendent his copy of the registration certificate for any firearm which is lost, stolen, destroyed or otherwise disposed of; and

(2) keep all information current. Any change in required information shall be reported, on a form and in manner prescribed by the superintendent, within 24 hours after the change.

**8-20-190 Denials and revocations.**
(a) An application for a CFP or a registration certificate shall be denied for any of the following reasons:

(1) any of the eligibility criteria of this chapter are not currently met;

(2) the firearm is an unregisterable firearm;

(3) the information furnished on or in connection with the application for a CFP or a registration certificate is false or misleading; or

(4) the person fails to respond to any additional information, or investigation inquiries, requested by the superintendent regarding any application.

(b) A registration certificate shall be revoked:

(1) when the firearm becomes an unregisterable firearm; or

(2) if the CFP of the person was revoked.

(c) A CFP shall be revoked if any of the eligibility criteria of this chapter are not currently met.

(d) A CFP or registration certificate may be denied or revoked for a violation of this chapter, or any rules or regulations promulgated hereunder.

(e) The CFP and all registration certificates of any person convicted of a felony after the issuance of a CFP or registration certificate to that person shall be automatically revoked by operation of law, without a further hearing. The person shall immediately dispose of all firearms by:

(i) peaceably surrendering to the department all firearms for which a registration certificate was issued;

(ii)  removing such firearm from the city; or

(iii)  otherwise lawfully disposing of his interest in such firearm.

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

**8-20-200  Procedure for denial.**

(a)  If an application for a CFP or a registration certificate is denied by the superintendent, the superintendent shall notify the person making such application, in writing, of the denial.  The notice of denial shall:

(1) set forth the basis of the denial;

(2) include a statement that within ten days of the notice of denial, the person is entitled to request a hearing, in person and in writing, at the department of administrative hearings;

(3) include a statement that the person is entitled to appear at the hearing to testify, present documents, including affidavits, and any other evidence to contest the denial;

(4) include a statement that if the person fails to request a hearing within ten days, the person is deemed to have conceded the validity of the reason stated in the notice and the denial shall become final;

(5) include a certificate of service; and

(6) include an oath or affirmation by the superintendent certifying the correctness of the facts set forth in the notice of denial.

(b)  The person, within ten days after notice is sent of the denial, may file with the department of administrative hearings a request for a hearing. Such hearing request shall be made in person, and in writing, at the department of administrative hearings.  An administrative law officer of the department of administrative hearings shall conduct such hearing within 72 hours of the request, excluding Saturdays, Sundays, and legal holidays.

(c) The department of administrative hearings shall conclude the hearing no later than 7 days after the commencement of the hearing.

(d) Based upon the evidence contained in the record, an administrative law officer of the department of administrative hearings shall, within 5 days of the conclusion of the hearing, issue written findings and enter an order granting or denying the application.  A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

(e)  If the person does not request a hearing within ten days after the notification of the denial is sent, the person shall be deemed to have conceded the validity of the reason stated in the notice and the denial shall become final.

(f)  Within three days after all the time for hearings or appeals has expired, the person shall:

(1) peaceably surrender to the department the firearm for which the registration

- 19 -

certificate was denied;

(2)  remove such firearm from the city; or

(3)  otherwise lawfully dispose of his interest in such firearm.

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

**8-20-205    Procedure for revocation.**

(a) Except in cases where a CFP or registration certificate is automatically revoked pursuant to section 8-20-190(e), if, in the determination of the superintendent, a CFP or a registration certificate   should be revoked, he shall notify the person whose CFP or registration certificate is the subject of such revocation, in writing, of the proposed revocation. The notice shall:

(1) set forth the basis for the revocation;

(2) specify the location, date, and time for a hearing on the revocation;

(3 include a statement that the person is entitled to appear at the hearing to testify, present documents, including affidavits, and any other evidence to contest the proposed revocation;

(4) include a statement that failure of the person to appear at the hearing may include an entry of an order revoking the person's CFP or registration certificate;

(5) include a certificate of service; and

(6) include an oath or affirmation by the superintendent certifying the correctness of the facts set forth in the notice.

(b) The department of administrative hearings shall convene the hearing at the location and on the date and time specified in the revocation notice.

(c) Based upon the evidence contained in the record, an administrative law officer of the department of administrative hearings shall, within 5 days of the conclusion of the hearing, issue written findings and enter an order granting or denying the proposed revocation.   A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

(d)   Within three days after notification of a decision unfavorable to the person, and all time for appeals has expired, the person shall:

(1) for revocation of a registration certificate:
(i) peaceably surrender to the department the firearm for which the registration certificate was revoked;

(ii)   remove such firearm from the city; or

(iii)   otherwise lawfully dispose of his interest in such firearm.

(2) for revocation of a CFP, dispose of all firearms in accordance with subsection

(d)(1).

The person shall submit to the superintendent evidence of the disposition of any such firearm in accordance with rules and regulations promulgated by the superintendent.

(e) In cases where a CFP or registration certificate is automatically revoked pursuant to section 8-20-190(e), the superintendent shall notify the person of the automatic revocation of the person's CFP or registration certificate. Within three days after notification of the automatic revocation, the person may file with the department of administrative hearings a request, in writing, for a hearing on the sole issue of identity and whether he was the person so convicted. It shall be a rebuttable presumption that the person whose CFP or registration certificate was automatically revoked is the same person who was convicted of a felony.

An administrative law officer of the department of administrative hearings shall conduct such hearing within 5 days of the request for a hearing.

Based upon the evidence contained in the record, an administrative law officer of the department of hearings shall, within 5 days of the conclusion of the hearing, issue written findings as to sole issue of the identity of the person.  A copy of the findings and order shall be served upon the person and all parties appearing or represented at the hearing.

If the person does not request a hearing within three days after the notification, the person shall be deemed to have conceded the validity of the identification.

**8-20-210 Automatic revocation of registration certificates.**
If, after a hearing, a CFP issued to a person is revoked, all firearm registration certificates issued to that person shall automatically be revoked and the person shall comply with section 8-20-205(d) for disposition of the firearms.

**ARTICLE IV.   Miscellaneous Provisions.**

**8-20-220   False information – Forgery – Alteration.**
(a) It is unlawful for any person purchasing any firearm or ammunition, or applying for any CFP or registration certificate, or, in giving any information pursuant to the requirements of this chapter, to knowingly give false information or offer false information or evidence of identity.

(b) It is unlawful for any person to forge or materially alter any application for a CFP or firearm registration certificate.

(c) It is unlawful for any person to forge or materially alter a CFP or a firearm registration certificate.

(d) It is unlawful for any person to knowingly possess a forged or materially altered CFP or firearm registration certificate.

(f)   It is unlawful for any person to knowingly make any false statement, submit any false information or misrepresent any information required in this chapter.

**8-20-230   Notice.**
For the purposes of this chapter, service of any notice, finding or decision upon a person shall be completed by any of the following methods by:

- 21 -

(a) personal delivery of a copy of such notice, finding or decision to the person;

(b) leaving a copy of such notice, finding or decision at the address identified on the application for a CFP or registration certificate; or

(c) mailing, by first class mail, a copy of the notice, finding or decision to the address identified on the application for a CFP or registration certificate, in which case service shall be complete as of the date the notice was mailed.

**8-20-240 Posting of  unsafe handguns.**

(a) The superintendent shall post on the department's web site the roster of unsafe handguns.

(b) No less than 10 days prior to placing any handgun on the roster of unsafe handguns, the superintendent shall post on the department's  web site the type or model of the handgun that will be placed on the roster.

**8-20-250 Seizure and  forfeiture of firearms, ammunition, laser sight accessories and firearm silencers and mufflers-Authority and destruction.**

The superintendent has the authority to seize any firearm, assault weapon, ammunition, laser sight accessories, or firearm silencer or muffler carried or possessed in violation of this chapter or any applicable state or federal law.  Such items are hereby declared contraband and shall be seized by and forfeited to the city.

Whenever any firearm, ammunition, laser sight accessories, or firearm silencer or muffler is surrendered or forfeited pursuant to the terms of this chapter, or any applicable state or federal law, the superintendent shall ascertain whether such firearm, ammunition, assault weapon, laser sight accessories, or firearm silencer or muffler is needed as evidence in any matter.  All such items which are not required for evidence shall be destroyed at the direction of the superintendent; provided that those firearms and ammunition that the superintendent shall deem to be of use to the department may be retained for the use of the department.  A record of the date and method of destruction and an inventory of the firearm or ammunition so destroyed shall be maintained.

**8-20-260    Rules and regulations.**

The superintendent has the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required.  All rules and regulations promulgated by the superintendent pursuant to this chapter shall be posted on the department's web site.

**8-20-270    Acquisition or possession prohibited by law.**

Nothing in this chapter shall make lawful the acquisition or possession of firearms or ammunition which is otherwise prohibited by law.

**8-20-280 Prohibition on shooting galleries and target ranges.**

Shooting galleries, firearm ranges, or any other place where firearms are discharged are prohibited; provided that this provision shall not apply to any governmental agency.  The discharge of a firearm in an area where hunting is permitted shall not be a violation of this section.

**8-20-290 Severability.**

If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which

reasonably can be given effect without the invalid provision or term for the application thereof.

**ARTICLE V.   VIOLATION OF CHAPTER PROVISIONS**.

**8-20-300   Violation – Penalty.**
(a) Any person who violates section 8-20-020, 8-20-030, 8-20-035, 8-20-060, 8-20-080 or 8-20-110 shall upon conviction be fined not less than $1,000.00 nor more than $5000.00 and be incarcerated for a term not less than 20 days nor more than 90 days.   Each day that such violation exists shall constitute a separate and distinct offense.

(b) Unless another fine or penalty is specifically provided, any person who violates any provision of this chapter, or any rule or regulation promulgated hereunder, shall upon conviction or a finding of liability for the first offense, be fined not less than $1,000.00, nor more than $5,000.00, or be incarcerated for not less than 20 days nor more than 90 days, or both.   Any subsequent conviction for a violation of this chapter shall be punishable by a fine of not less than $5,000.00 and not more than $10,000.00, and by incarceration for a term of not less than 30 days, nor more than six months.   Each day that such violation exists shall constitute a separate and distinct offense.

(c) In addition to any other fine or penalty provided in this chapter, the CFP or registration certificate of any person who violates any provision of this chapter, or rule or regulation promulgated hereunder, may be revoked.   Any person whose CFP is revoked shall not be eligible for a CFP for 5 years from the date of the revocation; provided that the superintendent may waive this restriction if, in the determination of the superintendent, the applicant has demonstrated that the applicant has good reason to fear injury to his person or property.

(d)   Upon the determination that a person has violated any provision of this chapter or any rule or regulation promulgated hereunder, the superintendent may institute an administrative adjudication proceeding with the department of administrative hearings by forwarding a copy of a notice of violation or a notice of hearing, which has been properly served, to the department of administrative hearings.

SECTION 5.   The renumbering and amending of the sections in Chapter 8-20 are not intended to invalidate, alter, or otherwise affect in any way any action taken, or could have been taken, based upon those sections, nor shall it be construed to affect any offense or act committed,   action or claim arising under those sections, penalty, forfeiture, or punishment incurred, except that any proceedings after the effective date of this 2010 ordinance shall conform, insofar as practicable, to the ordinance in effect at the time of the proceedings.

SECTION 6.   Title 8 of the Municipal Code of Chicago is hereby amended by adding a new section 8-24-005, by deleting sections 8-24-025 and 8-24-026, by deleting the language struck through, and by adding the language underscored, as follows:

**8-16-090   Firearms for minors.**
No person shall sell, loan, or furnish to any minor any ~~gun, pistol or other firearm, or~~ any toy gun, toy pistol, or other toy firearm in which any explosive substance can be used~~, within the city; except that minors may be permitted, with the consent of their parents or guardians, to use firearms on the premises of a duly licensed shooting gallery, gun club, or rifle club, or to shoot game birds in accordance with the provisions of Section 8-24-050 of this Code~~.

**8-24-005 Definitions**
        For the purposes of this Chapter, the following definitions apply:

"Corrections officers," "firearm" and "peace officer" have the meaning ascribed to those terms in section 8-20-010.

**8-24-010   Discharging firearms.**

No person shall fire or discharge any ~~gun, pistol, or other~~ firearm within the city, except in the lawful self-defense or defense of another ~~upon premises used by a duly licensed shooting gallery, gun club, or rifle club,~~ or in accordance with the provisions of Section 8-24-050 of this Code.

No cannon or piece of artillery shall be discharged or fired off in any public way or other public place within the city, except upon the express permission of the city council.

Any person violating any of the provisions of this section shall be fined not less than $~~250.00~~ 500.00 nor more than $~~500.00~~ 1,000.00 for each offense.

The provisions of this section shall not apply to persons listed in section 8-20-020 (b)(1)-(15). ~~sheriffs, coroners, constables, members of the police force, or other peace officers engaged in the discharge of their official duties, or to any person summoned by any of such officers to assist in making arrests or preserving the peace while such person so summoned is engaged in assisting such officer.~~

**8-24-020   Carrying dangerous weapons.**

(a) No person shall sell, offer for sale, keep, possess, loan or give to any person any knife, the blade of which is released by a spring mechanism, including knives known as "switch-blades", any blackjack, slingshot, sandclub, sandbag, metal knuckles or bludgeon.  No person shall sell, offer for sale, loan or give to any person 18 years of age or under any type or kind of knife, any blade of which is two inches in length or longer.

(b) [Reserved]  ~~No person shall sell, manufacture, purchase, possess or carry any weapon from which eight or more shots or bullets may be discharged by a single function of the firing device.~~

(c) No person shall carry or possess any knife, the blade of which is released by a spring mechanism, including knives known as "switch-blades", any blackjack, slingshot, sandclub, sandbag, metal knuckles or bludgeon. No person 18 years of age or under shall carry or possess any knife, the blade of which is two inches in length or longer.

(d) No person shall carry or possess with intent to use same unlawfully against another a dagger, dirk, billy, dangerous knife, razor, stiletto or other dangerous or deadly weapon.

(e) [Reserved]  ~~No person shall carry concealed on or about his person a pistol, revolver, derringer or other firearm. Provided, however, that this provision shall not apply to the following officers while engaged in the discharge of their official duties: sheriffs, coroners, constables, policemen or other duly constituted police officers and wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime; nor to the following employees or agents while engaged in the discharge of the duties of their employment: conductors, baggagemen, messengers, drivers, watchmen, special agents and policemen employed by railroads or express companies; nor to persons lawfully summoned by an officer to assist in making arrests or preserving the peace, while so engaged in assisting such officer.~~

(f) No person shall carry concealed on or about his person a or dagger, dirk, stiletto, bowie knife, commando knife, any blade of which is released by a spring mechanism, including knives known as "switch-blades" or any other type or kind of knife, any blade of which is more than two and one-half inches in length, ordinary razor or other dangerous weapon except that no person 18 years of age or under shall carry concealed on or about his person, any knife, the blade of which is two inches in length or longer. Provided, however, that this provision shall not apply to the following officers while engaged in the discharge of their official duties: sheriffs, coroners, peace officers constables, policemen or other duly constituted police officers and corrections officers wardens, superintendents and keepers of prisons, penitentiaries, jails and other institutions for the detention of persons accused or convicted of crime; nor to the following employees or agents while engaged in the discharge of the duties of their employment: conductors, baggagemen, messengers, drivers, watchmen, special agents and policemen employed by railroads or express companies; nor to persons lawfully summoned by an officer to assist in making arrests or preserving the peace, while so engaged in assisting such officer.

(g) Any person violating the provisions of subsections (a), (c), (d) or (f) of this section shall be fined $200.00 for each offense, or shall be punished by imprisonment for a period not to exceed six months, or by both such fine and imprisonment. Any person violating the provisions of subsections (b) or (e) of this section shall be subject to a fine of $300.00 for each offense, and a mandatory minimum sentence of not less than five days imprisonment nor more than six months imprisonment for a first offense; a mandatory minimum sentence of not less than fifteen days imprisonment nor more than six months imprisonment for a second offense; and a mandatory minimum sentence of not less than thirty days imprisonment nor more than six months imprisonment for a third or subsequent offense.

(h) In addition to all other penalties, weapons Any weapons used in violation of this section are hereby declared contraband and shall be seized by and forfeited to, and confiscated by, the city.

**8-24-021 Sale, display and use of utility knives.**
(a) As used in this section, a "utility knife" is a knife consisting of a grip and single-edged sharp blade of the type typically used to cut such resistant surfaces as rugs, cardboard boxes, linoleum flooring and the like.

(b) No person shall display or offer for sale any utility knife except by placing the knife either (1) in an area immediately accessible only to an employee of the establishment, and beyond the reach of any customer less than seven feet tall; or (b 2) in a locked display cabinet, which can only be opened by an employee of the establishment.

*(omitted text is unaffected by this ordinance)*

**8-24-025 Assault weapons or ammunition – Sale prohibited – Exceptions.**

(a)   No person shall sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any assault weapon or assault ammunition, as those terms are defined in Chapter 8-20 of this Code. This section shall not apply to any officer, agent, or employee of this or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess an assault weapon or assault ammunition and is acting within the scope of his or her duties. In addition, this section shall not apply to the acquisition or possession of assault ammunition by persons employed to provide security for armored carriers or mobile check cashing services while in the course of such duties, while commuting directly to or from the person's place of employment, and while at the person's home, if the assault  ammunition (1) is acquired or possessed for use with a weapon that the person has been authorized to carry under Section 28 of the Illinois Private Detective, Private Alarm and Private Security Act of 1983; and (2) consists of an ammunition magazine that has a capacity of 15 or fewer rounds of ammunition.

(b)   Any assault weapon or assault ammunition possessed, sold or transferred in violation of subsection (a) is hereby declared to be contraband and shall be seized,and disposed of in accordance with the provisions of Section 8-20-220.

(c)   Any person found in violation of this section shall be subject to a fine of not less than $500.00 nor more than $1,000.00 for each offense, and a mandatory minimum sentence of not less than five days imprisonment nor more than six months imprisonment for a first offense;  a mandatory minimum sentence of not less than fifteen days imprisonment nor more than six months imprisonment for a second offense; and a mandatory minimum sentence of not less than thirty days imprisonment nor more than six months imprisonment for a third or subsequent offense.

(d)   Any person who, prior to the effective date of the ordinance codified in this section, was legally in possession of an assault weapon or assault ammunition prohibited by this section shall have 14 days from the effective date of the ordinance codified in this section to do any of the following without being subject to prosecution hereunder:
(1)   To remove the assault weapon or ammunition from within the limits of the City of Chicago; or
(2)   To modify the assault weapon either to render it permanently inoperable or to permanently make it a device no longer defined as an assault weapon; or
(3)   To surrender the assault weapon or ammunition to the superintendent of police or his designee for disposal in accordance with Section 8-20-220.

**8-24-026   Fragmenting bullets and metal piercing bullets – Sale prohibited – Exceptions.**
(a)   No person shall manufacture, sell, offer or display for sale, give, lend, transfer ownership of, acquire or possess any fragmenting bullets, metal piercing bullets, or disc projectile ammunition. This section shall not apply to any officer, agent, or employee of this or any other municipality or state or of the United States, members of the armed forces of the United States, or the organized militia of this or any other state, and peace officers as defined in this Code to the extent that any such person is otherwise authorized to acquire or possess fragmenting bullets, metal piercing bullets, or disc projectile ammunition and is acting within the scope of his or her duties.

(b)   Any fragmenting bullets, metal piercing bullets, or disc projectile ammunition manufactured, possessed, sold or transferred in violation of subsection (a) are hereby declared to be contraband and shall be seized and disposed of in accordance with the provisions of Section 8-20-220.

~~(c)   Any person found in violation of this section shall be sentenced to not more than six months imprisonment or fined $500.00, or both.~~

**8-24-027   Disguised firearms prohibited.**

(a)      No person shall purchase, acquire, sell, offer or expose for sale, or possess any firearm that is designed, constructed, modified or disguised to resemble any other object.

(b)      Any person who violates subsection (a) of this section ~~shall be guilty of a misdemeanor, and~~ shall be <u>incarcerated</u> ~~subject to incarceration~~ for not less than 30 days and not more than 180 days for each offense. Each day of a continuing violation, and each purchase, acquisition, sale, offering or exposing for sale, or possession of a different firearm described in subsection (a) shall constitute a separate and distinct offense.

(c)      Nothing in this section suspends, repeals or alters any other provision of this Code which limits, restricts or prohibits the purchase, acquisition, sale, offering or exposure for sale, or possession of a firearm.

**SECTION 7.** The Municipal Code of Chicago is hereby amended by adding a new chapter 8-26, as follows:

**Chapter 8-26 Gun Offender Registration Ordinance**
**8-26-010   Definitions:**

For purposes of this chapter, the following definitions apply:

"Corrections facility" has the same meaning ascribed to that term in 720 ILCS 5/3-1-2.

"Conviction" or "convicted" means an adjudication by a court of competent jurisdiction that a person is guilty, and includes the sentence by the court, of the gun offense.

"Gun offender" or "offender" means any person convicted of a gun offense that is subject to the provisions of this chapter.

"Gun offense" means a criminal conviction of an offense for an unlawful use of a weapon that included a firearm under 720 ILCS 5/24, or criminal possession of a firearm in violation of any federal, state or local law.

"Department," "firearm," and "superintendent" have the meaning ascribed to those terms in section 8-20-010.

**8-26-020 Duty to register and to verify.**

(a) A gun offender who resides within the city, or remains in the city to work or attend school, shall register with the superintendent within 48 hours of either: (1) release, if the gun offender receives a sentence of imprisonment; or (2) the time sentence is imposed, if the sentence does not include imprisonment.

(b) The form and manner of registration shall be as provided in rules and regulations.

(c) The registration shall include the following information;
    (1) the person's name, date of birth, and sex;
    (2) the address where the gun offender resides, works, or attends school;
    (3) any other legal name;
    (4) copy of a driver's license or non-driver's photo identification card;

(5) a photograph of the gun offender;
(6) a description of the offense for which the offender was convicted;
(7) the name and address of the offender's place of work, or expected place of work, including the name and phone number of his supervisor;
(8) the name and address of any educational institution which the offender attends or expects to attend; and
(9) any other information that the superintendent shall find reasonably necessary to effect the purpose of this chapter.

The gun offender shall sign a statement under oath attesting to the accuracy of the information required in this subsection.

(d) The superintendent may photograph the gun offender and require the gun offender to provide such documentation as the superintendent considers acceptable to verify any information required pursuant to this chapter.

(d) The gun offender shall submit to fingerprinting in accordance with rules and regulations promulgated by the superintendent.

**8-26-030 Initial and annual registration.**
(a) For the initial registration, a gun offender shall personally appear to register at such office of the police that the superintendent may direct.

(b) No later than 20 days after the one-year anniversary of the gun offender's initial registration, the gun offender shall personally appear at such office of the police that the superintendent may direct for the purpose of verifying the information required in this chapter.

(c) If a gun offender required to register under this chapter is confined to any federal, state or local correctional center, residential treatment center, hospital, or institution throughout the 20-day period set forth in subsection (b), the gun offender shall personally appear as required by this subsection within 48 hours of release.

**8-26-040 Registration period.**
A gun offender shall comply with the requirements of this chapter for a period beginning when he is required to register and continuing until 4 years from the date of conviction, or 4 years after the expiration of any time being served on probation, parole, supervised release, or conditional release, or 4 years after the gun offender is unconditionally released from a correctional facility, prison, hospital or other place of confinement, whichever is last.   The registration period is tolled any time the gun offender fails to register or otherwise fails to comply with the requirements of this chapter.

**8-26-050 Duty to report.**
A gun offender shall report any change in information required by this chapter with 48 hours of such change, in a manner and in a form prescribed by the superintendent.

**8-26-060 Creation of gun offender registry.**
(a) The superintendent is authorized to collect and maintain gun offender information obtained pursuant to this chapter.

(b) The superintendent shall create and maintain a registry of gun offenders registered pursuant to the provisions of this chapter.

(c) The superintendent is authorized to make the gun offender registry available to any other city sister agencies or any regional or national government-established gun offender registry and may accept files from such registries.

## 8-26-070 Cooperation with other agencies.

The superintendent is authorized to cooperate with the judiciary and state and other city sister agencies to facilitate the implementation of this chapter.   Assistance and cooperation in the implementation of this chapter shall be provided by other city departments upon the request of the superintendent.

## 8-26-080 Gun offender community notification.

The superintendent shall post the gun offender registry on the department's web site, and must make the information contained in the registry database searchable with a mapping system which identifies registered gun offenders within 5 miles of an identified address.   The information shall be updated as deemed necessary by the superintendent.

## 8-26-090     Rules and regulations.

The superintendent has the authority to promulgate rules and regulations for the implementation of this chapter and to prescribe all forms and the information required.

## 8-26-100 Violation-Penalty.

Any person who violates any provision of this chapter, or rule or regulation promulgated hereunder, shall, upon conviction, be fined not less than $300.00 nor more than $500.00 or be incarcerated for a term not to exceed six months, or both.   Each day that such violation exists shall constitute a separate and distinct offense.

## 8-26-110 Severability.

If any provision or term of this chapter, or any application thereof, is held invalid, the invalidity shall not affect other applications of the provisions or terms of this chapter which reasonably can be given effect without the invalid provision or term for the application thereof.

SECTION 8. This ordinance shall take effect 10 days after its passage and approval.

# Exhibit O

1

THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION


EZELL, et al,                        )

            Plaintiffs,    ) No. 10-CV-5135

       vs.                       ) Judge

CITY OF CHICAGO,                     ) Virginia M.

          Defendants.    ) Kendall


      The deposition of ANDRE JOHN WILLIAM
QUEEN, SR., called as a witness for examination,
taken pursuant to the Federal Rules of Civil
Procedure of the United States District Courts
pertaining to the taking of depositions, taken
before LISA C. HAMALA, a Notary Public within and
for the County of Cook, State of Illinois, and a
Certified Shorthand Reporter of said state, CSR No.
84-3335, at Suite 1230, 30 North LaSalle Street,
Chicago, Illinois, on the 3rd day of September,
A.D. 2010, at 10:30 a.m.



Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

ESQUIRE
an Alexander Gallo Company

Andre Queen                                    September 13, 2010

2

1    PRESENT:

2

3         LAW FIRM OF DAVID G. SIGALE, P.C.,

4         (Corporate West 1,

5         4300 Commerce Court, Suite 300-3,

6         Lisle, Illinois 60532,

7         630-452-4547), by:

8         MR. DAVID G. SIGALE,

9         dsigale@sigalelaw.com,

10             appeared on behalf of the Plaintiffs;

11

12        CORPORATION COUNSEL

13        CITY OF CHICAGO,

14        (30 North LaSalle Street, Suite 1230,

15        Chicago, Illinois 60602,

16        312-744-4216), by:

17        MS. REBECCA ALFERT HIRSCH,

18             rebecca.hirsch@cityofchicago.org,

19             appeared on behalf of the Defendants.

20

21

22

23    REPORTED BY: LISA C. HAMALA, CSR.

24             Illinois CSR No. 84-3335.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Andre Queen                                    September 13, 2010

29

1    A.    Yes.   This was approved for him to use

2    by me for this particular course.

3         Q.    So this is a handout that's given in the

4    CFP class?

5         A.    That's correct.

6         Q.    Can you briefly summarize what the

7    contents are?

8              You don't need to go through each page,

9    but what's the purpose of this handout?

10        A.    To go over the basic operation

11   nomenclature of firearms and the safe use of

12   firearms.

13        Q.    What topics are covered in the four-hour

14   CFP class?

15        A.    During the course of the four hours, the

16   instructor must cover the actual ordinance itself.

17             We actually go through the ordinance and

18   go through the definitions so the students

19   understand.

20             Obviously legal definitions are very

21   different than what an individual from the public

22   may understand.

23             Like a residence, for instance.   Chicago

24   is a very specific definition so we go over things



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Andre Queen                                    September 13, 2010

30

1    like that.

2          We go over the actual process to obtain

3    the permit and then to go back and obtain a

4    registration for any firearms you may own or wish

5    to own at a later time.

6          We go over the basic function of

7    firearms.  The difference between revolvers versus

8    semi-automatic handguns.

9          We talk about firearm safety in the

10   home.  Being aware of things as sight alignment and

11   trigger control.

12        Q.     What's sight alignment?

13        A.     That's being able to properly line up

14   the firearm on a potential target in order to

15   actually strike the target when the firearm is

16   shot.

17        Q.     Then you said trigger control.

18        A.     Yes.  Being able to hold and utilize --

19   being able to actually fire the weapon in such a

20   way that rounds that are fired hit the intended

21   target and don't go off to either side up or down.

22         We are basically talking about how to

23   squeeze the trigger to keep the actual firearm in

24   line with the actual target.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Andre Queen                                    September 13, 2010

31

1          Q.     That's an aspect of training for the
2     safe use of the handgun?
3          A.     Yes.   We also make the students aware of
4     being very conscious of what's behind any potential
5     target.
6               Obviously if you miss the target, you
7     need to be aware of what's behind you.   We make
8     students aware of residences, homes.   Construction
9     of homes won't necessarily stop bullets from
10    penetrating one side of a wall to another side.
11    They need to be aware of that.
12              We emphasize additional training after
13    they complete this particular course.   We also
14    emphasize making sure they have a proper trigger
15    guard and method or location or device to keep the
16    weapon locked in safe when at home.   In addition to
17    what to expect when they get onto the range.
18         Q.     Are any videos ever used for
19    demonstration?
20         A.     The instructors utilize a PowerPoint
21    presentation.
22         Q.     You mentioned there were two work
23    rooms -- I can't remember the precise words.
24         A.     Lay-down areas.



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Andre Queen                                    September 13, 2010

32

1    Q.    Yes.   Okay.   Are live demonstrations

2    with any type of training guns ever used to

3    demonstrate to the class when the instructor is

4    talking, what specifically he is referring to?

5    A.    Yes.   We have red guns, training guns,

6    the same that the Chicago Police Academy utilizes.

7         The instructor also brings in a firearm

8    which is unloaded, kept safe, to demonstrate field

9    stripping and proper use, things of that nature.

10        So a combination of red guns and actual

11   firearms are utilized.

12   Q.    The individuals taking the class, are

13   they able to actually use the red guns, hold them,

14   see how they work?

15   A.    No.   The red guns don't have any working

16   parts.   They are basically molded rubber.

17        In terms of showing how to grip or aim a

18   firearm, how to move when you have a weapon in your

19   hand is really what's demonstrated.

20   Q.    In this four-hour training class, is it

21   fair to say a lot of information is imparted about

22   the safe and responsible use of firearms?

23   A.    Yes.

24   Q.    All of that is done in that four-hour



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Andre Queen                                    September 13, 2010

33

1    classroom without actually firing a gun, is that
2    correct?
3        A.    That's correct.
4        Q.    You mentioned at the completion of the
5    course there is a written exam?
6        A.    Yes.
7        Q.    Have you ever had any individuals not
8    pass that exam?
9        A.    Not to date.
10       Q.    Do you know what your procedure would be
11   if somebody did fail that test?
12       A.    Well, the instructors have been
13   instructed that if there's a student that appears
14   to be either incapable, for whatever reason, of
15   being able to operate the firearm in a safe manner,
16   the instructor does have the ability to reject that
17   student for further training.
18       Q.    How would an instructor make that
19   assessment?
20       A.    Well, we deliberately keep it kind of
21   nebulous because it could be a judgment call.
22              It could be if the instructor sees
23   something unsafe, or the individual appears to be
24   immature or is not able to appreciate the gravity



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Andre Queen                                  September 13, 2010

63

1    STATE OF ILLINOIS )

2                      )  SS:

3    COUNTY OF C O O K )

4              I, LISA C. HAMALA, a Notary Public

5    within and for the County of Cook, State of

6    Illinois, and a Certified Shorthand Reporter of

7    said state, do hereby certify:

8              That previous to the commencement of the

9    examination of the witness, the witness was duly

10   sworn to testify the whole truth concerning the

11   matters herein;

12             That the foregoing deposition transcript

13   was reported stenographically by me, was thereafter

14   reduced to typewriting under my personal direction

15   and constitutes a true record of the testimony

16   given and the proceedings had;

17             That the said deposition was taken

18   before me at the time and place specified;

19             That I am not a relative or employee or

20   attorney or counsel, nor a relative or employee of

21   such attorney or counsel for any of the parties

22   hereto, nor interested directly or indirectly in

23   the outcome of this action.

24             IN WITNESS WHEREOF, I do hereunto set my



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

Andre Queen                                    September 13, 2010

64

1    hand of Chicago, Illinois, this 15th day of

2    September, 2010.

3                    *Lisa Christine Hamala*

4              Notary Public, Cook County, Illinois.

5         My commission expires August 23, 2012.

6

7

8    C.S.R. Certificate No. 84-3335.

┌─────────────────────────────────┐
│         OFFICIAL SEAL           │
│     LISA CHRISTINE HAMALA       │
│  NOTARY PUBLIC, STATE OF ILLINOIS │
│  MY COMMISSION EXPIRES 8-23-2012 │
└─────────────────────────────────┘

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24



ESQUIRE
an Alexander Gallo Company

Toll Free: 800.708.8087
Facsimile: 312.673.8138

Suite 1200
311 West Monroe Street
Chicago, IL 60606
www.esquiresolutions.com

# Exhibit P

# WhereToShoot.org

A comprehensive directory of ranges shooting facilities across the country.

*A National Shooting Sports Foundation Web Site*

| Home | Find a Range | List Your Range | Shooting Disciplines | Contact Us |

**Related Sites**

■ Hunt and Shoot.org

■ Wingshooting USA®

■ HuntInfo.org

■ NSSF's Assocation of Shooting Ranges ®

■ National Shooting Sports Foundation®

**Find a Range within a 30 mile radius of zipcode 60101**

NSSF Members always appear at the top of the list in **BOLD** type

◉ Return to Search Page

Calculated distance in []'s is approximate from your zipcode

- **Maxon Shooters Supplies, Inc., Des Plaines IL 60016 [9.7]**
- **Midwest Sporting Goods, Lyons IL 60534 [12.5]**
- **J. R. Shooting Sports, Aurora IL 60502 [16.4]**
- **Mega Sports, Inc., Plainfield IL 60544 [24.0]**
- **St. Charles Sportsmen's Club, Elburn IL 60119 [25.2]**

- Wheaton Rifle Club, Wheaton IL 60187 [7.6]
- Northern Illinois Tactical Shooting Club (NITac), Chicago IL 60646 [14.3]
- Elgin Rifle Club Inc, South Elgin IL 60177 [15.6]
- G.A.T. Guns, Dundee IL 60118 [19.4]
- Knollwood Sportsman Club, Lake Bluff IL 60044 [25.5]
- Chucks Gun Shop (Riverdale), Riverdale IL 60827 [27.8]

◉ Return to Search Page

*Pearson EXHIBIT 9 FOR I.D. 9-8-10 SH*



# WhereToShoot.org

A comprehensive directory of target shooting facilities across the country.

*A National Shooting Sports Foundation Web Site*

| Home | Find a Range | List Your Range | Shooting Disciplines | Contact Us |

**Related Sites**

■ **Hunt and Shoot.org**

■ **Wingshooting USA**®

■ **HuntInfo.org**

■ **NSSF's Assocation of Shooting Ranges** ®

■ **National Shooting Sports Foundation**®



The Shooting Industry's Search Engine

[ Search ]



## Find a Range within a 60 mile radius of zipcode 60101

NSSF Members always appear at the top of the list in **BOLD** type

◉ Return to Search Page

Calculated distance in []'s is approximate from your zipcode

- **Maxon Shooters Supplies, Inc., Des Plaines IL 60016 [9.7]**
- **Midwest Sporting Goods, Lyons IL 60534 [12.5]**
- **J. R. Shooting Sports, Aurora IL 60502 [16.4]**
- **Mega Sports, Inc., Plainfield IL 60544 [24.0]**
- **St. Charles Sportsmen's Club, Elburn IL 60119 [25.2]**
- **Bass Pro Shop num 003, Gurnee IL 60031 [30.6]**
- **H. P. Shooting Center, Inc., McHenry IL 60050 [31.5]**
- **Izaak Walton League – Griffith, Griffith IN 46319 [40.8]**
- **Aurora Sportsmens Club, Waterman IL 60556 [41.7]**
- **Conservation Club of Kenosha County, Bristol WI 53104 [42.2]**
- **Xline Sportsmans Club, Kankakee IL 60901 [57.1]**
- **Pine Tree Pistol Club, Rockford IL 61109 [57.3]**

- Wheaton Rifle Club, Wheaton IL 60187 [7.6]
- Northern Illinois Tactical Shooting Club (NITac), Chicago IL 60646 [14.3]
- Elgin Rifle Club Inc, South Elgin IL 60177 [15.6]
- G.A.T. Guns, Dundee IL 60118 [19.4]
- Knollwood Sportsman Club, Lake Bluff IL 60044 [25.5]
- Chucks Gun Shop (Riverdale), Riverdale IL 60827 [27.8]
- Howell Shooting Club, Yorkville IL 60560 [30.8]
- Sycamore Sportsmans Club, Sycamore IL 60178 [35.2]
- Deb's Gun Range, Hammond IN 46323 [37.2]
- Sandwich Sportsmans Club Inc, Sandwich IL 60548 [37.6]
- The Outdoorsman Sport Shop, Winthrop Harbor IL 60096 [38.7]
- Newark Sportsmens Club, Newark IL 60541 [39.0]
- Halter Wildlife Inc., Pleasant Prairie WI 53158 [42.9]
- Southport Gun Club, Inc., Kenosha WI 53142 [44.7]
- Powers Lake Sportsmen's Club, Powers Lake WI 53159 [45.4]
- Dunes Rifle & Pistol Club, Hobart IN 46342 [48.2]
- SAM Range Silhouette Club, Knox IN 46342 [48.2]
- Somers Sportsmens Rod And Gun Club, Kenosha WI 53144 [50.0]
- Blythes Sporting Shops Inc., Valpariso IN 46383 [56.8]
- Delavan Sportsmen's Club, Delavan WI 53115 [56.9]
- Upland Hunt Club, Davis Junction IL 61020 [57.1]
- Valparaiso Pistol & Rifle Club, Inc., Hebron IN 46341 [58.7]

◉ Return to Search Page

# WhereToShoot.org

A comprehensive directory of target shooting facilities across the country.



A National Shooting Sports Foundation Web Site

| Home | Find a Range | List Your Range | Shooting Disciplines | Contact Us |

**Related Sites**

■Hunt and Shoot.org

■Wingshooting USA®

■HuntInfo.org

■NSSF's Assocation of Shooting Ranges ®

■National Shooting Sports Foundation®



The Shooting Industry's Search Engine

[ Search ]



### Find a Range within a 60 mile radius of zipcode 60101

NSSF Members always appear at the top of the list in **BOLD** type

◉Return to Search Page

Calculated distance in []'s is approximate from your zipcode

- **Maxon Shooters Supplies, Inc., Des Plaines IL 60016 [9.7]**
- **Midwest Sporting Goods, Lyons IL 60534 [12.5]**
- **J. R. Shooting Sports, Aurora IL 60502 [16.4]**
- **Mega Sports, Inc., Plainfield IL 60544 [24.0]**
- **St. Charles Sportsmen's Club, Elburn IL 60119 [25.2]**
- **Bass Pro Shop num 003, Gurnee IL 60031 [30.6]**
- **H. P. Shooting Center, Inc., McHenry IL 60050 [31.5]**
- **Izaak Walton League – Griffith, Griffith IN 46319 [40.8]**
- **Aurora Sportsmens Club, Waterman IL 60556 [41.7]**
- **Conservation Club of Kenosha County, Bristol WI 53104 [42.2]**
- **Xline Sportsmans Club, Kankakee IL 60901 [57.1]**
- **Pine Tree Pistol Club, Rockford IL 61109 [57.3]**

- Wheaton Rifle Club, Wheaton IL 60187 [7.6]
- Northern Illinois Tactical Shooting Club (NITac), Chicago IL 60646 [14.3]
- Elgin Rifle Club Inc, South Elgin IL 60177 [15.6]
- G.A.T. Guns, Dundee IL 60118 [19.4]
- Knollwood Sportsman Club, Lake Bluff IL 60044 [25.5]
- Chucks Gun Shop (Riverdale), Riverdale IL 60827 [27.8]
- Howell Shooting Club, Yorkville IL 60560 [30.8]
- Sycamore Sportsmans Club, Sycamore IL 60178 [35.2]
- Deb's Gun Range, Hammond IN 46323 [37.2]
- Sandwich Sportsmans Club Inc, Sandwich IL 60548 [37.6]
- The Outdoorsman Sport Shop, Winthrop Harbor IL 60096 [38.7]
- Newark Sportsmens Club, Newark IL 60541 [39.0]
- Halter Wildlife Inc., Pleasant Prairie WI 53158 [42.9]
- Southport Gun Club, Inc., Kenosha WI 53142 [44.7]
- Powers Lake Sportsmen's Club, Powers Lake WI 53159 [45.4]
- Dunes Rifle & Pistol Club, Hobart IN 46342 [48.2]
- SAM Range Silhouette Club, Knox IN 46342 [48.2]
- Somers Sportsmens Rod And Gun Club, Kenosha WI 53144 [50.0]
- Blythes Sporting Shops Inc., Valpariso IN 46383 [56.8]
- Delavan Sportsmen's Club, Delavan WI 53115 [56.9]
- Upland Hunt Club, Davis Junction IL 61020 [57.1]
- Valparaiso Pistol & Rifle Club, Inc., Hebron IN 46341 [58.3]

◉Return to Search Page



# WhereToShoot.org

A comprehensive directory of target shooting facilities across the country.

A National Shooting Sports Foundation Web Site

| Home | Find a Range | List Your Range | Shooting Disciplines | Contact Us |

**Related Sites**

■Hunt and Shoot.org

■Wingshooting USA®

■HuntInfo.org

■NSSF's Assocation of Shooting Ranges ®

■National Shooting Sports Foundation®



The Shooting Industry's Search Engine

[ Search ]



## Find a Range within a 60 mile radius of zipcode 60101

NSSF Members always appear at the top of the list in **BOLD** type

◉Return to Search Page

Calculated distance in []'s is approximate from your zipcode

- **Maxon Shooters Supplies, Inc., Des Plaines IL 60016** [9.7]
- **Midwest Sporting Goods, Lyons IL 60534** [12.5]
- **J. R. Shooting Sports, Aurora IL 60502** [16.4]
- **Mega Sports, Inc., Plainfield IL 60544** [24.0]
- **St. Charles Sportsmen's Club, Elburn IL 60119** [25.2]
- **Bass Pro Shop num 003, Gurnee IL 60031** [30.6]
- **H. P. Shooting Center, Inc., McHenry IL 60050** [31.5]
- **Izaak Walton League – Griffith, Griffith IN 46319** [40.8]
- **Aurora Sportsmens Club, Waterman IL 60556** [41.7]
- **Conservation Club of Kenosha County, Bristol WI 53104** [42.2]
- **Xline Sportsmans Club, Kankakee IL 60901** [57.1]
- **Pine Tree Pistol Club, Rockford IL 61109** [57.3]

- Wheaton Rifle Club, Wheaton IL 60187 [7.6]
- Northern Illinois Tactical Shooting Club (NITac), Chicago IL 60646 [14.3]
- Elgin Rifle Club Inc, South Elgin IL 60177 [15.6]
- G.A.T. Guns, Dundee IL 60118 [19.4]
- Knollwood Sportsman Club, Lake Bluff IL 60044 [25.5]
- Chucks Gun Shop (Riverdale), Riverdale IL 60827 [27.8]
- Howell Shooting Club, Yorkville IL 60560 [30.8]
- Sycamore Sportsmans Club, Sycamore IL 60178 [35.2]
- Deb's Gun Range, Hammond IN 46323 [37.2]
- Sandwich Sportsmans Club Inc, Sandwich IL 60548 [37.6]
- The Outdoorsman Sport Shop, Winthrop Harbor IL 60096 [38.7]
- Newark Sportsmens Club, Newark IL 60541 [39.0]
- Halter Wildlife Inc., Pleasant Prairie WI 53158 [42.9]
- Southport Gun Club, Inc., Kenosha WI 53142 [44.7]
- Powers Lake Sportsmen's Club, Powers Lake WI 53159 [45.4]
- Dunes Rifle & Pistol Club, Hobart IN 46342 [48.2]
- SAM Range Silhouette Club, Knox IN 46342 [48.2]
- Somers Sportsmens Rod And Gun Club, Kenosha WI 53144 [50.0]
- Blythes Sporting Shops Inc., Valpariso IN 46383 [56.8]
- Delavan Sportsmen's Club, Delavan WI 53115 [56.9]
- Upland Hunt Club, Davis Junction IL 61020 [57.1]
- Valparaiso Pistol & Rifle Club, Inc., Hebron IN 46341 [58.3]

◉Return to Search Page



# WhereToShoot.org

*A comprehensive directory of target shooting facilities across the country.*

*A National Shooting Sports Foundation Web Site*

| Home | Find a Range | List Your Range | Shooting Disciplines | Contact Us |

**Related Sites**

■Hunt and Shoot.org

■Wingshooting USA®

■HuntInfo.org

■NSSF's Assocation of Shooting Ranges ®

■National Shooting Sports Foundation®



The Shooting Industry's
Search Engine

[ Search ]



## Find a Range within a 120 mile radius of zipcode 60101



NSSF Members always appear at the top of the list in **BOLD** type

⊛Return to Search Page

Calculated distance in []'s is approximate from your zipcode

- **Maxon Shooters Supplies, Inc., Des Plaines IL 60016** [9.7]
- **Midwest Sporting Goods, Lyons IL 60534** [12.5]
- **J. R. Shooting Sports, Aurora IL 60502** [16.4]
- **Mega Sports, Inc., Plainfield IL 60544** [24.0]
- **St. Charles Sportsmen's Club, Elburn IL 60119** [25.2]
- **Bass Pro Shop num 003, Gurnee IL 60031** [30.6]
- **H. P. Shooting Center, Inc., McHenry IL 60050** [31.5]
- **Izaak Walton League – Griffith, Griffith IN 46319** [40.8]
- **Aurora Sportsmens Club, Waterman IL 60556** [41.7]
- **Conservation Club of Kenosha County, Bristol WI 53104** [42.2]
- **Xline Sportsmans Club, Kankakee IL 60901** [57.1]
- **Pine Tree Pistol Club, Rockford IL 61109** [57.3]
- **The Shooters Sports Center, Inc ., Racine WI 53402** [60.4]
- **Beloit Rifle Club, Beloit WI 53512** [66.0]
- **Rock County Rifle and Pistol Club, Janesville WI 53546** [71.9]
- **Fletcher Arms Inc, Waukesha WI 53186** [75.5]
- **Illinois State Rifle Association, Chatsworth IL 60921** [83.0]
- **Daniel Boone Conservation League Inc., Hubertus WI 53033** [90.8]
- **Deerfield Pistol & Archery Center, Deerfield WI 53531** [95.4]
- **Edwardsburg Conservation Club, Edwardsburg MI 49112** [101.4]
- **Midwest Gun and Range, Elkhart IN 46516** [106.7]
- **North Bristol Sportsmans Club, Sun Prairie WI 53590** [106.8]
- **Fulton County Gun Club, Rochester IN 46975** [110.7]
- **Central Illinois Precision Shooting, Bloomington IL 61704** [111.9]
- **Darnalls Gun Works and Ranges/dba DGW, Inc., Bloomington IL 61704** [111.9]
- **Illinois Junior Precision Shooters-Precision Pistol, Bloomington IL 61704** [111.9]

<br>

- Wheaton Rifle Club, Wheaton IL 60187 [7.6]
- Northern Illinois Tactical Shooting Club (NITac), Chicago IL 60646 [14.3]
- Elgin Rifle Club Inc, South Elgin IL 60177 [15.6]
- G.A.T. Guns, Dundee IL 60118 [19.4]
- Knollwood Sportsman Club, Lake Bluff IL 60044 [25.5]
- Chucks Gun Shop (Riverdale), Riverdale IL 60827 [27.8]
- Howell Shooting Club, Yorkville IL 60560 [30.8]
- Sycamore Sportsmans Club, Sycamore IL 60178 [35.2]
- Deb's Gun Range, Hammond IN 46323 [37.2]
- Sandwich Sportsmans Club Inc, Sandwich IL 60548 [37.6]
- The Outdoorsman Sport Shop, Winthrop Harbor IL 60096 [38.7]
- Newark Sportsmens Club, Newark IL 60541 [39.0]
- Halter Wildlife Inc., Pleasant Prairie WI 53158 [42.9]
- Southport Gun Club, Inc., Kenosha WI 53142 [44.7]
- Powers Lake Sportsmen's Club, Powers Lake WI 53159 [45.4]
- Dunes Rifle & Pistol Club, Hobart IN 46342 [48.2]
- SAM Range Silhouette Club, Knox IN 46342 [48.2]
- Somers Sportsmens Rod And Gun Club, Kenosha WI 53144 [50.0]
- Blythes Sporting Shops Inc., Valpariso IN 46383 [56.8]
- Delavan Sportsmen's Club, Delavan WI 53115 [56.9]

- Upland Hunt Club, Davis Junction IL 61020 [57.1]
- Valparaiso Pistol & Rifle Club, Inc., Hebron IN 46341 [58.3]
- Michigan City Rifle Club, Michigan City IN 46360 [60.6]
- Northern Illinois Rifle and Pistol Club, Rockford IL 61101 [63.1]
- New Buffalo Rod & Gun Club, New Buffalo MI 49117 [65.0]
- Fort Tassinong Muzzleloaders, Kouts IN 46347 [65.7]
- Racine County Line Rifle Club, Oak Creek WI 53154 [66.1]
- Schultz Resort Rod & Gun Club, Muskego WI 53150 [66.6]
- Kingbury Shooting Range, La Porte IN 46350 [69.0]
- Kingsbury Fish & Wildlife Area, La Porte IN 46350 [69.0]
- McMiller Sports Center, Eagle WI 53119 [69.5]
- Briar Knoll Hunting and Fishing, Amboy IL 61310 [70.8]
- Ed's Guns & Range, Whitewater WI 53190 [71.7]
- The Shooters Shop, Inc., West Allis WI 53227 [73.4]
- Willow Slough FWA Shooting Range, Morocco IN 47963 [74.1]
- Wern Valley Sportsmens Club, Waukesha WI 53189 [75.6]
- Grand Mere Rifle and Pistol Club, Stevensville MI 49127 [76.6]
- Class 3 Sales, New Carlisle IN 46552 [79.9]
- Tri County Gun Club, Inc., Polo IL 61064 [81.6]
- Jasper-Pulaski Fish & Wildlife Area, Medaryville IN 47957 [82.5]
- Point Blank Shooting Range, Benton Harbor MI 49022 [83.0]
- Hartland Sportsmen's Club, Delafield WI 53029 [83.1]
- Berrien County Sportsman's Club, Inc., Berrien Springs MI 49103 [85.0]
- Menomonee Falls Rod & Gun Club., Sussex WI 53089 [85.2]
- Rock Hollow Conservation Club, Freeport IL 61032 [87.5]
- Watervliet Rod & Gun Club, Watervliet MI 49098 [91.3]
- Lake Mills Conservation Club, Lake Mills WI 53551 [91.8]
- Stoughton Conservation Club, Stoughton WI 53589 [92.6]
- Coleta Sportsmen Club, Chadwick IL 61014 [94.0]
- Jefferson TWP R & P Club, Winamac IN 46996 [94.5]
- Winamac Fish & Wildlife Area Shooting Range, Winimac IN 46996 [94.5]
- Deerfield Rod & Gun, Deerfield WI 53531 [95.4]
- Green County Rifle Club, Monroe WI 53566 [95.5]
- Hartford Conservation and Gun Club, Hartford WI 53027 [96.4]
- Midwest Gun Collector's Association, Lacon IL 61570 [96.8]
- Mishawaka Rifle & Pistol Club, Mishawaka IN 46544 [97.0]
- Saukville Rifle & Pistol Club, Saukville WI 53080 [100.6]
- F & R Sporting Clays, West Bend WI 53095 [101.1]
- Morrison Sportsman Club, Morrison IL 61270 [101.4]
- The Site Firearms Training Center, Mounrt Carroll IL 61053 [102.0]
- Vans Country Sports, Mt Carroll IL 61053 [102.0]
- Elkhart Rifle & Pistol Club, Elkhart IN 46514 [105.8]
- St. Joseph County Restoration Club, Elkhart IN 46517 [106.3]
- Mississippi Flyway Sportsmans Club Inc., Thomson IL 61285 [108.0]
- Wisconsin Practical Pistol League, Verona WI 53593 [108.5]
- West Bend Barton Sportsman's Club, Kewaskum WI 53040 [109.6]
- Horicon Rod and Gun Club, Horicon WI 53032 [109.7]
- Columbus Sportsmans Association, Columbus WI 53925 [110.3]
- Sand Burr Gun Ranch, Rochester IN 46975 [110.7]
- Argyle Rod & Gun Club, Argyle WI 53504 [110.8]
- Mayville Gun Club, Mayville WI 53050 [111.8]
- Chick-owa Sportsmans Club, Holland MI 49423 [113.0]
- Tulip City Rod and Gun Club, Holland MI 49422 [113.3]
- Southern Michigan Gun Club, Mattawan MI 49071 [115.3]
- LeRoy Rifle and Pistol Club, Leroy IL 61752 [116.6]
- Midwestern Shooters Supply, Lomira WI 53048 [116.8]
- L'Anguille Practical Pistol League, Twelve Mile IN 46988 [119.2]
- The Highlands Sportsmen's Club, Cascade WI 53011 [119.4]

 Return to Search Page

# WhereToShoot.org

A comprehensive directory of target shooting facilities across the country.

A National Shooting Sports Foundation Web Site



| Home | Find a Range | List Your Range | Shooting Disciplines | Contact Us |

**Related Sites**

■ Hunt and Shoot.org

■ Wingshooting USA®

■ HuntInfo.org

■ NSSF's Assocation of Shooting Ranges ®

■ National Shooting Sports Foundation®



The Shooting Industry's Search Engine

[ Search ]



## Find a Range within a 120 mile radius of zipcode 60101

NSSF Members always appear at the top of the list in **BOLD** type

◉ Return to Search Page

Calculated distance in []'s is approximate from your zipcode

- **Maxon Shooters Supplies, Inc., Des Plaines IL 60016** [9.7]
- **Midwest Sporting Goods, Lyons IL 60534** [12.5]
- **J. R. Shooting Sports, Aurora IL 60502** [16.4]
- **Mega Sports, Inc., Plainfield IL 60544** [24.0]
- **St. Charles Sportsmen's Club, Elburn IL 60119** [25.2]
- **Bass Pro Shop num 003, Gurnee IL 60031** [30.6]
- **H. P. Shooting Center, Inc., McHenry IL 60050** [31.5]
- **Izaak Walton League - Griffith, Griffith IN 46319** [40.8]
- **Aurora Sportsmens Club, Waterman IL 60556** [41.7]
- **Conservation Club of Kenosha County, Bristol WI 53104** [42.2]
- **Xline Sportsmans Club, Kankakee IL 60901** [57.1]
- **Pine Tree Pistol Club, Rockford IL 61109** [57.3]
- **The Shooters Sports Center, Inc ., Racine WI 53402** [60.4]
- **Beloit Rifle Club, Beloit WI 53512** [66.0]
- **Rock County Rifle and Pistol Club, Janesville WI 53546** [71.9]
- **Fletcher Arms Inc, Waukesha WI 53186** [75.5]
- **Illinois State Rifle Association, Chatsworth IL 60921** [83.0]
- **Daniel Boone Conservation League Inc., Hubertus WI 53033** [90.8]
- **Deerfield Pistol & Archery Center, Deerfield WI 53531** [95.4]
- **Edwardsburg Conservation Club, Edwardsburg MI 49112** [101.4]
- **Midwest Gun and Range, Elkhart IN 46516** [106.7]
- **North Bristol Sportsmans Club, Sun Prairie WI 53590** [106.8]
- **Fulton County Gun Club, Rochester IN 46975** [110.7]
- **Central Illinois Precision Shooting, Bloomington IL 61704** [111.9]
- **Darnalls Gun Works and Ranges/dba DGW, Inc., Bloomington IL 61704** [111.9]
- **Illinois Junior Precision Shooters-Precision Pistol, Bloomington IL 61704** [111.9]

- Wheaton Rifle Club, Wheaton IL 60187 [7.6]
- Northern Illinois Tactical Shooting Club (NITac), Chicago IL 60646 [14.3]
- Elgin Rifle Club Inc, South Elgin IL 60177 [15.6]
- G.A.T. Guns, Dundee IL 60118 [19.4]
- Knollwood Sportsman Club, Lake Bluff IL 60044 [25.5]
- Chucks Gun Shop (Riverdale), Riverdale IL 60827 [27.8]
- Howell Shooting Club, Yorkville IL 60560 [30.8]
- Sycamore Sportsmans Club, Sycamore IL 60178 [35.2]
- Deb's Gun Range, Hammond IN 46323 [37.2]
- Sandwich Sportsmans Club Inc, Sandwich IL 60548 [37.6]
- The Outdoorsman Sport Shop, Winthrop Harbor IL 60096 [38.7]
- Newark Sportsmens Club, Newark IL 60541 [39.0]
- Halter Wildlife Inc., Pleasant Prairie WI 53158 [42.9]
- Southport Gun Club, Inc., Kenosha WI 53142 [44.7]
- Powers Lake Sportsmen's Club, Powers Lake WI 53159 [45.4]
- Dunes Rifle & Pistol Club, Hobart IN 46342 [48.2]
- SAM Range Silhouette Club, Knox IN 46342 [48.2]
- Somers Sportsmens Rod And Gun Club, Kenosha WI 53144 [50.0]
- Blythes Sporting Shops Inc., Valparaiso IN 46383 [56.8]
- Delavan Sportsmen's Club, Delavan WI 53115 [56.9]

- Upland Hunt Club, Davis Junction IL 61020 [57.1]
- Valparaiso Pistol & Rifle Club, Inc., Hebron IN 46341 [58.3]
- Michigan City Rifle Club, Michigan City IN 46360 [60.6]
- Northern Illinois Rifle and Pistol Club, Rockford IL 61101 [63.1]
- New Buffalo Rod & Gun Club, New Buffalo MI 49117 [65.0]
- Fort Tassinong Muzzleloaders, Kouts IN 46347 [65.7]
- Racine County Line Rifle Club, Oak Creek WI 53154 [66.1]
- Schultz Resort Rod & Gun Club, Muskego WI 53150 [66.6]
- Kingbury Shooting Range, La Porte IN 46350 [69.0]
- Kingsbury Fish & Wildlife Area, La Porte IN 46350 [69.0]
- McMiller Sports Center, Eagle WI 53119 [69.5]
- Briar Knoll Hunting and Fishing, Amboy IL 61310 [70.8]
- Ed's Guns & Range, Whitewater WI 53190 [71.7]
- The Shooters Shop, Inc., West Allis WI 53227 [73.4]
- Willow Slough FWA Shooting Range, Morocco IN 47963 [74.1]
- Wern Valley Sportsmens Club, Waukesha WI 53189 [75.6]
- Grand Mere Rifle and Pistol Club, Stevensville MI 49127 [76.6]
- Class 3 Sales, New Carlisle IN 46552 [79.9]
- Tri County Gun Club, Inc., Polo IL 61064 [81.6]
- Jasper-Pulaski Fish & Wildlife Area, Medaryville IN 47957 [82.5]
- Point Blank Shooting Range, Benton Harbor MI 49022 [83.0]
- Hartland Sportsmen's Club, Delafield WI 53029 [83.1]
- Berrien County Sportsman's Club, Inc., Berrien Springs MI 49103 [85.0]
- Menomonee Falls Rod & Gun Club., Sussex WI 53089 [85.2]
- Rock Hollow Conservation Club, Freeport IL 61032 [87.5]
- Watervliet Rod & Gun Club, Watervliet MI 49098 [91.3]
- Lake Mills Conservation Club, Lake Mills WI 53551 [91.8]
- Stoughton Conservation Club, Stoughton WI 53589 [92.6]
- Coleta Sportsmen Club, Chadwick IL 61014 [94.0]
- Jefferson TWP R & P Club, Winamac IN 46996 [94.5]
- Winamac Fish & Wildlife Area Shooting Range, Winimac IN 46996 [94.5]
- Deerfield Rod & Gun, Deerfield WI 53531 [95.4]
- Green County Rifle Club, Monroe WI 53566 [95.5]
- Hartford Conservation and Gun Club, Hartford WI 53027 [96.4]
- Midwest Gun Collector's Association, Lacon IL 61570 [96.8]
- Mishawaka Rifle & Pistol Club, Mishawaka IN 46544 [97.0]
- Saukville Rifle & Pistol Club, Saukville WI 53080 [100.6]
- F & R Sporting Clays, West Bend WI 53095 [101.1]
- Morrison Sportsman Club, Morrison IL 61270 [101.4]
- The Site Firearms Training Center, Mounrt Carroll IL 61053 [102.0]
- Vans Country Sports, Mt Carroll IL 61053 [102.0]
- Elkhart Rifle & Pistol Club, Elkhart IN 46514 [105.8]
- St. Joseph County Restoration Club, Elkhart IN 46517 [106.3]
- Mississippi Flyway Sportsmans Club Inc., Thomson IL 61285 [108.0]
- Wisconsin Practical Pistol League, Verona WI 53593 [108.5]
- West Bend Barton Sportsman's Club, Kewaskum WI 53040 [109.6]
- Horicon Rod and Gun Club, Horicon WI 53032 [109.7]
- Columbus Sportsmans Association, Columbus WI 53925 [110.3]
- Sand Burr Gun Ranch, Rochester IN 46975 [110.7]
- Argyle Rod & Gun Club, Argyle WI 53504 [110.8]
- Mayville Gun Club, Mayville WI 53050 [111.8]
- Chick-owa Sportsmans Club, Holland MI 49423 [113.0]
- Tulip City Rod and Gun Club, Holland MI 49422 [113.3]
- Southern Michigan Gun Club, Mattawan MI 49071 [115.3]
- LeRoy Rifle and Pistol Club, Leroy IL 61752 [116.6]
- Midwestern Shooters Supply, Lomira WI 53048 [116.8]
- L'Anguille Practical Pistol League, Twelve Mile IN 46988 [119.2]
- The Highlands Sportsmen's Club, Cascade WI 53011 [119.4]

◎ Return to Search Page



# WhereToShoot.org

*A comprehensive directory of target shooting facilities across the country.*

*A National Shooting Sports Foundation Web Site*

| Home | Find a Range | List Your Range | Shooting Disciplines | Contact Us |

**Related Sites**

■ Hunt and Shoot.org

■ Wingshooting USA®

■ HuntInfo.org

■ NSSF's Assocation of Shooting Ranges ®

■ National Shooting Sports Foundation®



The Shooting Industry's Search Engine

[ Search ]

### Find a Range within a 120 mile radius of zipcode 60101

NSSF Members always appear at the top of the list in **BOLD** type          ■ Return to Search Page

Calculated distance in []'s is approximate from your zipcode

- **Maxon Shooters Supplies, Inc., Des Plaines IL 60016** [9.7]
- **Midwest Sporting Goods, Lyons IL 60534** [12.5]
- **J. R. Shooting Sports, Aurora IL 60502** [16.4]
- **Mega Sports, Inc., Plainfield IL 60544** [24.0]
- **St. Charles Sportsmen's Club, Elburn IL 60119** [25.2]
- **Bass Pro Shop num 003, Gurnee IL 60031** [30.6]
- **H. P. Shooting Center, Inc., McHenry IL 60050** [31.5]
- **Izaak Walton League – Griffith, Griffith IN 46319** [40.8]
- **Aurora Sportsmens Club, Waterman IL 60556** [41.7]
- **Conservation Club of Kenosha County, Bristol WI 53104** [42.2]
- **Xline Sportsmans Club, Kankakee IL 60901** [57.1]
- **Pine Tree Pistol Club, Rockford IL 61109** [57.3]
- **The Shooters Sports Center, Inc ., Racine WI 53402** [60.4]
- **Beloit Rifle Club, Beloit WI 53512** [66.0]
- **Rock County Rifle and Pistol Club, Janesville WI 53546** [71.9]
- **Fletcher Arms Inc, Waukesha WI 53186** [75.5]
- **Illinois State Rifle Association, Chatsworth IL 60921** [83.0]
- **Daniel Boone Conservation League Inc., Hubertus WI 53033** [90.8]
- **Deerfield Pistol & Archery Center, Deerfield WI 53531** [95.4]
- **Edwardsburg Conservation Club, Edwardsburg MI 49112** [101.4]
- **Midwest Gun and Range, Elkhart IN 46516** [106.7]
- **North Bristol Sportsmans Club, Sun Prairie WI 53590** [106.8]
- **Fulton County Gun Club, Rochester IN 46975** [110.7]
- **Central Illinois Precision Shooting, Bloomington IL 61704** [111.9]
- **Darnalls Gun Works and Ranges/dba DGW, Inc., Bloomington IL 61704** [111.9]
- **Illinois Junior Precision Shooters-Precision Pistol, Bloomington IL 61704** [111.9]

- Wheaton Rifle Club, Wheaton IL 60187 [7.6]
- Northern Illinois Tactical Shooting Club (NITac), Chicago IL 60646 [14.3]
- Elgin Rifle Club Inc, South Elgin IL 60177 [15.6]
- G.A.T. Guns, Dundee IL 60118 [19.4]
- Knollwood Sportsman Club, Lake Bluff IL 60044 [25.5]
- Chucks Gun Shop (Riverdale), Riverdale IL 60827 [27.8]
- Howell Shooting Club, Yorkville IL 60560 [30.8]
- Sycamore Sportsmans Club, Sycamore IL 60178 [35.2]
- Deb's Gun Range, Hammond IN 46323 [37.2]
- Sandwich Sportsmans Club Inc, Sandwich IL 60548 [37.6]
- The Outdoorsman Sport Shop, Winthrop Harbor IL 60096 [38.7]
- Newark Sportsmens Club, Newark IL 60541 [39.0]
- Halter Wildlife Inc., Pleasant Prairie WI 53158 [42.9]
- Southport Gun Club, Inc., Kenosha WI 53142 [44.7]
- Powers Lake Sportsmen's Club, Powers Lake WI 53159 [45.4]
- Dunes Rifle & Pistol Club, Hobart IN 46342 [48.2]
- SAM Range Silhouette Club, Knox IN 46342 [48.2]
- Somers Sportsmens Rod And Gun Club, Kenosha WI 53144 [50.0]
- Blythes Sporting Shops Inc., Valpariso IN 46383 [56.8]
- Delavan Sportsmen's Club, Delavan WI 53115 [56.9]



- Upland Hunt Club, Davis Junction IL 61020 [57.1]
- Valparaiso Pistol & Rifle Club, Inc., Hebron IN 46341 [58.3]
- Michigan City Rifle Club, Michigan City IN 46360 [60.6]
- Northern Illinois Rifle and Pistol Club, Rockford IL 61101 [63.1]
- New Buffalo Rod & Gun Club, New Buffalo MI 49117 [65.0]
- Fort Tassinong Muzzleloaders, Kouts IN 46347 [65.7]
- Racine County Line Rifle Club, Oak Creek WI 53154 [66.1]
- Schultz Resort Rod & Gun Club, Muskego WI 53150 [66.6]
- Kingbury Shooting Range, La Porte IN 46350 [69.0]
- Kingsbury Fish & Wildlife Area, La Porte IN 46350 [69.0]
- McMiller Sports Center, Eagle WI 53119 [69.5]
- Briar Knoll Hunting and Fishing, Amboy IL 61310 [70.8]
- Ed's Guns & Range, Whitewater WI 53190 [71.7]
- The Shooters Shop, Inc., West Allis WI 53227 [73.4]
- Willow Slough FWA Shooting Range, Morocco IN 47963 [74.1]
- Wern Valley Sportsmens Club, Waukesha WI 53189 [75.6]
- Grand Mere Rifle and Pistol Club, Stevensville MI 49127 [76.6]
- Class 3 Sales, New Carlisle IN 46552 [79.9]
- Tri County Gun Club, Inc., Polo IL 61064 [81.6]
- Jasper-Pulaski Fish & Wildlife Area, Medaryville IN 47957 [82.5]
- Point Blank Shooting Range, Benton Harbor MI 49022 [83.0]
- Hartland Sportsmen's Club, Delafield WI 53029 [83.1]
- Berrien County Sportsman's Club, Inc., Berrien Springs MI 49103 [85.0]
- Menomonee Falls Rod & Gun Club., Sussex WI 53089 [85.2]
- Rock Hollow Conservation Club, Freeport IL 61032 [87.5]
- Watervliet Rod & Gun Club, Watervliet MI 49098 [91.3]
- Lake Mills Conservation Club, Lake Mills WI 53551 [91.8]
- Stoughton Conservation Club, Stoughton WI 53589 [92.6]
- Coleta Sportsmen Club, Chadwick IL 61014 [94.0]
- Jefferson TWP R & P Club, Winamac IN 46996 [94.5]
- Winamac Fish & Wildlife Area Shooting Range, Winimac IN 46996 [94.5]
- Deerfield Rod & Gun, Deerfield WI 53531 [95.4]
- Green County Rifle Club, Monroe WI 53566 [95.5]
- Hartford Conservation and Gun Club, Hartford WI 53027 [96.4]
- Midwest Gun Collector's Association, Lacon IL 61570 [96.8]
- Mishawaka Rifle & Pistol Club, Mishawaka IN 46544 [97.0]
- Saukville Rifle & Pistol Club, Saukville WI 53080 [100.6]
- F & R Sporting Clays, West Bend WI 53095 [101.1]
- Morrison Sportsman Club, Morrison IL 61270 [101.4]
- The Site Firearms Training Center, Mount Carroll IL 61053 [102.0]
- Vans Country Sports, Mt Carroll IL 61053 [102.0]
- Elkhart Rifle & Pistol Club, Elkhart IN 46514 [105.8]
- St. Joseph County Restoration Club, Elkhart IN 46517 [106.3]
- Mississippi Flyway Sportsmans Club Inc., Thomson IL 61285 [108.0]
- Wisconsin Practical Pistol League, Verona WI 53593 [108.5]
- West Bend Barton Sportsman's Club, Kewaskum WI 53040 [109.6]
- Horicon Rod and Gun Club, Horicon WI 53032 [109.7]
- Columbus Sportsmans Association, Columbus WI 53925 [110.3]
- Sand Burr Gun Ranch, Rochester IN 46975 [110.7]
- Argyle Rod & Gun Club, Argyle WI 53504 [110.8]
- Mayville Gun Club, Mayville WI 53050 [111.8]
- Chick-owa Sportsmans Club, Holland MI 49423 [113.0]
- Tulip City Rod and Gun Club, Holland MI 49422 [113.3]
- Southern Michigan Gun Club, Mattawan MI 49071 [115.3]
- LeRoy Rifle and Pistol Club, Leroy IL 61752 [116.6]
- Midwestern Shooters Supply, Lomira WI 53048 [116.8]
- L'Anguille Practical Pistol League, Twelve Mile IN 46988 [119.2]
- The Highlands Sportsmen's Club, Cascade WI 53011 [119.4]

◎Return to Search Page

# WhereToShoot.org

A comprehensive directory of target shooting facilities across the country.

*A National Shooting Sports Foundation Web Site*

| Home | Find a Range | List Your Range | Shooting Disciplines | Contact Us |

**Related Sites**

■ Hunt and Shoot.org

■ Wingshooting USA®

■ HuntInfo.org

■ NSSF's Assocation of Shooting Ranges ®

■ National Shooting Sports Foundation®

**Find a Range within area code 630**

NSSF Members always appear at the top of the list in **BOLD** type

◉ Return to Search Page

- **Illinois Junior Precision Shooters-Precision Pistol, Bloomington IL 61704**
- **J. R. Shooting Sports, Aurora IL 60502**
- **St. Charles Sportsmen's Club, Elburn IL 60119**

- Wheaton Rifle Club, Wheaton IL 60187

◉ Return to Search Page



**WhereToShoot.org**

A comprehensive directory of target shooting facilities across the country.

A National Shooting Sports Foundation Web Site

| Home | Find a Range | List Your Range | Shooting Disciplines | Contact Us |

**Related Sites**

■ Hunt and Shoot.org

■ Wingshooting USA®

■ HuntInfo.org

■ NSSF's Assocation of Shooting Ranges®

■ National Shooting Sports Foundation®

NSSF MarketPlace
The Shooting Industry's Search Engine

[ Search ]

### Find a Range within area code 708

NSSF Members always appear at the top of the list in **BOLD** type

◉ Return to Search Page

- **Midwest Sporting Goods, Lyons IL 60534**
- Chucks Gun Shop (Riverdale), Riverdale IL 60827
- Northern Illinois Tactical Shooting Club (NITac), Chicago IL 60646

◉ Return to Search Page